IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| ROBERT JOHNSTON, | ) | |
| individually and on behalf of a class of all | ) | |
| other persons similarly situated, | ) | Case No.1:14-cv-10427 |
| | ) | Judge Thomas L. Ludington |
| Plaintiff, | ) | |
| | ) | |
| **vs**. | ) | **CLASS ACTION** |
| | ) | |
| DOW EMPLOYEES' PENSION PLAN | ) | |
| And DOW CHEMICAL COMPANY | ) | |
| RETIREMENT BOARD, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**BRIEF IN OPPOSITION TO PLAINTIFF'S
<u>MOTION FOR CLASS CERTIFICATION</u>**

## <u>TABLE OF CONTENTS</u>

Factual Background.................................................................................................1

    Relevant Plan Provisions...............................................................................1

    Johnston's Release, Administrative Claim, and Lawsuit ...............................5

    Johnston's Complaint....................................................................................6

    Johnston's Motion for Class Certification ....................................................8

Argument ................................................................................................................9

I.   JOHNSTON'S PROPOSED CLASS DOES NOT SATISFY ANY
     ELEMENT OF RULE 23(A). .................................................................9

    A. The Proposed Class Does Not Satisfy The Commonality
       Requirement Because Johnston's Claims Are Not Susceptible To
       Class-Wide Proof. .........................................................................10

       1.  The Plan Provisions Johnston Challenges Apply Differently,
          Or Do Not Apply At All, To Different Participants; His Claims
          Are Not Common To The Class. .........................................................11

       2.  Johnston's Attempts To Gloss Over The Proposed Class's
          Lack Of Commonality Fail.................................................................12

    B. Class Conflicts And Unique Defenses Destroy Typicality And
       Adequacy. .....................................................................................13

       1.  Material Conflicts Among The Interests Of The Members Of
          The Proposed Class Destroy Typicality And Adequacy.....................14

       2.  The Individual Issues That Predominate The Claims Of
          Johnston And The Proposed Class Are Fatal To Adequacy
          And Typicality. .................................................................................18

       3.  Johnston's Individual Claim That He Is Not Subject to § 10.46
          Prevents A Finding Of Adequacy Or Typicality.................................20

    C. There Is No Properly Defined Class Sufficiently Numerous To
       Justify Certification.........................................................................21

**II. THE PROPOSED CLASS DOES NOT MEET RULE 23(B) REQUIREMENTS............................................................................21**

**A. Johnston Cannot Satisfy Rule 23(b)(1) Requirements.............................22**

**B. Johnston Cannot Meet The Rule 23(b)(2) Requirements.........................24**

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bittinger v. Tecumseh Products Co.*,
123 F.3d 877 (6th Cir. 1997) ..............................................................20

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
155 F.3d 331 (4th Cir. 1998) ........................................................14, 15

*Carr v. Int'l Game Tech.*,
No. 3:09-CV-00584-RCJ, 2013 WL 638834 (D. Nev. Feb. 20, 2013) .............19

*Charles v. Pepco Holdings, Inc.*,
314 F. App'x 450 (3d Cir. 2008) ................................................10, 17

*CIGNA Corp. v. Amara*,
131 S. Ct. 1866 (2011) ........................................................................17

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013) ......................................................................9, 10

*Fotta v. Trs. of the United Mine Workers of Am.*,
319 F.3d 612 (3d Cir. 2003) .............................................................11

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) ............................................................................11

*Gooch v. Life Investors Ins. Co. of Am.*,
672 F.3d 402 (6th Cir. 2012) ...........................................................13

*Holmes v. Pension Plan of Bethlehem Steel Corp.*,
213 F.3d 124 (3d Cir. 2000) .............................................................11

*In re Am. Med. Sys.*,
75 F.3d 1069 (6th Cir. 1996) ......................................................14, 22

*In re Computer Sciences Corp. ERISA Litig.*,
No. CV 08-02398 SJO JWJX, 2008 WL 7527874 (C.D. Cal. Sept. 2,
2008) ....................................................................................................23

*In re Countrywide Fin. Corp. Mortg. Lending Practices Litig.*,
   708 F.3d 704 (6th Cir. 2013) ..............................................................10

*In re Diaz Cruz*,
   No. 10-11393, 2013 WL 3153993 (D.P.R. June 19, 2013) ................................16

*In re Principal U.S. Prop. Account ERISA Litig.*, No. 4:10-CV-00198-JEG,
   2013 WL 7218827 (S.D. Iowa Sept. 30, 2013) ....................................12

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
   725 F.3d 244 (D.C. Cir. 2013)................................................................22

*Langbecker v. Elec. Data Sys. Corp.*,
   476 F.3d 299 (5th Cir. 2007) ..............................................14, 15, 18

*Leroy v. Paytel III Mgmt. Assocs., Inc.*,
   No. 91 CIV. 1933 (JFK), 1992 WL 367090 (S.D.N.Y. Nov. 24, 1992) ...........18

*Loren v. Blue Cross & Blue Shield of Mich.*,
   505 F.3d 598 (6th Cir. 2007) ...............................................................11

*Marquis v. Tecumseh Products Co.*,
   206 F.R.D. 132 (E.D. Mich. 2002) ...................................................21

*Mogel v. UNUM Life Ins. Co. of Am.*,
   677 F. Supp. 2d 362 (D. Mass. 2009 )............................................22

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999)......................................................................22, 23

*Pender v. Bank of Am. Corp.*,
   788 F.3d 354 (4th Cir. 2015) .............................................................17

*Peoples v. Wendover Funding, Inc.*,
   179 F.R.D. 492 (D. Md. 1998) ..........................................................18

*Pickett v. Iowa Beef Processors*,
   209 F.3d 1276 (11th Cir. 2000) .........................................................14

*Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*,
   654 F.3d 618 (6th Cir. 2011) .........................................................9, 14

iv

*Reeb v. Ohio Dep't of Rehab. & Correction*,
  435 F.3d 639 (6th Cir. 2006)................................................................24

*Romberio v. Unumprovident Corp.*,
  385 F. App'x 423 (6th Cir. 2009) .................................................14, 20

*Schlaud v. Snyder*,
  785 F.3d 1119 (6th Cir. 2015) .....................................................14, 15

*Singh v. Keisler*,
  No. 07-2449, 2008 WL 544937 (D. Kan. Feb. 27, 2008) ...................16

*Spann v. AOL Time Warner, Inc.*,
  219 F.R.D. 307 (S.D.N.Y. 2003) ........................................................18

*Spano v. The Boeing Co.*,
  633 F.3d 574 (7th Cir. 2011) .............................................11, 22, 24

*Sprague v. Gen. Motors Corp.*,
  133 F.3d 388 (6th Cir. 1998) .....................................................10, 14

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
  445 F.3d 311 (4th Cir. 2006) .............................................................18

*Villegas v. United States*,
  926 F. Supp. 2d 1185 (E.D. Wash. 2013).........................................16

*Wal-Mart v. Dukes*,
  131 S. Ct. 2541 (2011)..................................................9, 10, 12, 24

*Walker v. Asea Brown Boveri, Inc.*, 214 F.R.D. 58 (D. Conn. 2003)....................19

## STATUTES

29 U.S.C. § 1132(a)(1)(B) ...................................................................17

Employee Retirement Income Security Act of 1974 ("ERISA") ............................1

ERISA § 204(g) and § 204(h)..............................................................10

ERISA § 502(a)(1)(B).........................................................1, 16, 17

Fed. R. Civ. P. 23 .....................................................................passim

**OTHER AUTHORITIES**

26 C.F.R. § 54.4980F-1 ....................................................................10, 17

I.R.B. 2009-51 (Dec. 21, 2009) ...............................................................17

5 Moore's Federal Practice § 23.41(3)(a) ...............................................23

Many claims brought under the Employee Retirement Income Security Act of 1974 ("ERISA") lend themselves to class certification. The claims in this case are not among them. Plaintiff Robert Johnston's claims for relief lack common questions or injuries, impact far fewer participants in the Dow Employees' Pension Plan (the "Plan") than would make class treatment appropriate, and are riddled with conflicts both between Johnston and members of the proposed class and among proposed class members. Indeed, Johnston's attempt to impose a mandatory class would harm many proposed class members. Johnston's motion to certify a class (Dkt. #29, the "Motion") should be denied.

<u>**Factual Background**</u>

Johnston's six-count Complaint alleges ERISA violations and seeks relief under ERISA § 502(a)(1)(B). Each of the five claims for which he seeks certification arise from his reading of the Plan. First, Johnston contests the Plan administrator's interpretation of a Plan provision that applies to certain transferred employees. Second, Johnston contends that, if he is correct, a Plan amendment effected a prohibited cutback for him and an unknowable number of proposed class members. Third, he contends that the method used to calculate the compensation input of his pension results in benefits that are too low.

**Relevant Plan Provisions**

Section 4.1 of the Plan describes how benefits are calculated for all

1

participants, and begins with identifying the greater of the benefits calculated under two different formulas:  the Grandfathered benefit and the Current Formula benefit.  Dkt. #26-7, § 4.1.[1]  Under both formulas, two key inputs are Average Annual Compensation (called "HC3A") and Credited Service.  *Id.*  HC3A is ordinarily the average of the participants' three most highly compensated years' earnings at a particular point in time.  *Id.*§ 1.8.  Because the Grandfathered benefit is frozen, that calculation uses HC3A as of the freeze date, December 31, 2005.  *Id.*§ 4.1.  Credited Service refers to the years of employment taken into account for pension purposes.  Whether the Grandfathered or Current formula yields a larger benefit depends upon each participant's service, compensation, benefit commencement date, and other factors, but generally, higher HC3A and Credited Service yield larger benefits.  Dkt. # 26-3 at 10; Declaration of Shannon Callahan ("Ex. 1") at Ex. C at 15, Ex. B at 36-41, Ex. D at 175:22-176:11.

For most participants, the calculation ends there.  However, two additional Plan provisions that adjust the benefit due to Dow career employment transfers are relevant to Johnston's claims.  First, § 9.6 is a long-standing Plan provision that applies to certain groups of participants who transferred employment between Dow and enumerated affiliated entities.  Dkt. #26-8.  For those participants, hypothetical

---

[1] Most of the proposed class members are entitled to the greater of these two benefits because they were hired by Dow prior to January 1, 1996.  Those with a later hire date are only entitled to the Current Formula benefit.  Dkt. #26-7, § 4.1.

career benefits are calculated using all career credited service with Dow and the affiliated entity. That benefit is then multiplied by a fraction to "prorate" it: the numerator of the fraction is Dow service, and the denominator is Dow service plus service with the affiliated entity. *Id*. Thus, the final Dow Plan benefit for transferred employees under § 9.6 is:

> Hypothetical Dow Full Career Benefit
> X
> (Dow Credited Service ÷ [Dow Credited Service +Affiliated Credited Service])
> =
> Dow Pension Benefit Under § 9.6

In June 2006, Dow amended the Plan to add the second relevant provision, § 10.46. It applies specifically to participants, like Johnston, who worked for Dow, transferred to a Dow joint venture known as "DDE," then transferred back to Dow when the joint venture terminated. These participants are eligible to receive pensions under both the Dow Plan and DDE's pension plan. Dkt. #26-7, § 10.46. The DDE pension includes Credited Service for the first period of Dow employment for participants whose Dow Plan pension assets were transferred to the DDE. *Id.* The Dow pension is calculated under § 10.46(c)(i). A hypothetical full Dow career benefit is calculated as though the participant's entire Dow and DDE period of employment were credited service under the Dow Plan and is then reduced by the estimated amount of the DDE pension the participant will receive:

3

> Hypothetical Dow Full Career Benefit
>
> –
>
> DDE Pension (Includes Credited Service for First Dow Employment)
>
> =
>
> Dow Pension Benefit Under § 10.46(c)(i)

*Id.* There are forty-eight participants subject to §10.46(c)(i).  Ex. 1 at Ex. G.

Participants for whom Dow did ***not*** transfer pension assets to DDE do not receive full credit for their first period of Dow employment under the DDE plan. These participants are subject to § 10.46(c)(ii), under which only a smaller, prorated portion of the DDE benefit is deducted from the hypothetical Dow full career benefit:

> Hypothetical Dow Full Career Benefit
>
> –
>
> Prorated DDE Benefit
>
> =
>
> Dow Pension Benefit Under § 10.46(c)(ii)

*Id.* There are eight participants subject to § 10.46(c)(ii).  Ex. 1 at Ex. G.

To calculate HC3A, § 10.46 provides that, for participants who retired before they had three years of compensation after they returned to Dow from DDE, and for participants whose Grandfathered benefit[2] is greater than their Current Formula benefit, their compensation is annualized and then multiplied by a factor of .925.  Dkt. #26-7, § 10.46.  This factor will not affect fifteen of the proposed class members and may or may not affect thirty-three others.  Ex. 1 at Ex. G.

---

[2] Compensation and service after December 31, 2005 are not considered in calculating the Grandfathered benefit, and the class members who returned to Dow employment in July 2005 did not have time to accumulate three years of Dow compensation history prior to that date.  Dkt. #26-7, § 4.1.

4

Effectively, § 10.46 gives participants a Dow pension benefit that, when added to the DDE pension benefit, approximates the benefit they would have received if they were employed by Dow throughout their careers. *See* Ex. 1 at Ex. B at 20-21.

**Johnston's Release, Administrative Claim, and Lawsuit**

Johnston was employed by Dow from 1980 to 1996, by DDE from 1996 to 2005, and by Dow again from 2005 to 2011. Dkt. #1, ¶¶5, 11, 14. On October 3, 2011, in connection with the termination of his Dow employment, Johnston signed a release of all claims against Dow and its affiliates, including ERISA claims, in exchange for more than $165,000 in severance. Ex. 1 at Ex. F at DOW0026274-81. He signed *after* receiving an estimate of his pension benefit, contesting it, and being told in writing by the Plan administrator on September 27, 2011, that the amount was correct. Ex. 1 at Ex. A at 199:14-201:4. Twenty-three other class members have signed similar releases. *See* Ex. 1 at Ex. F.

Johnston appealed the Plan administrator's calculation of his benefit, which was denied. He filed his Complaint on January 29, 2014. Dkt. # 1. Despite considerable effort, Johnston was unable to convince a single proposed class member to participate in his lawsuit.[3]

---

[3] Ex. A at 20:6-73:21 (former coworkers he contacted "didn't want to get dragged into litigation," did not plan "to do anything" after speaking with Johnston, and wished him "good luck").

Defendants answered the complaint on April 14, 2014.  Dkt. # 7.
Defendants' affirmative and other defenses include the release and the Plan's time
limitation provision, which states that any lawsuit challenging benefits must be
filed no later than two years after the *earliest* of the date (1) the first benefit
payment was actually made or (2) the date the Plan first repudiated its alleged
obligation to provide higher benefits, regardless of whether repudiation occurred
before or during the administrative process. Dkt. # 26-7, § 7.11(a)(ii).  Fourteen
proposed class members (including Johnston) began receiving benefits more than
two years before the Complaint was filed.  Ex. 1 at Ex. G.

**Johnston's Complaint**

Johnston challenges the Plan administrator's interpretation of the Plan in
three ways.

*First*, Johnston contends the Plan administrator's interpretation of the § 9.6
proration fraction is impermissibly inconsistent with its plain language.  Dkt. #1,
¶¶ 47-53, 78-91.

*Second*, Johnston contends that, for him and for some of the proposed class
members, but not others, his interpretation would yield a larger benefit under § 9.6
than the benefit calculated under § 10.46.  He contends the Plan amendment adding
§ 10.46 violated ERISA's anti-cutback and notice provisions, §§ 204(g) and (h),

6

and § 10.46 should either not be applied or should be applied only to those participants who would receive a larger benefit under § 10.46. *Id.* ¶¶ 62-70, 78-91.

*Third*, Johnston contends that the Plan administrator erred because it used the .925 approximation to calculate HC3A for those who would have had three relevant years of compensation if their DDE compensation were taken into account. *Id*. ¶¶71-77, 92-101.

The crux of Johnston's claims is his argument that the Plan administrator misinterpreted the portion of § 9.6 that describes the proration fraction. For participants whose DDE pension will be calculated to include Credited Service for their first period of Dow employment, the Plan administrator interprets this language to include only the Credited Service earned during the second period of Dow employment as the numerator of the fraction. *Id*. ¶¶78-91. Johnston contends that the numerator should include both pre- and post-DDE service for all participants.[4] *See* Dkt. #1, ¶¶78-91. For Johnston, but not for many other class members, this larger benefit exceeds his § 10.46 benefit.

As a remedy for all his class claims except his § 204(h) claim, Johnston seeks benefits as calculated under § 9.6 for himself and the proposed class. Dkt. #1, ¶¶53, 61, 77, 91, 101. For the § 204(h) notice claim, Johnston seeks an order granting the greater of the benefit calculated under § 10.46 or under § 9.6. *Id*. ¶70.

---

[4] Johnston also does not agree with the Plan administrator's interpretation of the denominator of the fraction, but his interpretation yields the same numeric result.

7

Johnston challenges the Plan administrator's application of § 10.46 to him for an additional reason that he does not contend is common to the class. He contends § 10.46(c)(i) does not apply to him because he was not part of an asset transfer referenced in that provision, so his benefits should be calculated under § 9.6. *Id.* ¶¶54-61.

**Johnston's Motion for Class Certification**

Johnston seeks certification of a class of participants whose benefits are subject to § 10.46(c)(i) or (c)(ii) of the Plan, regardless of whether they have commenced benefits. The Motion states that there are fifty-four such participants, but a damages chart prepared by Johnston's expert includes fifty-six participants. Dkt. # 29 at 13; Dkt. # 26-3 at 19; Ex. 1 at Ex. C, Ex. 1. Johnston does not explain the discrepancy, but Defendants assume fifty-six herein. Although the class definition purports to include, for those participants who have commenced benefits, only those who "are receiving a lower benefit than they would have received had their benefits been calculated under" Johnston's interpretation of § 9.6 (Dkt. # 29 at 5), the participants identified in the damages chart also includes participants who have commenced benefits and are receiving a larger benefit under § 10.46. Dkt. #26-3 at 19; Ex. 1 at Ex. C, Ex. 1, Ex. B at Ex.5. Johnston acknowledges that, for participants who have not yet commenced benefits, it is

"impossible to be certain [if] benefits will be lower under § 10.46 than § 9.6."  Dkt.
#29 at 19, n.7.

**ARGUMENT**

The individual issues and conflicting interests that permeate Johnston's
proposed class make it impossible to identify its members with any certainty, much
less meet the requirements of Rule 23.  The law is clear that, in such
circumstances, no class should be certified.  Class actions are an exception to the
rule that litigation proceeds on an individual basis.  *Wal-Mart v. Dukes*, 131 S. Ct.
2541, 2550 (2011).  "[P]articular care in their issuance is required."  *Pipefitters
Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 630 (6th
Cir. 2011).  A class can be certified only after "rigorous analysis" of the plaintiff's
claims, which "frequently entail[s] overlap with the merits . . . .because the class
determination [is] enmeshed in the factual and legal issues comprising the
plaintiff's cause of action." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432
(2013).  A proposed class should not be certified unless the requirements of both
Rule 23(a) and Rule 23(b) are met.  *Id.*

## I.   JOHNSTON'S PROPOSED CLASS DOES NOT SATISFY ANY ELEMENT OF RULE 23(A).

Because "Rule 23 does not set forth a mere pleading standard," plaintiffs
bear the burden of offering evidence ***and proving*** that the requirements of Rule 23
are met.  *Dukes*, 131 S. Ct.  at 2551.  The Supreme Court has held that plaintiff

9

must show "that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)." *Comcast Corp.* 133 S. Ct. at 1432 (emphasis in original).

### A. The Proposed Class Does Not Satisfy The Commonality Requirement Because Johnston's Claims Are Not Susceptible To Class-Wide Proof.

Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "What matters to class certification ... [is] the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 131 S. Ct. at 2551; *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998). The plaintiff and other class members must "have suffered the same injury to satisfy the commonality inquiry." *Dukes*, 131 S.Ct. at 2551; *In re Countrywide Fin. Corp. Mortg. Lending Practices Litig.*, 708 F.3d 704, 707 n.4 (6th Cir. 2013). Johnston must demonstrate that the discrete elements of his claims can be adjudicated on a class-wide basis. *Dukes*, 131 S. Ct. at 2551; *Sprague*, 133 F.3d at 397-98.

Johnston's ERISA § 204(g) and § 204(h) claims require proof of loss such that "each plaintiff, as distinct from a group or class, must show that he or she *personally* would experience such a significant reduction" caused by the amendment. *Charles v. Pepco Holdings, Inc.*, 314 F. App'x 450, 452 (3d Cir. 2008); 26 C.F.R. § 54.4980F-1, at Q&A 6, 8. Thus, Johnston must show he can

prove liability and injury on a class-wide basis, including proof of a reduction *caused by* the amendment. *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 608-09 (6th Cir. 2007) (each class member must demonstrate an individual injury to maintain a class); *Fotta v. Trs. of the United Mine Workers of Am.*, 319 F.3d 612, 619 (3d Cir. 2003) ("Because both liability and the appropriate remedy must be determined for each plaintiff, no common issues of law or fact exist."). Here, the essential elements of Johnston's claims are admittedly not susceptible to class-wide proof.[5]

### 1. The Plan Provisions Johnston Challenges Apply Differently, Or Do Not Apply At All, To Different Participants; His Claims Are Not Common To The Class.

A class that includes participants who may or may not suffer an injury depending on when they retire and a host of other factors should not be certified. *Spano v. The Boeing Co.*, 633 F.3d 574, 587 (7th Cir. 2011). "'[M]ost significant' [is] the potential unfairness to the class members bound by the judgment if the framing of the class is overbroad." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982) (citation omitted); *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 137-38 (3d Cir. 2000) (affirming denial of certification of class including those who "received or may one day receive" delayed benefits).

---

[5] Defendants do not argue it is impossible to certify any § 204(g) or § 204(h) claim, only that such a claim should not be certified where it is impossible to determine if there is a cut back until each participant commences benefits.

11

Here, Johnston's proposed class includes:

- Six participants who have commenced benefits and are receiving a larger benefit applying § 10.46 than they would receive under Johnston's § 9.6. See Ex. 1 at Ex. G (chart); *id.* at Ex. C, at Ex. 1.

- Thirty-two participants subject to § 10.46(c)(i) of the Plan who have not yet commenced benefits, for whom it is impossible to be certain whether § 10.46(c)(i) or Johnston's § 9.6 will yield a larger benefit until they have retired and elected to commence benefits. *See* Dkt. # 26-3 at 10; Ex. 1 at Exs. C at 15, B at 36-41, Exs. 12-15 and D at 175:22-176:11.

- Eight participants subject to § 10.46(c)(ii) of the Plan, whose benefits are calculated differently than Johnston's and who would all receive a smaller benefit if Johnston's § 9.6 were applied to them. *See* Ex. 1 at Ex. B at Ex. 4; Ex. C at Ex. 1.

- Fifteen participants unaffected the .925 factor. *See* Ex. 1 at Ex. G.

- Thirty-three who may be affected by the .925 factor. *Id.*

- One former participant entitled to no benefit under the Plan at all.[6]

These participants do not share Johnston's purported injury, claims or interest with

respect to relief.  They do not belong in the class.[7]  *Dukes*, 131 S. Ct. at 2550;

*Principal*, 2013 WL 7218827, at *28.

## 2. Johnston's Attempts To Gloss Over The Proposed Class's Lack Of Commonality Fail.

Johnston's efforts to minimize the fatal lack of commonality in his proposed

---

[6] Altman's first report included damages for Participant 55, who is not entitled to any benefit under the Plan.  Ex. 1, ¶ 10 and Ex. H.  Altman removed him from his Rebuttal Report, but attributed his damages to Johnston (and double counted Johnston's damages).  *See* Ex. 1 at Ex. C, Ex. 1.  Altman could not explain the deletion and then submitted a revised exhibit re-incorporating Participant 55 and reducing his damages estimate.  Ex. 1 at Ex. C, revised Ex. 1, Ex. D at 156:17-22.

[7] These issues also cannot be cured by the creation of separate subclasses because it is not possible to know who belongs in which subclass.

12

class fail.  First, Johnston argues that it does not matter whether proposed class members have suffered any injury (Dkt. # 29 at 19, n.7), but the case he cites does not so hold.  *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 428 (6th Cir. 2012).  In *Gooch*, the people who had "not suffered an injury" were people who had not yet filed an insurance claim.  *Id.*  When these people filed a claim, they would necessarily suffer the same loss as the plaintiff.  *Id.*  Here, in contrast, the result is the Court ordering "relief" for those for whom it is "impossible" to determine whether they will ever suffer the loss Johnston alleges.  This is fatal to the proposed class.

Second, Johnston's assertion that the proposed class includes only "affected" participants who have "suffered the same injury" is simply not true.  Dkt. #29 at pp. 14-15.  As above, there are nowhere near fifty-six such participants.  The proposed class is the proposed class.  Johnston cannot include participants he admits have suffered no injury to prove numerosity and then jettison them to save commonality.

### B.  Class Conflicts And Unique Defenses Destroy Typicality And Adequacy.

Johnston cannot prove typicality or adequacy because his lawsuit is permeated by divergent interests, individualized claims and defenses and seeks relief that would harm many proposed class members.

13

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Thus, the "representative's interests [must] be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members."  *Sprague,* 133 F.3d at 399.[8]  Similarly, adequacy requires the plaintiff to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  It serves "basic due process require[ments] that named plaintiffs possess undivided loyalties to absent class members."  *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 338 (4th Cir. 1998).[9]

### 1.    Material Conflicts Among The Interests Of The Members Of The Proposed Class Destroy Typicality And Adequacy.

---

[8] Typicality is lacking "[w]here a class definition encompasses many individuals who have no claim at all to the relief requested, or where there are defenses unique to the individual claims of the class members . . . for . . . it cannot be said that a class member who proves his own claim would necessarily prove the claims of other class members."  *Romberio v. Unumprovident Corp.*, 385 F. App'x 423, 431 (6th Cir. 2009); *see also Pipefitters,* 654 F.3d at 629-630 (no class should be certified where issues require individualized attention); *In re Am. Med. Sys.*, 75 F.3d 1069, 1081 (6th Cir. 1996) (individual "proofs . . . [which] vary from plaintiff to plaintiff" do not satisfy Rule 23(a)).

[9] Class representatives are not adequate if they have interests that are in conflict with other class members. *Schlaud v. Snyder*, 785 F.3d 1119, 1128 (6th Cir. 2015). Where the "probable preferences" of individuals within a proposed class conflict with the interests of the named representative, certification must be denied.  *Id.*; *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000) ("[A] class cannot be certified when its members have opposing interests or when it consists of members who benefit from . . . acts alleged to be harmful to other [class] members . . . ."); *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 315-316 (5th Cir. 2007) (intra-class conflict defeats adequacy); *Am. Med. Sys.*, 75 F.3d at 1083.

14

The Sixth Circuit has made clear that intra-class conflicts preclude class certification. *Schlaud v. Snyder*, 785 F.3d 1119, 1128 (6th Cir. 2015). In *Schlaud*, the named plaintiffs sought certification of a proposed class of home childcare providers who had union fees deducted from state subsidies but did not want to join the union. 785 F.3d at 1122. Many of the proposed class members had voted in favor of requiring payment of union fees. *Id.* This, the court held, defeated certification because named plaintiffs' interests were in conflict with those of the proposed class. *Id.* at 1128. Similarly, here, the class cannot be certified because Johnston's interest in applying § 9.6 conflicts with the interests of those who do better under § 10.46. It is impossible for Johnston to possess "undivided loyalties" to the proposed class when pursuing a Plan interpretation that is better for him than for other proposed class members. *See id.*; *Broussard*, 155 F.3d at 338; *Langbecker*, 476 F.3d at 315-316.

Johnston argues that he "share[s] a common interest" with the proposed class members in "establishing that [§ 10.46] violated ERISA," but the relief he seeks does not benefit everyone. Rather, Johnston's interpretation of § 9.6 will result in **lower** benefits for a significant number of proposed class members, **and** it is impossible to tell which or how many until they have all retired and elected to commence benefits. Dkt. # 29 at 19, n.7; Ex. 1 at Ex. B at 37; Dkt # 26-3 at 10,

Ex. 1; Ex. 1 at Ex. C at 15, Ex. D at 153:16-154:4.  Picking one § 9.6 interpretation over another necessarily creates both winners and losers within the class.[10]

Johnston's efforts to patch holes in his class definition by claiming all of the participants would be entitled to a "better of" remedy cannot save his proposed class.  First, in his Complaint, Johnston seeks to require the application of § 9.6 to all class members for four of the five claims he seeks to certify as class claims.  *See* Dkt. # 1 at 17-19.  Perhaps recognizing the undeniable conflict this creates, Johnston claims in his Motion to be seeking a "greater of" remedy.  But Johnston cannot amend the remedy sought in his Complaint through a class certification motion.  *See Villegas v. United States*, 926 F. Supp. 2d 1185, 1196, n.8 (E.D. Wash. 2013) (plaintiff cannot request alternative relief through a motion to dismiss as a shortcut for amending his Complaint to assert the relief he should have pled).[11]

Even if he could, as a matter of law, Johnston is not entitled to a "greater of" remedy for his § 204(g) claims under § 502(a)(1)(B), which is the only section of

---

[10] The same may be true of Johnston's HC3A calculation claim.  While it is possible that use of DDE compensation would result in a higher benefit for some class members, whether that is true for others will depend upon each proposed class member's personal circumstances and future decisions.  Ex. 1 at Ex. D at 133:20-25, 134:11-23, 135:15-20.  Therefore, some of the proposed class members may not want to be part of any class requiring use of DDE compensation because it would result in a lower benefit.

[11] *See also In re Diaz Cruz*, No. 10-11393, 2013 WL 3153993, at *6-7 (D.P.R. June 19, 2013); *Singh v. Keisler*, No. 07-2449, 2008 WL 544937, at *1 (D. Kan. Feb. 27, 2008) (requiring a motion to amend their complaint if they wanted the court to consider new remedy).

ERISA under which he has pursued relief. As explained above, § 204(g) prohibits the reduction of accrued benefits, but is not an enforcement provision. Instead, the provision is enforced by filing suit under § 502(a). Under § 502(a)(1)(B), a court may only enforce, but not alter, the terms of an ERISA plan, because "[t]he statutory language speaks of '*enforcing*' the 'terms of the plan,' not of *changing* them." *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1876-77 (2011) (emphasis in original); 29 U.S.C. § 1132(a)(1)(B). The remedy Johnston now purports to seek in his § 204(g) claims would require the Court to *reform* the Plan—by amending the language so that an employee may receive whichever benefits are greater—not enforce it. Reformation is an equitable remedy not available under § 502(a)(1)(B), as explained by the Supreme Court in *Amara.* 131 S. Ct. at 1878; *see also Pender v. Bank of Am. Corp.*, 788 F.3d 354, 362 (4th Cir. 2015) (holding remedy sounded in equity because it "would require the court to do more than simply enforce a contract as written" and § 502(a)(1)(B) "provides no avenue for bringing" such a claim). Although § 204(h), unlike § 204(g), specifically provides for a "better of" remedy, only those participants whose future accrual rates were reduced by the § 10.46 amendment are entitled to that remedy. *See Pepco,* 314 F. App'x at 452; *see also* 26 C.F.R. § 54.4980F-1; I.R.B. 2009-51 (Dec. 21, 2009). The remaining participants would be stuck with Johnston's § 9.6 interpretation, even if it harmed them.

2.     **The Individual Issues That Predominate The Claims Of Johnston And The Proposed Class Are Fatal To Adequacy And Typicality.**

Individualized release and time limitation defenses also render the proposed class uncertifiable because they "require a fact-specific inquiry into the circumstances of the execution of each individual's release . . . . The necessity for an individualized inquiry means that . . . their existence presents an insurmountable barrier to class-wide adjudication of these claims." *Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 319 (S.D.N.Y. 2003); *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 323 (4th Cir. 2006).[12]

Twenty-three members of the proposed class (not including Johnston) have signed releases that Defendants believe preclude their claims.  The impact these releases may have on half of the class members is something that must be taken into consideration at the class certification stage.  *Langbecker*, 476 F.3d at 313. Determining the effect of these releases on each participant's claim requires individualized inquiry,[13] and therefore, these participants' inclusion in the class

---

[12] *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 499 (D. Md. 1998) (named plaintiff whose claim was barred by the relevant time limitation could not represent class); *Leroy v. Paytel III Mgmt. Assocs., Inc.*, No. 91 CIV. 1933 (JFK), 1992 WL 367090, at *3 (S.D.N.Y. Nov. 24, 1992) (same).

[13] Among other things, the class members signed different releases during different time periods and under different circumstances.  *See* Ex. 1 at Ex. F.  Some proposed class members expressly gave up their rights to participate in a class action, while others did not.  *Compare e.g.*, *id.* at DOW0026115-16 and DOW0026123-24 , *with* DOW0026103-04 and DOW0026109-10.  Two class

defeats typicality. *Carr v. Int'l Game Tech.,* No. 3:09-CV-00584-RCJ, 2013 WL 638834 at *3 (D. Nev. Feb. 20, 2013) (no typicality where "the effect of those releases on their claims, are pivotal issues for each of the putative class members"); *Walker*, 214 F.R.D. at 66 (same).

Similarly, as to Dow's time limitation defense, thirteen participants (not including Johnston) are subject to this defense because they have been receiving benefits for more than two years and should be removed from the class. They are barred by the Plan's requirement that any action be commenced no later than two years after the date the first benefit payment is received.  Ex 1 at Ex. G.  To the extent they claim otherwise, individual inquiry is required to determine whether something barred or tolled the Plan's time limitation for a particular participant. For participants who have not yet commenced benefits, individualized inquiry will be necessary to determine if the Plan clearly repudiated any obligation to pay higher benefits than those provided under § 10.46.

Johnston is unlike any proposed class member not subject to these defenses, and also unlike those who are, which precludes his appointment as class

---

members signed releases *after* the date this lawsuit was filed (*id.* at DOW0026103-08, DOW0026109-14), and three signed the release *after* commencing their pension benefits.  *See id.* at DOW-0026115-22; DOW0026147-54; DOW0026274-81.

representative. *Romberio*, 385 F. App'x at 431.[14] Johnston signed his release after

consulting a lawyer and contesting his pension benefit, making his release issue

unique. Ex. 1 at Ex. A 198:20-199:5; 202:11-18. Similarly, Johnston is uniquely

situated with regard to the limitation defense. His claims are time-barred based not

on the date his first payment was received, but because the Plan repudiated any

obligation to pay him higher benefits more than two years before he filed suit. *Id*.

at 199:14-23; 201:2-4. The fact that his claims are time-barred alone makes him an

inadequate representative, nor does he adequately represent any other participant

because the defense against him is unique.

### 3.   Johnston's Individual Claim That He Is Not Subject to § 10.46 Prevents A Finding Of Adequacy Or Typicality.

Perhaps most glaringly, Johnston cannot satisfy adequacy or typicality

because, in addition to the class claims, he maintains a claim that his benefit should

not be calculated under § 10.46 for reasons unique to his situation. Dkt. #1 at pp.

11-12. If he succeeds on that claim, all of his other claims based on the application

of § 10.46 would fail as a matter of law, and he would not be a member of the class

as he has defined it, much less an adequate class representative.

---

[14] The Sixth Circuit has held a class could be certified where the named representative and some of the proposed class members signed releases of their ERISA claims. *Bittinger v. Tecumseh Products Co.*, 123 F.3d 877 (6th Cir. 1997). The court did not decide the issue on the merits and noted the remedy for atypical claims and defenses may be to create subclasses. *Id*. at 884 and n.1. Here, subclasses will not fix the fact that Johnston's claims as defined and pursued are not typical or numerous enough to warrant proceeding on a class action basis.

## C.    There Is No Properly Defined Class Sufficiently Numerous To Justify Certification.

Satisfying numerosity requires a proposed class that is so numerous joinder of all members is impracticable.  Fed. R. Civ. P. 23(a)(1).  Although a proposed class of forty may be sufficient, fewer than forty generally is not. *Marquis v. Tecumseh Products Co.*, 206 F.R.D. 132, 157 (E.D. Mich. 2002).

Johnston's fifty-six potential class members include participants whose interests diverge from his and are subject to different Plan provisions.  First, the fifty-one total participants whose claims are not "common" to Johnston's (described in Section I.A.1 above) should not be included.  In addition, the twenty-four participants who signed releases of their ERISA claims and the fourteen participants who had been receiving their benefits for more than two years before the Complaint was filed also should be excluded from the class. Ex. 1 at Ex. G.  If all of these participants were excluded, the class would have no members. *Id*. If only participants who have claims similar to Johnston's, notwithstanding Dow's defenses, are included, there are five (including Johnston). *Id*.

## II.    THE PROPOSED CLASS DOES NOT MEET RULE 23(B) REQUIREMENTS.

To succeed, the party seeking certification must fall within at least one of the subcategories of Rule 23(b), meaning the proposed class must be appropriate for adjudication as either (1) a mandatory class action; (2) an action seeking final

21

injunctive or declaratory relief; or (3) a case in which the common questions

predominate and class treatment is superior.[15]  *Am. Med. Sys.*, 75 F.3d at 1079;

*Spano*, 633 F.3d at 583.

### A.    Johnston Cannot Satisfy Rule 23(b)(1) Requirements.

Rule 23(b)(1) allows a mandatory class where individual actions would

create a risk of either (1) inconsistent or varying adjudications that would establish

incompatible standards of conduct for the party opposing the class, or (2)

adjudications that would be dispositive or would substantially impair or impede

other class members' ability to protect their interests."  Fed. R. Civ. P. 23(b)(1).

The Supreme Court has cautioned against overuse of mandatory classes, which

raise constitutional concerns regarding the resolution of individual legal claims.

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 842-48 (1999).  Mandatory class actions

implicate the due process principle "that one is not bound by a judgment *in*

---

[15] Johnston does not move under Rule 23(b)(3), and his attempt to "reserve the right to seek certification under 23(b)(3)," (Dkt. #29 at 20, n.8, fails), *Mogel v. UNUM Life Ins. Co. of Am.*, 677 F. Supp. 2d 362, 366 (D. Mass. 2009 ) (declining to "allow plaintiffs to revisit their prior (unsuccessful) tactical decision" after refusing to certify the class under 23(b)(3) "based upon such a cursory reference" to that provision in a footnote).  Regardless, Rule 23(b)(3) would not solve Johnston's problem.  Under Rule 23(b)(3), "[c]ommon questions of fact cannot predominate where there exists no reliable means of proving class-wide injury in fact." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252-53 (D.C. Cir. 2013).  Even Johnston does not, and cannot, argue that class-wide injury exists.  Without "reliable means of proving class-wide injury in fact," the class should not be certified.  *Id.*

*personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Id.* at 846 (quotations omitted).

Johnston argues that adjudication of his claims will set a rule for all class members that would alleviate the risk of conflicting outcomes. Dkt. # 29 at 22. The potential for conflicting outcomes alone, however, does not render a class suitable for certification under 23(b)(1)(A). Indeed, courts have denied certification even while recognizing the "potential that, should separate plaintiffs bring separate lawsuits, the result could be conflicting outcomes." *In re Computer Sciences Corp. ERISA Litig.*, No. CV 08-02398 SJO JWJX, 2008 WL 7527874, at *2 (C.D. Cal. Sept. 2, 2008). Instead, a plaintiff must demonstrate that any other potential rulings are inconsistent by placing "the party opposing the class in a position of being unable to comply with one judgment without violating the terms of another judgment." 5 Moore's Federal Practice § 23.41(3)(a).

Here, each class member's individual circumstances must be analyzed on a stand-alone basis. As above, Johnston's resolution does *not* dictate the outcome of any other participant's claim. In fact, if Johnston prevailed in all respects, after satisfying ERISA's administrative claim requirements, every member of the proposed class could still file a lawsuit that would require this Court to individually determine whether the participant's benefit should be calculated under § 9.6 or § 10.46, and with or without the .925 HC3A calculation, given his or her particular

23

circumstances.  This Court would also have to determine whether each suit was barred by a release or by time limitations.  Thus, any risk of potential conflicting outcomes is no greater than if different courts tried each case individually and came to different conclusions.  This is not nearly enough to demand a mandatory class under Rule 23(b)(1)(A).  *Id*.

Johnston fares no better under Rule 23(b)(1)(B), which requires an "identity of interest among all class members" to get certification.  *Spano*, 633 F.3d at 588. Without common interest, "there is no reason to assume that an adjudication of one person's claim" would be dispositive of the interests of the other members, and Rule 23(b)(1)(B) is not satisfied.  *Id*.

### B.     Johnston Cannot Meet The Rule 23(b)(2) Requirements.

Under Rule 23(b)(2), class certification may be maintained only if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2); *see also Reeb v. Ohio Dep't of Rehab. & Correction*, 435 F.3d 639, 645 (6th Cir. 2006). The key to the (b)(2) class is that the enjoined conduct is such that it can be *declared unlawful only as to all of the members or as to none of them* [and] a *single* injunction or declaratory judgment would provide relief to each member of the class. *Dukes*, 131 S. Ct. at 2558 (emphasis added).  Contrary to Johnston's

24

argument, no declaration or injunction can provide "relief" to each member of his

proposed class, as discussed at length above.

### Conclusion

The Court should deny Johnston's Motion for Class Certification.

Dated:  August 10, 2015

Respectfully submitted,
DOW EMPLOYEES' PENSION PLAN and
DOW CHEMICAL COMPANY
RETIREMENT BOARD

By:   /s Amanda S. Amert

Jonathan E. Lauderbach (Bar No. P51313)
jlauderbach@wnj.com
Warner Norcross & Judd
715 East Main Street Suite 110
Midland, MI 48640
Telephone: (989) 698-3701
Facsimile: (989) 486-6101

Craig C. Martin
cmartin@jenner.com
Amanda S. Amert
aamert@jenner.com
Jenner & Block LLP
353 North Clark Street
Chicago, Illinois 60654-3456
Telephone: (312) 222-9350
Facsimile:  (312) 527-0484
*Attorneys for Defendants*
*Dow Employees' Pension Plan and*
*The Dow Chemical Company Retirement*
*Board*

25

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing **Opposition to Plaintiff's Motion for Class Certification** was served via the Court's ECF system upon counsel of record this 10th day of August 2015.

Dated:  August 10, 2015                By: /s Amanda S. Amert
                                        Amanda S. Amert (6271860)
                                        Jenner & Block LLP
                                        353 N. Clark Street
                                        Chicago, Illinois 60654
                                        Telephone:  (312) 222-9350

                                        *Attorney for Defendants*