# Exhibit C

# Robert Johnston, et al v
# Dow Employees Pension Plan

# Expert Rebuttal Report of
# Ian H. Altman, FSA

**Altman & Cronin Benefit Consultants, LLC**
**100 Pine Street, Suite 1050**
**San Francisco, CA  94111**

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

## Introduction and Preliminary Comments

1.     On May 27, 2015, I issued an Expert Report in this matter which set forth several actuarial opinions I have formed, along with documentation / rationale for those opinions.

2.     On June 29, 2015, Defendant's expert Thomas Terry issued an Expert Report in this matter which amounted to a rebuttal of my May 27 Report. This present Rebuttal Report addresses many of the opinions and techniques presented by Mr. Terry on June 29.

3.     In his June 29 Report, Mr. Terry indicates that he believes that I utilized incorrect participant data in making damages calculations in my May 27 Report.[1] The most significant element of this alleged incorrect data is the exclusion of the annual target bonus when determining plan compensation.[2]

4.     However, on March 23, 2015, Defendants' counsel Anthony Borich responded to questions about participant data provided by Defendants by instructing us that reported "Annual Pension Earnings" included the target performance award, and that award should not be added to the otherwise reported compensation.[3] In performing our calculations, we followed Mr. Borich's clear direction. Mr. Terry's criticism is inconsistent with Mr. Borich's direction regarding what forms of compensation were included in the "Annual Pensionable Earnings" figured provided by Defendants. In light of the criticism in the Terry report, Plaintiff's counsel sought clarification from Defendants' counsel on this inconsistency, and were informed that Mr. Borich's earlier representations had been inaccurate.

---

[1] Terry Report, 6/29/15 paragraph 14.

[2] Terry Report, 6/29/15 paragraph 139.

[3] Borich letter to Plaintiffs' counsel, March 23, 2015 page 2.

5.     Based on this new information, I have performed additional damages calculations with the target bonus amounts being added into the reported pensionable compensation.[4] The results of these revised calculations are shown below. I have also identified areas where Mr. Terry agrees with my opinions. In addition, I have analyzed the opinions and related methodologies presented by Mr. Terry in his Report, and present comments and criticisms in my subsequent Rebuttal Report sections.

### Comments on Terry's General Approach

6.     Early in his lengthy report, Terry states a basic premise that is intended to govern his report. In paragraph 40, he states that plan documents contain specific language that governs how benefits are to be calculated. "In my experience, such companies will spell out within each of the plan documents exactly how pensions will be calculated for employees who transfer from one plan to another."[5] I strongly concur with this premise, and have given it prime consideration in forming my opinions in this case. In fact, it is my opinion that this principle more strongly supports my opinion about the proper interpretation of Section 9.6 than it does the opinion of Mr. Terry. As discussed below, his opinion contradicts the plain language reading of Section 9.6, instead following what Mr. Terry believes to be the intention of Dow for calculating benefits for members of the proposed class. In valuing plan assets and liabilities and calculating participant benefits, an actuary must follow the plain language of the plan.

---

[4] We have made additional limited adjustments as well, as described later in this Report.
[5] Terry Report, 6/29/15 paragraph 40.

1

2          <u>**Areas Where Mr. Terry Agrees with My Findings and Opinions**</u>

3          7.          Despite much criticism of my opinions in Mr. Terry's report, there are

4  several important areas where he agrees with my findings:

5              a.  Terry's work confirms that, if my reading of the Section 9.6 proration

6                  calculation is correct, many members of the plaintiff class should have

7                  received a greater benefit than calculated by Dow.  See for example Figure 5

8                  where  Participant 49  is shown to have a greater benefit from age 52 onwards

9                  under Section 9.6 than under Dow's calculations.

10             b.  Mr. Terry acknowledges that Section 10.46 was adopted and added to the

11                 Dow Plan in June, 2006, while Mr. Johnston transferred back to Dow

12                 effective July 1, 2005.  Thus, it is clear that for this nearly one-year period,

13                 Johnston's benefit would have been determined under Section 9.6, and under

14                 ERISA's anti-cutback rule,[6] the 9.6 benefit would at least have to serve as a

15                 plan minimum.

16             c.  Mr. Terry does not disagree that in the event of a violation of ERISA Sec.

17                 204(g) or (h), participants are entitled to the greater of the benefit under Sec.

18                 10.46 or Sec. 9.6.

19             d.  He further offers no refutation of my reading of the Section 9.6 language,

20                 countering only with indirect inferences from the 414(l) transfer and the

21                 Section 4.10 duplication of benefits provision.

22

---

[6] IRC §411(d)(6).

4

1          <u>**Specific Criticisms of Mr. Terry's Analysis**</u>

2          8.      In my Expert Report, I note in paragraph 9 that the Dow plan document

3    contains language in Section 9.6 that calls for the calculation of a pro-rated pension benefit for

4    employees who have transferred out of and then back into the Dow plan. I also note that this

5    section contains the language "Anything in the Plan to the contrary notwithstanding." I further

6    note that, from the time Mr. Johnston returned to Dow employment on July 1, 2005 through

7    June 6, 2006, when the plan was amended to add Section 10.46, the only provision governing

8    the calculation of Mr. Johnston's benefit was Section 9.6, so the benefits accrued through that

9    point under Section 9.6 must be protected under ERISA requirements.

10         9.      Mr. Terry, however, advocates "Looking to the provisions of Section

11   10.46 in lieu of Section 9.6 for purposes of calculating Mr. Johnston's pension."[7]  In fact, he

12   offers the opinion that applying 10.46 alone is "the only reasonable interpretation of the plan

13   provisions."[8]  This neglects the need to protect the benefit that participants had accrued under

14   Section 9.6 through June 6, 2006, the date on which Section 10.46 was added to the Plan.

15   Nothing in Mr. Terry's report suggests that Section 9.6 was not applicable to the class

16   members' benefits through the date of this amendment, and indeed Section 9.6 and the

17   associated Appendix 1 clearly contemplate that Dow employees that transferred to DDE are

18   covered by Section 9.6. Further, nothing in his report calls into question the Plan's obligation to

19   protect benefits that the class members had accrued under Section 9.6 before the amendment

20   adding Section 10.46 to the Plan.

21         10.     I also point out in my Expert Report that, in calculating the proration

22   fraction under Section 9.6, the numerator is defined as "Credited Service with the Company",

---

[7] Terry Report, 6/29/15 paragraph 101.
[8] Terry Report, 6/29/15 paragraph 10.

5

1   which contains no restriction on or reduction for service that was covered by the initial asset

2   transfer from Dow to DDE. Here too, Mr. Terry offers no argument within the language of this

3   Plan Section as to why pre-transfer Dow service should be excluded.[9] He does refer to the

4   duplication of benefit language in Section 4.10, but provides no reason for giving this language

5   priority over the "Anything in the Plan to the contrary notwithstanding" language in Section 9.6.

6   This issue is extremely important for analyzing Terry's Report; he relies heavily on limiting

7   service in the numerator of the proration calculation to service after mid-2005 to form his

8   opinion that benefits under Section 10.46 always exceed benefits under Section 9.6. If the

9   Section 10.46 benefit always exceeds the Section 9.6 benefit, then Dow's failure to consider the

10  Section 9.6 proration formula when calculating benefits would not be a material problem. If, as

11  I opine, the numerator in the proration calculation includes all credited service with the

12  Company, then the Section 10.46 benefit is not uniformly greater than the Section 9.6 benefit,

13  and the Plan is obligated to protect the benefit class members had accrued prior to the

14  amendment adding Section 10.46.

15           11.     One argument that Mr. Terry relies heavily on to ignore pre-transfer Dow

16  service in the numerator of the Section 9.6 proration is his claim that the transfer of assets and

17  liabilities to DDE as of 7/1/96 mandates this treatment. For example, in advocating the

18  exclusion of initial service from the numerator, he states that this was "reflective of common

19  practice when a Section 414(l) asset and benefit transfer occurs."[10] In forming this opinion,

20  Mr. Terry offers no evidence from Section 414(l) of the Code which governs plan transfers; nor

21  does he offer any language from within the plan document (he inexplicably deems this lack of

---

[9] In fact, I contend that Terry acknowledges my reading of this language when he states in paragraph 135 "To the extent one finds any ambiguity in Section 9.6 about the credited service to be used in the numerator of the proration fraction...."

[10] Terry Report, 6/29/15 paragraph 13.

1    plan document language "irrelevant").[11]  He does rely heavily on his "experience, strategizing

2    about the design of pension plan provisions."[12]   In my experience, an intent to extinguish

3    service in conjunction with an asset transfer should be stated in the plan terms in order to assure

4    that it is effective; I would so advise any client in this situation.

5                12.    The circumstances at issue in this case are unusual: an initial transfer of

6    employees from one related entity to another, followed by the ultimate dissolution of that entity

7    with employees transferred back or returning to the original employer, with dramatically

8    different levels of benefits (including early retirement benefits, to be discussed later in this

9    report) provided under the two plans at issue.  In this circumstance, practices governing single

10   plan transfers are inapplicable, and it is necessary to focus on the specific provisions of the plan.

11               13.    The examples Mr. Terry provides in his report regarding the operation of

12   the proration versus the offset formula only support his opinions because of the fact patterns and

13   simplified approaches he uses; in practice, many other fact patterns and approaches exist that

14   would produce radically different conclusions.[13]

15               14.    As an example, consider Mr. Terry's "make-whole" approach, which he

16   deems to be beneficial because an employee like Mr. Johnston would end up receiving the same

17   pension whether he stayed at Dow or moved between Dow and DDE (and more benefit than if

18   the two plan benefits were not linked under the Dow formula).  Mr. Terry's example

19   demonstrates this result by comparing two plans with equal accrual rates and an increasing

20   participant salary.  However, consider a situation where the second plan (the DDE equivalent

---

[11] Terry Report, 6/29/15 paragraph 16.4.

[12] Terry Report, 6/29/15 paragraph 34.

[13] Mr. Terry's report discusses the "make-whole" approach and "windfall proration" approach to calculating benefits. While the distinctions between the proration and offset methods for coordinating benefits between two plans may be analyzed within our industry, the terms Mr. Terry uses appear to be of his own creation; he cites no sources for these terms, and I am not aware of any such sources.

7

1    for this example), provides a higher benefit accrual – assume an accrual of $100 per year under

2    the first plan and $200 per year under the second plan.  Further, assume an employee who

3    works 5 years under the first plan, 10 years under the second plan, and five years under the first

4    plan again.  In this example, under a "make-whole" provision, the second plan benefit equals

5    $2,000, but the first plan benefit equals $0.  The employee effectively receives no pension for

6    his ten years of service under the first plan.  This would meet Terry's definition of a "make-

7    whole" approach, but would hardly be deemed fair or desirable by the participant.  Without

8    coordination between the two plans, the employee in this example would have a benefit of

9    $1,000 from the first plan and $2,000 from the second plan for a total of $3,000; the "make-

10    whole" cost her or him $1,000 per month in pension.  Further, it is often the case that employers

11    that offer generous pensions provide reduced cash compensation or other benefits.  If that were

12    the case, the employee in my example would suffer these reductions in exchange for a generous

13    pension from the second employer, only to have that generous pension eliminate pension

14    benefits under the first plan's "make-whole" provision.  In this example, equally plausible to

15    Mr. Terry's example, there appears to be little that is beneficial in the "make-whole" approach.

16            15.     Mr. Terry tries to assert, based on his example, that the make-whole

17    provision "is the most generous approach."[14]  Again, while his specific example might show

18    the make-whole provision to be more generous than other options, my counter example proves

19    that it is not uniformly the most generous approach.

20            16.     Figure 1 below illustrates my counter-example to Mr. Terry's "make-

21    whole" analysis.

22

---

[14] Terry Report, 6/29/15 paragraph 62.

**Figure 1**

| Time | Benefit under Plan A | Benefit Under Plan B | Comments |
|------|---------------------|---------------------|----------|
| Year 1 – 5 | $100 per year x 5 years, total = $500 | N/A | First accruals are earned under Plan A |
| Year 6 - 15 | N/A | $200 per year x 10 years, total = $2,000 | Richer accruals under Plan B |
| Year 16 – 20 | $100 per year x 5 years, total = $500 | N/A | Last accruals under Plan A |
| Year 20, no plan coordination | $1,000 | $2,000 | $3,000 total |
| Year 20, w/ "make-whole" | $0 | $2,000 | $2,000 total |

17.     In addition, it is interesting to note what would happen to the participant's benefit in this example if Plan A used a proration method of coordinating benefits. In this case, Plan A would pay $1,000 per year ($2,000 x 10 yrs / 20 yrs), and Plan B would pay $2,000 per year, for a total benefit of $3,000 per year. In this case, the proration approach is clearly more generous than the make-whole approach.

18.     Further, these examples only address normal (unreduced) retirement benefits payable at age 65. In practice, many employees retire early, and different plans have different reductions for early commencement. Employees covered by multiple plans cannot be required to commence payment at the same time from both plans. You could therefore have an example where one employee retirees early from one plan and commences payment, while delaying retirement or commencement in another plan, resulting in a pension that is either more than or less than "make-whole". Thus there is nothing inherently superior in Mr. Terry's preferred Section 10.46 benefit when considering the real life complications of plans such as the Dow and DDE plans.

9

1    19.    Likewise, Mr. Terry's "windfall proration" title is not supported by all

2    potential scenarios. When benefits were transferred from Dow to DDE effective July 1, 1996,

3    the value of the transfer was determined at a discount rate of 8.5%,[15] and the ongoing DDE

4    accruals were defined as the greater of the DDE-plan formula accrual or the accrued benefit

5    equivalent of the transfer value increased with 8% interest.[16]   As I indicated in my Expert

6    Report, there is evidence from Dow that there were years when the transfer value increased with

7    interest was the greater benefit, meaning a participant's accrued benefit was based on the

8    transferred Dow accrual, even though they worked a full year, or several years, for DDE.  That

9    is, because the benefit under the DDE plan accrued at a lower rate, a participant could accrue no

10   additional benefit despite working one or even several years for DDE. This type of situation is

11   commonly referred to as a "wearaway".

12   20.    Consider a hypothetical example where an employee worked 5 years for

13   Dow and then had assets and liabilities transferred to DDE.  Further, consider that the accrual

14   rate (growth of the accrued benefit) was $200 per year under the Dow Plan, and $100 per year

15   under the DDE Plan.  This employee would have the value of his accrued benefit of $1,000 per

16   year (5 years x $200 per year) transferred from Dow to DDE.  This transferred benefit would be

17   much greater than the accrued benefit under the DDE plan, which would otherwise start at $500

18   per year (5 years x $100 per year), and would only grow by $100 per year.

19   21.    In this example, the DDE accrual of $100 per year wears away at the

20   original Dow plan accrual.  It will take 5 years of service with DDE before the accrued benefit

---

[15] Mr. Terry argues that the discount rate used was one of two alternatives – the 8.5% stated above, or a rate based on immunized bonds. This argument directly contradicts the words of the Plan's actuary Wyatt in a letter to Dow (Dow 01100). It is possible that both rates were considered but 8.5% was selected; Terry admits making no effort to determine which rate was actually used.

[16] See Dow 01100.

1    catches up to the transferred benefit. During those 5 years, the Dow accrual would be worn

2    away, essentially rendered valueless. This is an important point, because when the employee

3    returned to Dow, it would not be "double-counting" to include pre-transfer service in the

4    numerator of the Section 9.6 formula; in fact not counting the pre-Dow service in the numerator

5    of the Dow proration formula would result in the original 5 years of that service effectively not

6    being counted at all. Thus Dow would have been well justified to include the pre-transfer

7    service in the numerator of the proration formula under Section 9.6, as there is no value of

8    benefit received for the first 5 years of service, exempting that service from the Duplication of

9    Benefits restrictions under Section 4.10.

10           22.    Figure 2 below illustrates my counter-example to Mr. Terry's "windfall"

11   analysis.

12   **Figure 2**

13   **Terry Methodology and Wear Away of Early Dow Benefits**

| Time | Benefit under Dow | Benefit Under DDE | Comments |
|------|-------------------|-------------------|----------|
| Year 1 – 5 | $200 per year x 5 years, total = $1,000 | N/A | First accruals are earned under Dow |
| End Year 5 | N/A | $100 per year x 5 years, total = $500;  Transfer = $1,000/yr. | Transfer benefit is much greater than DDE benefit |
| Year 6 – 10 | N/A | $100 per year x 10 yrs., total = $1,000  Catch up to transfer = $1,000 | First 5 years of accrual under Dow Plan lost under the DDE wearaway |

14

15           23.    This hypothetical example is not at all farfetched when compared to

16   actual plan experience. In Exhibit 1 of Terry's report, the benefit for Robert Johnston is

17   displayed, payable at his termination date of September 30, 2011 (age nearest 53). Mr.

11

1   Johnston's Dow grandfathered benefit is greater than his current formula benefit, and pays

2   $3,654 per month before DDE offset.  Since the grandfathered benefit was frozen as of

3   December 31, 2005, the service period reflected was from hire (1/7/80) to freeze (12/31/05).  In

4   comparison, his DDE benefit payable, reflecting the transferred Dow benefit, was only $1,497

5   per month.  This covers the period of service from hire until he left DDE (from 1/7/80 to

6   6/30/05).  So, the Dow benefit based on 26 full years, compared to the DDE benefit based on

7   practically the same period of 25.5 years, is nearly 2-1/2 times greater.  This means that the

8   benefit offered under the Dow formula was more generous than the benefit offered under the

9   DDE formula. In such a situation, there would be a significant wearaway period associated with

10  the transfer, because it takes longer for the less generous formula in the DDE Plan to overtake

11  the transferred accrued benefit. Counting all Dow service (including pre-DDE transfer service)

12  in the proration calculation under Section 9.6 therefore does not reflect significant double

13  counting in this actual example, and cannot be reasonably deemed to produce "a windfall".

14          24.     As an additional point, even if the interaction between the Dow and DDE

15  formulas created significant double counting of service, it does not mean that in this specific

16  situation Dow might not have chosen to take a generous approach.  The circumstances under

17  which class members were transferred from Dow to DDE, and then brought back a decade later,

18  could have been considered unique by Dow and deserving of special treatment.  Special

19  grandfathering provisions benefiting specific categories of employees are very common in

20  pension plans, being used to promote benefit and policy goals and strategies by plan sponsors.

21

22                          **Recalculation of Damages**

23          25.     As stated in the beginning of this Rebuttal Report, Mr. Terry contradicted

24  Defendants' counsel and claimed that I utilized incorrect compensation data in my initial

25  calculations of class member damages.  To assess this situation, we compared the data reported

1    by counsel to Mr. Terry's data, and then looked at documentation of actual calculations

2    performed by the Plan.[17]  It appears that Mr. Terry may be correct; we have therefore

3    recomputed damages on this basis in Exhibit 1, including this and other minor changes

4    described below.  This adjustment had a significant impact on calculated damages (they went

5    down), highlighting the importance of the disagreement between expert and counsel on the

6    correct application of the plan compensation definition.

7            26.    As an additional change, Mr. Terry criticized my initial work for ignoring

8    the transitional accruals under the current plan formula, which he alleges caused a dramatic

9    distortion of results.[18]  While the transitional accrual was excluded from our calculation, it is not

10   because it was ignored; this accrual only affects calculations for current formula employees (not

11   those for whom the grandfathered formula produces the greater benefit), and only those current

12   formula employees who had not already accrued the maximum benefit of 425% under that

13   formula.  In total, the transition accrual only affects 12 of the 56 participants in the class, and

14   for limited or minor amounts.  Nonetheless, we have incorporated the transitional accrual

15   benefit into our revised calculations.

16           27.    Beyond this, Mr. Terry noted what he contends may have been data

17   errors in my earlier calculations.[19]  One of the cited errors had already been identified and

18   corrected before Mr. Terry's Report was filed.  Of the others, we researched their records and

19   found contradictory information amongst that provided by Defendants' counsel.  We have been

20   through the data and adjusted to what we believe to be the correct information, which reflects

[17] Documentation of Plan calculations were produced as part of an unidentified compilation of thousands of pages of work papers that included incorrect or unfinished draft calculations as well as final calculations.  Only after the deposition of the 30(b)(6) witness for Defendants' actuarial service provider, which occurred after my initial report was issued, did we have clarity of what calculations could be deemed final for purposed of comparison.

[18] Terry Report, 6/29/15 paragraph 140.

[19] Terry Report, 6/29/15 paragraph 143.

13

1    several of the points Mr. Terry raised. Also, Terry noted a problem with my calculation of the

2    DDE offset for the 8 class members that were not part of the 1997 414(l) transfer; I have

3    adjusted our calculation of their DDE offset amounts for these members.

4           28.    Finally, Mr. Terry asserts the requirement to apply a factor of .925 when

5    calculating benefits under Section 10.46 where there was fewer than 3 years of service between

6    transfer and termination. Since Mr. Terry chooses not to reflect Section 9.6 benefits in his

7    calculations, he does not address whether Section 9.6 requires use of the .925 factor. In

8    reviewing Section 10.46, I concur that the .925 factor should be used for the Section 10.46

9    calculation for employees with fewer than 3 years between transfer and termination,[20] but not

10   for Section 9.6 which does not contain the same language. I have adjusted my calculations

11   accordingly. For Section 9.6 benefits, I have reflected the final year's pay while at DDE into

12   my calculations (DDE has yet to provide requested historical pay).

13          29.    As an additional point, Mr. Terry criticized my work because we did not

14   compare the results of our calculations to the actual calculations made by Dow under Section

15   10.46. As previously explained, we did not have access to clearly identified Dow calculations

16   to verify when my original report was issued. With further information provided through

17   deposition testimony, we can now identify final calculations, and have verified that our results

18   are relatively close to the Dow calculations in a number of calculations we analyzed. It should

19   be noted that there are still minor differences between the actual Dow calculations versus our

20   Section 10.46 calculations; Dow utilized pay data that does not exactly match the data provided

21   to us by Defendants' counsel (even including bonuses). Nonetheless, the calculations are close

22   enough at this point for us to be comfortable with their relative accuracy.

---

[20] I do not retract the position from my initial Report that applying the .925 factor, which scales back benefit by implying a 7.5% rate of annual pay increase, is likely detrimental to most class members to whom it is applied.

30.     Lastly, Mr. Terry complains in his report that my work does not provide enough data so that he could check all of my calculations.  He acknowledges that I provided two detailed calculations to demonstrate our methodology; he confirmed these calculations but requested additional detail on other participants.  Whether or not he is entitled to these additional details, I have provided additional compensation information on my revised Exhibit 1 to facilitate the checking Mr. Terry indicates he would like to perform.

31.     Reflecting all of these changes, I have determined that damages suffered by class members total $5.4 million.  This amount reflects the value of underpayments that would have been received as of June 30, 2015, as well as the present value of future payments.  A listing of individual damages is included in Exhibit 1 to this Rebuttal Report.

32.     Exhibit 1 demonstrates that different class members suffered differing amounts of damages under my stated methodology.  Mr. Terry concurs with this conclusion (utilizing my methodology) in Exhibit 7 of his report.  He identifies certain factors including employment history, compensation history and eligible pension formulas that account for this variation.  To this list, I would add elected date of benefit commencement which plays an important role – several class members who suffered no damages based on their elected benefit commencement date would have suffered damages had they elected different commencement date.  This type of variation in damages, related to both differing demographic histories and different plan elections, are in my opinion very common in this type of litigation.

**Conclusion**

33.     The opinions that I expressed in my Expert Report of May 27, 2015 have not been altered in this current report.[21]  I have modified our damages calculations, primarily in response to uncertainty about the correct compensation to be included in the calculations, but

---

[21] See clarification of my initial Opinion Three in paragraph 28.

also due to other factors described in this Rebuttal.  These damages, at $5.4 million, remain substantial for the plaintiff class.

34.    I reserve the right to amend or issue additional opinions if requested or required in this matter.

Executed on the 29th of July, 2015.

Ian H. Altman, FSA

16

**<u>Exhibit One</u>**

| Name | SSN | Term Age | ECD Age | Current Age | Sex | DDE Service | Total Service | Pay Under 9.6 | Bft Under 9.6 wy Under 10.46 | Bft Under 10.46 | Difference | Lump Sum Factor | Damages |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Participant 55 | ▮ | 52.60 | 52.60 | 56.15 | 1.00 | 9.26 | 31.80 | 122,695.40 | 118,594.00 | 2,684.59 | 2,153.25 | 531.33 | 16.916769 | 131,693.84 |
| Participant 51 | ▮ | 50.70 | 65.00 | 57.08 | 1.00 | 9.26 | 27.60 | 149,103.00 | 145,119.00 | 7,144.14 | 5,575.29 | 1,568.85 | 10.321854 | 194,321.81 |
| Participant 41 | ▮ | 53.00 | 53.00 | 61.75 | 1.00 | 9.18 | 31.60 | 210,000.00 | 210,000.00 | 5,725.32 | 5,263.50 | 461.82 | 15.36076 | 139,559.31 |
| Participant 34 | ▮ | 54.20 | 54.20 | 62.58 | 1.00 | 9.26 | 29.40 | 128,413.20 | 118,782.21 | 2,669.37 | 1,473.66 | 1,195.71 | 15.101128 | 351,549.98 |
| Participant 16 | ▮ | 46.40 | 65.00 | 53.83 | 1.00 | 9.26 | 21.20 | 170,006.00 | 170,006.00 | 6,056.13 | 7,356.08 | (1,299.95) | 0 | |
| Participant 6 | ▮ | 50.20 | 50.20 | 57.00 | 1.00 | 9.26 | 28.00 | 213,255.00 | 213,255.00 | 2,916.93 | 2,908.48 | 8.45 | 16.720482 | 2,441.92 |
| Participant 18 | ▮ | 55.20 | 55.20 | 61.58 | 1.00 | 9.26 | 33.20 | 118,281.60 | 120,532.00 | 2,905.23 | 1,727.48 | 1,177.75 | 15.411619 | 314,388.81 |
| Participant 31 | ▮ | 51.90 | 52.80 | 58.17 | 1.00 | 9.26 | 28.00 | 105,460.00 | 105,460.00 | 1,501.71 | 1,244.23 | 257.48 | 16.404427 | 68,001.74 |
| Participant 21 | ▮ | 54.00 | 65.00 | 60.25 | 2.00 | 8.67 | 26.00 | 68,796.60 | 68,796.60 | 3,183.28 | 2,890.74 | 292.55 | 12.463271 | 43,753.09 |
| Participant 20 | ▮ | 59.80 | 59.80 | 63.92 | 1.00 | 9.26 | 29.60 | 48,679.00 | 46,670.00 | 523.02 | 591.28 | (68.29) | 0 | |
| Participant 37 | ▮ | 50.20 | 50.20 | 56.33 | 2.00 | 9.26 | 18.20 | 73,205.00 | 73,205.00 | 476.52 | 638.42 | (181.95) | 0 | |
| Participant 48 | ▮ | 41.60 | 65.00 | 47.75 | 2.00 | 9.26 | 18.40 | 60,046.00 | 60,046.00 | 1,678.04 | 2,694.48 | (1,016.44) | 0 | |
| Participant 45 | ▮ | 59.60 | 59.60 | 63.50 | 1.00 | 9.26 | 34.90 | 76,439.00 | 76,439.00 | 1,971.52 | 1,150.59 | 820.94 | 14.142764 | 200,833.60 |
| Participant 50 | ▮ | 53.20 | 53.20 | 59.08 | 2.00 | 9.26 | 34.50 | 71,268.76 | 65,923.66 | 1,774.38 | 1,322.06 | 452.32 | 16.993758 | 125,998.33 |
| Participant 17 | ▮ | 54.60 | 55.60 | 60.50 | 1.00 | 9.26 | 34.90 | 96,050.00 | 96,050.00 | 2,306.18 | 1,705.58 | 600.61 | 15.737635 | 149,882.09 |
| Participant 32 | ▮ | 53.80 | 65.00 | 59.67 | 2.00 | 9.26 | 20.40 | 112,039.00 | 112,039.00 | 2,939.95 | 3,546.76 | (606.81) | 0 | |
| Participant 14 | ▮ | 57.00 | 57.00 | 61.67 | 1.00 | 8.92 | 25.20 | 87,451.00 | 87,451.00 | 1,600.89 | 1,379.30 | 221.59 | 15.38619 | 46,493.97 |
| Participant 3 | ▮ | 60.00 | 60.00 | 64.67 | 1.00 | 9.09 | 26.00 | 98,958.00 | 98,958.00 | 2,624.81 | 1,110.44 | 1,514.37 | 14.646642 | 340,771.92 |
| Johaton, Robert | ▮ | 57.00 | 57.00 | 63.25 | 1.00 | 9.09 | 34.10 | 143,896.60 | 143,896.60 | 3,379.46 | 988.17 | 2,391.50 | 13.400471 | 384,566.56 |
| Participant 10 | ▮ | 50.00 | 50.00 | 63.83 | 1.00 | 9.26 | 20.70 | 117,071.00 | 117,071.00 | 4,929.79 | 4,929.79 | (1,006.33) | 0 | |
| Participant 33 | ▮ | 52.60 | 52.60 | 66.25 | 1.00 | 9.26 | 31.80 | 232,690.00 | 232,690.00 | 2,684.59 | 2,153.25 | 531.33 | 16.915769 | 131,693.84 |
| Participant 40 | ▮ | 57.40 | 57.40 | 60.33 | 1.00 | 9.01 | 35.10 | 91,620.00 | 91,620.00 | 4,461.32 | 2,637.80 | 1,823.52 | 15.786973 | 410,810.04 |
| Participant 46 | ▮ | 60.10 | 60.10 | 62.50 | 1.00 | 9.26 | 23.80 | 194,911.00 | 194,911.00 | 3,806.79 | 3,919.16 | (112.46) | 0 | |
| Participant 1 | ▮ | 65.10 | 65.10 | 65.17 | 1.00 | 9.26 | 34.40 | 274,517.00 | 274,517.00 | 2,597.28 | 3,472.65 | 725.02 | 11.905663 | 103,581.95 |
| Participant 4 | ▮ | 45.90 | 65.00 | 47.92 | 2.00 | 8.50 | 21.90 | 223,541.00 | 223,541.00 | 1,842.93 | 1,317.53 | (338.40) | 0 | |
| Participant 5 | ▮ | 58.40 | 58.30 | 45.58 | 1.00 | 9.26 | 32.20 | 179,891.00 | 179,891.00 | 2,806.04 | 3,215.22 | 525.40 | 16.640021 | 117,884.03 |
| Participant 12 | ▮ | 53.80 | 65.00 | 55.58 | 1.00 | 9.26 | 26.00 | 184,038.00 | 184,038.00 | 9,001.06 | 7,875.46 | (409.18) | 0 | |
| Participant 19 | ▮ | 65.10 | 65.10 | 58.08 | 2.00 | 9.26 | 42.90 | 190,867.00 | 190,867.00 | 5,593.17 | 6,024.64 | 1,125.60 | 10.90959 | 135,206.93 |
| Participant 22 | ▮ | 65.10 | 65.10 | 55.08 | 1.00 | 9.26 | 38.50 | 187,795.00 | 187,795.00 | 8,453.57 | 4,663.59 | 325.00 | 10.946726 | 217,087.98 |
| Participant 24 | ▮ | 65.10 | 65.10 | 53.42 | 1.00 | 9.26 | 42.00 | 145,201.00 | 145,201.00 | 7,354.21 | 3,360.92 | 636.25 | 9.476615 | 72,388.12 |
| Participant 25 | ▮ | 65.10 | 65.10 | 57.00 | 1.00 | 9.09 | 22.40 | 168,701.00 | 168,701.00 | 2,703.45 | 4,580.56 | (550.55) | 0 | |
| Participant 26 | ▮ | 65.10 | 65.10 | 56.33 | 1.00 | 9.26 | 33.60 | 294,290.00 | 294,290.00 | 5,769.28 | 6,107.68 | 725.02 | 11.905663 | 103,581.95 |
| Participant 28 | ▮ | 65.10 | 65.10 | 64.83 | 1.00 | 9.26 | 38.20 | 153,276.00 | 153,276.00 | 9,011.60 | 8,320.85 | (338.40) | 0 | |
| Participant 29 | ▮ | 65.10 | 65.10 | 57.42 | 1.00 | 9.26 | 37.10 | 248,378.00 | 248,378.00 | 7,226.51 | 9,335.74 | 291.45 | 10.467707 | 36,610.27 |
| Participant 30 | ▮ | 65.10 | 65.10 | 58.25 | 1.00 | 9.26 | 39.80 | 239,640.00 | 239,640.00 | 5,637.45 | 6,275.77 | 1,455.89 | 10.834839 | 189,291.98 |
| Participant 49 | ▮ | 65.10 | 65.10 | 63.17 | 1.00 | 9.26 | 41.90 | 174,811.00 | 174,811.00 | 8,184.38 | 4,148.36 | 2,006.83 | 13.356472 | 321,650.51 |
| Participant 52 | ▮ | 65.10 | 65.10 | 53.33 | 2.00 | 9.26 | 38.50 | 101,266.00 | 101,266.00 | 8,169.87 | 4,253.62 | 688.03 | 11.109531 | 119,720.36 |
| Participant 7 | ▮ | 65.10 | 65.10 | 56.33 | 1.00 | 9.09 | 39.70 | 126,295.00 | 126,295.00 | 7,093.25 | 7,271.84 | 465.68 | 9.555941 | 51,745.51 |
| Participant 54 | ▮ | 65.10 | 65.10 | 60.83 | 1.00 | 9.09 | 42.20 | 191,207.00 | 191,207.00 | 3,035.19 | 1,510.05 | 1,004.83 | 10.000263 | 123,413.39 |
| Participant 42 | ▮ | 65.10 | 65.10 | 51.58 | 1.00 | 8.50 | 44.00 | 372,010.00 | 372,010.00 | 3,835.71 | 3,433.79 | 1,525.13 | 12.091121 | 221,286.82 |
| Participant 8 | ▮ | 55.20 | 65.00 | 52.00 | 1.00 | 8.50 | 38.90 | 85,275.00 | 85,275.00 | 5,914.74 | 6,143.09 | 391.92 | 8.534296 | 40,137.46 |
| Participant 11 | ▮ | 65.10 | 65.00 | 50.08 | 1.00 | 3.17 | 42.80 | 116,425.00 | 116,425.00 | 15,126.95 | 15,756.39 | (238.35) | 0 | |
| Participant 35 | ▮ | 62.00 | 65.20 | 61.33 | 1.00 | 7.63 | 30.40 | 126,764.00 | 126,764.00 | 1,669.25 | 1,774.41 | (629.45) | 0 | |
| Participant 36 | ▮ | 49.80 | 66.00 | 64.92 | 2.00 | 2.38 | 23.70 | 95,470.00 | 95,470.00 | 3,622.07 | 3,897.10 | (105.16) | 0 | |
| Participant 38 | ▮ | 65.10 | 64.92 | 56.58 | 1.00 | 2.38 | 12.50 | 213,094.00 | 213,094.00 | 4,508.02 | 4,725.51 | (275.03) | 0 | |
| Participant 43 | ▮ | 57.50 | 57.50 | 63.75 | 2.00 | 4.75 | 41.20 | 116,030.00 | 116,030.00 | 2,953.82 | 3,435.37 | (217.48) | 0 | |
| Participant 53 | ▮ | 51.50 | 65.00 | 57.67 | 1.00 | 7.71 | 28.50 | 126,877.00 | 126,877.00 | 7,451.67 | 7,911.76 | (471.56) | 0 | |
| | | | | | | | | | | | (166.38) | | |
| | | | | | | | | | | | (1,346.27) | | |

No Damages 23

Positive Damages 33

5,375,595.55

1

2

3

4

## PROOF OF SERVICE

*Johnston v. Dow Employees' Pension Plan, et al.*

**Case No. 1:14-cv-10427-TLL-CEB**

I, Zachary McCoy, declare:

5

6

My business address is 476 9th Street, Oakland, CA 94607.  I am over the age of eighteen

years and not a party to the above-entitled action.

7

8

On July 29, 2015 I served the following documents:

• **Expert Rebuttal Report of Ian H. Altman, FSA**

9

on the persons listed below by electronic mail and U.S mail addressed as follows:

10

11

12

13

14

15

Craig C. Martin
cmartin@jenner.com
Amanda S. Amert
aamert@jenner.com
Shannon M. Callahan
scallahan@jenner.com
Jenner & Block LLP
353 North Clark Street
Chicago, IL 60654-3456

16

17

I declare under penalty of perjury that the foregoing is true and correct.

18

Executed on July 29, 2015 at Oakland, California.

19

20

21

_____
Zachary McCoy

22

23

24

25

26

27

28



## RENAKER HASSELMAN

» (415) 653-1733
» 235 Montgomery Street, Suite 944
   San Francisco, CA 94104
» info@renakerhasselman.com

August 7, 2015

**BY U.S. MAIL AND EMAIL: <u>aamert@jenner.com</u>**

Amanda S. Amert
JENNER & BLOCK LLP
353 North Clark St.
Chicago, IL 60654-3456

> **Re:**   *Johnston v. Dow Employees' Pension Plan, et al.*
>         **No. 1:14-cv-10427-TLL-CEB (E.D. Mich.)**

Dear Amanda:

     Pursuant to Fed. R. Civ. P. 26(a)(2)(E) and (e)(2), attached is Mr. Altman's supplemental disclosure.

          Very truly yours,

          RENAKER HASSELMAN LLP

By          *[signature]*

          Teresa S. Renaker

cc:    co-counsel (by email)

100 Pine Street
Suite 1050
San Francisco, California 94111
415 395 9300 Tel
415 395 7499 Fax

ALTMAN&CRONIN
BENEFIT CONSULTANTS, LLC

August 5, 2015

Ms. Teresa Renaker, Esq.
Renaker Hasselman
235 Montgomery St,  Suite 944
San Francisco, CA  94104

Johnston v. Dow Revised Damages Spreadsheet – Privileged Communication

Dear Teresa:

Per the discussions at the conclusion of my deposition yesterday, attached please find a revised spreadsheet of damages, which reflects minor changes from the spreadsheet included in my Expert Rebuttal Report of July 29, 2015.

The revised spreadsheet restores the first plaintiff Randy Stone to the calculations.  Mr. Stone's results had been overwritten in error on the prior sheet.  As Mr. Stone's damages are lower than the erroneous figures previously shown, total damages for the group drop from $5.4 million to $5.3 million.

In addition, we removed social security numbers for participants, and rounded ages to whole numbers.

Please let us know if you have further questions.

Sincerely,

Ian H. Altman, FSA

cc     Jacob Richards

| SSN | Name | Term Age | BCD Age | Current Age | Sex | DOE Service | Total Service | Pay Under 9.6 | 8fit Under 9.6 | vry Under 10.46 | 8fit Under 10.46 | Difference | Lump Sum Factor | Damages |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Participant 55 | 59 | 51 | 65 | 1.00 | 15.50 | 17.60 | 5,742.00 | 5,742.00 | 5,311.61 | 5,575.29 | 122.79 | 6.954646 | 10,247.20 |
| | Participant 51 | 53 | 53 | 57 | 1.00 | 9.26 | 27.60 | 149,100.00 | 149,100.00 | 149,103.00 | 149,564.85 | 1,568.85 | 10.371854 | 194,321.81 |
| | Participant 41 | 53 | 53 | 62 | 1.00 | 9.18 | 31.60 | 210,000.00 | 210,000.00 | 210,000.00 | 5,263.50 | 461.82 | 15.36076 | 139,959.31 |
| | Participant 17 | 53 | 53 | 63 | 1.00 | 9.26 | 29.40 | 128,413.20 | 118,782.21 | 118,782.21 | 7,356.08 | 1,195.71 | 15.101128 | 351,549.98 |
| | Participant 34 | 46 | 50 | 54 | 1.00 | 9.26 | 21.20 | 170,000.00 | 170,006.00 | 170,006.00 | 2,908.48 | (1,299.95) | | - |
| | Participant 6 | 50 | 50 | 57 | 1.00 | 9.26 | 28.00 | 213,255.00 | 213,255.00 | 120,532.00 | 1,727.48 | 8.45 | 16.720492 | 2,441.92 |
| | Participant 18 | 55 | 55 | 62 | 1.00 | 9.26 | 33.20 | 118,281.60 | 118,281.60 | 120,532.00 | 1,244.23 | 1,177.75 | 15.411619 | 314,388.81 |
| | Participant 31 | 52 | 55 | 58 | 1.00 | 8.67 | 28.00 | 105,460.00 | 105,460.00 | 105,460.00 | 2,890.74 | 257.48 | 16.400427 | 68,000.74 |
| | Participant 13 | 60 | 60 | 65 | 2.00 | 8.67 | 29.60 | 68,796.00 | 68,796.00 | 48,679.00 | 591.28 | 292.55 | 12.463271 | 43,753.09 |
| | Participant 10 | 65 | 65 | 65 | 2.00 | 9.26 | 29.00 | 48,679.00 | 48,679.00 | 48,679.00 | 531.28 | (68.26) | 0 | - |
| | Participant 35 | 50 | 50 | 56 | 1.00 | 9.26 | 19.20 | 73,205.00 | 73,205.00 | 73,205.00 | 658.42 | (181.90) | 0 | - |
| | Participant 37 | 42 | 48 | 48 | 2.00 | 9.26 | 18.40 | 60,046.00 | 60,046.00 | 60,046.00 | 2,694.48 | (1,016.44) | 0 | - |
| | Participant 44 | 60 | 60 | 66 | 1.00 | 9.26 | 34.90 | 76,439.00 | 76,439.00 | 76,439.00 | 1,150.59 | 820.94 | 14.142764 | 200,833.60 |
| | Participant 48 | 53 | 53 | 59 | 1.00 | 9.26 | 34.50 | 71,268.76 | 71,268.76 | 65,923.60 | 1,322.06 | 452.32 | 16.993758 | 125,998.33 |
| | Participant 2 | 56 | 56 | 61 | 2.00 | 8.50 | 34.90 | 96,050.00 | 96,050.00 | 96,050.00 | 1,705.58 | 600.61 | 15.737635 | 149,882.09 |
| | Participant 50 | 60 | 60 | 60 | 2.00 | 9.26 | 20.40 | 112,039.00 | 112,039.00 | 112,039.00 | 3,546.76 | (66.31) | | - |
| | Participant 47 | 57 | 57 | 62 | 1.00 | 8.92 | 35.20 | 87,451.00 | 87,451.00 | 87,451.00 | 1,379.80 | 221.59 | 15.38619 | 46,499.97 |
| | Participant 42 | 57 | 57 | 64 | 1.00 | 9.09 | 37.40 | 98,958.00 | 98,958.00 | 98,958.00 | 1,110.44 | 1,514.37 | 14.646642 | 340,771.92 |
| | Participant 14 | 57 | 57 | 63 | 1.00 | 9.26 | 35.40 | 143,896.00 | 143,896.00 | 143,896.00 | 5,638.41 | 2,391.50 | 13.60047 | 384,563.56 |
| | Participant 4 | 54 | 54 | 60 | 1.00 | 9.26 | 20.70 | 117,071.00 | 117,071.00 | 117,071.00 | 4,439.79 | (1,050.39) | | - |
| | Johnston, Robert | 53 | 53 | 53 | 1.00 | 9.26 | 31.90 | 122,695.40 | 122,695.40 | 118,594.00 | 2,153.25 | 531.33 | 16.916769 | 314,699.84 |
| | Participant 10 | 57 | 57 | 60 | 1.00 | 9.01 | 35.10 | 166,682.00 | 166,682.00 | 166,682.00 | 2,637.80 | 1,823.52 | 15.786973 | 410,810.04 |
| | Participant 33 | 59 | 59 | 63 | 1.00 | 9.26 | 23.80 | 141,556.00 | 141,556.00 | 141,556.00 | 3,919.26 | (112.46) | 0 | - |
| | Participant 45 | 46 | 46 | 48 | 2.00 | 8.50 | 21.90 | 73,846.00 | 73,846.00 | 73,846.00 | 3,472.65 | (875.37) | | 117,884.03 |
| | Participant 40 | 54 | 58 | 60 | 1.00 | 9.09 | 37.20 | 87,404.00 | 87,404.00 | 87,404.00 | 1,317.53 | 525.40 | 14.604021 | - |
| | Participant 16 | 54 | 54 | 55 | 1.00 | 9.09 | 26.00 | 82,290.00 | 82,290.00 | 82,290.00 | 3,215.22 | (409.18) | | 135,206.93 |
| | Participant 32 | 55 | 55 | 58 | 1.00 | 9.26 | 42.90 | 268,115.00 | 268,115.00 | 268,115.00 | 7,875.46 | 1,115.60 | 10.009959 | 42,602.71 |
| | Participant 4 | 55 | 55 | 55 | 1.00 | 9.26 | 34.30 | 187,684.00 | 187,684.00 | 187,684.00 | 5,268.17 | 325.00 | 10.946726 | 72,338.12 |
| | Participant 5 | 46 | 46 | 46 | 2.00 | 9.26 | 39.50 | 259,043.00 | 259,043.00 | 259,043.00 | 7,817.33 | 636.25 | 9.474615 | - |
| | Participant 9 | 59 | 59 | 59 | 1.00 | 9.26 | 44.70 | 232,690.00 | 232,690.00 | 232,690.00 | 7,904.75 | (550.55) | 11.906663 | 103,581.95 |
| | Participant 12 | 55 | 55 | 59 | 1.00 | 9.26 | 40.60 | 91,620.00 | 91,620.00 | 91,620.00 | 1,978.43 | 725.02 | | - |
| | Participant 15 | 49 | 49 | 49 | 2.00 | 9.26 | 34.40 | 194,911.00 | 194,911.00 | 194,911.00 | 6,107.68 | (338.40) | 0 | - |
| | Participant 19 | 65 | 65 | 65 | 1.00 | 9.26 | 43.40 | 274,517.00 | 274,517.00 | 274,517.00 | 9,325.74 | (314.14) | 0 | - |
| | Participant 22 | 56 | 56 | 56 | 2.00 | 9.26 | 40.80 | 223,541.00 | 223,541.00 | 223,541.00 | 6,275.77 | 950.73 | 9.68357 | 110,677.72 |
| | Participant 32 | 58 | 58 | 58 | 1.00 | 9.26 | 38.10 | 179,891.00 | 179,891.00 | 87,891.00 | 4,148.36 | (489.18) | 12.272933 | 120,109.98 |
| | Participant 24 | 58 | 58 | 58 | 1.00 | 9.26 | 41.90 | 184,028.00 | 184,028.00 | 184,028.00 | 3,804.38 | 2,056.39 | 10.760247 | 265,537.40 |
| | Participant 26 | 55 | 55 | 56 | 1.00 | 9.26 | 38.50 | 190,867.00 | 190,867.00 | 190,867.00 | 6,024.64 | (224.41) | | - |
| | Participant 21 | 58 | 58 | 61 | 1.00 | 9.09 | 43.00 | 187,795.00 | 187,795.00 | 145,201.00 | 4,663.59 | 1,301.29 | 10.285391 | 160,611.57 |
| | Participant 54 | 57 | 57 | 57 | 1.00 | 9.09 | 22.40 | 145,201.00 | 145,201.00 | 168,701.00 | 3,860.92 | (550.68) | | - |
| | Participant 29 | 63 | 63 | 65 | 1.00 | 9.26 | 33.60 | 168,701.00 | 168,701.00 | 126,295.00 | 4,580.56 | 291.45 | 10.467707 | 36,610.07 |
| | Participant 29 | 57 | 57 | 58 | 1.00 | 9.26 | 38.20 | 294,290.00 | 294,290.00 | 294,290.00 | 8,320.65 | 1,455.89 | 10.858439 | 189,209.98 |
| | Participant 42 | 50 | 50 | 52 | 1.00 | 8.50 | 42.80 | 153,276.00 | 153,276.00 | 153,276.00 | 2,648.29 | 2,006.83 | 13.335472 | 321,650.51 |
| | Participant 8 | 61 | 61 | 65 | 1.00 | 3.17 | 37.10 | 248,378.00 | 248,378.00 | 248,378.00 | 7,211.84 | 898.03 | 7.271184 | 153,058.36 |
| | Participant 23 | 55 | 55 | 55 | 1.00 | 7.63 | 39.80 | 8,169.87 | 8,169.87 | 8,169.87 | 7,891.25 | 468.88 | 9.255941 | 54,765.51 |
| | Participant 33 | 62 | 62 | 65 | 1.00 | 2.38 | 41.70 | 174,811.00 | 174,811.00 | 174,811.00 | 4,253.62 | 1,104.83 | 10.000263 | 51,745.51 |
| | Participant 46 | 60 | 60 | 65 | 1.00 | 2.38 | 39.70 | 101,296.00 | 101,296.00 | 95,479.00 | 1,510.05 | 1,525.13 | 12.091121 | 132,583.39 |
| | Participant 49 | 56 | 56 | 65 | 1.00 | 9.26 | 42.20 | 126,295.00 | 126,295.00 | 126,295.00 | 3,433.79 | 391.92 | 8.534296 | 221,286.82 |
| | Participant 7 | 61 | 61 | 61 | 1.00 | 9.09 | 44.00 | 191,207.00 | 191,207.00 | 191,207.00 | 6,143.09 | (228.35) | 0 | 40,137.46 |
| | Participant 54 | 49 | 49 | 52 | 1.00 | 4.75 | 38.90 | 372,000.00 | 372,000.00 | 372,000.00 | 15,756.39 | (629.45) | 0 | - |
| | Participant 42 | 52 | 52 | 52 | 1.00 | 8.50 | 30.40 | 85,275.00 | 85,275.00 | 85,275.00 | 1,774.41 | (105.16) | | - |
| | Participant 11 | 55 | 55 | 55 | 1.00 | 7.63 | 23.70 | 116,425.00 | 116,425.00 | 116,425.00 | 3,897.10 | (275.07) | | - |
| | Participant 43 | 58 | 58 | 64 | 2.00 | 2.38 | 41.20 | 116,030.00 | 116,030.00 | 213,094.00 | 4,725.51 | (217.18) | | - |
| | Participant 43 | 58 | 58 | 64 | 2.00 | 2.38 | 14.10 | 213,094.00 | 213,094.00 | 213,094.00 | 3,426.37 | (472.56) | | - |
| | Participant 53 | 52 | 52 | 58 | 1.00 | 7.71 | 28.50 | 126,877.00 | 126,877.00 | 6,602.02 | 7,948.29 | (1,346.27) | | - |

| | | | | | | | | | | | | No Damages | 23 | |
| | | | | | | | | | | | | Positive Damages | 33 | |
| | | | | | | | | | | | | | | 5,254,148.91 |