# Exhibit F



## TERMINATION GENERAL RELEASE

This Termination General Release (the "Release") sets forth the terms of agreement by and between the parties as further described below:

### 1. The Parties

A. "The Employee" means Participant 16, Employee ID ████, an individual who resides at

> Redacted:
> Confidential

B. "Dow" or the "Company" means The Dow Chemical Company, a Delaware corporation, with its corporate offices located at 2030 Dow Center, Midland, Michigan 48674; and any of its past, present and future affiliates, subsidiaries, officers, directors, employees, and shareholders, and all of its and their respective heirs, successors, and assigns.

C. The Employee and Dow shall be collectively referred to as the Parties ("Parties").

### 2. Termination of Employment Relationship

A. The Parties will end their employment relationship on June 10, 2014, (the "Termination Date"). Unless otherwise indicated in this Release, the Termination Date shall be June 10, 2014, or, if the Employee separates from the Company on a date other than June 10, 2014, the Termination Date will be the actual date on which the employment relationship between the Parties is terminated.

B. The Company may relieve Employee of all duties and place the Employee on administrative leave prior to the Termination Date upon notice. Employee no longer will be authorized to transact business or incur any expenses, obligations and liabilities on behalf of the Company after the earlier of being placed on administrative leave or the Termination Date. Employee acknowledges the following: (i) receipt of all compensation and benefits due through the Termination Date as a result of services performed for the Company with the receipt of a final paycheck except as provided in this Release; (ii) Employee has reported to the Company any and all work-related injuries incurred during employment; (iii) the Company properly provided any leave of absence because of Employee's or a family member's health condition and Employee has not been subjected to any improper treatment, conduct or actions due to a request for or taking such leave; and (iv) Employee has provided the Company with written notice of any and all concerns regarding suspected ethical and compliance issues or violations on the part of the Company or any released person or entity.

### 3. Transition Assistance Benefits

The transition assistance benefits which Employee will receive if Employee signs, returns and does not revoke this Release in a timely manner consist of the following:

A. <u>U. S. Severance Plan</u>. Employee is eligible to receive under The Dow Chemical Company U.S. Severance Plan (the "Severance Plan"): (a) a lump sum Severance Payment of $78,664 (less deductions or withholdings required by law or by agreement between the Parties

and any outstanding amounts Employee owes to the Company, including but not limited to any outstanding balance owed on any housing or relocation loans), and (b) any other additional benefits that are available to the Employee under the Severance Plan.

Employee understands that payment will be made at the times and in the form set forth in the Summary Plan Description for the Severance Plan.

B.    <u>Medical Coverage</u>.  Employee may elect to extend Employee's medical coverage (but not dental coverage) at the active premium rates as described in the document entitled "Information About Your Immediate Medical and Dental Options" (the "Medical Information Document").  Employee must make such election in accordance with the requirements set forth in the Medical Information Document.

**4.    <u>Full and Final Release</u>.**  In consideration for the transition assistance benefits described above, Employee releases and discharges the Company from all claims (including claims for attorney's fees and costs), demands and causes of action, known or unknown, which Employee may have or claim to have, arising out of, or in any way relating to, Employee's employment or termination of Employee's employment with the Company, whether based on any act or omission to act.  This includes, but is not limited to, claims of negligence, intentional misconduct, breach of contract (whether written or oral), violation of the Employee Retirement Income Security Act of 1974 (ERISA) (as amended), violation of the **Age Discrimination in Employment Act of 1967 (ADEA) (as amended)**, violation of the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) (as amended), violation of the Worker Adjustment and Retraining Notification Act (WARN) (as amended), violation of the Americans with Disabilities Act of 1990 (as amended), National Labor Relations Act (as amended), claims arising under any federal, state or local laws, executive orders, regulations, directives, codes, common law, constitutional provision or public policy prohibiting employment discrimination based on age, color, race, gender/sex, sexual preference/orientation, height, weight, marital status, national origin, mental or physical disability, religious affiliation, veteran status or any other forms of discrimination, and claims based on any other laws, executive orders, regulations, directives, codes, common law, constitutional provision or public policy affecting relations between employers and employees, including claims growing out of the Company's termination of its employees.

**5.    <u>Exceptions to the Release</u>.**  This Release does not waive any claims (A) for unemployment or workers' compensation, (B) for vested or other rights to which the Employee may be entitled under the Company's employee benefit plans on the date Employee signs this Release that cannot legally be waived, (C) that may arise after Employee signs this Release, or (D) which cannot be released by private agreement.  Nothing in this Release generally prevents Employee from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the EEOC or any other federal, state or local agency charged with the enforcement of any employment laws, although by signing this Release, Employee waives the right to individual relief based on claims asserted in such a charge or complaint, except with the National Labor Relations Board or anywhere else such a waiver is prohibited.

**6.    <u>Confidential Information of Company</u>.**  Employee agrees that Employee will not disclose to anyone or use, directly or indirectly, after termination of Employee's employment

2

with the Company, any Confidential Information of the Company, except with the written consent of the Company. "Confidential Information" is defined herein to mean trade secrets, know-how, and other information, not generally known, relating to the Company's business which was disclosed to Employee or with which Employee became familiar during Employee's term of employment with the Company (including information conceived, originated, discovered or developed in whole or in part by Employee). "Confidential Information" includes information relating to the Company's business practices and prospective business interests, including, but not limited to, customer lists, forecasts, business and strategic plans, financial and sales information, products, processes, equipment, manufacturing operations, marketing programs, research, product development, engineering, computer systems and software, and personnel records. This obligation shall continue until such Confidential Information becomes generally known to the public without participation on Employee's part.

7.    **Non-Disparagement**. Employee agrees that Employee will not at any time or in any manner, and whether directly or indirectly, criticize or disparage the Company or otherwise provide information, issue statements, or take any other action intended or reasonably likely to result in material harm, embarrassment, humiliation to the Company or cause or contribute to it being held in disrepute by any person.

8.    **Non-Compete**. Employee agrees that for a period of two (2) years from Employee's Termination Date, Employee will not either directly or indirectly, participate in, consult with or render services to any Competing Business, nor have any interest in any Competing Business. "Competing Business" means any entity or person engaged in or about to become engaged in research, development, production, marketing or selling of one or more Competing Products. "Competing Products" means products, processes or services competing directly or indirectly with the Company's current or contemplated products, processes or services in the area the Employee worked for the Company or in an area where the Employee was exposed to Confidential Information (as defined in paragraph 6), during the last five (5) years of Employee's employment at the Company. In addition, for such two (2) year period, Employee will not interfere with, disrupt or attempt to disrupt any relationship, contractual or otherwise, with respect to a business carried on by the Company and any other party. The restrictions of this provision apply to (a) the state(s) within the United States that was Employee's primary work location or territory during the five (5) years immediately preceding Employee's Termination Date, (b) any area of the United States where the Company is conducting business or may be reasonably expected to engage in business, or (c) any other country of the world where the Company is conducting business or may be reasonably expected to engage in business. Such restrictions shall apply to Employee, as owner, partner, officer, employee, consultant or advisor. For purposes of this provision, ownership of not more than one percent of the common or preferred stock of any publicly held company whose stock is listed on any recognized stock exchange or traded over the counter shall be disregarded.

9.    **Company Property**. Employee agrees that Employee has returned or will return to the Company on or before Employee's Termination Date, any and all Company property and Confidential Information, including originals and copies thereof (whether in hard copy or electronic form), including, without limitation, books, records and documents, files, memoranda, credit cards, Company passes, keys, computer access codes, disk and instructional manuals,

3

Confidential- Subject to Protective Order

tools, computers, and other physical property, which was or may be in Employee's possession or under Employee's control.

**10.     Confidentiality.** Employee agrees not to disclose the terms of this Release to any person unless required by law without the written consent of the Company, except to Employee's legal, financial and tax advisors, and members of Employee's immediate family, and any prospective or subsequent employer as respects any of Employee's obligations under paragraphs 6 through 9 who may need to be informed of these terms of this Release.  If Employee does tell any of the persons listed in the preceding sentence about the Release or its contents, Employee must immediately tell them that they must keep the disclosed information confidential as well.

**11.     Enforcement of Covenants.**  Employee agrees that the Company would be irreparably injured by a violation by Employee of paragraphs 6 through 10 and that in the event of any such breach or threatened breach, the Company shall, in addition to any other remedies available to it, be entitled to (A) a temporary restraining order and/or preliminary and/or permanent injunction, or other equivalent relief, restraining Employee from the actual or threatened breach, and (B) recover from Employee all sums paid to Employee or on behalf of Employee pursuant to this Release.

**12.     Obligations.**  This Release does not affect the Employee's rights and obligations under the Company's standard Employee Agreement or any other secrecy, confidentiality, non-competition, or invention agreements that the Employee has signed with the Company or under the various Company employee compensation or benefit plans and programs, except as specifically modified herein.  Apart from the benefits recited in this Release, Employee waives any rights Employee has to any benefits offered or adopted by the Company that are not specifically listed in this Release, except for those benefits in which the Employee has vested rights pursuant to the applicable plan and applicable law that cannot legally be waived.

**13.     Cooperation.**  Employee agrees to cooperate with Company and its attorneys, both during and after the termination of Employee's employment, in connection with any litigation or other proceeding arising out of or relating to matters of which Employee was involved prior to the termination of Employee's employment.  Employee's cooperation shall include, without limitation, providing assistance to Company's counsel, experts and consultants, and providing truthful testimony in pretrial and trial or hearing proceedings. In the event that Employee's cooperation is requested after the termination of Employee's employment, Company will (1) seek to minimize interruptions to Employee's schedule to the extent consistent with its interests in the matter; and (2) reimburse Employee for all reasonable and appropriate out-of-pocket expenses actually incurred by Employee in connection with such cooperation upon reasonable substantiation of such expenses.

Employee agrees that Employee will not testify voluntarily in any lawsuit or other proceeding which directly or indirectly involves Company, or which may create the impression that such testimony is endorsed or approved by Company, without providing notice (including the general nature of the testimony) to the Company's General Counsel promptly, and in no event later than two (2) business days, after receiving an order or request to testify.

4

Confidential- Subject to Protective Order

14.   **Acknowledgement of Receipt of Documents.**   By signing below, Employee acknowledges receipt of this Termination General Release, U.S. Severance Plan Summary Plan Description, and Information About Your Immediate Medical and Dental Options. Employee understands that Employee is responsible for reading and becoming familiar with the documents, and that if Employee has any questions regarding the documents, Employee will direct those questions to the Plan Administrator.

15.   **Advice of Counsel, Consideration and Revocation Periods and Effective Date.** Dow advises Employee to consult with an attorney prior to signing this Release. Employee has twenty-one (21) days to consider whether to sign this Release (the "Consideration Period"). Employee must return this signed Release to Workforce Planning, The Dow Chemical Company, EDC, Midland, Michigan 48674, by First Class mail or by hand delivery within the Consideration Period but not prior to the Termination Date. If Employee signs and returns this Release before the end of the Consideration Period, it is because Employee freely chose to do so after carefully considering its terms. Additionally, Employee shall have seven days from the date of the signing of this Release to revoke this Release by delivering a written notice of revocation within the seven day revocation period to Workforce Planning. If the revocation period expires on a weekend or holiday, Employee will have until the end of the next business day to revoke. This Release will become effective on the eighth day after Employee signs this Release provided Employee does not revoke this Release. Any modification or alteration of any terms of this Release by Employee voids this Release in its entirety. Employee agrees with the Company that changes to the Release, whether material or immaterial, do not restart the running of the Consideration Period. The Company is not required to make any payments described in this Release unless the Release becomes effective.

16.   **Applicable Law and General Provisions.** This Release shall be interpreted under the law of the state in which Employee last worked. This Release sets forth the entire agreement between the parties. Employee is not relying on any other agreements or oral representations not fully addressed in this Release. The provisions of this Agreement are severable, and if any part of this Release is found by a court of law to be unenforceable, the remainder of this Release will continue to be valid and effective. The headings in this Release are provided for reference only and shall not affect the substance of this Release.

17.   **Significance of Employee's Signature.**   Employee's signature below indicates that Employee:

      A.     has carefully read and reviewed this Release,

      B.     fully understands all of its terms and conditions,

      C.     fully understands that the Release is legally binding and that by signing it, Employee is giving up certain rights,

      D.     has not relied on any other representations by the Company, whether written or oral, concerning the terms of the Release,

Confidential- Subject to Protective Order

DOW0026107

E.    has been provided up to twenty-one (21) days to consider this Release and agrees that changes to this Release, whether material or immaterial, do not restart the Consideration Period;

F.    will have seven (7) days to revoke his or her acceptance of the Release after signing it;

G.    has been advised, and has had the opportunity, to consult with an attorney prior to signing the Release;

H.    has signed and delivered this Release freely and voluntarily; and

I.    is duly authorized to sign this Release and has not assigned or attempted to assign or give to anyone else any claim Employee has or believes that he or she may have against the Company.

IN WITNESS WHEREOF, the parties to this Release have executed this instrument on the date(s) set forth below.

## Participant 16

_June 16, 2014_

Date of Signing
**Not valid if signed before Termination Date**

Employee Signature

## Participant 16

Employee Name (Printed)

ACCEPTED:

THE DOW CHEMICAL COMPANY

By: _____
    Signature

**Keri Husen**
~~Authorized Representative of the Company~~
Printed Name and Title

Date: _____10-18-14_____

6

Confidential- Subject to Protective Order



RECEIVED

MAY 1 9

# TERMINATION GENERAL RELEASE

This Termination General Release (the "Release") sets forth the terms of agreement by and between the parties as further described below:

**1.**    **The Parties**

A.    "The Employee" means Participant 15    , Employee ID ▮▮▮▮, an individual who resides at  ┌──────────────┐
                                              │ **Redacted:**    │
                                              │ **Confidential** │
                                              └──────────────┘

B.    "Dow" or the "Company" means The Dow Chemical Company, a Delaware corporation, with its corporate offices located at 2030 Dow Center, Midland, Michigan 48674; and any of its past, present and future affiliates, subsidiaries, officers, directors, employees, and shareholders, and all of its and their respective heirs, successors, and assigns.

C.    The Employee and Dow shall be collectively referred to as the Parties ("Parties").

**2.**    **Termination of Employment Relationship**

A.    The Parties will end their employment relationship on April 30, 2015, (the "Termination Date"). Unless otherwise indicated in this Release, the Termination Date shall be April 30, 2015, or, if the Employee separates from the Company on a date other than April 30, 2015, the Termination Date will be the actual date on which the employment relationship between the Parties is terminated.

B.    The Company may relieve Employee of all duties and place the Employee on administrative leave prior to the Termination Date upon notice. Employee no longer will be authorized to transact business or incur any expenses, obligations and liabilities on behalf of the Company after the earlier of being placed on administrative leave or the Termination Date. Employee acknowledges the following: (i) receipt of all compensation and benefits due through the Termination Date as a result of services performed for the Company with the receipt of a final paycheck except as provided in this Release; (ii) Employee has reported to the Company any and all work-related injuries incurred during employment; (iii) the Company properly provided any leave of absence because of Employee's or a family member's health condition and Employee has not been subjected to any improper treatment, conduct or actions due to a request for or taking such leave; and (iv) Employee has provided the Company with written notice of any and all concerns regarding suspected ethical and compliance issues or violations on the part of the Company or any released person or entity.

**3.**    **Transition Assistance Benefits**

The transition assistance benefits which Employee will receive if Employee signs, returns and does not revoke this Release in a timely manner consist of the following:

A.    <u>U. S. Severance Plan</u>. Employee is eligible to receive under The Dow Chemical Company U.S. Severance Plan (the "Severance Plan"): (a) a lump sum Severance Payment of $162,360 (less deductions or withholdings required by law or by agreement between the Parties

and any outstanding amounts Employee owes to the Company, including but not limited to any outstanding balance owed on any housing or relocation loans), and (b) any other additional benefits that are available to the Employee under the Severance Plan.

Employee understands that payment will be made at the times and in the form set forth in the Summary Plan Description for the Severance Plan.

B.    Medical Coverage. Employee may elect to extend Employee's medical coverage (but not dental coverage) at the active premium rates as described in the document entitled "Information About Your Immediate Medical and Dental Options" (the "Medical Information Document"). Employee must make such election in accordance with the requirements set forth in the Medical Information Document.

4.    **Full and Final Release.**  In consideration for the transition assistance benefits described above, Employee releases and discharges the Company from all claims (including claims for attorney's fees and costs), demands and causes of action, known or unknown, which Employee may have or claim to have, arising out of, or in any way relating to, Employee's employment or termination of Employee's employment with the Company, whether based on any act or omission to act.  This includes, but is not limited to, claims of negligence, intentional misconduct, breach of contract (whether written or oral), violation of the Employee Retirement Income Security Act of 1974 (ERISA) (as amended), violation of the **Age Discrimination in Employment Act of 1967 (ADEA) (as amended)**, violation of the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) (as amended), violation of the Worker Adjustment and Retraining Notification Act (WARN) (as amended), violation of the Americans with Disabilities Act of 1990 (as amended), National Labor Relations Act (as amended), claims arising under any federal, state or local laws, executive orders, regulations, directives, codes, common law, constitutional provision or public policy prohibiting employment discrimination based on age, color, race, gender/sex, sexual preference/orientation, height, weight, marital status, national origin, mental or physical disability, religious affiliation, veteran status or any other forms of discrimination, and claims based on any other laws, executive orders, regulations, directives, codes, common law, constitutional provision or public policy affecting relations between employers and employees, including claims growing out of the Company's termination of its employees.

5.    **Exceptions to the Release.**  This Release does not waive any claims (A) for unemployment or workers' compensation, (B) for vested or other rights to which the Employee may be entitled under the Company's employee benefit plans on the date Employee signs this Release that cannot legally be waived, (C) that may arise after Employee signs this Release, or (D) which cannot be released by private agreement.  Nothing in this Release generally prevents Employee from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the EEOC or any other federal, state or local agency charged with the enforcement of any employment laws, although by signing this Release, Employee waives the right to individual relief based on claims asserted in such a charge or complaint, except with the National Labor Relations Board or anywhere else such a waiver is prohibited.

6.    **Confidential Information of Company.**  Employee agrees that Employee will not disclose to anyone or use, directly or indirectly, after termination of Employee's employment



2

Confidential- Subject to Protective Order

with the Company, any Confidential Information of the Company, except with the written consent of the Company. "Confidential Information" is defined herein to mean trade secrets, know-how, and other information, not generally known, relating to the Company's business which was disclosed to Employee or with which Employee became familiar during Employee's term of employment with the Company (including information conceived, originated, discovered or developed in whole or in part by Employee). "Confidential Information" includes information relating to the Company's business practices and prospective business interests, including, but not limited to, customer lists, forecasts, business and strategic plans, financial and sales information, products, processes, equipment, manufacturing operations, marketing programs, research, product development, engineering, computer systems and software, and personnel records. This obligation shall continue until such Confidential Information becomes generally known to the public without participation on Employee's part.

7.   **Non-Disparagement**. Employee agrees that Employee will not at any time or in any manner, and whether directly or indirectly, criticize or disparage the Company or otherwise provide information, issue statements, or take any other action intended or reasonably likely to result in material harm, embarrassment, humiliation to the Company or cause or contribute to it being held in disrepute by any person.

8.   **Non-Compete**. Employee agrees that for a period of two (2) years from Employee's Termination Date, Employee will not either directly or indirectly, participate in, consult with or render services to any Competing Business, nor have any interest in any Competing Business. "Competing Business" means any entity or person engaged in or about to become engaged in research, development, production, marketing or selling of one or more Competing Products. "Competing Products" means products, processes or services competing directly or indirectly with the Company's current or contemplated products, processes or services in the area the Employee worked for the Company or in an area where the Employee was exposed to Confidential Information (as defined in paragraph 6), during the last five (5) years of Employee's employment at the Company. In addition, for such two (2) year period, Employee will not interfere with, disrupt or attempt to disrupt any relationship, contractual or otherwise, with respect to a business carried on by the Company and any other party. The restrictions of this provision apply to (a) the state(s) within the United States that was Employee's primary work location or territory during the five (5) years immediately preceding Employee's Termination Date, (b) any area of the United States where the Company is conducting business or may be reasonably expected to engage in business, or (c) any other country of the world where the Company is conducting business or may be reasonably expected to engage in business. Such restrictions shall apply to Employee, as owner, partner, officer, employee, consultant or advisor. For purposes of this provision, ownership of not more than one percent of the common or preferred stock of any publicly held company whose stock is listed on any recognized stock exchange or traded over the counter shall be disregarded.

9.   **Company Property**. Employee agrees that Employee has returned or will return to the Company on or before Employee's Termination Date, any and all Company property and Confidential Information, including originals and copies thereof (whether in hard copy or electronic form), including, without limitation, books, records and documents, files, memoranda, credit cards, Company passes, keys, computer access codes, disk and instructional manuals,

3

tools, computers, and other physical property, which was or may be in Employee's possession or under Employee's control.

**10.** **Confidentiality**. Employee agrees not to disclose the terms of this Release to any person unless required by law without the written consent of the Company, except to Employee's legal, financial and tax advisors, and members of Employee's immediate family, and any prospective or subsequent employer as respects any of Employee's obligations under paragraphs 6 through 9 who may need to be informed of these terms of this Release. If Employee does tell any of the persons listed in the preceding sentence about the Release or its contents, Employee must immediately tell them that they must keep the disclosed information confidential as well.

**11.** **Enforcement of Covenants**. Employee agrees that the Company would be irreparably injured by a violation by Employee of paragraphs 6 through 10 and that in the event of any such breach or threatened breach, the Company shall, in addition to any other remedies available to it, be entitled to (A) a temporary restraining order and/or preliminary and/or permanent injunction, or other equivalent relief, restraining Employee from the actual or threatened breach, and (B) recover from Employee all sums paid to Employee or on behalf of Employee pursuant to this Release.

**12.** **Obligations**. This Release does not affect the Employee's rights and obligations under the Company's standard Employee Agreement or any other secrecy, confidentiality, non-competition, or invention agreements that the Employee has signed with the Company or under the various Company employee compensation or benefit plans and programs, except as specifically modified herein. Apart from the benefits recited in this Release, Employee waives any rights Employee has to any benefits offered or adopted by the Company that are not specifically listed in this Release, except for those benefits in which the Employee has vested rights pursuant to the applicable plan and applicable law that cannot legally be waived.

**13.** **Cooperation**. Employee agrees to cooperate with Company and its attorneys, both during and after the termination of Employee's employment, in connection with any litigation or other proceeding arising out of or relating to matters of which Employee was involved prior to the termination of Employee's employment. Employee's cooperation shall include, without limitation, providing assistance to Company's counsel, experts and consultants, and providing truthful testimony in pretrial and trial or hearing proceedings. In the event that Employee's cooperation is requested after the termination of Employee's employment, Company will (1) seek to minimize interruptions to Employee's schedule to the extent consistent with its interests in the matter; and (2) reimburse Employee for all reasonable and appropriate out-of-pocket expenses actually incurred by Employee in connection with such cooperation upon reasonable substantiation of such expenses.

Employee agrees that Employee will not testify voluntarily in any lawsuit or other proceeding which directly or indirectly involves Company, or which may create the impression that such testimony is endorsed or approved by Company, without providing notice (including the general nature of the testimony) to the Company's General Counsel promptly, and in no event later than two (2) business days, after receiving an order or request to testify.

4

Confidential- Subject to Protective Order

**14.** **Acknowledgement of Receipt of Documents**.   By signing below, Employee acknowledges receipt of this Termination General Release, U.S. Severance Plan Summary Plan Description, and Information About Your Immediate Medical and Dental Options.  Employee understands that Employee is responsible for reading and becoming familiar with the documents, and that if Employee has any questions regarding the documents, Employee will direct those questions to the Plan Administrator.

**15.** **Advice of Counsel, Consideration and Revocation Periods and Effective Date**.   Dow advises Employee to consult with an attorney prior to signing this Release. Employee has twenty-one (21) days to consider whether to sign this Release (the "Consideration Period").  Employee must return this signed Release to Workforce Planning, The Dow Chemical Company, EDC, Midland, Michigan 48674, by First Class mail or by hand delivery within the Consideration Period but not prior to the Termination Date.  If Employee signs and returns this Release before the end of the Consideration Period, it is because Employee freely chose to do so after carefully considering its terms.  Additionally, Employee shall have seven days from the date of the signing of this Release to revoke this Release by delivering a written notice of revocation within the seven day revocation period to Workforce Planning.  If the revocation period expires on a weekend or holiday, Employee will have until the end of the next business day to revoke. This Release will become effective on the eighth day after Employee signs this Release provided Employee does not revoke this Release.  Any modification or alteration of any terms of this Release by Employee voids this Release in its entirety.  Employee agrees with the Company that changes to the Release, whether material or immaterial, do not restart the running of the Consideration Period.  The Company is not required to make any payments described in this Release unless the Release becomes effective.

**16.** **Applicable Law and General Provisions**.   This Release shall be interpreted under the law of the state in which Employee last worked.  This Release sets forth the entire agreement between the parties.  Employee is not relying on any other agreements or oral representations not fully addressed in this Release.  The provisions of this Agreement are severable, and if any part of this Release is found by a court of law to be unenforceable, the remainder of this Release will continue to be valid and effective.  The headings in this Release are provided for reference only and shall not affect the substance of this Release.

**17.** **Significance of Employee's Signature**.   Employee's signature below indicates that Employee:

      A.    has carefully read and reviewed this Release,

      B.    fully understands all of its terms and conditions,

      C.    fully understands that the Release is legally binding and that by signing it, Employee is giving up certain rights,

      D.    has not relied on any other representations by the Company, whether written or oral, concerning the terms of the Release,

5

Confidential- Subject to Protective Order

E.     has been provided up to twenty-one (21) days to consider this Release and agrees that changes to this Release, whether material or immaterial, do not restart the Consideration Period;

F.     will have seven (7) days to revoke his or her acceptance of the Release after signing it;

G.     has been advised, and has had the opportunity, to consult with an attorney prior to signing the Release;

H.     has signed and delivered this Release freely and voluntarily; and

I.     is duly authorized to sign this Release and has not assigned or attempted to assign or give to anyone else any claim Employee has or believes that he or she may have against the Company.

IN WITNESS WHEREOF, the parties to this Release have executed this instrument on the date(s) set forth below.

_May 4, 2015_

Date of Signing
**Not valid if signed before Termination Date**

## Participant 15

Employee Signature   _00_

## Participant 15

Employee Name (Printed)

ACCEPTED:

THE DOW CHEMICAL COMPANY

By: _Keri Husen_
Signature
**Keri Husen**
**Authorized Representative of the Company**
Printed Name and Title

Date: _5-19-15_

6

Confidential- Subject to Protective Order

DOW0026114

# TERMINATION GENERAL RELEASE



RECEIVED

JUL 0 7 2009

Name: Participant 48                                 Employee No.: ███████

This Release sets forth the terms under which my employer will provide to me various special transition assistance benefits in connection with the termination of my employment[1] with The Dow Chemical Company.

I acknowledge that the termination of my employment was or is effective on June 30, 2009.

I further acknowledge that eligibility to receive the various special transition assistance benefits is conditioned upon my signing and not revoking this Release.

In consideration for the transition assistance benefits described below, I release and discharge The Dow Chemical Company and any of its affiliates or subsidiary companies (collectively the "Company"), and its officers, directors, employees, shareholders, successors and assigns ("Releasees") from all claims (including claims for attorney's fees and costs), demands and causes of action, known or unknown, which I may have or claim to have against any Releasee, arising out of, or in any way relating to, my employment or termination of my employment with the Company, whether based on any act or omission to act. This includes, but is not limited to, claims of negligence, intentional misconduct, breach of contract (whether written or oral), violation of the Employee Retirement Income Security Act of 1974 (ERISA) (as amended), violation of the **Age Discrimination in Employment Act of 1967 (ADEA) (as amended)**, violation of the Worker Adjustment and Retraining Act (WARN) (as amended), claims arising under any federal, state or local laws, executive orders, regulations, directives, codes, or common law prohibiting employment discrimination based on age, color, race, gender/sex, sexual preference/orientation, height, weight, marital status, national origin, mental or physical disability, religious affiliation, veteran status or any other forms of discrimination, and claims based on any other laws, executive orders, regulations, directives, codes or common law affecting relations between employers and employees, including claims growing out of the Company's termination of its employees.

This Release does not affect any rights that I may have to file for a benefit under any state workers' compensation or unemployment compensation statute or for vested rights under ERISA-covered employee benefit plans as applicable to me on the date I sign this Release, that may arise under the ADEA, after I sign this Release, or that cannot be released by private agreement. I understand that nothing in this Release prevents me from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the EEOC, the NLRB, or any other federal, state, or local agency charged with the enforcement of employment laws, although by signing this release I am waiving and releasing any rights I may have to individual relief based on claims asserted in such charge or complaint or brought by any

---

[1] As used in this Termination General Release, "termination of employment" has the same meaning as Separation of Service defined in the summary plan description for the U.S. Severance Plan ("USSP").

USSP Release (Revised January 2009)                    1                    ███████

Confidential- Subject to Protective Order

DOW0026115

other person on my behalf or which include me in any class.  This paragraph is not intended to limit me from instituting legal action for the purpose of enforcing this Release.

The transition assistance benefits which I will receive if I sign and do not revoke this Release in a timely manner consist of the following:

1.  U. S. Severance Plan:
    a.  I am eligible to receive a lump sum Severance Payment of $113,245 (less normal tax withholdings for income taxes, FICA, and any outstanding amounts I owe to the Company, including but not limited to any outstanding balance owed on Shared Appreciation Mortgage loans or other housing or relocation loans), after I leave the payroll.

        I understand that payment will not be made to me sooner than my termination date or sooner than the expiration of seven days following my signing this Release without revoking it in writing.



    b.  I am eligible to receive reimbursement, up to a maximum of $300 (subject to withholding of applicable taxes), for the cost of financial counseling services provided I utilize an approved professional financial counseling service and submit a satisfactory receipt within six months following the effective date of termination of my employment by the

        At my option, I will be provided with p_____ ent counseling services with a provider and program to _____ n Administrator based on my job level at the time of my _____ yment.  The utilization of the outplacement counseli_____ within three months of my termination date and will continu_____ o to nine months, depending upon the terms of the progran_____ e to participate. The objective of outplacement counselin_____ ne in pursuing a career outside the Company.  I acknowle_____ tplacement counseling service provider nor the Company can guarantee subsequent employment.  I further acknowledge that if I do not choose to use the outplacement counseling services, there is no alternative or substitute benefit.

2.  Medical Coverage (does not include dental coverage)[2]:
    a.  If on the effective date of my separation from employment I am eligible for coverage under The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program[3], my premium rate

---

[2] The medical coverages described in this bullet point do not apply to dental coverage.
[3] Generally, a former Employee is eligible for coverage under one of these retiree medical programs if he or she was hired prior to January 1, 2008, is at least age 50 with 10 or more years of credited service under the DEPP component ("DEPP") of the Dow Employees' Pension Plan or the UCEPP component ("UCEPP") of the Union Carbide Employees' Pension Plan (whichever is applicable).  A former Employee may also be eligible if he or she was hired prior to January 1, 2008 by an employer that was authorized as a participating employer of the retiree medical program prior to January 1, 2008, and has 10 or more years of credited service under DEPP or UCEPP

Confidential- Subject to Protective Order                                        DOW0026116

for retiree medical coverage under the applicable retiree medical plan for 18 months following the effective date of my separation from employment will be the same premiums active employees of Dow pay (depending on your full-time or "Less-Than-Full-Time" status). Eligibility for the coverage at the active employee premium rate is subject to my continuous premium payments during the entire 18-month period. After 18 months, my cost for coverage will increase, and will be subject to the Retiree Medical Budget and the Retiree Medical Support Schedule depending on my years of Service. These rates are subject to change. All terms and conditions of the applicable retiree medical plan shall apply. **I understand that in general, eligibility for retiree medical ends when I am eligible for Medicare.** Some exceptions may apply[4]. For details, see the plan document for The Dow Chemical Company Retiree Medical Care Program or Union Carbide Corporation Retiree Medical Care Program, whichever is applicable. The Dow Chemical Company reserves the right to amend, modify, or terminate The Dow Chemical Company Retiree Medical Care Program and The Dow Chemical Company Insured Health Program at any time. Union Carbide Corporation reserves the right to amend, modify or terminate the Union Carbide Corporation Retiree Medical Care Program and the Union Carbide Corporation Insured Health Program at any time.

b.  If on the effective date of my separation from employment I am not eligible for coverage under The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program, I can elect to extend medical care coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program (depending on the plan I was enrolled in prior to termination of employment) for up to three (3) years from the effective date of my separation from employment or until I am eligible for coverage under another group plan (or a Dow plan through a dual Dow career spouse), whichever occurs first. If I elect extended coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program prior to the deadline specified in the notice I will receive from Ceridian, my premium will be the same premium active employees of Dow pay (depending on my full-time or "Less-Than-Full-Time" status) during the first 18 months of extended coverage. The premium will be 102% of the full, unsubsidized cost of coverage for the remaining 18 months of extended coverage. Eligibility for the extended coverage is subject to continuous premium payments during the entire 36-month period. These rates are subject to change. The Company reserves the right to amend, modify, or terminate The

---

(whichever is applicable) with at least 60 points (age plus service), and has signed a release acceptable to the Participating Employer. See the applicable retiree medical summary plan description for eligibility details.
[4] Exceptions apply to the following:
    a.  former Employees of The Dow Chemical Company who were hired prior to January 1, 1993,
    b.  former Employees of ANGUS Chemical Company who were hired prior to January 1, 1999,
    c.  former Employees of Union Carbide Corporation who were hired prior to February 6, 2001,
    d.  former Employees of Dow AgroSciences who were hired prior to January 1, 2004.
For more information, see the Plan Document for The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program, whichever is applicable.

Confidential- Subject to Protective Order

DOW0026117

Dow Chemical Company Medical Care Program and The Dow Chemical Company Insured Health Program at any time.

I have indicated my election decision on a separate Extended Coverage Enrollment Form.

I make the following representations to the Company, each of which is an important consideration for the Company's willingness to enter into this Release with me:

1. That I have returned or will return to the Company on or before my termination date, all Company property, including, without limitation, books, records and documents, files, memoranda, credit cards, Company passes, keys, computer access codes, disk and instructional manuals, tools, computers, and other physical property, which was or may be in my possession.

2. That I agree that I will not disclose to anyone or use, directly or indirectly, after termination of my employment with the Company, any Confidential Information of the Company, except with the written consent of the Company. Confidential Information is defined herein to mean trade secrets, know-how, and other information, not generally known, relating to the Company's business which was disclosed to me or with which I became familiar during my term of employment with the Company. Confidential Information includes information relating to the Company's business practices and prospective business interests, including, but not limited to, customer lists, forecasts, business and strategic plans, financial and sales information, products, processes, equipment, manufacturing operations, marketing programs, research, product development, engineering, computer systems and software, and personnel records. This obligation shall continue until such Confidential Information becomes generally known to the public without participation on my part.

3. That I will not at any time or in any manner, and whether directly or indirectly, criticize or disparage the Company or otherwise provide information, issue statements, or take any other action intended or reasonably likely to result in material harm, embarrassment, humiliation to the Company or cause or contribute to it being held in disrepute by any person.

4. That I agree that for a period of two (2) years from the date of the termination of my employment with the Company, I will not participate or have any interest, directly or indirectly, in any business which involves an area of technology or business in which I worked for the Company during the last five (5) years of my employment at the Company and in which I was exposed to any Confidential Information (as defined in paragraph 2 immediately above) of the Company. I further agree that for such period, I will not interfere with, disrupt or attempt to disrupt the relationship, contractual or otherwise, with respect to the business carried on by the Company with any other party. The restriction of this provision shall apply to any area of the United States, or any other country of the world in which the Company is conducting such business or

USSP Release (Revised January 2009)                    4

Confidential- Subject to Protective Order                    DOW0026118

may be reasonably expected to engage in any such business within that two (2) year period. Such restriction shall apply to me, as owner, partner, officer, employee, consultant or advisor. For purposes of this provision, ownership of not more than one percent of the common or preferred stock of any publicly held company whose stock is listed on any recognized stock exchange or traded over the counter shall be disregarded.

5.  That the payments and other benefits (including subsidized premiums) which the Company has offered to me, as stated above, are payments and benefits to which I would not be entitled but for this Release.

6.  That I realize that there are various federal, state and local laws that govern my employment relationship with the Company and/or prohibit employment discrimination on the basis of age, color, race, gender/sex, national origin, mental or physical disability, religious affiliation or veteran status, as well as other forms of discrimination (including, in some jurisdictions, sexual preference/orientation, height, weight, and marital status), and that these laws are enforced through the courts and agencies such as the Equal Employment Opportunity Commission, Department of Labor and State Human Rights Agencies. I also realize that the Consolidated Omnibus Budget Reconciliation Act of 1985 (as amended), referred to as "COBRA", provides terminated employees the right to continue their active employee medical coverage at 102% of the full cost to insure for up to 18 months.

7.  That I am aware that, by signing this Release, I am giving up my right to sue any Releasee not only on the basis of the discrimination laws mentioned above, but also for any other claims which I may have or believe that I may have against any Releasee in connection with my employment or termination of my employment, based upon any event which occurred before I sign this Release.   I am further aware that the understanding regarding my right to sue stated in this paragraph does not apply to my right to challenge the knowing and voluntary nature of this Release as respects claims under the ADEA or the Older Worker Benefit Protection Act (OWBPA), although I understand that I have released my right to recovery under those statutes by signing this Release. Should I break this representation in this paragraph, I agree to pay all of the Company's costs and expenses (including reasonable attorneys' fees) related to the defense of any claims except for those under the ADEA and the OWBPA. I understand, however, that if I pursue a claim against the Company under the ADEA and/or the OWBPA to challenge the validity of this Release and prevail on the merits of an ADEA claim, a court has the discretion to determine whether the Company is entitled to restitution, recoupment, or set off (herinafter a "reduction") against a monetary award obtained by me in the court proceeding. A reduction can never exceed the amount I recover, or the consideration I received for signing this release, whichever is less. I also recognize that the Company may be entitled to recover costs and attorneys' fees incurred by the Company as specifically authorized under applicable law.

8.  That I am aware that I may change my mind and revoke this Release at any time during the seven days after I sign this Release, provided I do so in writing, in which

USSP Release (Revised January 2009)                         5                         ███

Confidential- Subject to Protective Order                                                    DOW0026119

case none of the provisions of this Release will have any effect.  I acknowledge I will not be entitled to receive any payment or benefits set forth in this Release until the seven day period has expired without revocation, at which time this Release shall become final and binding.

9.  That I have not filed any complaints with a court or administrative agency against any Releasee prior to the date of signing of this Release, I have recorded and received all overtime compensation due through my last pay period prior to my termination date, I have reported to the Company any and all work-related injuries incurred during employment; and I acknowledge that the Company properly provided any leave of absence because of my or a family member's health condition and I have not been subjected to any improper treatment, conduct or actions due to a request for or taking such leave.

10.  That I have not assigned or attempted to assign or give to anyone else any claim I have or believe that I may have against any Releasee.

11.  That I acknowledge and agree that if, after the termination of my employment with the Company, I become reemployed by the Company or any of its affiliates, the Company may require me to repay, as a condition of reemployment, that portion of the Severance Payment received that exceeds the amount of base salary which I would have received had I remained in the Company's employment.  The rate used in determining the amount of repayment will be the same rate that was used in calculating the Severance Payment.  For purposes of this provision, "affiliates" means any company in which the Company has an ownership interest of fifty percent or greater.

12.  That I acknowledge under the penalties for perjury, that:  (a) I have received from the Company for consideration for a period of at least 45 days an Older Worker Benefit Protection Act age and job title/job class list in a format that allows me to make a knowing, voluntary, and fully informed choice about whether to accept or reject the offer of special transition assistance benefits under this Release; and (b) I have been informed that I may, at any time during my applicable consideration and revocation period, both (i) request and obtain an updated version of this list and (ii) express any concerns I may have about the format or content of this list, and that I have availed myself of those opportunities to the extent I felt necessary to make a voluntary, knowing, and fully informed decision.

This Release does not affect my rights and obligations under the Company's standard Employee Agreement or any other secrecy, confidentiality, non-competition, or invention agreements that I have signed with the Company or under the various Company employee compensation or benefit plans and programs (except as specifically modified herein), which agreements, plans, and programs are governed by their terms.  Apart from the benefits recited in this Release, I waive any rights I have to any benefits under any severance plan offered or adopted by the Company, including but not limited to the U.S. Severance Plan.

USSP Release (Revised January 2009)                6                         ███

Confidential- Subject to Protective Order                                   DOW0026120

I agree not to disclose the terms of this Release to any person without the written consent of the Company, except to my legal, financial and tax advisors, and members of my immediate family, and any prospective or subsequent employer as respects any of my obligations under numbered paragraphs 2 to 4 immediately above who may need to be informed of these terms of this Release.

The construction, interpretation and performance of this Release shall be governed by the laws of the state in which I am working on the date of termination of my employment with the Company.

If any provision of this Release is determined to be invalid or unenforceable, the Company and I agree that such determination shall not affect the other provisions, and that all other provisions shall be enforced as if the invalid provision were not a part of this Release. Should any provision be held unenforceable for any reason, then such provision shall be enforced to the maximum extent permitted by law.

I further acknowledge that this Release contains the entire agreement between myself and the Company and cannot be modified except in writing if signed by me and the Company. Except as otherwise specifically provided for in this Release, this Release supercedes and replaces all prior agreements and understandings, written or oral, and any other employment or severance agreements or arrangements that may have been made by and between me and the Company. I represent and acknowledge that in executing this Release I have not relied upon any representation or statement not set forth herein made by any of the Releasees or any of the Releasee's agents, representatives or attorneys with regards to the subject matter of this Release, except for information contained in official plan documents.

**I understand that I have the right to consult with an attorney and the Company is advising me to consult with an attorney before signing this Release (and to the extent I desire, I have availed myself of that right), that I have at least 45 days to consider the Release before signing it, and that I may revoke the Release within seven calendar days after signing it.** For revocation to be effective, written notice must be received by the Company no later than the close of business on the seventh day after I sign this Release. I understand that this revocation can be made by delivering the written notice of revocation to the H.R. Service Center, The Dow Chemical Company, EDC, Midland, Michigan 48674, by First Class mail, by facsimile transmission (Fax No. 989-636-1693), or by hand delivery. I also understand that this Release shall not become effective or enforceable until the seven day revocation period has expired. If I sign the Release before the expiration of the 45 day period, I acknowledge that I have done so of my own choice and without coercion by the Company.

USSP Release (Revised January 2009)                    7

Confidential- Subject to Protective Order

DOW0026121

By signing this release, I state that: I have read it; I understand it and know that I am giving up important rights; I agree with everything in it; I am aware of my right to consult an attorney before signing it; and I have signed it knowingly and voluntarily; I am aware I may revoke at any time within seven days after the date of signing indicated below by giving written notice of revocation to the H.R. Service Center.

6-30-09

Date of Signing

## Participant 48

Employee Signature

## Participant 48

Employee Name Printed

ACCEPTED:
THE DOW CHEMICAL COMPANY

By: _____
Signature

**Keri Husen**
**Authorized Representative of the Company**
Print Name and Title

Date: 7-7-09

USSP Release (Revised January 2009)                    8

## TERMINATION GENERAL RELEASE

 RECEIVED

Name: Participant 50                          Employee No.: ███████ JUL 28 20..

   This Release sets forth the terms under which my employer will provide to me various special transition assistance benefits in connection with the termination of my employment[1] with The Dow Chemical Company.

   I acknowledge that the termination of my employment was or is effective on July 31, 2009.

   I further acknowledge that eligibility to receive the various special transition assistance benefits is conditioned upon my signing and not revoking this Release.

   In consideration for the transition assistance benefits described below, I release and discharge The Dow Chemical Company and any of its affiliates or subsidiary companies (collectively the "Company"), and its officers, directors, employees, shareholders, successors and assigns ("Releasees") from all claims (including claims for attorney's fees and costs), demands and causes of action, known or unknown, which I may have or claim to have against any Releasee, arising out of, or in any way relating to, my employment or termination of my employment with the Company, whether based on any act or omission to act. This includes, but is not limited to, claims of negligence, intentional misconduct, breach of contract (whether written or oral), violation of the Employee Retirement Income Security Act of 1974 (ERISA) (as amended), violation of the **Age Discrimination in Employment Act of 1967 (ADEA) (as amended)**, violation of the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) (as amended), violation of the Worker Adjustment and Retraining Act (WARN) (as amended), claims arising under any federal, state or local laws, executive orders, regulations, directives, codes, or common law prohibiting employment discrimination based on age, color, race, gender/sex, sexual preference/orientation, height, weight, marital status, national origin, mental or physical disability, religious affiliation, veteran status or any other forms of discrimination, and claims based on any other laws, executive orders, regulations, directives, codes or common law affecting relations between employers and employees, including claims growing out of the Company's termination of its employees.

   This Release does not affect any rights that I may have to file for a benefit under any state workers' compensation or unemployment compensation statute or for vested rights under ERISA-covered employee benefit plans as applicable to me on the date I sign this Release, that may arise under the ADEA, after I sign this Release, or that cannot be released by private agreement. I understand that nothing in this Release prevents me from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the EEOC, the NLRB, or any other federal, state, or local agency charged with the enforcement of employment laws, although by signing this release I am waiving and releasing any rights I may have to individual relief based on claims asserted in such charge or complaint or brought by any

---

[1] As used in this Termination General Release, "termination of employment" has the same meaning as Separation of Service defined in the summary plan description for the U.S. Severance Plan ("USSP").

Confidential- Subject to Protective Order                          DOW0026123

other person on my behalf or which include me in any class. This paragraph is not intended to limit me from instituting legal action for the purpose of enforcing this Release.

The transition assistance benefits which I will receive if I sign and do not revoke this Release in a timely manner consist of the following:

1. U. S. Severance Plan:
   a. I am eligible to receive a lump sum Severance Payment of $87,790 (less normal tax withholdings for income taxes, FICA, and any outstanding amounts I owe to the Company, including but not limited to any outstanding balance owed on Shared Appreciation Mortgage loans or other housing or relocation loans), after I leave the payroll.

   I understand that payment will not be made to me sooner than my termination date or sooner than the expiration of seven days following my signing this Release without revoking it in writing.

   b. I am eligible to receive reimbursement, up to a maximum of $300 (subject to withholding of applicable taxes), for the cost of financial counseling services provided I utilize an approved professional financial counseling service and submit a satisfactory receipt within six months following the effective date of termination of my employment by the Company.

   c. At my option, I will be provided with professional outplacement counseling services with a provider and program to be selected by the Plan Administrator based on my job level at the time of my separation from employment. The utilization of the outplacement counseling service must begin within three months of my termination date and will continue for a maximum of two to nine months, depending upon the terms of the program in which I am eligible to participate. The objective of outplacement counseling services is to assist me in pursuing a career outside the Company. I acknowledge that neither the outplacement counseling service provider nor the Company can guarantee subsequent employment. I further acknowledge that if I do not choose to use the outplacement counseling services, there is no alternative or substitute benefit.

2. Medical Coverage (does not include dental coverage)[2]:
   a. If on the effective date of my separation from employment I am eligible for coverage under The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program[3], my premium rate

---

[2] The medical coverages described in this bullet point do not apply to dental coverage.
[3] Generally, a former Employee is eligible for coverage under one of these retiree medical programs if he or she was hired prior to January 1, 2008, is at least age 50 with 10 or more years of credited service under the DEPP component ("DEPP") of the Dow Employees' Pension Plan or the UCEPP component ("UCEPP") of the Union Carbide Employees' Pension Plan (whichever is applicable). A former Employee may also be eligible if he or she was hired prior to January 1, 2008 by an employer that was authorized as a participating employer of the retiree medical program prior to January 1, 2008, and has 10 or more years of credited service under DEPP or UCEPP

Confidential- Subject to Protective Order

DOW0026124

for retiree medical coverage under the applicable retiree medical plan for 18 months following the effective date of my separation from employment will be the same premiums active employees of Dow pay (depending on your full-time or "Less-Than-Full-Time" status). Eligibility for the coverage at the active employee premium rate is subject to my continuous premium payments during the entire 18-month period. After 18 months, my cost for coverage will increase, and will be subject to the Retiree Medical Budget and the Retiree Medical Support Schedule depending on my years of Service. These rates are subject to change. All terms and conditions of the applicable retiree medical plan shall apply. **I understand that in general, eligibility for retiree medical ends when I am eligible for Medicare.** Some exceptions may apply[4]. For details, see the plan document for The Dow Chemical Company Retiree Medical Care Program or Union Carbide Corporation Retiree Medical Care Program, whichever is applicable. The Dow Chemical Company reserves the right to amend, modify, or terminate The Dow Chemical Company Retiree Medical Care Program and The Dow Chemical Company Insured Health Program at any time. Union Carbide Corporation reserves the right to amend, modify or terminate the Union Carbide Corporation Retiree Medical Care Program and the Union Carbide Corporation Insured Health Program at any time.

b. If on the effective date of my separation from employment I am not eligible for coverage under The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program, I can elect to extend medical care coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program (depending on the plan I was enrolled in prior to termination of employment) for up to three (3) years from the effective date of my separation from employment or until I am eligible for coverage under another group plan (or a Dow plan through a dual Dow career spouse), whichever occurs first. If I elect extended coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program prior to the deadline specified in the notice I will receive from Ceridian, my premium will be the same premium active employees of Dow pay (depending on my full-time or "Less-Than-Full-Time" status) during the first 18 months of extended coverage. The premium will be 102% of the full, unsubsidized cost of coverage for the remaining 18 months of extended coverage. Eligibility for the extended coverage is subject to continuous premium payments during the entire 36-month period. These rates are subject to change. The Company reserves the right to amend, modify, or terminate The

---

(whichever is applicable) with at least 60 points (age plus service), and has signed a release acceptable to the Participating Employer. See the applicable retiree medical summary plan description for eligibility details.
[4] Exceptions apply to the following:
    a.   former Employees of The Dow Chemical Company who were hired prior to January 1, 1993,
    b.   former Employees of ANGUS Chemical Company who were hired prior to January 1, 1999,
    c.   former Employees of Union Carbide Corporation who were hired prior to February 6, 2001,
    d.   former Employees of Dow AgroSciences who were hired prior to January 1, 2004.
For more information, see the Plan Document for The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program, whichever is applicable.

Confidential- Subject to Protective Order

DOW0026125

Dow Chemical Company Medical Care Program and The Dow Chemical Company Insured Health Program at any time.

I have indicated my election decision on a separate Extended Coverage Enrollment Form.

I make the following representations to the Company, each of which is an important consideration for the Company's willingness to enter into this Release with me:

1. That I have returned or will return to the Company on or before my termination date, all Company property, including, without limitation, books, records and documents, files, memoranda, credit cards, Company passes, keys, computer access codes, disk and instructional manuals, tools, computers, and other physical property, which was or may be in my possession.

2. That I agree that I will not disclose to anyone or use, directly or indirectly, after termination of my employment with the Company, any Confidential Information of the Company, except with the written consent of the Company. Confidential Information is defined herein to mean trade secrets, know-how, and other information, not generally known, relating to the Company's business which was disclosed to me or with which I became familiar during my term of employment with the Company. Confidential Information includes information relating to the Company's business practices and prospective business interests, including, but not limited to, customer lists, forecasts, business and strategic plans, financial and sales information, products, processes, equipment, manufacturing operations, marketing programs, research, product development, engineering, computer systems and software, and personnel records. This obligation shall continue until such Confidential Information becomes generally known to the public without participation on my part.

3. That I will not at any time or in any manner, and whether directly or indirectly, criticize or disparage the Company or otherwise provide information, issue statements, or take any other action intended or reasonably likely to result in material harm, embarrassment, humiliation to the Company or cause or contribute to it being held in disrepute by any person.

4. That I agree that for a period of two (2) years from the date of the termination of my employment with the Company, I will not participate or have any interest, directly or indirectly, in any business which involves an area of technology or business in which I worked for the Company during the last five (5) years of my employment at the Company and in which I was exposed to any Confidential Information (as defined in paragraph 2 immediately above) of the Company. I further agree that for such period, I will not interfere with, disrupt or attempt to disrupt the relationship, contractual or otherwise, with respect to the business carried on by the Company with any other party. The restriction of this provision shall apply to any area of the United States, or any other country of the world in which the Company is

USSP Release (Revised April 16, 2009)          4                    ███

conducting such business or may be reasonably expected to engage in any such business within that two (2) year period. Such restriction shall apply to me, as owner, partner, officer, employee, consultant or advisor. For purposes of this provision, ownership of not more than one percent of the common or preferred stock of any publicly held company whose stock is listed on any recognized stock exchange or traded over the counter shall be disregarded.

5. That the payments and other benefits (including subsidized premiums) which the Company has offered to me, as stated above, are payments and benefits to which I would not be entitled but for this Release.

6. That I realize that there are various federal, state and local laws that govern my employment relationship with the Company and/or prohibit employment discrimination on the basis of age, color, race, gender/sex, national origin, mental or physical disability, religious affiliation or veteran status, as well as other forms of discrimination (including, in some jurisdictions, sexual preference/orientation, height, weight, and marital status), and that these laws are enforced through the courts and agencies such as the Equal Employment Opportunity Commission, Department of Labor and State Human Rights Agencies.

7. That I am aware that, by signing this Release, I am giving up my right to sue any Releasee not only on the basis of the discrimination laws mentioned above, but also for any other claims which I may have or believe that I may have against any Releasee in connection with my employment or termination of my employment, based upon any event which occurred before I sign this Release. I am further aware that the understanding regarding my right to sue stated in this paragraph does not apply to my right to challenge the knowing and voluntary nature of this Release as respects claims under the ADEA or the Older Worker Benefit Protection Act (OWBPA), although I understand that I have released my right to recovery under those statutes by signing this Release. Should I break this representation in this paragraph, I agree to pay all of the Company's costs and expenses (including reasonable attorneys' fees) related to the defense of any claims except for those under the ADEA and the OWBPA. I understand, however, that if I pursue a claim against the Company under the ADEA and/or the OWBPA to challenge the validity of this Release and prevail on the merits of an ADEA claim, a court has the discretion to determine whether the Company is entitled to restitution, recoupment, or set off (herinafter a "reduction") against a monetary award obtained by me in the court proceeding. A reduction can never exceed the amount I recover, or the consideration I received for signing this release, whichever is less. I also recognize that the Company may be entitled to recover costs and attorneys' fees incurred by the Company as specifically authorized under applicable law.

8. That I am aware that I may change my mind and revoke this Release at any time during the seven days after I sign this Release, provided I do so in writing, in which case none of the provisions of this Release will have any effect. I acknowledge I will not be entitled to receive any payment or benefits set forth in this Release until

USSP Release (Revised April 16, 2009)                    5                    ████

Confidential- Subject to Protective Order                                                    DOW0026127

the seven day period has expired without revocation, at which time this Release shall become final and binding.

9. That I have not filed any complaints with a court or administrative agency against any Releasee prior to the date of signing of this Release, I have recorded and received all overtime compensation due through my last pay period prior to my termination date, I have reported to the Company any and all work-related injuries incurred during employment; and I acknowledge that the Company properly provided any leave of absence because of my or a family member's health condition and I have not been subjected to any improper treatment, conduct or actions due to a request for or taking such leave.

10. That I have not assigned or attempted to assign or give to anyone else any claim I have or believe that I may have against any Releasee.

11. That I acknowledge and agree that if, after the termination of my employment with the Company, I become reemployed by the Company or any of its affiliates, the Company may require me to repay, as a condition of reemployment, that portion of the Severance Payment received that exceeds the amount of base salary which I would have received had I remained in the Company's employment. The rate used in determining the amount of repayment will be the same rate that was used in calculating the Severance Payment. For purposes of this provision, "affiliates" means any company in which the Company has an ownership interest of fifty percent or greater.

12. That I acknowledge under the penalties for perjury, that: (a) I have received from the Company for consideration for a period of at least 45 days an Older Worker Benefit Protection Act age and job title/job class list in a format that allows me to make a knowing, voluntary, and fully informed choice about whether to accept or reject the offer of special transition assistance benefits under this Release; and (b) I have been informed that I may, at any time during my applicable consideration and revocation period, both (i) request and obtain an updated version of this list and (ii) express any concerns I may have about the format or content of this list, and that I have availed myself of those opportunities to the extent I felt necessary to make a voluntary, knowing, and fully informed decision.

This Release does not affect my rights and obligations under the Company's standard Employee Agreement or any other secrecy, confidentiality, non-competition, or invention agreements that I have signed with the Company or under the various Company employee compensation or benefit plans and programs (except as specifically modified herein), which agreements, plans, and programs are governed by their terms. Apart from the benefits recited in this Release, I waive any rights I have to any benefits under any severance plan offered or adopted by the Company, including but not limited to the U.S. Severance Plan.

I agree not to disclose the terms of this Release to any person without the written consent of the Company, except to my legal, financial and tax advisors, and members of my immediate

USSP Release (Revised April 16, 2009)          6          ██████

Confidential- Subject to Protective Order          DOW0026128

family, and any prospective or subsequent employer as respects any of my obligations under numbered paragraphs 2 to 4 immediately above who may need to be informed of these terms of this Release.

The construction, interpretation and performance of this Release shall be governed by the laws of the state in which I am working on the date of termination of my employment with the Company.

If any provision of this Release is determined to be invalid or unenforceable, the Company and I agree that such determination shall not affect the other provisions, and that all other provisions shall be enforced as if the invalid provision were not a part of this Release. Should any provision be held unenforceable for any reason, then such provision shall be enforced to the maximum extent permitted by law.

I further acknowledge that this Release contains the entire agreement between myself and the Company and cannot be modified except in writing if signed by me and the Company. Except as otherwise specifically provided for in this Release, this Release supercedes and replaces all prior agreements and understandings, written or oral, and any other employment or severance agreements or arrangements that may have been made by and between me and the Company. I represent and acknowledge that in executing this Release I have not relied upon any representation or statement not set forth herein made by any of the Releasees or any of the Releasee's agents, representatives or attorneys with regards to the subject matter of this Release, except for information contained in official plan documents.

**I understand that I have the right to consult with an attorney and the Company is advising me to consult with an attorney before signing this Release (and to the extent I desire, I have availed myself of that right), that I have at least 45 days to consider the Release before signing it, and that I may revoke the Release within seven calendar days after signing it.** For revocation to be effective, written notice must be received by the Company no later than the close of business on the seventh day after I sign this Release. I understand that this revocation can be made by delivering the written notice of revocation to Workforce Planning, The Dow Chemical Company, EDC, Midland, Michigan 48674, by First Class mail, by facsimile transmission (Fax No. 989-636-3674), or by hand delivery. I also understand that this Release shall not become effective or enforceable until the seven day revocation period has expired. If I sign the Release before the expiration of the 45 day period, I acknowledge that I have done so of my own choice and without coercion by the Company.

USSP Release (Revised April 16, 2009)                    7

By signing this release, I state that: I have read it; I understand it and know that I am giving up important rights; I agree with everything in it; I am aware of my right to consult an attorney before signing it; and I have signed it knowingly and voluntarily; I am aware I may revoke at any time within seven days after the date of signing indicated below by giving written notice of revocation to Workforce Planning.

July 24, 2009
_____
Date of Signing

## Participant 50
_____
Employee Signature

## Participant 50
Employee Name Printed

ACCEPTED:
THE DOW CHEMICAL COMPANY

By: _____
Signature

**Keri Husen**
Authorized Representative of the Company
_____
Print Name and Title

Date: ___7-28-09___

USSP Release (Revised April 16, 2009)          8

Confidential- Subject to Protective Order          DOW0026130

RECEIVED

MAR − 5 2009

### TERMINATION GENERAL RELEASE

Name: **Participant 20**                                   Employee No.: ▮▮▮▮

This Release sets forth the terms under which my employer will provide to me various special transition assistance benefits in connection with the termination of my employment[1] with The Dow Chemical Company.

I acknowledge that the termination of my employment was or is effective on March 31, 2009.

I further acknowledge that eligibility to receive the various special transition assistance benefits is conditioned upon my signing and not revoking this Release.

In consideration for the transition assistance benefits described below, I release and discharge The Dow Chemical Company and any of its affiliates or subsidiary companies (collectively the "Company"), and its officers, directors, employees, shareholders, successors and assigns ("Releasees") from all claims (including claims for attorney's fees and costs), demands and causes of action, known or unknown, which I may have or claim to have against any Releasee, arising out of, or in any way relating to, my employment or termination of my employment with the Company, whether based on any act or omission to act.  This includes, but is not limited to, claims of negligence, intentional misconduct, breach of contract (whether written or oral), violation of the Employee Retirement Income Security Act of 1974 (ERISA) (as amended), violation of the **Age Discrimination in Employment Act of 1967 (ADEA) (as amended)**, violation of the Worker Adjustment and Retraining Act (WARN) (as amended), claims arising under any federal, state or local laws, executive orders, regulations, directives, codes, or common law prohibiting employment discrimination based on age, color, race, gender/sex, sexual preference/orientation, height, weight, marital status, national origin, mental or physical disability, religious affiliation, veteran status or any other forms of discrimination, and claims based on any other laws, executive orders, regulations, directives, codes or common law affecting relations between employers and employees, including claims growing out of the Company's termination of its employees.

This Release does not affect any rights that I may have to file for a benefit under any state workers' compensation or unemployment compensation statute or for vested benefits under ERISA-covered employee benefit plans as applicable to me on the date I sign this Release, that may arise under the ADEA, after I sign this Release, or that cannot be released by private agreement.  I understand that nothing in this Release prevents me from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the EEOC, the NLRB, or any other federal, state, or local agency charged with the enforcement of employment laws, although by signing this release I am waiving and releasing any rights I may have to individual relief based on claims asserted in such charge or complaint or brought by any

---

[1] As used in this Termination General Release, "termination of employment" has the same meaning as Separation of Service defined in the summary plan description for the U.S. Severance Plan ("USSP").

▮▮▮▮

Confidential− Subject to Protective Order                                   DOW0026131

other person on my behalf or which include me in any class.  This paragraph is not intended to limit me from instituting legal action for the purpose of enforcing this Release.

The transition assistance benefits which I will receive if I sign and do not revoke this Release in a timely manner consist of the following:

1.  U. S. Severance Plan:
    a.  I am eligible to receive a lump sum Severance Payment of $35,168 (less normal tax withholdings for income taxes, FICA, and any outstanding amounts I owe to the Company, including but not limited to any outstanding balance owed on Shared Appreciation Mortgage loans or other housing or relocation loans), after I leave the payroll.

    I understand that payment will not be made to me sooner than my termination date or sooner than the expiration of seven days following my signing this Release without revoking it in writing.



    b.  I am eligible to receive reimbursement, up to a maximum of $300 (subject to withholding of applicable taxes), for the cost of financial counseling services provided I utilize an approved professional financial counseling service and submit a satisfactory receipt within six months following the effective date of termination of my employment by the Company.

    c.  At my option, I will be provided with professional outplacement counseling services with a provider and program to be sel⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱inistrator based on my job level at the time of my separa⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱t.  The utilization of the outplacement counseling serv⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱three months of my termination date and will continue for a ⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱ine months, depending upon the terms of the program in w⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱articipate.  The objective of outplacement counseling serv⸱⸱⸱⸱⸱⸱⸱⸱pursuing a career outside the Company.  I acknowledge t⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱ement counseling service provider nor the Company ⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱nent employment.  I further acknowledge that if I ⸱⸱⸱⸱⸱⸱⸱⸱⸱e outplacement counseling services, there is no ⸱⸱⸱⸱⸱⸱⸱e benefit.

2.  Medical Coverage (does not include dental coverage)[2]:
    a.  If on the effective date of my separation from employment I am eligible for coverage under The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program[3], my premium rate

---

[2] The medical coverages described in this bullet point do not apply to dental coverage.

[3] Generally, a former Employee is eligible for coverage under one of these retiree medical programs if he or she was hired prior to January 1, 2008, is at least age 50 with 10 or more years of credited service under the DEPP component ("DEPP") of the Dow Employees' Pension Plan or the UCEPP component ("UCEPP") of the Union Carbide Employees' Pension Plan (whichever is applicable).  A former Employee may also be eligible if he or she was hired prior to January 1, 2008 by an employer that was authorized as a participating employer of the retiree medical program prior to January 1, 2008, and has 10 or more years of credited service under DEPP or UCEPP

USSP Release (Revised January 2009)            2

Confidential- Subject to Protective Order

DOW0026132

for retiree medical coverage under the applicable retiree medical plan for 18 months following the effective date of my separation from employment will be the same premiums active employees of Dow pay (depending on your full-time or "Less-Than-Full-Time" status). Eligibility for the coverage at the active employee premium rate is subject to my continuous premium payments during the entire 18-month period. After 18 months, my cost for coverage will increase, and will be subject to the Retiree Medical Budget and the Retiree Medical Support Schedule depending on my years of Service. These rates are subject to change. All terms and conditions of the applicable retiree medical plan shall apply. **I understand that in general, eligibility for retiree medical ends when I am eligible for Medicare.** Some exceptions may apply[4]. For details, see the plan document for The Dow Chemical Company Retiree Medical Care Program or Union Carbide Corporation Retiree Medical Care Program, whichever is applicable. The Dow Chemical Company reserves the right to amend, modify, or terminate The Dow Chemical Company Retiree Medical Care Program and The Dow Chemical Company Insured Health Program at any time. Union Carbide Corporation reserves the right to amend, modify or terminate the Union Carbide Corporation Retiree Medical Care Program and the Union Carbide Corporation Insured Health Program at any time.

b. If on the effective date of my separation from employment I am not eligible for coverage under The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program, I can elect to extend medical care coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program (depending on the plan I was enrolled in prior to termination of employment) for up to three (3) years from the effective date of my separation from employment or until I am eligible for coverage under another group plan (or a Dow plan through a dual Dow career spouse), whichever occurs first. If I elect extended coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program prior to the deadline specified in the notice I will receive from Ceridian, my premium will be the same premium active employees of Dow pay (depending on my full-time or "Less-Than-Full-Time" status) during the first 18 months of extended coverage. The premium will be 102% of the full, unsubsidized cost of coverage for the remaining 18 months of extended coverage. Eligibility for the extended coverage is subject to continuous premium payments during the entire 36-month period. These rates are subject to change. The Company reserves the right to amend, modify, or terminate The

---

(whichever is applicable) with at least 60 points (age plus service), and has signed a release acceptable to the Participating Employer. See the applicable retiree medical summary plan description for eligibility details.
[4] Exceptions apply to the following:

    a.  former Employees of The Dow Chemical Company who were hired prior to January 1, 1993,
    b.  former Employees of ANGUS Chemical Company who were hired prior to January 1, 1999,
    c.  former Employees of Union Carbide Corporation who were hired prior to February 6, 2001,
    d.  former Employees of Dow AgroSciences who were hired prior to January 1, 2004.

For more information, see the Plan Document for The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program, whichever is applicable.

USSP Release (Revised January 2009)          3

Confidential- Subject to Protective Order                                      DOW0026133

Dow Chemical Company Medical Care Program and The Dow Chemical Company Insured Health Program at any time.

I have indicated my election decision on a separate Extended Coverage Enrollment Form.

I make the following representations to the Company, each of which is an important consideration for the Company's willingness to enter into this Release with me:

1. That I have returned or will return to the Company on or before my termination date, all Company property, including, without limitation, books, records and documents, files, memoranda, credit cards, Company passes, keys, computer access codes, disk and instructional manuals, tools, computers, and other physical property, which was or may be in my possession.

2. That I agree that I will not disclose to anyone or use, directly or indirectly, after termination of my employment with the Company, any Confidential Information of the Company, except with the written consent of the Company. Confidential Information is defined herein to mean trade secrets, know-how, and other information, not generally known, relating to the Company's business which was disclosed to me or with which I became familiar during my term of employment with the Company. Confidential Information includes information relating to the Company's business practices and prospective business interests, including, but not limited to, customer lists, forecasts, business and strategic plans, financial and sales information, products, processes, equipment, manufacturing operations, marketing programs, research, product development, engineering, computer systems and software, and personnel records. This obligation shall continue until such Confidential Information becomes generally known to the public without participation on my part.

3. That I will not at any time or in any manner, and whether directly or indirectly, criticize or disparage the Company or otherwise provide information, issue statements, or take any other action intended or reasonably likely to result in material harm, embarrassment, humiliation to the Company or cause or contribute to it being held in disrepute by any person.

4. That I agree that for a period of two (2) years from the date of the termination of my employment with the Company, I will not participate or have any interest, directly or indirectly, in any business which involves an area of technology or business in which I worked for the Company during the last five (5) years of my employment at the Company and in which I was exposed to any Confidential Information (as defined in paragraph 2 immediately above) of the Company. I further agree that for such period, I will not interfere with, disrupt or attempt to disrupt the relationship, contractual or otherwise, with respect to the business carried on by the Company with any other party. The restriction of this provision shall apply to any area of the United States, or any other country of the world in which the Company is conducting such business or

USSP Release (Revised January 2009)                  4

Confidential- Subject to Protective Order                  DOW0026134

may be reasonably expected to engage in any such business within that two (2) year period. Such restriction shall apply to me, as owner, partner, officer, employee, consultant or advisor. For purposes of this provision, ownership of not more than one percent of the common or preferred stock of any publicly held company whose stock is listed on any recognized stock exchange or traded over the counter shall be disregarded.

5.  That the payments and other benefits (including subsidized premiums) which the Company has offered to me, as stated above, are payments and benefits to which I would not be entitled but for this Release.

6.  That I realize that there are various federal, state and local laws that govern my employment relationship with the Company and/or prohibit employment discrimination on the basis of age, color, race, gender/sex, national origin, mental or physical disability, religious affiliation or veteran status, as well as other forms of discrimination (including, in some jurisdictions, sexual preference/orientation, height, weight, and marital status), and that these laws are enforced through the courts and agencies such as the Equal Employment Opportunity Commission, Department of Labor and State Human Rights Agencies. I also realize that the Consolidated Omnibus Budget Reconciliation Act of 1985 (as amended), referred to as "COBRA", provides terminated employees the right to continue their active employee medical coverage at 102% of the full cost to insure for up to 18 months.

7.  That I am aware that, by signing this Release, I am giving up my right to sue any Releasee not only on the basis of the discrimination laws mentioned above, but also for any other claims which I may have or believe that I may have against any Releasee in connection with my employment or termination of my employment, based upon any event which occurred before I sign this Release.   I am further aware that the understanding regarding my right to sue stated in this paragraph does not apply to my right to challenge the knowing and voluntary nature of this Release as respects claims under the ADEA or the Older Worker Benefit Protection Act (OWBPA), although I understand that I have released my right to recovery under those statutes by signing this Release. Should I break this representation in this paragraph, I agree to pay all of the Company's costs and expenses (including reasonable attorneys' fees) related to the defense of any claims except for those under the ADEA and the OWBPA. I understand, however, that if I pursue a claim against the Company under the ADEA and/or the OWBPA to challenge the validity of this Release and prevail on the merits of an ADEA claim, a court has the discretion to determine whether the Company is entitled to restitution, recoupment, or set off (herinafter a "reduction") against a monetary award obtained by me in the court proceeding. A reduction can never exceed the amount I recover, or the consideration I received for signing this release, whichever is less. I also recognize that the Company may be entitled to recover costs and attorneys' fees incurred by the Company as specifically authorized under applicable law.

8.  That I am aware that I may change my mind and revoke this Release at any time during the seven days after I sign this Release, provided I do so in writing, in which

USSP Release (Revised January 2009)                    5

Confidential- Subject to Protective Order

DOW0026135

case none of the provisions of this Release will have any effect. I acknowledge I will not be entitled to receive any payment or benefits set forth in this Release until the seven day period has expired without revocation, at which time this Release shall become final and binding.

9. That I have not filed any complaints with a court or administrative agency against any Releasee prior to the date of signing of this Release, I have recorded and received all overtime compensation due through my last pay period prior to my termination date, I have reported to the Company any and all work-related injuries incurred during employment; and I acknowledge that the Company properly provided any leave of absence because of my or a family member's health condition and I have not been subjected to any improper treatment, conduct or actions due to a request for or taking such leave.

10. That I have not assigned or attempted to assign or give to anyone else any claim I have or believe that I may have against any Releasee.

11. That I acknowledge and agree that if, after the termination of my employment with the Company, I become reemployed by the Company or any of its affiliates, the Company may require me to repay, as a condition of reemployment, that portion of the Severance Payment received that exceeds the amount of base salary which I would have received had I remained in the Company's employment. The rate used in determining the amount of repayment will be the same rate that was used in calculating the Severance Payment. For purposes of this provision, "affiliates" means any company in which the Company has an ownership interest of fifty percent or greater.

12. That I acknowledge under the penalties for perjury, that: (a) I have received from the Company for consideration for a period of at least 45 days an Older Worker Benefit Protection Act age and job title/job class list in a format that allows me to make a knowing, voluntary, and fully informed choice about whether to accept or reject the offer of special transition assistance benefits under this Release; and (b) I have been informed that I may, at any time during my applicable consideration and revocation period, both (i) request and obtain an updated version of this list and (ii) express any concerns I may have about the format or content of this list, and that I have availed myself of those opportunities to the extent I felt necessary to make a voluntary, knowing, and fully informed decision.

This Release does not affect my rights and obligations under the Company's standard Employee Agreement or any other secrecy, confidentiality, non-competition, or invention agreements that I have signed with the Company or under the various Company employee compensation or benefit plans and programs (except as specifically modified herein), which agreements, plans, and programs are governed by their terms. Apart from the benefits recited in this Release, I waive any rights I have to any benefits under any severance plan offered or adopted by the Company, including but not limited to the U.S. Severance Plan.

Confidential- Subject to Protective Order                                        DOW0026136

I agree not to disclose the terms of this Release to any person without the written consent of the Company, except to my legal, financial and tax advisors, and members of my immediate family, and any prospective or subsequent employer as respects any of my obligations under numbered paragraphs 2 to 4 immediately above who may need to be informed of these terms of this Release.

The construction, interpretation and performance of this Release shall be governed by the laws of the state in which I am working on the date of termination of my employment with the Company.

If any provision of this Release is determined to be invalid or unenforceable, the Company and I agree that such determination shall not affect the other provisions, and that all other provisions shall be enforced as if the invalid provision were not a part of this Release. Should any provision be held unenforceable for any reason, then such provision shall be enforced to the maximum extent permitted by law.

I further acknowledge that this Release contains the entire agreement between myself and the Company and cannot be modified except in writing if signed by me and the Company. Except as otherwise specifically provided for in this Release, this Release supercedes and replaces all prior agreements and understandings, written or oral, and any other employment or severance agreements or arrangements that may have been made by and between me and the Company. I represent and acknowledge that in executing this Release I have not relied upon any representation or statement not set forth herein made by any of the Releasees or any of the Releasee's agents, representatives or attorneys with regards to the subject matter of this Release, except for information contained in official plan documents.

**I understand that I have the right to consult with an attorney and the Company is advising me to consult with an attorney before signing this Release (and to the extent I desire, I have availed myself of that right), that I have at least 45 days to consider the Release before signing it, and that I may revoke the Release within seven calendar days after signing it.** For revocation to be effective, written notice must be received by the Company no later than the close of business on the seventh day after I sign this Release. I understand that this revocation can be made by delivering the written notice of revocation to the H.R. Service Center, The Dow Chemical Company, EDC, Midland, Michigan 48674, by First Class mail, by facsimile transmission (Fax No. 989-636-1693), or by hand delivery. I also understand that this Release shall not become effective or enforceable until the seven day revocation period has expired. If I sign the Release before the expiration of the 45 day period, I acknowledge that I have done so of my own choice and without coercion by the Company.

USSP Release (Revised January 2009)                7

Confidential- Subject to Protective Order                                         DOW0026137

**By signing this release, I state that: I have read it; I understand it and know that I am giving up important rights; I agree with everything in it; I am aware of my right to consult an attorney before signing it; and I have signed it knowingly and voluntarily; I am aware I may revoke at any time within seven days after the date of signing indicated below by giving written notice of revocation to the H.R. Service Center.**

_3/11/09_

Date of Signing

# Participant 20

Employee Signature

# Participant 20

Employee Name Printed

ACCEPTED:
THE DOW CHEMICAL COMPANY

By: _Alicia S. Dow_

Signature

_Alicia S. Dow_

_HR Service Rep_

Print Name and Title

Date: _3/5/09_

Confidential- Subject to Protective Order                                    DOW0026138



## TERMINATION GENERAL RELEASE

Name: **Participant 53**                                    Employee No.: ████

     This Release sets forth the terms under which my employer will provide to me various special transition assistance benefits in connection with the termination of my employment[1] with The Dow Chemical Company.

     I acknowledge that the termination of my employment was or is effective on March 31, 2009.

     I further acknowledge that eligibility to receive the various special transition assistance benefits is conditioned upon my signing and not revoking this Release.

     In consideration for the transition assistance benefits described below, I release and discharge The Dow Chemical Company and any of its affiliates or subsidiary companies (collectively the "Company"), and its officers, directors, employees, shareholders, successors and assigns ("Releasees") from all claims (including claims for attorney's fees and costs), demands and causes of action, known or unknown, which I may have or claim to have against any Releasee, arising out of, or in any way relating to, my employment or termination of my employment with the Company, whether based on any act or omission to act. This includes, but is not limited to, claims of negligence, intentional misconduct, breach of contract (whether written or oral), violation of the Employee Retirement Income Security Act of 1974 (ERISA) (as amended), violation of the **Age Discrimination in Employment Act of 1967 (ADEA) (as amended)**, violation of the Worker Adjustment and Retraining Act (WARN) (as amended), claims arising under any federal, state or local laws, executive orders, regulations, directives, codes, or common law prohibiting employment discrimination based on age, color, race, gender/sex, sexual preference/orientation, height, weight, marital status, national origin, mental or physical disability, religious affiliation, veteran status or any other forms of discrimination, and claims based on any other laws, executive orders, regulations, directives, codes or common law affecting relations between employers and employees, including claims growing out of the Company's termination of its employees.

     This Release does not affect any rights that I may have to file for a benefit under any state workers' compensation or unemployment compensation statute or for vested rights under ERISA-covered employee benefit plans as applicable to me on the date I sign this Release, that may arise under the ADEA, after I sign this Release, or that cannot be released by private agreement. I understand that nothing in this Release prevents me from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the EEOC, the NLRB, or any other federal, state, or local agency charged with the enforcement of employment laws, although by signing this release I am waiving and releasing any rights I may have to individual relief based on claims asserted in such charge or complaint or brought by any

---

[1] As used in this Termination General Release, "termination of employment" has the same meaning as Separation of Service defined in the summary plan description for the U.S. Severance Plan ("USSP").

USSP Release (Revised January 2009)                    1                    ████

Confidential- Subject to Protective Order                                    DOW0026139

other person on my behalf or which include me in any class. This paragraph is not intended to limit me from instituting legal action for the purpose of enforcing this Release.

The transition assistance benefits which I will receive if I sign and do not revoke this Release in a timely manner consist of the following:

1. U. S. Severance Plan:
   a. I am eligible to receive a lump sum Severance Payment of $135,547 (less normal tax withholdings for income taxes, FICA, and any outstanding amounts I owe to the Company, including but not limited to any outstanding balance owed on Shared Appreciation Mortgage loans or other housing or relocation loans), after I leave the payroll.

   I understand that payment will ~~date or sooner than the expirati~~ ... on
   Release without revoking it in ...

   *(handwritten:)* T = 3\31\09
   S = 3\31\09
   7day = 4\7\09
   ROI = 5\1\09

   b. I am eligible to receive reimbur ... withholding of applicable taxes ... provided I utilize an approved p ... submit a satisfactory receipt wit ... termination of my employment

   *(handwritten in left margin:)* 4\7\09   4\20\09   CB   c\o

   At my option, I will be provided ... services with a provider and pro ... based on my job level at the tim ... utilization of the outplacement c ... onths of my termination date and will c ... hs, depending upon the terms of the ~~program in which I am eligible~~ to participate. The objective of outplacement counseling services is to assist me in pursuing a career outside the Company. I acknowledge that neither the outplacement counseling service provider nor the Company can guarantee subsequent employment. I further acknowledge that if I do not choose to use the outplacement counseling services, there is no alternative or substitute benefit.

2. Medical Coverage (does not include dental coverage)[2]:
   a. If on the effective date of my separation from employment I am eligible for coverage under The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program[3], my premium rate

---

[2] The medical coverages described in this bullet point do not apply to dental coverage.
[3] Generally, a former Employee is eligible for coverage under one of these retiree medical programs if he or she was hired prior to January 1, 2008, is at least age 50 with 10 or more years of credited service under the DEPP component ("DEPP") of the Dow Employees' Pension Plan or the UCEPP component ("UCEPP") of the Union Carbide Employees' Pension Plan (whichever is applicable). A former Employee may also be eligible if he or she was hired prior to January 1, 2008 by an employer that was authorized as a participating employer of the retiree medical program prior to January 1, 2008, and has 10 or more years of credited service under DEPP or UCEPP

USSP Release (Revised January 2009)                    2

Confidential- Subject to Protective Order                    DOW0026140

for retiree medical coverage under the applicable retiree medical plan for 18 months following the effective date of my separation from employment will be the same premiums active employees of Dow pay (depending on your full-time or "Less-Than-Full-Time" status). Eligibility for the coverage at the active employee premium rate is subject to my continuous premium payments during the entire 18-month period. After 18 months, my cost for coverage will increase, and will be subject to the Retiree Medical Budget and the Retiree Medical Support Schedule depending on my years of Service. These rates are subject to change. All terms and conditions of the applicable retiree medical plan shall apply. **I understand that in general, eligibility for retiree medical ends when I am eligible for Medicare.** Some exceptions may apply[4]. For details, see the plan document for The Dow Chemical Company Retiree Medical Care Program or Union Carbide Corporation Retiree Medical Care Program, whichever is applicable. The Dow Chemical Company reserves the right to amend, modify, or terminate The Dow Chemical Company Retiree Medical Care Program and The Dow Chemical Company Insured Health Program at any time. Union Carbide Corporation reserves the right to amend, modify or terminate the Union Carbide Corporation Retiree Medical Care Program and the Union Carbide Corporation Insured Health Program at any time.

b.  If on the effective date of my separation from employment I am not eligible for coverage under The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program, I can elect to extend medical care coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program (depending on the plan I was enrolled in prior to termination of employment) for up to three (3) years from the effective date of my separation from employment or until I am eligible for coverage under another group plan (or a Dow plan through a dual Dow career spouse), whichever occurs first. If I elect extended coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program prior to the deadline specified in the notice I will receive from Ceridian, my premium will be the same premium active employees of Dow pay (depending on my full-time or "Less-Than-Full-Time" status) during the first 18 months of extended coverage. The premium will be 102% of the full, unsubsidized cost of coverage for the remaining 18 months of extended coverage. Eligibility for the extended coverage is subject to continuous premium payments during the entire 36-month period. These rates are subject to change. The Company reserves the right to amend, modify, or terminate The

---

(whichever is applicable) with at least 60 points (age plus service), and has signed a release acceptable to the Participating Employer. See the applicable retiree medical summary plan description for eligibility details.
[4] Exceptions apply to the following:

    a.  former Employees of The Dow Chemical Company who were hired prior to January 1, 1993,
    b.  former Employees of ANGUS Chemical Company who were hired prior to January 1, 1999,
    c.  former Employees of Union Carbide Corporation who were hired prior to February 6, 2001,
    d.  former Employees of Dow AgroSciences who were hired prior to January 1, 2004.

For more information, see the Plan Document for The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program, whichever is applicable.

Confidential- Subject to Protective Order                                                    DOW0026141

Dow Chemical Company Medical Care Program and The Dow Chemical Company Insured Health Program at any time.

I have indicated my election decision on a separate Extended Coverage Enrollment Form.

I make the following representations to the Company, each of which is an important consideration for the Company's willingness to enter into this Release with me:

1.  That I have returned or will return to the Company on or before my termination date, all Company property, including, without limitation, books, records and documents, files, memoranda, credit cards, Company passes, keys, computer access codes, disk and instructional manuals, tools, computers, and other physical property, which was or may be in my possession.

2.  That I agree that I will not disclose to anyone or use, directly or indirectly, after termination of my employment with the Company, any Confidential Information of the Company, except with the written consent of the Company. Confidential Information is defined herein to mean trade secrets, know-how, and other information, not generally known, relating to the Company's business which was disclosed to me or with which I became familiar during my term of employment with the Company. Confidential Information includes information relating to the Company's business practices and prospective business interests, including, but not limited to, customer lists, forecasts, business and strategic plans, financial and sales information, products, processes, equipment, manufacturing operations, marketing programs, research, product development, engineering, computer systems and software, and personnel records. This obligation shall continue until such Confidential Information becomes generally known to the public without participation on my part.

3.  That I will not at any time or in any manner, and whether directly or indirectly, criticize or disparage the Company or otherwise provide information, issue statements, or take any other action intended or reasonably likely to result in material harm, embarrassment, humiliation to the Company or cause or contribute to it being held in disrepute by any person.

4.  That I agree that for a period of two (2) years from the date of the termination of my employment with the Company, I will not participate or have any interest, directly or indirectly, in any business which involves an area of technology or business in which I worked for the Company during the last five (5) years of my employment at the Company and in which I was exposed to any Confidential Information (as defined in paragraph 2 immediately above) of the Company. I further agree that for such period, I will not interfere with, disrupt or attempt to disrupt the relationship, contractual or otherwise, with respect to the business carried on by the Company with any other party. The restriction of this provision shall apply to any area of the United States, or any other country of the world in which the Company is conducting such business or

USSP Release (Revised January 2009)                                    4

Confidential- Subject to Protective Order                                                          DOW0026142

may be reasonably expected to engage in any such business within that two (2) year period. Such restriction shall apply to me, as owner, partner, officer, employee, consultant or advisor. For purposes of this provision, ownership of not more than one percent of the common or preferred stock of any publicly held company whose stock is listed on any recognized stock exchange or traded over the counter shall be disregarded.

5. That the payments and other benefits (including subsidized premiums) which the Company has offered to me, as stated above, are payments and benefits to which I would not be entitled but for this Release.

6. That I realize that there are various federal, state and local laws that govern my employment relationship with the Company and/or prohibit employment discrimination on the basis of age, color, race, gender/sex, national origin, mental or physical disability, religious affiliation or veteran status, as well as other forms of discrimination (including, in some jurisdictions, sexual preference/orientation, height, weight, and marital status), and that these laws are enforced through the courts and agencies such as the Equal Employment Opportunity Commission, Department of Labor and State Human Rights Agencies. I also realize that the Consolidated Omnibus Budget Reconciliation Act of 1985 (as amended), referred to as "COBRA", provides terminated employees the right to continue their active employee medical coverage at 102% of the full cost to insure for up to 18 months.

7. That I am aware that, by signing this Release, I am giving up my right to sue any Releasee not only on the basis of the discrimination laws mentioned above, but also for any other claims which I may have or believe that I may have against any Releasee in connection with my employment or termination of my employment, based upon any event which occurred before I sign this Release.   I am further aware that the understanding regarding my right to sue stated in this paragraph does not apply to my right to challenge the knowing and voluntary nature of this Release as respects claims under the ADEA or the Older Worker Benefit Protection Act (OWBPA), although I understand that I have released my right to recovery under those statutes by signing this Release. Should I break this representation in this paragraph, I agree to pay all of the Company's costs and expenses (including reasonable attorneys' fees) related to the defense of any claims except for those under the ADEA and the OWBPA. I understand, however, that if I pursue a claim against the Company under the ADEA and/or the OWBPA to challenge the validity of this Release and prevail on the merits of an ADEA claim, a court has the discretion to determine whether the Company is entitled to restitution, recoupment, or set off (herinafter a "reduction") against a monetary award obtained by me in the court proceeding. A reduction can never exceed the amount I recover, or the consideration I received for signing this release, whichever is less. I also recognize that the Company may be entitled to recover costs and attorneys' fees incurred by the Company as specifically authorized under applicable law.

8. That I am aware that I may change my mind and revoke this Release at any time during the seven days after I sign this Release, provided I do so in writing, in which

Confidential- Subject to Protective Order

case none of the provisions of this Release will have any effect. I acknowledge I will not be entitled to receive any payment or benefits set forth in this Release until the seven day period has expired without revocation, at which time this Release shall become final and binding.

9. That I have not filed any complaints with a court or administrative agency against any Releasee prior to the date of signing of this Release, I have recorded and received all overtime compensation due through my last pay period prior to my termination date, I have reported to the Company any and all work-related injuries incurred during employment; and I acknowledge that the Company properly provided any leave of absence because of my or a family member's health condition and I have not been subjected to any improper treatment, conduct or actions due to a request for or taking such leave.

10. That I have not assigned or attempted to assign or give to anyone else any claim I have or believe that I may have against any Releasee.

11. That I acknowledge and agree that if, after the termination of my employment with the Company, I become reemployed by the Company or any of its affiliates, the Company may require me to repay, as a condition of reemployment, that portion of the Severance Payment received that exceeds the amount of base salary which I would have received had I remained in the Company's employment. The rate used in determining the amount of repayment will be the same rate that was used in calculating the Severance Payment. For purposes of this provision, "affiliates" means any company in which the Company has an ownership interest of fifty percent or greater.

12. That I acknowledge under the penalties for perjury, that: (a) I have received from the Company for consideration for a period of at least 45 days an Older Worker Benefit Protection Act age and job title/job class list in a format that allows me to make a knowing, voluntary, and fully informed choice about whether to accept or reject the offer of special transition assistance benefits under this Release; and (b) I have been informed that I may, at any time during my applicable consideration and revocation period, both (i) request and obtain an updated version of this list and (ii) express any concerns I may have about the format or content of this list, and that I have availed myself of those opportunities to the extent I felt necessary to make a voluntary, knowing, and fully informed decision.

This Release does not affect my rights and obligations under the Company's standard Employee Agreement or any other secrecy, confidentiality, non-competition, or invention agreements that I have signed with the Company or under the various Company employee compensation or benefit plans and programs (except as specifically modified herein), which agreements, plans, and programs are governed by their terms. Apart from the benefits recited in this Release, I waive any rights I have to any benefits under any severance plan offered or adopted by the Company, including but not limited to the U.S. Severance Plan.

USSP Release (Revised January 2009)                6

Confidential- Subject to Protective Order                                                           DOW0026144

I agree not to disclose the terms of this Release to any person without the written consent of the Company, except to my legal, financial and tax advisors, and members of my immediate family, and any prospective or subsequent employer as respects any of my obligations under numbered paragraphs 2 to 4 immediately above who may need to be informed of these terms of this Release.

The construction, interpretation and performance of this Release shall be governed by the laws of the state in which I am working on the date of termination of my employment with the Company.

If any provision of this Release is determined to be invalid or unenforceable, the Company and I agree that such determination shall not affect the other provisions, and that all other provisions shall be enforced as if the invalid provision were not a part of this Release. Should any provision be held unenforceable for any reason, then such provision shall be enforced to the maximum extent permitted by law.

I further acknowledge that this Release contains the entire agreement between myself and the Company and cannot be modified except in writing if signed by me and the Company. Except as otherwise specifically provided for in this Release, this Release supercedes and replaces all prior agreements and understandings, written or oral, and any other employment or severance agreements or arrangements that may have been made by and between me and the Company. I represent and acknowledge that in executing this Release I have not relied upon any representation or statement not set forth herein made by any of the Releasees or any of the Releasee's agents, representatives or attorneys with regards to the subject matter of this Release, except for information contained in official plan documents.

**I understand that I have the right to consult with an attorney and the Company is advising me to consult with an attorney before signing this Release (and to the extent I desire, I have availed myself of that right), that I have at least 45 days to consider the Release before signing it, and that I may revoke the Release within seven calendar days after signing it.** For revocation to be effective, written notice must be received by the Company no later than the close of business on the seventh day after I sign this Release. I understand that this revocation can be made by delivering the written notice of revocation to the H.R. Service Center, The Dow Chemical Company, EDC, Midland, Michigan 48674, by First Class mail, by facsimile transmission (Fax No. 989-636-1693), or by hand delivery. I also understand that this Release shall not become effective or enforceable until the seven day revocation period has expired. If I sign the Release before the expiration of the 45 day period, I acknowledge that I have done so of my own choice and without coercion by the Company.

Confidential- Subject to Protective Order

DOW0026145

By signing this release, I state that: I have read it; I understand it and know that I am giving up important rights; I agree with everything in it; I am aware of my right to consult an attorney before signing it; and I have signed it knowingly and voluntarily; I am aware I may revoke at any time within seven days after the date of signing indicated below by giving written notice of revocation to the H.R. Service Center.

March 31, 2009
Date of Signing

## Participant 53

Employee Signature

## Participant 53

Employee Name Printed

ACCEPTED:
THE DOW CHEMICAL COMPANY

By: _Keri Husen_
Signature

_Keri Husen HRService Center Agent_
Print Name and Title

Date: _4-6-09_

Confidential- Subject to Protective Order                                        DOW0026146

## TERMINATION GENERAL RELEASE



RECEIVED
APR 10 2009

Name: Participant 43                           Employee No.: ██████

    This Release sets forth the terms under which my employer will provide to me various special transition assistance benefits in connection with the termination of my employment[1] with The Dow Chemical Company.

    I acknowledge that the termination of my employment was or is effective on February 28, 2009.

    I further acknowledge that eligibility to receive the various special transition assistance benefits is conditioned upon my signing and not revoking this Release.

    In consideration for the transition assistance benefits described below, I release and discharge The Dow Chemical Company and any of its affiliates or subsidiary companies (collectively the "Company"), and its officers, directors, employees, shareholders, successors and assigns ("Releasees") from all claims (including claims for attorney's fees and costs), demands and causes of action, known or unknown, which I may have or claim to have against any Releasee, arising out of, or in any way relating to, my employment or termination of my employment with the Company, whether based on any act or omission to act. This includes, but is not limited to, claims of negligence, intentional misconduct, breach of contract (whether written or oral), violation of the Employee Retirement Income Security Act of 1974 (ERISA) (as amended), violation of the **Age Discrimination in Employment Act of 1967 (ADEA) (as amended)**, violation of the Worker Adjustment and Retraining Act (WARN) (as amended), claims arising under any federal, state or local laws, executive orders, regulations, directives, codes, or common law prohibiting employment discrimination based on age, color, race, gender/sex, sexual preference/orientation, height, weight, marital status, national origin, mental or physical disability, religious affiliation, veteran status or any other forms of discrimination, and claims based on any other laws, executive orders, regulations, directives, codes or common law affecting relations between employers and employees, including claims growing out of the Company's termination of its employees.

    This Release does not affect any rights that I may have to file for a benefit under any state workers' compensation or unemployment compensation statute or for vested rights under ERISA-covered employee benefit plans as applicable to me on the date I sign this Release, that may arise under the ADEA, after I sign this Release, or that cannot be released by private agreement. I understand that nothing in this Release prevents me from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the EEOC, the NLRB, or any other federal, state, or local agency charged with the enforcement of employment laws, although by signing this release I am waiving and releasing any rights I may have to individual relief based on claims asserted in such charge or complaint or brought by any

---

[1] As used in this Termination General Release, "termination of employment" has the same meaning as Separation of Service defined in the summary plan description for the U.S. Severance Plan ("USSP").

USSP Release (Revised January 2009)                    1                    

Confidential– Subject to Protective Order                                    DOW0026147

other person on my behalf or which include me in any class. This paragraph is not intended to limit me from instituting legal action for the purpose of enforcing this Release.

The transition assistance benefits which I will receive if I sign and do not revoke this Release in a timely manner consist of the following:

1.  U. S. Severance Plan:

    a.  I am eligible to receive a lump sum Severance Payment of $57,962 (less normal tax withholdings for income taxes, FICA, and any outstanding amounts I owe to the Company, including but not limited to any outstanding balance owed on Shared Appreciation Mortgage loans or other housing or relocation loans), after I leave the payroll.

        I understand that payment will not be made to me sooner than my termination date or sooner than the expiration of seven days following my signing this Release without revoking it in writing.

    b.  I am eligible to receive reimbursement, up to a maximum of $300 (subject to withholding of applicable taxes), for the cost of financial counseling services provided I utilize an approved professional financial counseling service and submit a satisfactory receipt within six months following the effective date of termination of my employment by the Company.

    c.  At my option, I will be provided wit
        services with a provider and progra        T       2-28 09
        based on my job level at the time of
        utilization of my termination date and will con        S       4-6-09
        depending upon the terms of the pr
        The objective of outplacement cou        7 Day       4-13 09
        career outside the Company.  I ack
        counseling service provider nor the
        employment.  I further acknowledg        ROI       4-1-09
        outplacement counseling services,

2.  Medical Coverage (does not include d

    a.  If on the effective date of my sepa
        coverage under The Dow Chemica
        the Union Carbide Corporation Retiree Medical Care Program', my premium rate

---

[2] The medical coverages described in this bullet point do not apply to dental coverage.

[3] Generally, a former Employee is eligible for coverage under one of these retiree medical programs if he or she was hired prior to January 1, 2008, is at least age 50 with 10 or more years of credited service under the DEPP component ("DEPP") of the Dow Employees' Pension Plan or the UCEPP component ("UCEPP") of the Union Carbide Employees' Pension Plan (whichever is applicable).  A former Employee may also be eligible if he or she was hired prior to January 1, 2008 by an employer that was authorized as a participating employer of the retiree medical program prior to January 1, 2008, and has 10 or more years of credited service under DEPP or UCEPP

USSP Release (Revised January 2009)          2

Confidential- Subject to Protective Order          DOW0026148

for retiree medical coverage under the applicable retiree medical plan for 18 months following the effective date of my separation from employment will be the same premiums active employees of Dow pay (depending on your full-time or "Less-Than-Full-Time" status). Eligibility for the coverage at the active employee premium rate is subject to my continuous premium payments during the entire 18-month period. After 18 months, my cost for coverage will increase, and will be subject to the Retiree Medical Budget and the Retiree Medical Support Schedule depending on my years of Service. These rates are subject to change. All terms and conditions of the applicable retiree medical plan shall apply. **I understand that in general, eligibility for retiree medical ends when I am eligible for Medicare.** Some exceptions may apply[4]. For details, see the plan document for The Dow Chemical Company Retiree Medical Care Program or Union Carbide Corporation Retiree Medical Care Program, whichever is applicable. The Dow Chemical Company reserves the right to amend, modify, or terminate The Dow Chemical Company Retiree Medical Care Program and The Dow Chemical Company Insured Health Program at any time. Union Carbide Corporation reserves the right to amend, modify or terminate the Union Carbide Corporation Retiree Medical Care Program and the Union Carbide Corporation Insured Health Program at any time.

b. If on the effective date of my separation from employment I am not eligible for coverage under The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program, I can elect to extend medical care coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program (depending on the plan I was enrolled in prior to termination of employment) for up to three (3) years from the effective date of my separation from employment or until I am eligible for coverage under another group plan (or a Dow plan through a dual Dow career spouse), whichever occurs first. If I elect extended coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program prior to the deadline specified in the notice I will receive from Ceridian, my premium will be the same premium active employees of Dow pay (depending on my full-time or "Less-Than-Full-Time" status) during the first 18 months of extended coverage. The premium will be 102% of the full, unsubsidized cost of coverage for the remaining 18 months of extended coverage. Eligibility for the extended coverage is subject to continuous premium payments during the entire 36-month period. These rates are subject to change. The Company reserves the right to amend, modify, or terminate The

---

(whichever is applicable) with at least 60 points (age plus service), and has signed a release acceptable to the Participating Employer. See the applicable retiree medical summary plan description for eligibility details.
[4] Exceptions apply to the following:

    a.  former Employees of The Dow Chemical Company who were hired prior to January 1, 1993,
    b.  former Employees of ANGUS Chemical Company who were hired prior to January 1, 1999,
    c.  former Employees of Union Carbide Corporation who were hired prior to February 6, 2001,
    d.  former Employees of Dow AgroSciences who were hired prior to January 1, 2004.

For more information, see the Plan Document for The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program, whichever is applicable.

████

Confidential- Subject to Protective Order                                    DOW0026149

Dow Chemical Company Medical Care Program and The Dow Chemical Company Insured Health Program at any time.

I have indicated my election decision on a separate Extended Coverage Enrollment Form.

I make the following representations to the Company, each of which is an important consideration for the Company's willingness to enter into this Release with me:

1.  That I have returned or will return to the Company on or before my termination date, all Company property, including, without limitation, books, records and documents, files, memoranda, credit cards, Company passes, keys, computer access codes, disk and instructional manuals, tools, computers, and other physical property, which was or may be in my possession.

2.  That I agree that I will not disclose to anyone or use, directly or indirectly, after termination of my employment with the Company, any Confidential Information of the Company, except with the written consent of the Company.  Confidential Information is defined herein to mean trade secrets, know-how, and other information, not generally known, relating to the Company's business which was disclosed to me or with which I became familiar during my term of employment with the Company.  Confidential Information includes information relating to the Company's business practices and prospective business interests, including, but not limited to, customer lists, forecasts, business and strategic plans, financial and sales information, products, processes, equipment, manufacturing operations, marketing programs, research, product development, engineering, computer systems and software, and personnel records.  This obligation shall continue until such Confidential Information becomes generally known to the public without participation on my part.

3.  That I will not at any time or in any manner, and whether directly or indirectly, criticize or disparage the Company or otherwise provide information, issue statements, or take any other action intended or reasonably likely to result in material harm, embarrassment, humiliation to the Company or cause or contribute to it being held in disrepute by any person.

4.  That I agree that for a period of two (2) years from the date of the termination of my employment with the Company, I will not participate or have any interest, directly or indirectly, in any business which involves an area of technology or business in which I worked for the Company during the last five (5) years of my employment at the Company and in which I was exposed to any Confidential Information (as defined in paragraph 2 immediately above) of the Company.  I further agree that for such period, I will not interfere with, disrupt or attempt to disrupt the relationship, contractual or otherwise, with respect to the business carried on by the Company with any other party.  The restriction of this provision shall apply to any area of the United States, or any other country of the world in which the Company is conducting such business or

USSP Release (Revised January 2009)                    4

may be reasonably expected to engage in any such business within that two (2) year period. Such restriction shall apply to me, as owner, partner, officer, employee, consultant or advisor. For purposes of this provision, ownership of not more than one percent of the common or preferred stock of any publicly held company whose stock is listed on any recognized stock exchange or traded over the counter shall be disregarded.

5. That the payments and other benefits (including subsidized premiums) which the Company has offered to me, as stated above, are payments and benefits to which I would not be entitled but for this Release.

6. That I realize that there are various federal, state and local laws that govern my employment relationship with the Company and/or prohibit employment discrimination on the basis of age, color, race, gender/sex, national origin, mental or physical disability, religious affiliation or veteran status, as well as other forms of discrimination (including, in some jurisdictions, sexual preference/orientation, height, weight, and marital status), and that these laws are enforced through the courts and agencies such as the Equal Employment Opportunity Commission, Department of Labor and State Human Rights Agencies. I also realize that the Consolidated Omnibus Budget Reconciliation Act of 1985 (as amended), referred to as "COBRA", provides terminated employees the right to continue their active employee medical coverage at 102% of the full cost to insure for up to 18 months.

7. That I am aware that, by signing this Release, I am giving up my right to sue any Releasee not only on the basis of the discrimination laws mentioned above, but also for any other claims which I may have or believe that I may have against any Releasee in connection with my employment or termination of my employment, based upon any event which occurred before I sign this Release.   I am further aware that the understanding regarding my right to sue stated in this paragraph does not apply to my right to challenge the knowing and voluntary nature of this Release as respects claims under the ADEA or the Older Worker Benefit Protection Act (OWBPA), although I understand that I have released my right to recovery under those statutes by signing this Release. Should I break this representation in this paragraph, I agree to pay all of the Company's costs and expenses (including reasonable attorneys' fees) related to the defense of any claims except for those under the ADEA and the OWBPA. I understand, however, that if I pursue a claim against the Company under the ADEA and/or the OWBPA to challenge the validity of this Release and prevail on the merits of an ADEA claim, a court has the discretion to determine whether the Company is entitled to restitution, recoupment, or set off (herinafter a "reduction") against a monetary award obtained by me in the court proceeding. A reduction can never exceed the amount I recover, or the consideration I received for signing this release, whichever is less. I also recognize that the Company may be entitled to recover costs and attorneys' fees incurred by the Company as specifically authorized under applicable law.

8. That I am aware that I may change my mind and revoke this Release at any time during the seven days after I sign this Release, provided I do so in writing, in which

Confidential- Subject to Protective Order

DOW0026151

case none of the provisions of this Release will have any effect. I acknowledge I will not be entitled to receive any payment or benefits set forth in this Release until the seven day period has expired without revocation, at which time this Release shall become final and binding.

9. That I have not filed any complaints with a court or administrative agency against any Releasee prior to the date of signing of this Release, I have recorded and received all overtime compensation due through my last pay period prior to my termination date, I have reported to the Company any and all work-related injuries incurred during employment; and I acknowledge that the Company properly provided any leave of absence because of my or a family member's health condition and I have not been subjected to any improper treatment, conduct or actions due to a request for or taking such leave.

10. That I have not assigned or attempted to assign or give to anyone else any claim I have or believe that I may have against any Releasee.

11. That I acknowledge and agree that if, after the termination of my employment with the Company, I become reemployed by the Company or any of its affiliates, the Company may require me to repay, as a condition of reemployment, that portion of the Severance Payment received that exceeds the amount of base salary which I would have received had I remained in the Company's employment. The rate used in determining the amount of repayment will be the same rate that was used in calculating the Severance Payment. For purposes of this provision, "affiliates" means any company in which the Company has an ownership interest of fifty percent or greater.

12. That I acknowledge under the penalties for perjury, that: (a) I have received from the Company for consideration for a period of at least 45 days an Older Worker Benefit Protection Act age and job title/job class list in a format that allows me to make a knowing, voluntary, and fully informed choice about whether to accept or reject the offer of special transition assistance benefits under this Release; and (b) I have been informed that I may, at any time during my applicable consideration and revocation period, both (i) request and obtain an updated version of this list and (ii) express any concerns I may have about the format or content of this list, and that I have availed myself of those opportunities to the extent I felt necessary to make a voluntary, knowing, and fully informed decision.

This Release does not affect my rights and obligations under the Company's standard Employee Agreement or any other secrecy, confidentiality, non-competition, or invention agreements that I have signed with the Company or under the various Company employee compensation or benefit plans and programs (except as specifically modified herein), which agreements, plans, and programs are governed by their terms. Apart from the benefits recited in this Release, I waive any rights I have to any benefits under any severance plan offered or adopted by the Company, including but not limited to the U.S. Severance Plan.

USSP Release (Revised January 2009)                 6                 ■

I agree not to disclose the terms of this Release to any person without the written consent of the Company, except to my legal, financial and tax advisors, and members of my immediate family, and any prospective or subsequent employer as respects any of my obligations under numbered paragraphs 2 to 4 immediately above who may need to be informed of these terms of this Release.

The construction, interpretation and performance of this Release shall be governed by the laws of the state in which I am working on the date of termination of my employment with the Company.

If any provision of this Release is determined to be invalid or unenforceable, the Company and I agree that such determination shall not affect the other provisions, and that all other provisions shall be enforced as if the invalid provision were not a part of this Release. Should any provision be held unenforceable for any reason, then such provision shall be enforced to the maximum extent permitted by law.

I further acknowledge that this Release contains the entire agreement between myself and the Company and cannot be modified except in writing if signed by me and the Company. Except as otherwise specifically provided for in this Release, this Release supercedes and replaces all prior agreements and understandings, written or oral, and any other employment or severance agreements or arrangements that may have been made by and between me and the Company. I represent and acknowledge that in executing this Release I have not relied upon any representation or statement not set forth herein made by any of the Releasees or any of the Releasee's agents, representatives or attorneys with regards to the subject matter of this Release, except for information contained in official plan documents.

**I understand that I have the right to consult with an attorney and the Company is advising me to consult with an attorney before signing this Release (and to the extent I desire, I have availed myself of that right), that I have at least 45 days to consider the Release before signing it, and that I may revoke the Release within seven calendar days after signing it.** For revocation to be effective, written notice must be received by the Company no later than the close of business on the seventh day after I sign this Release. I understand that this revocation can be made by delivering the written notice of revocation to the H.R. Service Center, The Dow Chemical Company, EDC, Midland, Michigan 48674, by First Class mail, by facsimile transmission (Fax No. 989-636-1693), or by hand delivery. I also understand that this Release shall not become effective or enforceable until the seven day revocation period has expired. If I sign the Release before the expiration of the 45 day period, I acknowledge that I have done so of my own choice and without coercion by the Company.

USSP Release (Revised January 2009)                    7                    ▅

Confidential- Subject to Protective Order                                                              DOW0026153

By signing this release, I state that: I have read it; I understand it and know that I am giving up important rights; I agree with everything in it; I am aware of my right to consult an attorney before signing it; and I have signed it knowingly and voluntarily; I am aware I may revoke at any time within seven days after the date of signing indicated below by giving written notice of revocation to the H.R. Service Center.

_April 6, 2009_
Date of Signing

## Participant 43
Employee Signature

## Participant 43
Employee Name Printed

ACCEPTED:
THE DOW CHEMICAL COMPANY

By: _Keri Huon_
Signature

_Keri Huon  Authorized rep of the Company_
Print Name and Title

Date: _4-13-09_

Confidential- Subject to Protective Order

DOW0026154

## TERMINATION GENERAL RELEASE



RECEIVED

MAR 26 2009

Name: Participant 37                                       Employee No.: ▮▮▮▮▮

 This Release sets forth the terms under which my employer will provide to me various special transition assistance benefits in connection with the termination of my employment[1] with The Dow Chemical Company.

 I acknowledge that the termination of my employment was or is effective on March 31, 2009.

 I further acknowledge that eligibility to receive the various special transition assistance benefits is conditioned upon my signing and not revoking this Release.

 In consideration for the transition assistance benefits described below, I release and discharge The Dow Chemical Company and any of its affiliates or subsidiary companies (collectively the "Company"), and its officers, directors, employees, shareholders, successors and assigns ("Releasees") from all claims (including claims for attorney's fees and costs), demands and causes of action, known or unknown, which I may have or claim to have against any Releasee, arising out of, or in any way relating to, my employment or termination of my employment with the Company, whether based on any act or omission to act. This includes, but is not limited to, claims of negligence, intentional misconduct, breach of contract (whether written or oral), violation of the Employee Retirement Income Security Act of 1974 (ERISA) (as amended), violation of the **Age Discrimination in Employment Act of 1967 (ADEA) (as amended)**, violation of the Worker Adjustment and Retraining Act (WARN) (as amended), claims arising under any federal, state or local laws, executive orders, regulations, directives, codes, or common law prohibiting employment discrimination based on age, color, race, gender/sex, sexual preference/orientation, height, weight, marital status, national origin, mental or physical disability, religious affiliation, veteran status or any other forms of discrimination, and claims based on any other laws, executive orders, regulations, directives, codes or common law affecting relations between employers and employees, including claims growing out of the Company's termination of its employees.

 This Release does not affect any rights that I may have to file for a benefit under any state workers' compensation or unemployment compensation statute or for vested rights under ERISA-covered employee benefit plans as applicable to me on the date I sign this Release, that may arise under the ADEA, after I sign this Release, or that cannot be released by private agreement. I understand that nothing in this Release prevents me from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the EEOC, the NLRB, or any other federal, state, or local agency charged with the enforcement of employment laws, although by signing this release I am waiving and releasing any rights I may have to individual relief based on claims asserted in such charge or complaint or brought by any

---

[1] As used in this Termination General Release, "termination of employment" has the same meaning as Separation of Service defined in the summary plan description for the U.S. Severance Plan ("USSP").



Confidential- Subject to Protective Order    DOW0026155

other person on my behalf or which include me in any class. This paragraph is not intended to limit me from instituting legal action for the purpose of enforcing this Release.

The transition assistance benefits which I will receive if I sign and do not revoke this Release in a timely manner consist of the following:

1. U. S. Severance Plan:
   a. I am eligible to receive a lump sum Severance Payment of $46,477 (less normal tax withholdings for income taxes, FICA, and any outstanding amounts I owe to the Company, including but not limited to any outstanding balance owed on Shared Appreciation Mortgage loans or other housing or relocation loans), after I leave the payroll.

   I understand that payment will not be made to me sooner than my termination date or sooner than the expiration of seven days following my signing this Release without revoking it in writing.

   I am eligible to receive reimbursement, up to a maximum of $300 (subject to withholding of applicable taxes), for the cost of financial counseling services provided I utilize an approved professional financial counseling service and submit a satisfactory receipt within six months fol... the effective date of termination of my employment by the Company.

   

   At my option, I will be provided with professiona... ...ling services with a provider and program to be select... ...strator based on my job level at the time of my separatic... The utilization of the outplacement counseling servic... ...ree months of my termination date and will continue for a m... ...e months, depending upon the terms of the program in whi... ...ticipate. The objective of outplacement counseling servic... ...rsuing a career outside the Company. I acknowledge tha... ... ...nent counseling service provider nor the Company can guarantee subsequent employment. I further acknowledge that if I do not choose to use the outplacement counseling services, there is no alternative or substitute benefit.

2. Medical Coverage (does not include dental coverage)[2]:
   a. If on the effective date of my separation from employment I am eligible for coverage under The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program[3], my premium rate

---

[2] The medical coverages described in this bullet point do not apply to dental coverage.

[3] Generally, a former Employee is eligible for coverage under one of these retiree medical programs if he or she was hired prior to January 1, 2008, is at least age 50 with 10 or more years of credited service under the DEPP component ("DEPP") of the Dow Employees' Pension Plan or the UCEPP component ("UCEPP") of the Union Carbide Employees' Pension Plan (whichever is applicable). A former Employee may also be eligible if he or she was hired prior to January 1, 2008 by an employer that was authorized as a participating employer of the retiree medical program prior to January 1, 2008, and has 10 or more years of credited service under DEPP or UCEPP

USSP Release (Revised January 2009)                2

Confidential- Subject to Protective Order

DOW0026156

for retiree medical coverage under the applicable retiree medical plan for 18 months following the effective date of my separation from employment will be the same premiums active employees of Dow pay (depending on your full-time or "Less-Than-Full-Time" status). Eligibility for the coverage at the active employee premium rate is subject to my continuous premium payments during the entire 18-month period. After 18 months, my cost for coverage will increase, and will be subject to the Retiree Medical Budget and the Retiree Medical Support Schedule depending on my years of Service. These rates are subject to change. All terms and conditions of the applicable retiree medical plan shall apply. **I understand that in general, eligibility for retiree medical ends when I am eligible for Medicare.** Some exceptions may apply[4]. For details, see the plan document for The Dow Chemical Company Retiree Medical Care Program or Union Carbide Corporation Retiree Medical Care Program, whichever is applicable. The Dow Chemical Company reserves the right to amend, modify, or terminate The Dow Chemical Company Retiree Medical Care Program and The Dow Chemical Company Insured Health Program at any time. Union Carbide Corporation reserves the right to amend, modify or terminate the Union Carbide Corporation Retiree Medical Care Program and the Union Carbide Corporation Insured Health Program at any time.

b.  If on the effective date of my separation from employment I am not eligible for coverage under The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program, I can elect to extend medical care coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program (depending on the plan I was enrolled in prior to termination of employment) for up to three (3) years from the effective date of my separation from employment or until I am eligible for coverage under another group plan (or a Dow plan through a dual Dow career spouse), whichever occurs first. If I elect extended coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program prior to the deadline specified in the notice I will receive from Ceridian, my premium will be the same premium active employees of Dow pay (depending on my full-time or "Less-Than-Full-Time" status) during the first 18 months of extended coverage. The premium will be 102% of the full, unsubsidized cost of coverage for the remaining 18 months of extended coverage. Eligibility for the extended coverage is subject to continuous premium payments during the entire 36-month period. These rates are subject to change. The Company reserves the right to amend, modify, or terminate The

---

(whichever is applicable) with at least 60 points (age plus service), and has signed a release acceptable to the Participating Employer. See the applicable retiree medical summary plan description for eligibility details.
[4] Exceptions apply to the following:
    a.  former Employees of The Dow Chemical Company who were hired prior to January 1, 1993,
    b.  former Employees of ANGUS Chemical Company who were hired prior to January 1, 1999,
    c.  former Employees of Union Carbide Corporation who were hired prior to February 6, 2001,
    d.  former Employees of Dow AgroSciences who were hired prior to January 1, 2004.
For more information, see the Plan Document for The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program, whichever is applicable.

USSP Release (Revised January 2009)                    3                    ███

Dow Chemical Company Medical Care Program and The Dow Chemical Company Insured Health Program at any time.

I have indicated my election decision on a separate Extended Coverage Enrollment Form.

I make the following representations to the Company, each of which is an important consideration for the Company's willingness to enter into this Release with me:

1. That I have returned or will return to the Company on or before my termination date, all Company property, including, without limitation, books, records and documents, files, memoranda, credit cards, Company passes, keys, computer access codes, disk and instructional manuals, tools, computers, and other physical property, which was or may be in my possession.

2. That I agree that I will not disclose to anyone or use, directly or indirectly, after termination of my employment with the Company, any Confidential Information of the Company, except with the written consent of the Company. Confidential Information is defined herein to mean trade secrets, know-how, and other information, not generally known, relating to the Company's business which was disclosed to me or with which I became familiar during my term of employment with the Company. Confidential Information includes information relating to the Company's business practices and prospective business interests, including, but not limited to, customer lists, forecasts, business and strategic plans, financial and sales information, products, processes, equipment, manufacturing operations, marketing programs, research, product development, engineering, computer systems and software, and personnel records. This obligation shall continue until such Confidential Information becomes generally known to the public without participation on my part.

3. That I will not at any time or in any manner, and whether directly or indirectly, criticize or disparage the Company or otherwise provide information, issue statements, or take any other action intended or reasonably likely to result in material harm, embarrassment, humiliation to the Company or cause or contribute to it being held in disrepute by any person.

4. That I agree that for a period of two (2) years from the date of the termination of my employment with the Company, I will not participate or have any interest, directly or indirectly, in any business which involves an area of technology or business in which I worked for the Company during the last five (5) years of my employment at the Company and in which I was exposed to any Confidential Information (as defined in paragraph 2 immediately above) of the Company. I further agree that for such period, I will not interfere with, disrupt or attempt to disrupt the relationship, contractual or otherwise, with respect to the business carried on by the Company with any other party. The restriction of this provision shall apply to any area of the United States, or any other country of the world in which the Company is conducting such business or

USSP Release (Revised January 2009)                    4                    ██████

Confidential- Subject to Protective Order                                                         DOW0026158

may be reasonably expected to engage in any such business within that two (2) year period. Such restriction shall apply to me, as owner, partner, officer, employee, consultant or advisor. For purposes of this provision, ownership of not more than one percent of the common or preferred stock of any publicly held company whose stock is listed on any recognized stock exchange or traded over the counter shall be disregarded.

5. That the payments and other benefits (including subsidized premiums) which the Company has offered to me, as stated above, are payments and benefits to which I would not be entitled but for this Release.

6. That I realize that there are various federal, state and local laws that govern my employment relationship with the Company and/or prohibit employment discrimination on the basis of age, color, race, gender/sex, national origin, mental or physical disability, religious affiliation or veteran status, as well as other forms of discrimination (including, in some jurisdictions, sexual preference/orientation, height, weight, and marital status), and that these laws are enforced through the courts and agencies such as the Equal Employment Opportunity Commission, Department of Labor and State Human Rights Agencies. I also realize that the Consolidated Omnibus Budget Reconciliation Act of 1985 (as amended), referred to as "COBRA", provides terminated employees the right to continue their active employee medical coverage at 102% of the full cost to insure for up to 18 months.

7. That I am aware that, by signing this Release, I am giving up my right to sue any Releasee not only on the basis of the discrimination laws mentioned above, but also for any other claims which I may have or believe that I may have against any Releasee in connection with my employment or termination of my employment, based upon any event which occurred before I sign this Release.   I am further aware that the understanding regarding my right to sue stated in this paragraph does not apply to my right to challenge the knowing and voluntary nature of this Release as respects claims under the ADEA or the Older Worker Benefit Protection Act (OWBPA), although I understand that I have released my right to recovery under those statutes by signing this Release. Should I break this representation in this paragraph, I agree to pay all of the Company's costs and expenses (including reasonable attorneys' fees) related to the defense of any claims except for those under the ADEA and the OWBPA. I understand, however, that if I pursue a claim against the Company under the ADEA and/or the OWBPA to challenge the validity of this Release and prevail on the merits of an ADEA claim, a court has the discretion to determine whether the Company is entitled to restitution, recoupment, or set off (hereinafter a "reduction") against a monetary award obtained by me in the court proceeding. A reduction can never exceed the amount I recover, or the consideration I received for signing this release, whichever is less. I also recognize that the Company may be entitled to recover costs and attorneys' fees incurred by the Company as specifically authorized under applicable law.

8. That I am aware that I may change my mind and revoke this Release at any time during the seven days after I sign this Release, provided I do so in writing, in which

USSP Release (Revised January 2009)                5

Confidential- Subject to Protective Order

DOW0026159

case none of the provisions of this Release will have any effect. I acknowledge I will not be entitled to receive any payment or benefits set forth in this Release until the seven day period has expired without revocation, at which time this Release shall become final and binding.

9. That I have not filed any complaints with a court or administrative agency against any Releasee prior to the date of signing of this Release, I have recorded and received all overtime compensation due through my last pay period prior to my termination date, I have reported to the Company any and all work-related injuries incurred during employment; and I acknowledge that the Company properly provided any leave of absence because of my or a family member's health condition and I have not been subjected to any improper treatment, conduct or actions due to a request for or taking such leave.

10. That I have not assigned or attempted to assign or give to anyone else any claim I have or believe that I may have against any Releasee.

11. That I acknowledge and agree that if, after the termination of my employment with the Company, I become reemployed by the Company or any of its affiliates, the Company may require me to repay, as a condition of reemployment, that portion of the Severance Payment received that exceeds the amount of base salary which I would have received had I remained in the Company's employment. The rate used in determining the amount of repayment will be the same rate that was used in calculating the Severance Payment. For purposes of this provision, "affiliates" means any company in which the Company has an ownership interest of fifty percent or greater.

12. That I acknowledge under the penalties for perjury, that: (a) I have received from the Company for consideration for a period of at least 45 days an Older Worker Benefit Protection Act age and job title/job class list in a format that allows me to make a knowing, voluntary, and fully informed choice about whether to accept or reject the offer of special transition assistance benefits under this Release; and (b) I have been informed that I may, at any time during my applicable consideration and revocation period, both (i) request and obtain an updated version of this list and (ii) express any concerns I may have about the format or content of this list, and that I have availed myself of those opportunities to the extent I felt necessary to make a voluntary, knowing, and fully informed decision.

This Release does not affect my rights and obligations under the Company's standard Employee Agreement or any other secrecy, confidentiality, non-competition, or invention agreements that I have signed with the Company or under the various Company employee compensation or benefit plans and programs (except as specifically modified herein), which agreements, plans, and programs are governed by their terms. Apart from the benefits recited in this Release, I waive any rights I have to any benefits under any severance plan offered or adopted by the Company, including but not limited to the U.S. Severance Plan.

USSP Release (Revised January 2009)                6                ■

Confidential- Subject to Protective Order

I agree not to disclose the terms of this Release to any person without the written consent of the Company, except to my legal, financial and tax advisors, and members of my immediate family, and any prospective or subsequent employer as respects any of my obligations under numbered paragraphs 2 to 4 immediately above who may need to be informed of these terms of this Release.

The construction, interpretation and performance of this Release shall be governed by the laws of the state in which I am working on the date of termination of my employment with the Company.

If any provision of this Release is determined to be invalid or unenforceable, the Company and I agree that such determination shall not affect the other provisions, and that all other provisions shall be enforced as if the invalid provision were not a part of this Release. Should any provision be held unenforceable for any reason, then such provision shall be enforced to the maximum extent permitted by law.

I further acknowledge that this Release contains the entire agreement between myself and the Company and cannot be modified except in writing if signed by me and the Company. Except as otherwise specifically provided for in this Release, this Release supercedes and replaces all prior agreements and understandings, written or oral, and any other employment or severance agreements or arrangements that may have been made by and between me and the Company. I represent and acknowledge that in executing this Release I have not relied upon any representation or statement not set forth herein made by any of the Releasees or any of the Releasee's agents, representatives or attorneys with regards to the subject matter of this Release, except for information contained in official plan documents.

**I understand that I have the right to consult with an attorney and the Company is advising me to consult with an attorney before signing this Release (and to the extent I desire, I have availed myself of that right), that I have at least 45 days to consider the Release before signing it, and that I may revoke the Release within seven calendar days after signing it.** For revocation to be effective, written notice must be received by the Company no later than the close of business on the seventh day after I sign this Release. I understand that this revocation can be made by delivering the written notice of revocation to the H.R. Service Center, The Dow Chemical Company, EDC, Midland, Michigan 48674, by First Class mail, by facsimile transmission (Fax No. 989-636-1693), or by hand delivery. I also understand that this Release shall not become effective or enforceable until the seven day revocation period has expired. If I sign the Release before the expiration of the 45 day period, I acknowledge that I have done so of my own choice and without coercion by the Company.

USSP Release (Revised January 2009)                    7

Confidential- Subject to Protective Order                                        DOW0026161

**By signing this release, I state that: I have read it; I understand it and know that I am giving up important rights; I agree with everything in it; I am aware of my right to consult an attorney before signing it; and I have signed it knowingly and voluntarily; I am aware I may revoke at any time within seven days after the date of signing indicated below by giving written notice of revocation to the H.R. Service Center.**

April 1, 2009
Date of Signing

Participant 37
Employee Signature

Participant 37
Employee Name Printed

ACCEPTED:
THE DOW CHEMICAL COMPANY

By: _Keri Husen_
Signature

_Keri Husen HR Service Center Agent_
Print Name and Title

Date: _3-26-09_

Confidential- Subject to Protective Order                                      DOW0026162





*This one to H.R. S. cents.*

## TERMINATION GENERAL RELEASE

Name: Participant 17                                Employee No.: ███████

     This Release sets forth the terms under which The Dow Chemical Company will provide to me various special transition assistance benefits in connection with the termination of my employment with The Dow Chemical Company and any of its affiliates or subsidiary companies (collectively the "Company").

     I acknowledge that the termination of my employment with the Company was or is effective on December 31, 2006.

     I further acknowledge that eligibility to receive the various special transition assistance benefits is conditioned upon my signing and not revoking this Release.

     In consideration for the transition assistance benefits described below, I release and discharge the Company, and its officers, directors, employees, shareholders, successors and assigns ("Releasees") from all claims (including claims for attorney's fees and costs), demands and causes of action, known or unknown, which I may have or claim to have against any Releasee, arising out of, or in any way relating to, my employment or termination of my employment with the Company, whether based on any act or omission to act. This includes, but is not limited to, claims of negligence, intentional misconduct, breach of contract (whether written or oral), violation of the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) (as amended), violation of the Employee Retirement Income Security Act of 1974 (ERISA) (as amended), violation of the **Age Discrimination in Employment Act of 1967 (ADEA) (as amended)**, violation of the Worker Adjustment and Retraining Act (WARN) (as amended), claims arising under any federal, state or local laws, executive orders, regulations, directives, codes, or common law prohibiting employment discrimination based on age, color, race, gender/sex, sexual preference/orientation, height, weight, marital status, national origin, mental or physical disability, religious affiliation, veteran status or any other forms of discrimination, and claims based on any other laws, executive orders, regulations, directives, codes or common law affecting relations between employers and employees, including claims growing out of the Company's termination of its employees. This Release does not affect any rights I may have to file for a benefit under any state workers' compensation statute.

     With respect to any charges or complaints that have been filed or may be filed concerning events or actions relating to my employment or the termination of my employment and which occurred prior to my signing this Release, unless the claim is specifically permitted by the terms of this Release, I agree to take whatever reasonable action necessary to cause the charge or complaint to be dismissed. I additionally waive and release any right I may have to recover in any lawsuit or proceeding brought by me, an administrative agency, or any other person on my behalf or which includes me in any class. This paragraph is not intended to limit me from instituting legal action for the purpose of enforcing this Release, nor does this Release affect my rights or claims I may

Dow USSP Release, revised 5/01/05

Confidential- Subject to Protective Order                                DOW0026163

have which arise after I sign this Release. I also understand that rights or claims under the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 621, *et seq.*) that may arise after the date this Release is executed are not waived.

The transition assistance benefits which I will receive if I sign and do not revoke this Release in a timely manner consist of the following:

1. U. S. Severance Plan:

   a. I am eligible to receive a lump sum Severance Payment of $139,964 less normal tax withholdings for income taxes, FICA, and any outstanding amounts I owe to the Company, including but not limited to any outstanding balance owed on Shared Appreciation Mortgage loans or other housing or relocation loans), after I leave the payroll. I elect the following payment option (check only one):

      ( ) Lump sum payment this year (*do not check this if your termination date is after November 30 of this year*)
      (✓) Lump sum payment next January

   I understand that payment will not be made to me sooner than my termination date or sooner than the expiration of seven days following my signing this Release without revoking it in writing.

   b. I am eligible to receive reimbursement, up to a maximum of $300 (subject to withholding of applicable taxes), for the cost of financial counseling services provided I utilize an approved professional financial counseling service and submit a satisfactory receipt within six months following the effective date of termination of my employment by the Company.

   c. At my option, I will be provided with professional outplacement counseling services with a provider and program to be selected by the Plan Administrator based on my job level at the time of my separation from employment. The utilization of the outplacement counseling service must begin within three months of my termination date and will continue for a maximum of two to nine months, depending upon the terms of the program in which I am eligible to participate. The objective of outplacement counseling services is to assist me in pursuing a career outside the Company. I acknowledge that neither the outplacement counseling service provider nor the Company can guarantee subsequent employment. I further acknowledge that if I do not choose to use the outplacement counseling services, there is no alternative or substitute benefit.

2. Medical Coverage:

   a. If on the effective date of my separation from employment I am a Retiree (as defined in The Dow Chemical Company Retiree Medical Care Program, *i.e.*, at least 50 years old with at least 10 years of Service) or

Schedule Date 10/11/06
Payout Date 01/19/07
Input By SMK
Audited By

Confidential- Subject to Protective Order                    DOW0026164

a "60 Point Retiree Medical Severance Plan Participant" (as defined in The Dow Chemical Company Retiree Medical Care Program), and I meet the eligibility requirements of The Dow Chemical Company Retiree Medical Care Program or The Dow Chemical Company Insured Health Program, I am eligible to receive retiree medical coverage under The Dow Chemical Company Retiree Medical Care Program or The Dow Chemical Company Insured Health Program. (This does not include dental coverage). If I sign and do not revoke this Release prior to the expiration of the 45-day period referenced on the last page of this Termination General Release, my premium rate for coverage for 18 months following the effective date of my separation from employment will be the same premium active employees of Dow pay (depending on your full-time or "Less-Than-Full-Time" status). Eligibility for the coverage at the active employee premium rate is subject to continuous premium payments during the entire 18-month period. After 18 months, my cost for coverage will be subject to the Retiree Medical Budget and the Retiree Medical Support Schedule depending on my years of Service. These rates are subject to change. The Company reserves the right to amend, modify, or terminate The Dow Chemical Company Retiree Medical Care Program and The Dow Chemical Company Insured Health Program at any time. In general, Retirees who were hired on or after January 1, 1993, by an employer participating in The Dow Chemical Company Retiree Medical Care Program or The Dow Chemical Company Insured Health Program are not eligible for coverage under The Dow Chemical Company Retiree Medical Care Program or The Dow Chemical Company Insured Health Program once they become eligible for Medicare. (FilmTec Employees who are 60 Point Retiree Medical Severance Plan Participants are not eligible for coverage under The Dow Chemical Company Retiree Medical Care Program or The Dow Chemical Company Insured Health Program once they become eligible for Medicare, even if they were hired prior to January 1, 1993.)

b.  If on the effective date of my separation from employment I am neither a Retiree (as defined in The Dow Chemical Company Retiree Medical Care Program, i.e., I am less than 50 years old, or I am at least age 50 or older with less than 10 years of Service) nor a "60 Point Retiree Medical Severance Plan Participant" (as defined in The Dow Chemical Company Retiree Medical Care Program), I can elect to extend medical care coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program (depending on the plan I was enrolled in prior to termination of employment) for up to three (3) years from the effective date of my separation from employment or until I am eligible for coverage under another group plan (or a Dow plan through a dual Dow career spouse), whichever occurs first. (This does not include dental coverage). If I elect extended coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program prior to the deadline specified in the

Confidential- Subject to Protective Order                                    DOW0026165

notice I will receive from Ceridian, my premium will be the same premium active employees of Dow pay (depending on my full-time or "Less-Than-Full-Time" status) during the first 18 months of extended coverage. The premium will be 102% of the full, unsubsidized cost of coverage for the remaining 18 months of extended coverage. Eligibility for the extended coverage is subject to continuous premium payments during the entire 36-month period. These rates are subject to change. The Company reserves the right to amend, modify, or terminate The Dow Chemical Company Medical Care Program and The Dow Chemical Company Insured Health Program at any time.

I have indicated my election decision on a separate Extended Coverage Enrollment Form.

I make the following representations to the Company, each of which is an important consideration for the Company's willingness to enter into this Release with me:

1. That I have returned or will return to the Company on or before my termination date, all Company property, including, without limitation, books, records and documents, files, memoranda, credit cards, Company passes, keys, computer access codes, disk and instructional manuals, tools, computers, and other physical property, which was or may be in my possession.

2. That I agree that I will not disclose to anyone or use, directly or indirectly, after termination of my employment with the Company, any Confidential Information of the Company, except with the written consent of the Company. Confidential Information is defined herein to mean trade secrets, know-how, and other information, not generally known, relating to the Company's business which was disclosed to me or with which I became familiar during my term of employment with the Company. Confidential Information includes information relating to the Company's business practices and prospective business interests, including, but not limited to, customer lists, forecasts, business and strategic plans, financial and sales information, products, processes, equipment, manufacturing operations, marketing programs, research, product development, engineering, computer systems and software, and personnel records. This obligation shall continue until such Confidential Information becomes generally known to the public without participation on my part.

3. That I will not at any time or in any manner, and whether directly or indirectly, criticize or disparage the Company or otherwise provide information, issue statements, or take any other action intended or reasonably likely to result in material harm, embarrassment, humiliation to the Company or cause or contribute to it being held in disrepute by any person.

4. That I agree that for a period of two (2) years from the date of the termination of my employment with the Company, I will not participate or have any

Confidential- Subject to Protective Order                                        DOW0026166

interest, directly or indirectly, in any business which involves an area of technology or business in which I worked for the Company during the last five (5) years of my employment at the Company and in which I was exposed to any Confidential Information (as defined in paragraph 2 immediately above) of the Company. I further agree that for such period, I will not interfere with, disrupt or attempt to disrupt the relationship, contractual or otherwise, with respect to the business carried on by the Company with any other party. The restriction of this provision shall apply to any area of the United States, or any other country of the world in which the Company is conducting such business or may be reasonably expected to engage in any such business within that two (2) year period. Such restriction shall apply to me, as owner, partner, officer, employee, consultant or advisor. For purposes of this provision, ownership of not more than one percent of the common or preferred stock of any publicly held company whose stock is listed on any recognized stock exchange or traded over the counter shall be disregarded.

5. That the payments and other benefits which the Company has offered to me, as stated above, are payments and benefits to which I would not be entitled but for this Release (except that if on the effective date of termination of my employment I am retirement eligible as defined in The Dow Chemical Company Retiree Medical Care Program, then I am eligible for the Dow Retiree Medical Care Program even if I do not sign this Release, subject however to the Dow Retiree Medical Support Schedule).

6. That I realize that there are various federal, state and local laws that govern my employment relationship with the Company and/or prohibit employment discrimination on the basis of age, color, race, gender/sex, national origin, mental or physical disability, religious affiliation or veteran status, as well as other forms of discrimination (including, in some jurisdictions, sexual preference/orientation, height, weight, and marital status), and that these laws are enforced through the courts and agencies such as the Equal Employment Opportunity Commission, Department of Labor and State Human Rights Agencies.

7. That I am aware that, by signing this Release, I am giving up my right to sue any Releasee not only on the basis of the discrimination laws mentioned above, but also for any other claims which I may have or believe that I may have against any Releasee in connection with my employment or termination of my employment, based upon any event which occurred before I sign this Release.

8. That I am aware that I may change my mind and revoke this Release at any time during the seven days after I sign this Release, provided I do so in writing, in which case none of the provisions of this Release will have any effect. I acknowledge I will not be entitled to receive any payment or benefits set forth in this Release until the seven day period has expired without revocation.

Confidential- Subject to Protective Order

DOW0026167

9. That I have not filed any complaints with a court or administrative agency against any Releasee prior to the date of signing of this Release. If I have filed a complaint or charge against any Releasee, I agree that I will take whatever reasonable action necessary to have the claim dismissed.

10. That I have not assigned or attempted to assign or give to anyone else any claim I have or believe that I may have against any Releasee.

11. That I acknowledge and agree that if, after the termination of my employment with the Company, I become reemployed by the Company or any of its affiliates, the Company may require me to repay, as a condition of reemployment, that portion of the Severance Payment received that exceeds the amount of base salary which I would have received had I remained in the Company's employment. The rate used in determining the amount of repayment will be the same rate that was used in calculating the Severance Payment. For purposes of this provision, "affiliates" means any company in which the Company has an ownership interest of fifty percent or greater.

12. That, apart from the benefits recited in this Release and Waiver, I waive any rights I have or might have to any benefits under any past, current or future severance plan offered or adopted by Dow.

13. That I acknowledge under the penalties for perjury, that: (a) I have received from the Company for consideration for a period of at least 45 days an Older Worker Benefit Protection Act of 1990 age and job title/job class list in a format that allows me to make a knowing, voluntary, and fully informed choice about whether to accept or reject the offer of special transition assistance benefits under this Release; and (b) I have been informed that I may, at any time during my applicable consideration and revocation period, both (i) request and obtain an updated version of this list and (ii) express any concerns I may have about the format or content of this list, and that I have availed myself of those opportunities to the extent I felt necessary to make a voluntary, knowing, and fully informed decision.

This Release does not affect my rights and obligations under the Company's standard Employee Agreement or any other secrecy or confidentiality agreements that I have signed with the Company or under the various Company employee compensation or benefit plans and programs (except as specifically modified herein), which agreements, plans, and programs are governed by their terms. Apart from the benefits recited in this Release and Waiver, I waive any rights I have or might have to any benefits under any past, current or future severance plan offered or adopted by the Company, including but not limited to the U.S. Severance Plan.

I agree not to disclose the terms of this Release to any person without the written consent of the Company, except to my legal, financial and tax advisors, and members of my immediate family, and any prospective or subsequent employer as respects any of my

Confidential- Subject to Protective Order                                        DOW0026168

obligations under numbered paragraphs 2 to 4 immediately above who may need to be informed of these terms of this Release.

The construction, interpretation and performance of this Release shall be governed by the laws of the state in which I am working on the date of termination of my employment with the Company.

If any provision of this Release is determined to be invalid or unenforceable, the Company and I agree that such determination shall not affect the other provisions, and that all other provisions shall be enforced as if the invalid provision were not a part of this Release. Should any provision be held unenforceable for any reason, then such provision shall be enforced to the maximum extent permitted by law.

I further acknowledge that this Release contains the entire agreement between myself and the Company and cannot be modified except in writing if signed by me and the Company. Except as otherwise specifically provided for in this Release, this Release supercedes and replaces all prior agreements and understandings, written or oral, and any other employment or severance agreements or arrangements that may have been made by and between me and the Company. I represent and acknowledge that in executing this Release I have not relied upon any representation or statement not set forth herein made by any of the Releasees or any of the Releasee's agents, representatives or attorneys with regards to the subject matter of this Release, except for information contained in official plan documents.

**I understand that I have the right to consult with an attorney before signing this Release (and to the extent I desire, I have availed myself of that right), that I have at least 45 days to consider the Release before signing it, and that I may revoke the Release within seven calendar days after signing it.** For revocation to be effective, written notice must be received by the Company no later than the close of business on the seventh day after I sign this Release. I understand that this revocation can be made by delivering the written notice of revocation to the H.R. Service Center, The Dow Chemical Company, EDC, Midland, Michigan 48674, by First Class mail, by facsimile transmission (Fax No. 989-636-1693), or by hand delivery. I also understand that this Release shall not become effective or enforceable until the seven day revocation period has expired. If I sign the Release before the expiration of the 45 day period, I acknowledge that I have done so of my own choice and without coercion by the Company.

Dow USSP Release, revised 5/1/05                          7

Confidential- Subject to Protective Order                                   DOW0026169

By signing this release, I state that: I have read it; I understand it and know that I am giving up important rights; I agree with everything in it; I am aware of my right to consult an attorney before signing it; and I have signed it knowingly and voluntarily; I am aware I may revoke at any time within seven days after the date of signing indicated below by giving written notice of revocation to the H.R. Service Center.

*October 6, 2006*
Date of Signing

## Participant 17

Employee Signature

## Participant 17

Employee Name Printed

ACCEPTED:
THE DOW CHEMICAL COMPANY

By: *Suzanne Krauss*
Signature

*Suzanne Krauss, HR Rep*
Print Name and Title

Date: *10/11/06*

Dow USSP Release, revised 5/1/05                    8

Confidential- Subject to Protective Order

DOW0026170



## TERMINATION GENERAL RELEASE

Name: Participant 18                                     Employee No.: ▬▬▬▬

This Release sets forth the terms under which my employer will provide to me various special transition assistance benefits in connection with the termination of my employment with The Dow Chemical Company.

I acknowledge that the termination of my employment was or is effective on December 31, 2008.

I further acknowledge that eligibility to receive the various special transition assistance benefits is conditioned upon my signing and not revoking this Release.

In consideration for the transition assistance benefits described below, I release and discharge The Dow Chemical Company and any of its affiliates or subsidiary companies (collectively the "Company"), and its officers, directors, employees, shareholders, successors and assigns ("Releasees") from all claims (including claims for attorney's fees and costs), demands and causes of action, known or unknown, which I may have or claim to have against any Releasee, arising out of, or in any way relating to, my employment or termination of my employment with the Company, whether based on any act or omission to act. This includes, but is not limited to, claims of negligence, intentional misconduct, breach of contract (whether written or oral), violation of the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) (as amended), violation of the Employee Retirement Income Security Act of 1974 (ERISA) (as amended), violation of the **Age Discrimination in Employment Act of 1967 (ADEA) (as amended)**, violation of the Worker Adjustment and Retraining Act (WARN) (as amended), claims arising under any federal, state or local laws, executive orders, regulations, directives, codes, or common law prohibiting employment discrimination based on age, color, race, gender/sex, sexual preference/orientation, height, weight, marital status, national origin, mental or physical disability, religious affiliation, veteran status or any other forms of discrimination, and claims based on any other laws, executive orders, regulations, directives, codes or common law affecting relations between employers and employees, including claims growing out of the Company's termination of its employees. This Release does not affect any rights I may have to file for a benefit under any state workers' compensation statute.

With respect to any charges or complaints that have been filed or may be filed concerning events or actions relating to my employment or the termination of my employment and which occurred prior to my signing this Release, unless the claim is specifically permitted by the terms of this Release, I agree to take whatever reasonable action necessary to cause the charge or complaint to be dismissed. I additionally waive and release any right I may have to recover in any lawsuit or proceeding brought by me, an administrative agency, or any other person on my behalf or which includes me in any

USSP Release, revised 6/01/07

Confidential- Subject to Protective Order                              DOW0026171

class. This paragraph is not intended to limit me from instituting legal action for the purpose of enforcing this Release, nor does this Release affect my rights or claims I may have which arise after I sign this Release. I also understand that rights or claims under the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 621, *et seq.*) that may arise after the date this Release is executed are not waived.

The transition assistance benefits which I will receive if I sign and do not revoke this Release in a timely manner consist of the following:



1. U. S. Severance Plan:
   a. I am eligible to receive a lump sum Severance Payment of $147,128 (less normal tax withholdings for income taxes, FICA, and any outstanding amounts I owe to the Company, including but not limited to any outstanding balance owed on Shared Appreciation Mortgage loans or other housing or relocation loans), after I leave the payroll.

      I understand that payment will not be made to me sooner than my termination date or sooner than the expiration of seven days following my signing this Release without revoking it in writing.

   b. I am eligible to receive reimbursement, up to a maximum of $300 (subject to withholding of applicable taxes), for the cost of financial counseling services provided I utilize an approved professional financial counseling service and submit a satisfactory receipt within six months following the effective date of termination of my employment by the Company.

   c. At my option, I will be provided with professional outplacement counseling services with a provider and program to be selected by the Plan Administrator based on my job level at the time of my separation from employment. The utilization of the outplacement counseling service must begin within three months of my termination date and will continue for a maximum of two to nine months, depending upon the terms of the program in which I am eligible to participate. The objective of outplacement counseling services is to assist me in pursuing a career outside the Company. I acknowledge that neither the outplacement counseling service provider nor the Company can guarantee subsequent employment. I further acknowledge that if I do not choose to use the outplacement counseling services, there is no alternative or substitute benefit.

2. Medical Coverage (does not include dental coverage):
   a. If on the effective date of my separation from employment I am eligible for coverage under The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care

USSP Release, revised 6/1/07                    2

Confidential- Subject to Protective Order                                                            DOW0026172

Program[1], my premium rate for retiree medical coverage under the applicable retiree medical plan for 18 months following the effective date of my separation from employment will be the same premiums active employees of Dow pay (depending on your full-time or "Less-Than-Full-Time" status). Eligibility for the coverage at the active employee premium rate is subject to my continuous premium payments during the entire 18-month period. After 18 months, my cost for coverage will increase, and will be subject to the Retiree Medical Budget and the Retiree Medical Support Schedule depending on my years of Service. These rates are subject to change. All terms and conditions of the applicable retiree medical plan shall apply. **I understand that in general, eligibility for retiree medical ends when I am eligible for Medicare.** Some exceptions may apply[2]. For details, see the plan document for The Dow Chemical Company Retiree Medical Care Program or Union Carbide Corporation Retiree Medical Care Program, whichever is applicable. The Dow Chemical Company reserves the right to amend, modify, or terminate The Dow Chemical Company Retiree Medical Care Program and The Dow Chemical Company Insured Health Program at any time. Union Carbide Corporation reserves the right to amend, modify or terminate the Union Carbide Corporation Retiree Medical Care Program and the Union Carbide Corporation Insured Health Program at any time.

b. If on the effective date of my separation from employment I am not eligible for coverage under The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program, I can elect to extend medical care coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program (depending on the plan I was enrolled in prior to termination of employment) for up to three (3) years from the effective date of my separation from employment or until I am eligible for coverage under another group plan (or a Dow plan through a dual Dow career spouse), whichever occurs first. If I elect extended coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program prior to the deadline specified

---

[1] Generally, a former Employee is eligible for coverage under one of these retiree medical programs if he or she is at least age 50 with 10 or more years of credited service under DEPP or UCEPP (whichever is applicable). A former Employee may also be eligible if he or she was hired prior to January 1, 2008 by an employer that was authorized as a participating employer of the retiree medical program prior to January 1, 2008, and has 10 or more years of credited service under DEPP or UCEPP (whichever is applicable) with at least 60 points (age plus service) and has signed a release acceptable to the Participating Employer. See the applicable retiree medical summary plan description for eligibility details.
[2] Exceptions apply to the following:
    a.   former Employees of The Dow Chemical Company who were hired prior to January 1, 1993,
    b.   former Employees of ANGUS Chemical Company who were hired prior to January 1, 1999,
    c.   former Employees of Union Carbide Corporation who were hired prior to February 6, 2001,
    d.   former Employees of Dow AgroSciences who were hired prior to January 1, 2004.
For more information, see the Plan Document for The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program, whichever is applicable.

Confidential- Subject to Protective Order                    DOW0026173

in the notice I will receive from Ceridian, my premium will be the same premium active employees of Dow pay (depending on my full-time or "Less-Than-Full-Time" status) during the first 18 months of extended coverage. The premium will be 102% of the full, unsubsidized cost of coverage for the remaining 18 months of extended coverage. Eligibility for the extended coverage is subject to continuous premium payments during the entire 36-month period. These rates are subject to change. The Company reserves the right to amend, modify, or terminate The Dow Chemical Company Medical Care Program and The Dow Chemical Company Insured Health Program at any time.

I have indicated my election decision on a separate Extended Coverage Enrollment Form.

I make the following representations to the Company, each of which is an important consideration for the Company's willingness to enter into this Release with me:

1. That I have returned or will return to the Company on or before my termination date, all Company property, including, without limitation, books, records and documents, files, memoranda, credit cards, Company passes, keys, computer access codes, disk and instructional manuals, tools, computers, and other physical property, which was or may be in my possession.

2. That I agree that I will not disclose to anyone or use, directly or indirectly, after termination of my employment with the Company, any Confidential Information of the Company, except with the written consent of the Company. Confidential Information is defined herein to mean trade secrets, know-how, and other information, not generally known, relating to the Company's business which was disclosed to me or with which I became familiar during my term of employment with the Company. Confidential Information includes information relating to the Company's business practices and prospective business interests, including, but not limited to, customer lists, forecasts, business and strategic plans, financial and sales information, products, processes, equipment, manufacturing operations, marketing programs, research, product development, engineering, computer systems and software, and personnel records. This obligation shall continue until such Confidential Information becomes generally known to the public without participation on my part.

3. That I will not at any time or in any manner, and whether directly or indirectly, criticize or disparage the Company or otherwise provide information, issue statements, or take any other action intended or reasonably likely to result in material harm, embarrassment, humiliation to the Company or cause or contribute to it being held in disrepute by any person.

4. That I agree that for a period of two (2) years from the date of the termination of my employment with the Company, I will not participate or have any



Confidential- Subject to Protective Order                    DOW0026174

interest, directly or indirectly, in any business which involves an area of technology or business in which I worked for the Company during the last five (5) years of my employment at the Company and in which I was exposed to any Confidential Information (as defined in paragraph 2 immediately above) of the Company. I further agree that for such period, I will not interfere with, disrupt or attempt to disrupt the relationship, contractual or otherwise, with respect to the business carried on by the Company with any other party. The restriction of this provision shall apply to any area of the United States, or any other country of the world in which the Company is conducting such business or may be reasonably expected to engage in any such business within that two (2) year period. Such restriction shall apply to me, as owner, partner, officer, employee, consultant or advisor. For purposes of this provision, ownership of not more than one percent of the common or preferred stock of any publicly held company whose stock is listed on any recognized stock exchange or traded over the counter shall be disregarded.

5. That the payments and other benefits (including subsidized premiums) which the Company has offered to me, as stated above, are payments and benefits to which I would not be entitled but for this Release.

6. That I realize that there are various federal, state and local laws that govern my employment relationship with the Company and/or prohibit employment discrimination on the basis of age, color, race, gender/sex, national origin, mental or physical disability, religious affiliation or veteran status, as well as other forms of discrimination (including, in some jurisdictions, sexual preference/orientation, height, weight, and marital status), and that these laws are enforced through the courts and agencies such as the Equal Employment Opportunity Commission, Department of Labor and State Human Rights Agencies. I also realize that the Consolidated Omnibus Budget Reconciliation Act of 1985 (as amended), referred to as "COBRA", provides terminated employees the right to continue their active employee medical coverage at 102% of the full cost to insure for up to 18 months.

7. That I am aware that, by signing this Release, I am giving up my right to sue any Releasee not only on the basis of the discrimination laws mentioned above, but also for any other claims which I may have or believe that I may have against any Releasee in connection with my employment or termination of my employment, based upon any event which occurred before I sign this Release. In addition, I am aware that, by signing this Release, I am waiving my rights under COBRA.

8. That I am aware that I may change my mind and revoke this Release at any time during the seven days after I sign this Release, provided I do so in writing, in which case none of the provisions of this Release will have any effect. I acknowledge I will not be entitled to receive any payment or benefits set forth in this Release until the seven day period has expired without revocation.

Confidential- Subject to Protective Order

DOW0026175

9. That I have not filed any complaints with a court or administrative agency against any Releasee prior to the date of signing of this Release. If I have filed a complaint or charge against any Releasee, I agree that I will take whatever reasonable action necessary to have the claim dismissed.

10. That I have not assigned or attempted to assign or give to anyone else any claim I have or believe that I may have against any Releasee.

11. That I acknowledge and agree that if, after the termination of my employment with the Company, I become reemployed by the Company or any of its affiliates, the Company may require me to repay, as a condition of reemployment, that portion of the Severance Payment received that exceeds the amount of base salary which I would have received had I remained in the Company's employment. The rate used in determining the amount of repayment will be the same rate that was used in calculating the Severance Payment. For purposes of this provision, "affiliates" means any company in which the Company has an ownership interest of fifty percent or greater.

12. That, apart from the benefits recited in this Release and Waiver, I waive any rights I have or might have to any benefits under any past, current or future severance plan offered or adopted by Dow.

13. That I acknowledge under the penalties for perjury, that: (a) I have received from the Company for consideration for a period of at least 45 days an Older Worker Benefit Protection Act of 1990 age and job title/job class list in a format that allows me to make a knowing, voluntary, and fully informed choice about whether to accept or reject the offer of special transition assistance benefits under this Release; and (b) I have been informed that I may, at any time during my applicable consideration and revocation period, both (i) request and obtain an updated version of this list and (ii) express any concerns I may have about the format or content of this list, and that I have availed myself of those opportunities to the extent I felt necessary to make a voluntary, knowing, and fully informed decision.

This Release does not affect my rights and obligations under the Company's standard Employee Agreement or any other secrecy or confidentiality agreements that I have signed with the Company or under the various Company employee compensation or benefit plans and programs (except as specifically modified herein), which agreements, plans, and programs are governed by their terms. Apart from the benefits recited in this Release and Waiver, I waive any rights I have or might have to any benefits under any past, current or future severance plan offered or adopted by the Company, including but not limited to the U.S. Severance Plan.

I agree not to disclose the terms of this Release to any person without the written consent of the Company, except to my legal, financial and tax advisors, and members of my immediate family, and any prospective or subsequent employer as respects any of my

Confidential- Subject to Protective Order                                    DOW0026176

obligations under numbered paragraphs 2 to 4 immediately above who may need to be informed of these terms of this Release.

The construction, interpretation and performance of this Release shall be governed by the laws of the state in which I am working on the date of termination of my employment with the Company.

If any provision of this Release is determined to be invalid or unenforceable, the Company and I agree that such determination shall not affect the other provisions, and that all other provisions shall be enforced as if the invalid provision were not a part of this Release. Should any provision be held unenforceable for any reason, then such provision shall be enforced to the maximum extent permitted by law.

I further acknowledge that this Release contains the entire agreement between myself and the Company and cannot be modified except in writing if signed by me and the Company. Except as otherwise specifically provided for in this Release, this Release supercedes and replaces all prior agreements and understandings, written or oral, and any other employment or severance agreements or arrangements that may have been made by and between me and the Company. I represent and acknowledge that in executing this Release I have not relied upon any representation or statement not set forth herein made by any of the Releasees or any of the Releasee's agents, representatives or attorneys with regards to the subject matter of this Release, except for information contained in official plan documents.

**I understand that I have the right to consult with an attorney before signing this Release (and to the extent I desire, I have availed myself of that right), that I have at least 45 days to consider the Release before signing it, and that I may revoke the Release within seven calendar days after signing it.** For revocation to be effective, written notice must be received by the Company no later than the close of business on the seventh day after I sign this Release. I understand that this revocation can be made by delivering the written notice of revocation to the H.R. Service Center, The Dow Chemical Company, EDC, Midland, Michigan 48674, by First Class mail, by facsimile transmission (Fax No. 989-636-1693), or by hand delivery. I also understand that this Release shall not become effective or enforceable until the seven day revocation period has expired. If I sign the Release before the expiration of the 45 day period, I acknowledge that I have done so of my own choice and without coercion by the Company.

USSP Release, revised 6/1/07                    7

Confidential- Subject to Protective Order                    DOW0026177

By signing this release, I state that: I have read it; I understand it and know that I am giving up important rights; I agree with everything in it; I am aware of my right to consult an attorney before signing it; and I have signed it knowingly and voluntarily; I am aware I may revoke at any time within seven days after the date of signing indicated below by giving written notice of revocation to the H.R. Service Center.

_12/31/2008_
Date of Signing

## Participant 18

Employee Signature

## Participant 18

Employee Name Printed

ACCEPTED:
THE DOW CHEMICAL COMPANY

By: _Keri Husen_
Signature

_Keri Husen  HR Service Center Agent_
Print Name and Title

Date: _12-18-08_

USSP Release, revised 6/1/07                    8

Confidential- Subject to Protective Order

DOW0026178

## TERMINATION GENERAL RELEASE



Name: Participant 6                                  Employee No.: ▮▮▮▮

This Release sets forth the terms under which my employer will provide to me various special transition assistance benefits in connection with the termination of my employment with The Dow Chemical Company.

I acknowledge that the termination of my employment was or is effective on July 31, 2008.

I further acknowledge that eligibility to receive the various special transition assistance benefits is conditioned upon my signing and not revoking this Release.

In consideration for the transition assistance benefits described below, I release and discharge The Dow Chemical Company and any of its affiliates or subsidiary companies (collectively the "Company"), and its officers, directors, employees, shareholders, successors and assigns ("Releasees") from all claims (including claims for attorney's fees and costs), demands and causes of action, known or unknown, which I may have or claim to have against any Releasee, arising out of, or in any way relating to, my employment or termination of my employment with the Company, whether based on any act or omission to act. This includes, but is not limited to, claims of negligence, intentional misconduct, breach of contract (whether written or oral), violation of the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) (as amended), violation of the Employee Retirement Income Security Act of 1974 (ERISA) (as amended), violation of the **Age Discrimination in Employment Act of 1967 (ADEA) (as amended)**, violation of the Worker Adjustment and Retraining Act (WARN) (as amended), claims arising under any federal, state or local laws, executive orders, regulations, directives, codes, or common law prohibiting employment discrimination based on age, color, race, gender/sex, sexual preference/orientation, height, weight, marital status, national origin, mental or physical disability, religious affiliation, veteran status or any other forms of discrimination, and claims based on any other laws, executive orders, regulations, directives, codes or common law affecting relations between employers and employees, including claims growing out of the Company's termination of its employees. This Release does not affect any rights I may have to file for a benefit under any state workers' compensation statute.

With respect to any charges or complaints that have been filed or may be filed concerning events or actions relating to my employment or the termination of my employment and which occurred prior to my signing this Release, unless the claim is specifically permitted by the terms of this Release, I agree to take whatever reasonable action necessary to cause the charge or complaint to be dismissed. I additionally waive and release any right I may have to recover in any lawsuit or proceeding brought by me, an administrative agency, or any other person on my behalf or which includes me in any

USSP Release, revised 6/01/07

Confidential- Subject to Protective Order                                  DOW0026179

class. This paragraph is not intended to limit me from instituting legal action for the purpose of enforcing this Release, nor does this Release affect my rights or claims I may have which arise after I sign this Release. I also understand that rights or claims under the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 621, *et seq.*) that may arise after the date this Release is executed are not waived.

The transition assistance benefits which I will receive if I sign and do not revoke this Release in a timely manner consist of the following:

1. U. S. Severance Plan:
    a. I am eligible to receive a lump sum Severance Payment of $217,642 (less normal tax withholdings for income taxes, FICA, and any outstanding amounts I owe to the Company, including but not limited to any outstanding balance owed on Shared Appreciation Mortgage loans or other housing or relocation loans), after I leave the payroll.

    I understand that payment will not be made to me sooner than my termination date or sooner than the expiration of seven days following my signing this Release without revoking it in writing.

    b. I am eligible to receive reimbursement, up to a maximum of $300 (subject to withholding of applicable taxes), for the cost of financial counseling services provided I utilize an approved professional financial counseling service and submit a satisfactory receipt within six months following the effective date of termination of my employment by the Company.

    c. At my option, I will be provided with professional outplacement counseling services with a provider and program to be selected by the Plan Administrator based on my job level at the time of my separation from employment. The utilization of the outplacement counseling service must begin within three months of my termination date and will continue for a maximum of two to nine months, depending upon the terms of the program in which I am eligible to participate. The objective of outplacement counseling services is to assist me in pursuing a career outside the Company. I acknowledge that neither the outplacement counseling service provider nor the Company can guarantee subsequent employment. I further acknowledge that if I do not choose to use the outplacement counseling services, there is no alternative or substitute benefit.

2. Medical Coverage (does not include dental coverage):
    a. If on the effective date of my separation from employment I am eligible for coverage under The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care




USSP Release, revised 6/11/07                    2

Confidential- Subject to Protective Order                    DOW0026180

Program[1], my premium rate for retiree medical coverage under the applicable retiree medical plan for 18 months following the effective date of my separation from employment will be the same premiums active employees of Dow pay (depending on your full-time or "Less-Than-Full-Time" status). Eligibility for the coverage at the active employee premium rate is subject to my continuous premium payments during the entire 18-month period. After 18 months, my cost for coverage will increase, and will be subject to the Retiree Medical Budget and the Retiree Medical Support Schedule depending on my years of Service. These rates are subject to change. All terms and conditions of the applicable retiree medical plan shall apply. **I understand that in general, eligibility for retiree medical ends when I am eligible for Medicare.** Some exceptions may apply[2]. For details, see the plan document for The Dow Chemical Company Retiree Medical Care Program or Union Carbide Corporation Retiree Medical Care Program, whichever is applicable. The Dow Chemical Company reserves the right to amend, modify, or terminate The Dow Chemical Company Retiree Medical Care Program and The Dow Chemical Company Insured Health Program at any time. Union Carbide Corporation reserves the right to amend, modify or terminate the Union Carbide Corporation Retiree Medical Care Program and the Union Carbide Corporation Insured Health Program at any time.

b.  If on the effective date of my separation from employment I am not eligible for coverage under The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program, I can elect to extend medical care coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program (depending on the plan I was enrolled in prior to termination of employment) for up to three (3) years from the effective date of my separation from employment or until I am eligible for coverage under another group plan (or a Dow plan through a dual Dow career spouse), whichever occurs first. If I elect extended coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program prior to the deadline specified

---

[1] Generally, a former Employee is eligible for coverage under one of these retiree medical programs if he or she is at least age 50 with 10 or more years of credited service under DEPP or UCEPP (whichever is applicable). A former Employee may also be eligible if he or she was hired prior to January 1, 2008 by an employer that was authorized as a participating employer of the retiree medical program prior to January 1, 2008, and has 10 or more years of credited service under DEPP or UCEPP (whichever is applicable) with at least 60 points (age plus service) and has signed a release acceptable to the Participating Employer. See the applicable retiree medical summary plan description for eligibility details.

[2] Exceptions apply to the following:
  a.  former Employees of The Dow Chemical Company who were hired prior to January 1, 1993,
  b.  former Employees of ANGUS Chemical Company who were hired prior to January 1, 1999,
  c.  former Employees of Union Carbide Corporation who were hired prior to February 6, 2001,
  d.  former Employees of Dow AgroSciences who were hired prior to January 1, 2004.
For more information, see the Plan Document for The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program, whichever is applicable.

Confidential- Subject to Protective Order

DOW0026181

in the notice I will receive from Ceridian, my premium will be the same premium active employees of Dow pay (depending on my full-time or "Less-Than-Full-Time" status) during the first 18 months of extended coverage. The premium will be 102% of the full, unsubsidized cost of coverage for the remaining 18 months of extended coverage. Eligibility for the extended coverage is subject to continuous premium payments during the entire 36-month period. These rates are subject to change. The Company reserves the right to amend, modify, or terminate The Dow Chemical Company Medical Care Program and The Dow Chemical Company Insured Health Program at any time.

I have indicated my election decision on a separate Extended Coverage Enrollment Form.

I make the following representations to the Company, each of which is an important consideration for the Company's willingness to enter into this Release with me:

1. That I have returned or will return to the Company on or before my termination date, all Company property, including, without limitation, books, records and documents, files, memoranda, credit cards, Company passes, keys, computer access codes, disk and instructional manuals, tools, computers, and other physical property, which was or may be in my possession.

2. That I agree that I will not disclose to anyone or use, directly or indirectly, after termination of my employment with the Company, any Confidential Information of the Company, except with the written consent of the Company. Confidential Information is defined herein to mean trade secrets, know-how, and other information, not generally known, relating to the Company's business which was disclosed to me or with which I became familiar during my term of employment with the Company. Confidential Information includes information relating to the Company's business practices and prospective business interests, including, but not limited to, customer lists, forecasts, business and strategic plans, financial and sales information, products, processes, equipment, manufacturing operations, marketing programs, research, product development, engineering, computer systems and software, and personnel records. This obligation shall continue until such Confidential Information becomes generally known to the public without participation on my part.

3. That I will not at any time or in any manner, and whether directly or indirectly, criticize or disparage the Company or otherwise provide information, issue statements, or take any other action intended or reasonably likely to result in material harm, embarrassment, humiliation to the Company or cause or contribute to it being held in disrepute by any person.

4. That I agree that for a period of two (2) years from the date of the termination of my employment with the Company, I will not participate or have any



USSP Release, revised 6/1/07                    4

Confidential- Subject to Protective Order                                        DOW0026182

interest, directly or indirectly, in any business which involves an area of technology or business in which I worked for the Company during the last five (5) years of my employment at the Company and in which I was exposed to any Confidential Information (as defined in paragraph 2 immediately above) of the Company.  I further agree that for such period, I will not interfere with, disrupt or attempt to disrupt the relationship, contractual or otherwise, with respect to the business carried on by the Company with any other party.  The restriction of this provision shall apply to any area of the United States, or any other country of the world in which the Company is conducting such business or may be reasonably expected to engage in any such business within that two (2) year period.  Such restriction shall apply to me, as owner, partner, officer, employee, consultant or advisor.  For purposes of this provision, ownership of not more than one percent of the common or preferred stock of any publicly held company whose stock is listed on any recognized stock exchange or traded over the counter shall be disregarded.

5. That the payments and other benefits (including subsidized premiums) which the Company has offered to me, as stated above, are payments and benefits to which I would not be entitled but for this Release.

6. That I realize that there are various federal, state and local laws that govern my employment relationship with the Company and/or prohibit employment discrimination on the basis of age, color, race, gender/sex, national origin, mental or physical disability, religious affiliation or veteran status, as well as other forms of discrimination (including, in some jurisdictions, sexual preference/orientation, height, weight, and marital status), and that these laws are enforced through the courts and agencies such as the Equal Employment Opportunity Commission, Department of Labor and State Human Rights Agencies.  I also realize that the Consolidated Omnibus Budget Reconciliation Act of 1985 (as amended), referred to as "COBRA", provides terminated employees the right to continue their active employee medical coverage at 102% of the full cost to insure for up to 18 months.

7. That I am aware that, by signing this Release, I am giving up my right to sue any Releasee not only on the basis of the discrimination laws mentioned above, but also for any other claims which I may have or believe that I may have against any Releasee in connection with my employment or termination of my employment, based upon any event which occurred before I sign this Release.   In addition, I am aware that, by signing this Release, I am waiving my rights under COBRA.

8. That I am aware that I may change my mind and revoke this Release at any time during the seven days after I sign this Release, provided I do so in writing, in which case none of the provisions of this Release will have any effect.  I acknowledge I will not be entitled to receive any payment or benefits set forth in this Release until the seven day period has expired without revocation.

USSP Release, revised 6/1/07                          5

Confidential- Subject to Protective Order                                           DOW0026183

9. That I have not filed any complaints with a court or administrative agency against any Releasee prior to the date of signing of this Release. If I have filed a complaint or charge against any Releasee, I agree that I will take whatever reasonable action necessary to have the claim dismissed.

10. That I have not assigned or attempted to assign or give to anyone else any claim I have or believe that I may have against any Releasee.

11. That I acknowledge and agree that if, after the termination of my employment with the Company, I become reemployed by the Company or any of its affiliates, the Company may require me to repay, as a condition of reemployment, that portion of the Severance Payment received that exceeds the amount of base salary which I would have received had I remained in the Company's employment. The rate used in determining the amount of repayment will be the same rate that was used in calculating the Severance Payment. For purposes of this provision, "affiliates" means any company in which the Company has an ownership interest of fifty percent or greater.

12. That, apart from the benefits recited in this Release and Waiver, I waive any rights I have or might have to any benefits under any past, current or future severance plan offered or adopted by Dow.

13. That I acknowledge under the penalties for perjury, that: (a) I have received from the Company for consideration for a period of at least 45 days an Older Worker Benefit Protection Act of 1990 age and job title/job class list in a format that allows me to make a knowing, voluntary, and fully informed choice about whether to accept or reject the offer of special transition assistance benefits under this Release; and (b) I have been informed that I may, at any time during my applicable consideration and revocation period, both (i) request and obtain an updated version of this list and (ii) express any concerns I may have about the format or content of this list, and that I have availed myself of those opportunities to the extent I felt necessary to make a voluntary, knowing, and fully informed decision.

This Release does not affect my rights and obligations under the Company's standard Employee Agreement or any other secrecy or confidentiality agreements that I have signed with the Company or under the various Company employee compensation or benefit plans and programs (except as specifically modified herein), which agreements, plans, and programs are governed by their terms. Apart from the benefits recited in this Release and Waiver, I waive any rights I have or might have to any benefits under any past, current or future severance plan offered or adopted by the Company, including but not limited to the U.S. Severance Plan.

I agree not to disclose the terms of this Release to any person without the written consent of the Company, except to my legal, financial and tax advisors, and members of my immediate family, and any prospective or subsequent employer as respects any of my

USSP Release, revised 6/1/07                6

Confidential- Subject to Protective Order

DOW0026184

obligations under numbered paragraphs 2 to 4 immediately above who may need to be informed of these terms of this Release.

The construction, interpretation and performance of this Release shall be governed by the laws of the state in which I am working on the date of termination of my employment with the Company.

If any provision of this Release is determined to be invalid or unenforceable, the Company and I agree that such determination shall not affect the other provisions, and that all other provisions shall be enforced as if the invalid provision were not a part of this Release. Should any provision be held unenforceable for any reason, then such provision shall be enforced to the maximum extent permitted by law.

I further acknowledge that this Release contains the entire agreement between myself and the Company and cannot be modified except in writing if signed by me and the Company. Except as otherwise specifically provided for in this Release, this Release supercedes and replaces all prior agreements and understandings, written or oral, and any other employment or severance agreements or arrangements that may have been made by and between me and the Company. I represent and acknowledge that in executing this Release I have not relied upon any representation or statement not set forth herein made by any of the Releasees or any of the Releasee's agents, representatives or attorneys with regards to the subject matter of this Release, except for information contained in official plan documents.

**I understand that I have the right to consult with an attorney before signing this Release (and to the extent I desire, I have availed myself of that right), that I have at least 45 days to consider the Release before signing it, and that I may revoke the Release within seven calendar days after signing it.** For revocation to be effective, written notice must be received by the Company no later than the close of business on the seventh day after I sign this Release. I understand that this revocation can be made by delivering the written notice of revocation to the H.R. Service Center, The Dow Chemical Company, EDC, Midland, Michigan 48674, by First Class mail, by facsimile transmission (Fax No. 989-636-1693), or by hand delivery. I also understand that this Release shall not become effective or enforceable until the seven day revocation period has expired. If I sign the Release before the expiration of the 45 day period, I acknowledge that I have done so of my own choice and without coercion by the Company.

USSP Release, revised 6/1/07                                        7

Confidential- Subject to Protective Order                                        DOW0026185

By signing this release, I state that: I have read it; I understand it and know that I am giving up important rights; I agree with everything in it; I am aware of my right to consult an attorney before signing it; and I have signed it knowingly and voluntarily; I am aware I may revoke at any time within seven days after the date of signing indicated below by giving written notice of revocation to the H.R. Service Center.

_8/1/08_

Date of Signing

## Participant 6

Employee Signature

## Participant 6

Employee Name Printed

ACCEPTED:
THE DOW CHEMICAL COMPANY

By: _Elaine Rabideau_
Signature

_Elaine Rabideau_
Print Name and Title _HR Service Rep_

Date: _8/4/08_

USSP Release, revised 6/1/07          8

Confidential- Subject to Protective Order

## TERMINATION GENERAL RELEASE



Name: Participant 36                                    Employee No.:

This Release sets forth the terms under which my employer will provide to me various special transition assistance benefits in connection with the termination of my employment with The Dow Chemical Company.

I acknowledge that the termination of my employment was or is effective on July 31, 2008.

I further acknowledge that eligibility to receive the various special transition assistance benefits is conditioned upon my signing and not revoking this Release.

In consideration for the transition assistance benefits described below, I release and discharge The Dow Chemical Company and any of its affiliates or subsidiary companies (collectively the "Company"), and its officers, directors, employees, shareholders, successors and assigns ("Releasees") from all claims (including claims for attorney's fees and costs), demands and causes of action, known or unknown, which I may have or claim to have against any Releasee, arising out of, or in any way relating to, my employment or termination of my employment with the Company, whether based on any act or omission to act. This includes, but is not limited to, claims of negligence, intentional misconduct, breach of contract (whether written or oral), violation of the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) (as amended), violation of the Employee Retirement Income Security Act of 1974 (ERISA) (as amended), violation of the **Age Discrimination in Employment Act of 1967 (ADEA) (as amended)**, violation of the Worker Adjustment and Retraining Act (WARN) (as amended), claims arising under any federal, state or local laws, executive orders, regulations, directives, codes, or common law prohibiting employment discrimination based on age, color, race, gender/sex, sexual preference/orientation, height, weight, marital status, national origin, mental or physical disability, religious affiliation, veteran status or any other forms of discrimination, and claims based on any other laws, executive orders, regulations, directives, codes or common law affecting relations between employers and employees, including claims growing out of the Company's termination of its employees. This Release does not affect any rights I may have to file for a benefit under any state workers' compensation statute.

With respect to any charges or complaints that have been filed or may be filed concerning events or actions relating to my employment or the termination of my employment and which occurred prior to my signing this Release, unless the claim is specifically permitted by the terms of this Release, I agree to take whatever reasonable action necessary to cause the charge or complaint to be dismissed. I additionally waive and release any right I may have to recover in any lawsuit or proceeding brought by me, an administrative agency, or any other person on my behalf or which includes me in any

USSP Release, revised 6/01/07

Confidential- Subject to Protective Order

DOW0026187

class. This paragraph is not intended to limit me from instituting legal action for the purpose of enforcing this Release, nor does this Release affect my rights or claims I may have which arise after I sign this Release. I also understand that rights or claims under the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 621, *et seq.*) that may arise after the date this Release is executed are not waived.

The transition assistance benefits which I will receive if I sign and do not revoke this Release in a timely manner consist of the following:

1. U. S. Severance Plan:
   a. I am eligible to receive a lump sum Severance Payment of $41,982 (less normal tax withholdings for income taxes, FICA, and any outstanding amounts I owe to the Company, including but not limited to any outstanding balance owed on Shared Appreciation Mortgage loans or other housing or relocation loans), after I leave the payroll.

      I understand that payment will not be made to me sooner than my termination date or sooner than the expiration of seven days following my signing this Release without revoking it in writing.

   b. I am eligible to receive reimbursement, up to a maximum of $300 (subject to withholding of applicable taxes), for the cost of financial counseling services provided I utilize an approved professional financial counseling service and submit a satisfactory receipt within six months following the effective date of termination of my employment by the Company.

   c. At my option, I will be provided with professional outplacement counseling services with a provider and program to be selected by the Plan Administrator based on my job level at the time of my separation from employment. The utilization of the outplacement counseling service must begin within three months of my termination date and will continue for a maximum of two to nine months, depending upon the terms of the program in which I am eligible to participate. The objective of outplacement counseling services is to assist me in pursuing a career outside the Company. I acknowledge that neither the outplacement counseling service provider nor the Company can guarantee subsequent employment. I further acknowledge that if I do not choose to use the outplacement counseling services, there is no alternative or substitute benefit.

2. Medical Coverage (does not include dental coverage):
   a. If on the effective date of my separation from employment I am eligible for coverage under The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care

*Handwritten in left margin:*
Scheduled Date  X – 12 – 08
Payroll Date  8-29-08  8-29-08
Input By  DMR
Audited By  _____

Confidential- Subject to Protective Order                                        DOW0026188

Program[1], my premium rate for retiree medical coverage under the applicable retiree medical plan for 18 months following the effective date of my separation from employment will be the same premiums active employees of Dow pay (depending on your full-time or "Less-Than-Full-Time" status). Eligibility for the coverage at the active employee premium rate is subject to my continuous premium payments during the entire 18-month period. After 18 months, my cost for coverage will increase, and will be subject to the Retiree Medical Budget and the Retiree Medical Support Schedule depending on my years of Service. These rates are subject to change. All terms and conditions of the applicable retiree medical plan shall apply. **I understand that in general, eligibility for retiree medical ends when I am eligible for Medicare.** Some exceptions may apply[2]. For details, see the plan document for The Dow Chemical Company Retiree Medical Care Program or Union Carbide Corporation Retiree Medical Care Program, whichever is applicable. The Dow Chemical Company reserves the right to amend, modify, or terminate The Dow Chemical Company Retiree Medical Care Program and The Dow Chemical Company Insured Health Program at any time. Union Carbide Corporation reserves the right to amend, modify or terminate the Union Carbide Corporation Retiree Medical Care Program and the Union Carbide Corporation Insured Health Program at any time.

b.  If on the effective date of my separation from employment I am not eligible for coverage under The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program, I can elect to extend medical care coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program (depending on the plan I was enrolled in prior to termination of employment) for up to three (3) years from the effective date of my separation from employment or until I am eligible for coverage under another group plan (or a Dow plan through a dual Dow career spouse), whichever occurs first. If I elect extended coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program prior to the deadline specified

---

[1] Generally, a former Employee is eligible for coverage under one of these retiree medical programs if he or she is at least age 50 with 10 or more years of credited service under DEPP or UCEPP (whichever is applicable). A former Employee may also be eligible if he or she was hired prior to January 1, 2008 by an employer that was authorized as a participating employer of the retiree medical program prior to January 1, 2008, and has 10 or more years of credited service under DEPP or UCEPP (whichever is applicable) with at least 60 points (age plus service) and has signed a release acceptable to the Participating Employer. See the applicable retiree medical summary plan description for eligibility details.

[2] Exceptions apply to the following:
    a.  former Employees of The Dow Chemical Company who were hired prior to January 1, 1993,
    b.  former Employees of ANGUS Chemical Company who were hired prior to January 1, 1999,
    c.  former Employees of Union Carbide Corporation who were hired prior to February 6, 2001,
    d.  former Employees of Dow AgroSciences who were hired prior to January 1, 2004.

For more information, see the Plan Document for The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program, whichever is applicable.

Confidential- Subject to Protective Order

DOW0026189

in the notice I will receive from Ceridian, my premium will be the same premium active employees of Dow pay (depending on my full-time or "Less-Than-Full-Time" status) during the first 18 months of extended coverage. The premium will be 102% of the full, unsubsidized cost of coverage for the remaining 18 months of extended coverage. Eligibility for the extended coverage is subject to continuous premium payments during the entire 36-month period. These rates are subject to change. The Company reserves the right to amend, modify, or terminate The Dow Chemical Company Medical Care Program and The Dow Chemical Company Insured Health Program at any time.

I have indicated my election decision on a separate Extended Coverage Enrollment Form.

I make the following representations to the Company, each of which is an important consideration for the Company's willingness to enter into this Release with me:

1. That I have returned or will return to the Company on or before my termination date, all Company property, including, without limitation, books, records and documents, files, memoranda, credit cards, Company passes, keys, computer access codes, disk and instructional manuals, tools, computers, and other physical property, which was or may be in my possession.

2. That I agree that I will not disclose to anyone or use, directly or indirectly, after termination of my employment with the Company, any Confidential Information of the Company, except with the written consent of the Company. Confidential Information is defined herein to mean trade secrets, know-how, and other information, not generally known, relating to the Company's business which was disclosed to me or with which I became familiar during my term of employment with the Company. Confidential Information includes information relating to the Company's business practices and prospective business interests, including, but not limited to, customer lists, forecasts, business and strategic plans, financial and sales information, products, processes, equipment, manufacturing operations, marketing programs, research, product development, engineering, computer systems and software, and personnel records. This obligation shall continue until such Confidential Information becomes generally known to the public without participation on my part.

3. That I will not at any time or in any manner, and whether directly or indirectly, criticize or disparage the Company or otherwise provide information, issue statements, or take any other action intended or reasonably likely to result in material harm, embarrassment, humiliation to the Company or cause or contribute to it being held in disrepute by any person.

4. That I agree that for a period of two (2) years from the date of the termination of my employment with the Company, I will not participate or have any



Confidential- Subject to Protective Order                                                        DOW0026190

interest, directly or indirectly, in any business which involves an area of technology or business in which I worked for the Company during the last five (5) years of my employment at the Company and in which I was exposed to any Confidential Information (as defined in paragraph 2 immediately above) of the Company. I further agree that for such period, I will not interfere with, disrupt or attempt to disrupt the relationship, contractual or otherwise, with respect to the business carried on by the Company with any other party. The restriction of this provision shall apply to any area of the United States, or any other country of the world in which the Company is conducting such business or may be reasonably expected to engage in any such business within that two (2) year period. Such restriction shall apply to me, as owner, partner, officer, employee, consultant or advisor. For purposes of this provision, ownership of not more than one percent of the common or preferred stock of any publicly held company whose stock is listed on any recognized stock exchange or traded over the counter shall be disregarded.

5.  That the payments and other benefits (including subsidized premiums) which the Company has offered to me, as stated above, are payments and benefits to which I would not be entitled but for this Release.

6.  That I realize that there are various federal, state and local laws that govern my employment relationship with the Company and/or prohibit employment discrimination on the basis of age, color, race, gender/sex, national origin, mental or physical disability, religious affiliation or veteran status, as well as other forms of discrimination (including, in some jurisdictions, sexual preference/orientation, height, weight, and marital status), and that these laws are enforced through the courts and agencies such as the Equal Employment Opportunity Commission, Department of Labor and State Human Rights Agencies. I also realize that the Consolidated Omnibus Budget Reconciliation Act of 1985 (as amended), referred to as "COBRA", provides terminated employees the right to continue their active employee medical coverage at 102% of the full cost to insure for up to 18 months.

7.  That I am aware that, by signing this Release, I am giving up my right to sue any Releasee not only on the basis of the discrimination laws mentioned above, but also for any other claims which I may have or believe that I may have against any Releasee in connection with my employment or termination of my employment, based upon any event which occurred before I sign this Release. In addition, I am aware that, by signing this Release, I am waiving my rights under COBRA.

8.  That I am aware that I may change my mind and revoke this Release at any time during the seven days after I sign this Release, provided I do so in writing, in which case none of the provisions of this Release will have any effect. I acknowledge I will not be entitled to receive any payment or benefits set forth in this Release until the seven day period has expired without revocation.

USSP Release, revised 6/1/07                            5

Confidential- Subject to Protective Order                            DOW0026191

9. That I have not filed any complaints with a court or administrative agency against any Releasee prior to the date of signing of this Release. If I have filed a complaint or charge against any Releasee, I agree that I will take whatever reasonable action necessary to have the claim dismissed.

10. That I have not assigned or attempted to assign or give to anyone else any claim I have or believe that I may have against any Releasee.

11. That I acknowledge and agree that if, after the termination of my employment with the Company, I become reemployed by the Company or any of its affiliates, the Company may require me to repay, as a condition of reemployment, that portion of the Severance Payment received that exceeds the amount of base salary which I would have received had I remained in the Company's employment. The rate used in determining the amount of repayment will be the same rate that was used in calculating the Severance Payment. For purposes of this provision, "affiliates" means any company in which the Company has an ownership interest of fifty percent or greater.

12. That, apart from the benefits recited in this Release and Waiver, I waive any rights I have or might have to any benefits under any past, current or future severance plan offered or adopted by Dow.

This Release does not affect my rights and obligations under the Company's standard Employee Agreement or any other secrecy or confidentiality agreements that I have signed with the Company or under the various Company employee compensation or benefit plans and programs (except as specifically modified herein), which agreements, plans, and programs are governed by their terms. Apart from the benefits recited in this Release and Waiver, I waive any rights I have or might have to any benefits under any past, current or future severance plan offered or adopted by the Company, including but not limited to the U.S. Severance Plan.

I agree not to disclose the terms of this Release to any person without the written consent of the Company, except to my legal, financial and tax advisors, and members of my immediate family, and any prospective or subsequent employer as respects any of my obligations under numbered paragraphs 2 to 4 immediately above who may need to be informed of these terms of this Release.

The construction, interpretation and performance of this Release shall be governed by the laws of the state in which I am working on the date of termination of my employment with the Company.

If any provision of this Release is determined to be invalid or unenforceable, the Company and I agree that such determination shall not affect the other provisions, and that all other provisions shall be enforced as if the invalid provision were not a part of this Release. Should any provision be held unenforceable for any reason, then such provision shall be enforced to the maximum extent permitted by law.

USSP Release, revised 6/1/07                     6

Confidential- Subject to Protective Order                                          DOW0026192

I further acknowledge that this Release contains the entire agreement between myself and the Company and cannot be modified except in writing if signed by me and the Company. Except as otherwise specifically provided for in this Release, this Release supercedes and replaces all prior agreements and understandings, written or oral, and any other employment or severance agreements or arrangements that may have been made by and between me and the Company. I represent and acknowledge that in executing this Release I have not relied upon any representation or statement not set forth herein made by any of the Releasees or any of the Releasee's agents, representatives or attorneys with regards to the subject matter of this Release, except for information contained in official plan documents.

**I understand that I have the right to consult with an attorney before signing this Release (and to the extent I desire, I have availed myself of that right), that I have at least 45 days to consider the Release before signing it, and that I may revoke the Release within seven calendar days after signing it.** For revocation to be effective, written notice must be received by the Company no later than the close of business on the seventh day after I sign this Release. I understand that this revocation can be made by delivering the written notice of revocation to the H.R. Service Center, The Dow Chemical Company, EDC, Midland, Michigan 48674, by First Class mail, by facsimile transmission (Fax No. 989-636-1693), or by hand delivery. I also understand that this Release shall not become effective or enforceable until the seven day revocation period has expired. If I sign the Release before the expiration of the 45 day period, I acknowledge that I have done so of my own choice and without coercion by the Company.

USSP Release, revised 6/1/07                    7                    ██████

Confidential- Subject to Protective Order                    DOW0026193

By signing this release, I state that: I have read it; I understand it and know that I am giving up important rights; I agree with everything in it; I am aware of my right to consult an attorney before signing it; and I have signed it knowingly and voluntarily; I am aware I may revoke at any time within seven days after the date of signing indicated below by giving written notice of revocation to the H.R. Service Center.

## Participant 36

_Aug 6, 2008_
Date of Signing

Employee Signature

## Participant 36

Employee Name Printed

ACCEPTED:
THE DOW CHEMICAL COMPANY

By: _D l a Royce_
Signature
Deborah A Royce

_H R. Serv. Center Rep_
Print Name and Title

Date: _8-12-08_

USSP Release, revised 6/1/07                8

Confidential- Subject to Protective Order

## TERMINATION GENERAL RELEASE



Name: Participant 2

Employee No.: 

This Release sets forth the terms under which my employer will provide to me various special transition assistance benefits in connection with the termination of my employment[1] with The Dow Chemical Company.

I acknowledge that the termination of my employment was or is effective on June 30, 2009.

I further acknowledge that eligibility to receive the various special transition assistance benefits is conditioned upon my signing and not revoking this Release.

In consideration for the transition assistance benefits described below, I release and discharge The Dow Chemical Company and any of its affiliates or subsidiary companies (collectively the "Company"), and its officers, directors, employees, shareholders, successors and assigns ("Releasees") from all claims (including claims for attorney's fees and costs), demands and causes of action, known or unknown, which I may have or claim to have against any Releasee, arising out of, or in any way relating to, my employment or termination of my employment with the Company, whether based on any act or omission to act. This includes, but is not limited to, claims of negligence, intentional misconduct, breach of contract (whether written or oral), violation of the Employee Retirement Income Security Act of 1974 (ERISA) (as amended), violation of the **Age Discrimination in Employment Act of 1967 (ADEA) (as amended)**, violation of the Worker Adjustment and Retraining Act (WARN) (as amended), claims arising under any federal, state or local laws, executive orders, regulations, directives, codes, or common law prohibiting employment discrimination based on age, color, race, gender/sex, sexual preference/orientation, height, weight, marital status, national origin, mental or physical disability, religious affiliation, veteran status or any other forms of discrimination, and claims based on any other laws, executive orders, regulations, directives, codes or common law affecting relations between employers and employees, including claims growing out of the Company's termination of its employees.

This Release does not affect any rights that I may have to file for a benefit under any state workers' compensation or unemployment compensation statute or for vested rights under ERISA-covered employee benefit plans as applicable to me on the date I sign this Release, that may arise under the ADEA, after I sign this Release, or that cannot be released by private agreement. I understand that nothing in this Release prevents me from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the EEOC, the NLRB, or any other federal, state, or local agency charged with the enforcement of employment laws, although by signing this release I am waiving and releasing any rights I may have to individual relief based on claims asserted in such charge or complaint or brought by any

---

[1] As used in this Termination General Release, "termination of employment" has the same meaning as Separation of Service defined in the summary plan description for the U.S. Severance Plan ("USSP").

USSP Release (Revised January 2009)                 1

Confidential- Subject to Protective Order

DOW0026195

other person on my behalf or which include me in any class. This paragraph is not intended to limit me from instituting legal action for the purpose of enforcing this Release.

The transition assistance benefits which I will receive if I sign and do not revoke this Release in a timely manner consist of the following:

1. U. S. Severance Plan:
   a. I am eligible to receive a lump sum Severance Payment of $132,512 (less normal tax withholdings for income taxes, FICA, and any outstanding amounts I owe to the Company, including but not limited to any outstanding balance owed on Shared Appreciation Mortgage loans or other housing or relocation loans), after I leave the payroll.

      I understand that payment will not be made to me sooner than my termination date or sooner than the expiration of seven days following my signing this Release without revoking it in writing.

   b. I am eligible to receive reimbursement, up to a maximum of $300 (subject to withholding of applicable taxes), for the cost of financial counseling services provided I utilize an approved professional financial counseling service and submit a satisfactory receipt within six months following the effective date of termination of my employment by the Company.

   c. At my option, I will be provided with profe............ ounseling services with a provider and program to be ............ dministrator based on my job level at the time of my sep............ ent. The utilization of the outplacement counseling ............ ain three months of my termination date and will continue f............ o nine months, depending upon the terms of the program i............ o participate. The objective of outplacement counseling ............ in pursuing a career outside the Company. I acknowled............ lacement counseling service provider nor the Comp............ equent employment. I further acknowledge that i............ ...... e the outplacement counseling services, there is no alternative or substitute benefit.

2. Medical Coverage (does not include dental coverage)[2]:
   a. If on the effective date of my separation from employment I am eligible for coverage under The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program[3], my premium rate

---

[2] The medical coverages described in this bullet point do not apply to dental coverage.

[3] Generally, a former Employee is eligible for coverage under one of these retiree medical programs if he or she was hired prior to January 1, 2008, is at least age 50 with 10 or more years of credited service under the DEPP component ("DEPP") of the Dow Employees' Pension Plan or the UCEPP component ("UCEPP") of the Union Carbide Employees' Pension Plan (whichever is applicable). A former Employee may also be eligible if he or she was hired prior to January 1, 2008 by an employer that was authorized as a participating employer of the retiree medical program prior to January 1, 2008, and has 10 or more years of credited service under DEPP or UCEPP

USSP Release (Revised January 2009)                    2


Confidential- Subject to Protective Order                                    DOW0026196

for retiree medical coverage under the applicable retiree medical plan for 18 months following the effective date of my separation from employment will be the same premiums active employees of Dow pay (depending on your full-time or "Less-Than-Full-Time" status). Eligibility for the coverage at the active employee premium rate is subject to my continuous premium payments during the entire 18-month period. After 18 months, my cost for coverage will increase, and will be subject to the Retiree Medical Budget and the Retiree Medical Support Schedule depending on my years of Service. These rates are subject to change. All terms and conditions of the applicable retiree medical plan shall apply. **I understand that in general, eligibility for retiree medical ends when I am eligible for Medicare.** Some exceptions may apply[4]. For details, see the plan document for The Dow Chemical Company Retiree Medical Care Program or Union Carbide Corporation Retiree Medical Care Program, whichever is applicable. The Dow Chemical Company reserves the right to amend, modify, or terminate The Dow Chemical Company Retiree Medical Care Program and The Dow Chemical Company Insured Health Program at any time. Union Carbide Corporation reserves the right to amend, modify or terminate the Union Carbide Corporation Retiree Medical Care Program and the Union Carbide Corporation Insured Health Program at any time.

b.  If on the effective date of my separation from employment I am not eligible for coverage under The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program, I can elect to extend medical care coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program (depending on the plan I was enrolled in prior to termination of employment) for up to three (3) years from the effective date of my separation from employment or until I am eligible for coverage under another group plan (or a Dow plan through a dual Dow career spouse), whichever occurs first. If I elect extended coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program prior to the deadline specified in the notice I will receive from Ceridian, my premium will be the same premium active employees of Dow pay (depending on my full-time or "Less-Than-Full-Time" status) during the first 18 months of extended coverage. The premium will be 102% of the full, unsubsidized cost of coverage for the remaining 18 months of extended coverage. Eligibility for the extended coverage is subject to continuous premium payments during the entire 36-month period. These rates are subject to change. The Company reserves the right to amend, modify, or terminate The

---

(whichever is applicable) with at least 60 points (age plus service), and has signed a release acceptable to the Participating Employer.  See the applicable retiree medical summary plan description for eligibility details.
[4] Exceptions apply to the following:
  a.   former Employees of The Dow Chemical Company who were hired prior to January 1, 1993,
  b.   former Employees of ANGUS Chemical Company who were hired prior to January 1, 1999,
  c.   former Employees of Union Carbide Corporation  who were hired prior to February 6, 2001,
  d.   former Employees of Dow AgroSciences who were hired prior to January 1, 2004.
For more information, see the Plan Document for The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program, whichever is applicable.

Confidential- Subject to Protective Order

DOW0026197

Dow Chemical Company Medical Care Program and The Dow Chemical Company Insured Health Program at any time.

I have indicated my election decision on a separate Extended Coverage Enrollment Form.

I make the following representations to the Company, each of which is an important consideration for the Company's willingness to enter into this Release with me:

1. That I have returned or will return to the Company on or before my termination date, all Company property, including, without limitation, books, records and documents, files, memoranda, credit cards, Company passes, keys, computer access codes, disk and instructional manuals, tools, computers, and other physical property, which was or may be in my possession.

2. That I agree that I will not disclose to anyone or use, directly or indirectly, after termination of my employment with the Company, any Confidential Information of the Company, except with the written consent of the Company. Confidential Information is defined herein to mean trade secrets, know-how, and other information, not generally known, relating to the Company's business which was disclosed to me or with which I became familiar during my term of employment with the Company. Confidential Information includes information relating to the Company's business practices and prospective business interests, including, but not limited to, customer lists, forecasts, business and strategic plans, financial and sales information, products, processes, equipment, manufacturing operations, marketing programs, research, product development, engineering, computer systems and software, and personnel records. This obligation shall continue until such Confidential Information becomes generally known to the public without participation on my part.

3. That I will not at any time or in any manner, and whether directly or indirectly, criticize or disparage the Company or otherwise provide information, issue statements, or take any other action intended or reasonably likely to result in material harm, embarrassment, humiliation to the Company or cause or contribute to it being held in disrepute by any person.

4. That I agree that for a period of two (2) years from the date of the termination of my employment with the Company, I will not participate or have any interest, directly or indirectly, in any business which involves an area of technology or business in which I worked for the Company during the last five (5) years of my employment at the Company and in which I was exposed to any Confidential Information (as defined in paragraph 2 immediately above) of the Company. I further agree that for such period, I will not interfere with, disrupt or attempt to disrupt the relationship, contractual or otherwise, with respect to the business carried on by the Company with any other party. The restriction of this provision shall apply to any area of the United States, or any other country of the world in which the Company is conducting such business or

USSP Release (Revised January 2009)          4          ████

Confidential- Subject to Protective Order                                    DOW0026198

may be reasonably expected to engage in any such business within that two (2) year period.  Such restriction shall apply to me, as owner, partner, officer, employee, consultant or advisor.  For purposes of this provision, ownership of not more than one percent of the common or preferred stock of any publicly held company whose stock is listed on any recognized stock exchange or traded over the counter shall be disregarded.

5.  That the payments and other benefits (including subsidized premiums) which the Company has offered to me, as stated above, are payments and benefits to which I would not be entitled but for this Release.

6.  That I realize that there are various federal, state and local laws that govern my employment relationship with the Company and/or prohibit employment discrimination on the basis of age, color, race, gender/sex, national origin, mental or physical disability, religious affiliation or veteran status, as well as other forms of discrimination (including, in some jurisdictions, sexual preference/orientation, height, weight, and marital status), and that these laws are enforced through the courts and agencies such as the Equal Employment Opportunity Commission, Department of Labor and State Human Rights Agencies.  I also realize that the Consolidated Omnibus Budget Reconciliation Act of 1985 (as amended), referred to as "COBRA", provides terminated employees the right to continue their active employee medical coverage at 102% of the full cost to insure for up to 18 months.

7.  That I am aware that, by signing this Release, I am giving up my right to sue any Releasee not only on the basis of the discrimination laws mentioned above, but also for any other claims which I may have or believe that I may have against any Releasee in connection with my employment or termination of my employment, based upon any event which occurred before I sign this Release.    I am further aware that the understanding regarding my right to sue stated in this paragraph does not apply to my right to challenge the knowing and voluntary nature of this Release as respects claims under the ADEA or the Older Worker Benefit Protection Act (OWBPA), although I understand that I have released my right to recovery under those statutes by signing this Release.  Should I break this representation in this paragraph, I agree to pay all of the Company's costs and expenses (including reasonable attorneys' fees) related to the defense of any claims except for those under the ADEA and the OWBPA.  I understand, however, that if I pursue a claim against the Company under the ADEA and/or the OWBPA to challenge the validity of this Release and prevail on the merits of an ADEA claim, a court has the discretion to determine whether the Company is entitled to restitution, recoupment, or set off (herinafter a "reduction") against a monetary award obtained by me in the court proceeding.  A reduction can never exceed the amount I recover, or the consideration I received for signing this release, whichever is less.  I also recognize that the Company may be entitled to recover costs and attorneys' fees incurred by the Company as specifically authorized under applicable law.

8.  That I am aware that I may change my mind and revoke this Release at any time during the seven days after I sign this Release, provided I do so in writing, in which

USSP Release (Revised January 2009)                    5                    ███

Confidential- Subject to Protective Order                                    DOW0026199

case none of the provisions of this Release will have any effect.  I acknowledge I will not be entitled to receive any payment or benefits set forth in this Release until the seven day period has expired without revocation, at which time this Release shall become final and binding.

9.  That I have not filed any complaints with a court or administrative agency against any Releasee prior to the date of signing of this Release, I have recorded and received all overtime compensation due through my last pay period prior to my termination date, I have reported to the Company any and all work-related injuries incurred during employment; and I acknowledge that the Company properly provided any leave of absence because of my or a family member's health condition and I have not been subjected to any improper treatment, conduct or actions due to a request for or taking such leave.

10.  That I have not assigned or attempted to assign or give to anyone else any claim I have or believe that I may have against any Releasee.

11.  That I acknowledge and agree that if, after the termination of my employment with the Company, I become reemployed by the Company or any of its affiliates, the Company may require me to repay, as a condition of reemployment, that portion of the Severance Payment received that exceeds the amount of base salary which I would have received had I remained in the Company's employment.  The rate used in determining the amount of repayment will be the same rate that was used in calculating the Severance Payment.  For purposes of this provision, "affiliates" means any company in which the Company has an ownership interest of fifty percent or greater.

12.  That I acknowledge under the penalties for perjury, that:  (a) I have received from the Company for consideration for a period of at least 45 days an Older Worker Benefit Protection Act age and job title/job class list in a format that allows me to make a knowing, voluntary, and fully informed choice about whether to accept or reject the offer of special transition assistance benefits under this Release; and (b) I have been informed that I may, at any time during my applicable consideration and revocation period, both (i) request and obtain an updated version of this list and (ii) express any concerns I may have about the format or content of this list, and that I have availed myself of those opportunities to the extent I felt necessary to make a voluntary, knowing, and fully informed decision.

This Release does not affect my rights and obligations under the Company's standard Employee Agreement or any other secrecy, confidentiality, non-competition, or invention agreements that I have signed with the Company or under the various Company employee compensation or benefit plans and programs (except as specifically modified herein), which agreements, plans, and programs are governed by their terms.  Apart from the benefits recited in this Release, I waive any rights I have to any benefits under any severance plan offered or adopted by the Company, including but not limited to the U.S. Severance Plan.

USSP Release (Revised January 2009)                     6                     ▮

Confidential- Subject to Protective Order                                          DOW0026200

I agree not to disclose the terms of this Release to any person without the written consent of the Company, except to my legal, financial and tax advisors, and members of my immediate family, and any prospective or subsequent employer as respects any of my obligations under numbered paragraphs 2 to 4 immediately above who may need to be informed of these terms of this Release.

The construction, interpretation and performance of this Release shall be governed by the laws of the state in which I am working on the date of termination of my employment with the Company.

If any provision of this Release is determined to be invalid or unenforceable, the Company and I agree that such determination shall not affect the other provisions, and that all other provisions shall be enforced as if the invalid provision were not a part of this Release. Should any provision be held unenforceable for any reason, then such provision shall be enforced to the maximum extent permitted by law.

I further acknowledge that this Release contains the entire agreement between myself and the Company and cannot be modified except in writing if signed by me and the Company. Except as otherwise specifically provided for in this Release, this Release supercedes and replaces all prior agreements and understandings, written or oral, and any other employment or severance agreements or arrangements that may have been made by and between me and the Company. I represent and acknowledge that in executing this Release I have not relied upon any representation or statement not set forth herein made by any of the Releasees or any of the Releasee's agents, representatives or attorneys with regards to the subject matter of this Release, except for information contained in official plan documents.

**I understand that I have the right to consult with an attorney and the Company is advising me to consult with an attorney before signing this Release (and to the extent I desire, I have availed myself of that right), that I have at least 45 days to consider the Release before signing it, and that I may revoke the Release within seven calendar days after signing it.** For revocation to be effective, written notice must be received by the Company no later than the close of business on the seventh day after I sign this Release. I understand that this revocation can be made by delivering the written notice of revocation to the H.R. Service Center, The Dow Chemical Company, EDC, Midland, Michigan 48674, by First Class mail, by facsimile transmission (Fax No. 989-636-1693), or by hand delivery. I also understand that this Release shall not become effective or enforceable until the seven day revocation period has expired. If I sign the Release before the expiration of the 45 day period, I acknowledge that I have done so of my own choice and without coercion by the Company.

USSP Release (Revised January 2009)                    7

Confidential- Subject to Protective Order                    DOW0026201

**By signing this release, I state that: I have read it; I understand it and know that I am giving up important rights; I agree with everything in it; I am aware of my right to consult an attorney before signing it; and I have signed it knowingly and voluntarily; I am aware I may revoke at any time within seven days after the date of signing indicated below by giving written notice of revocation to the H.R. Service Center.**

4/01/09
Date of Signing

## Participant 2
Employee Signature

## Participant 2
Employee Name Printed

ACCEPTED:
THE DOW CHEMICAL COMPANY

By: _Keri Husen_

Signature

_Keri Husen Authorized Rep of the Compa_
Print Name and Title

Date: _4-13-09_

Confidential- Subject to Protective Order

DOW0026202

RECEIVED

MAR - 2 2009

### TERMINATION GENERAL RELEASE

Name: Participant 11                                 Employee No.: ███████

     This Release sets forth the terms under which my employer will provide to me various special transition assistance benefits in connection with the termination of my employment[1] with The Dow Chemical Company.

     I acknowledge that the termination of my employment was or is effective on March 31, 2009.

     I further acknowledge that eligibility to receive the various special transition assistance benefits is conditioned upon my signing and not revoking this Release.

     In consideration for the transition assistance benefits described below, I release and discharge The Dow Chemical Company and any of its affiliates or subsidiary companies (collectively the "Company"), and its officers, directors, employees, shareholders, successors and assigns ("Releasees") from all claims (including claims for attorney's fees and costs), demands and causes of action, known or unknown, which I may have or claim to have against any Releasee, arising out of, or in any way relating to, my employment or termination of my employment with the Company, whether based on any act or omission to act. This includes, but is not limited to, claims of negligence, intentional misconduct, breach of contract (whether written or oral), violation of the Employee Retirement Income Security Act of 1974 (ERISA) (as amended), violation of the **Age Discrimination in Employment Act of 1967 (ADEA) (as amended)**, violation of the Worker Adjustment and Retraining Act (WARN) (as amended), claims arising under any federal, state or local laws, executive orders, regulations, directives, codes, or common law prohibiting employment discrimination based on age, color, race, gender/sex, sexual preference/orientation, height, weight, marital status, national origin, mental or physical disability, religious affiliation, veteran status or any other forms of discrimination, and claims based on any other laws, executive orders, regulations, directives, codes or common law affecting relations between employers and employees, including claims growing out of the Company's termination of its employees.

     This Release does not affect any rights that I may have to file for a benefit under any state workers' compensation or unemployment compensation statute or for vested rights under ERISA-covered employee benefit plans as applicable to me on the date I sign this Release, that may arise under the ADEA, after I sign this Release, or that cannot be released by private agreement. I understand that nothing in this Release prevents me from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the EEOC, the NLRB, or any other federal, state, or local agency charged with the enforcement of employment laws, although by signing this release I am waiving and releasing any rights I may have to individual relief based on claims asserted in such charge or complaint or brought by any

---

[1] As used in this Termination General Release, "termination of employment" has the same meaning as Separation of Service defined in the summary plan description for the U.S. Severance Plan ("USSP").

Confidential- Subject to Protective Order                                                                 DOW0026203

other person on my behalf or which include me in any class. This paragraph is not intended to limit me from instituting legal action for the purpose of enforcing this Release.

The transition assistance benefits which I will receive if I sign and do not revoke this Release in a timely manner consist of the following:

1. U. S. Severance Plan:
   a. I am eligible to receive a lump sum Severance Payment of $94,937 less normal tax withholdings for income taxes, FICA, and any outstanding amounts I owe to the Company, including but not limited to any outstanding balance owed on Shared Appreciation Mortgage loans or other housing or relocation loans), after I leave the payroll.

      I understand that payment will not be made to me sooner than my termination date or sooner than the expiration of seven days following my signing this Release without revoking it in writing.

   b. I am eligible to receive reimbursement, up to a maximum of $300 (subject to withholding of applicable taxes), for the cost of financ_____
      provided I utilize an approved professional financial c_____    T   3·31·09
      submit a satisfactory receipt within six months follow_____  of
      termination of my employment by the Company.                      S   3·31·09

   c. At my option, I will be provided with professional ou_____    7 Day 4·7·09
      services with a provider and program to be selected b_____    or
      based on my job level at the time of my separation fr_____
      utilization of the outplacement counseling service mu_____    RCI  5·1·09    nonths
      of my termination date and will continue for a maxin_____      nths,
      depending upon the terms of the program in which I am eligible to participate.
      The objective of outplacement counseling services is to assist me in pursuing a
      career outside the Company. I acknowledge that neither the outplacement
      counseling service provider nor the Company can guarantee subsequent
      employment. I further acknowledge that if I do not choose to use the
      outplacement counseling services, there is no alternative or substitute benefit.

2. Medical Coverage (does not include dental coverage)[2]:
   a. If on the effective date of my separation from employment I am eligible for coverage under The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program[3], my premium rate

---

[2] The medical coverages described in this bullet point do not apply to dental coverage.

[3] Generally, a former Employee is eligible for coverage under one of these retiree medical programs if he or she was hired prior to January 1, 2008, is at least age 50 with 10 or more years of credited service under the DEPP component ("DEPP") of the Dow Employees' Pension Plan or the UCEPP component ("UCEPP") of the Union Carbide Employees' Pension Plan (whichever is applicable). A former Employee may also be eligible if he or she was hired prior to January 1, 2008 by an employer that was authorized as a participating employer of the retiree medical program prior to January 1, 2008, and has 10 or more years of credited service under DEPP or UCEPP

Confidential- Subject to Protective Order                                    DOW0026204

for retiree medical coverage under the applicable retiree medical plan for 18 months following the effective date of my separation from employment will be the same premiums active employees of Dow pay (depending on your full-time or "Less-Than-Full-Time" status). Eligibility for the coverage at the active employee premium rate is subject to my continuous premium payments during the entire 18-month period. After 18 months, my cost for coverage will increase, and will be subject to the Retiree Medical Budget and the Retiree Medical Support Schedule depending on my years of Service. These rates are subject to change. All terms and conditions of the applicable retiree medical plan shall apply. **I understand that in general, eligibility for retiree medical ends when I am eligible for Medicare.** Some exceptions may apply[4]. For details, see the plan document for The Dow Chemical Company Retiree Medical Care Program or Union Carbide Corporation Retiree Medical Care Program, whichever is applicable. The Dow Chemical Company reserves the right to amend, modify, or terminate The Dow Chemical Company Retiree Medical Care Program and The Dow Chemical Company Insured Health Program at any time. Union Carbide Corporation reserves the right to amend, modify or terminate the Union Carbide Corporation Retiree Medical Care Program and the Union Carbide Corporation Insured Health Program at any time.

b. If on the effective date of my separation from employment I am not eligible for coverage under The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program, I can elect to extend medical care coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program (depending on the plan I was enrolled in prior to termination of employment) for up to three (3) years from the effective date of my separation from employment or until I am eligible for coverage under another group plan (or a Dow plan through a dual Dow career spouse), whichever occurs first. If I elect extended coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program prior to the deadline specified in the notice I will receive from Ceridian, my premium will be the same premium active employees of Dow pay (depending on my full-time or "Less-Than-Full-Time" status) during the first 18 months of extended coverage. The premium will be 102% of the full, unsubsidized cost of coverage for the remaining 18 months of extended coverage. Eligibility for the extended coverage is subject to continuous premium payments during the entire 36-month period. These rates are subject to change. The Company reserves the right to amend, modify, or terminate The

---

(whichever is applicable) with at least 60 points (age plus service), and has signed a release acceptable to the Participating Employer. See the applicable retiree medical summary plan description for eligibility details.
[4] Exceptions apply to the following:
    a.  former Employees of The Dow Chemical Company who were hired prior to January 1, 1993,
    b.  former Employees of ANGUS Chemical Company who were hired prior to January 1, 1999,
    c.  former Employees of Union Carbide Corporation who were hired prior to February 6, 2001,
    d.  former Employees of Dow AgroSciences who were hired prior to January 1, 2004.
For more information, see the Plan Document for The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program, whichever is applicable.

Confidential- Subject to Protective Order                    DOW0026205

Dow Chemical Company Medical Care Program and The Dow Chemical Company Insured Health Program at any time.

I have indicated my election decision on a separate Extended Coverage Enrollment Form.

I make the following representations to the Company, each of which is an important consideration for the Company's willingness to enter into this Release with me:

1.  That I have returned or will return to the Company on or before my termination date, all Company property, including, without limitation, books, records and documents, files, memoranda, credit cards, Company passes, keys, computer access codes, disk and instructional manuals, tools, computers, and other physical property, which was or may be in my possession.

2.  That I agree that I will not disclose to anyone or use, directly or indirectly, after termination of my employment with the Company, any Confidential Information of the Company, except with the written consent of the Company.  Confidential Information is defined herein to mean trade secrets, know-how, and other information, not generally known, relating to the Company's business which was disclosed to me or with which I became familiar during my term of employment with the Company.  Confidential Information includes information relating to the Company's business practices and prospective business interests, including, but not limited to, customer lists, forecasts, business and strategic plans, financial and sales information, products, processes, equipment, manufacturing operations, marketing programs, research, product development, engineering, computer systems and software, and personnel records.  This obligation shall continue until such Confidential Information becomes generally known to the public without participation on my part.

3.  That I will not at any time or in any manner, and whether directly or indirectly, criticize or disparage the Company or otherwise provide information, issue statements, or take any other action intended or reasonably likely to result in material harm, embarrassment, humiliation to the Company or cause or contribute to it being held in disrepute by any person.

4.  That I agree that for a period of two (2) years from the date of the termination of my employment with the Company, I will not participate or have any interest, directly or indirectly, in any business which involves an area of technology or business in which I worked for the Company during the last five (5) years of my employment at the Company and in which I was exposed to any Confidential Information (as defined in paragraph 2 immediately above) of the Company.  I further agree that for such period, I will not interfere with, disrupt or attempt to disrupt the relationship, contractual or otherwise, with respect to the business carried on by the Company with any other party.  The restriction of this provision shall apply to any area of the United States, or any other country of the world in which the Company is conducting such business or

USSP Release (Revised January 2009)                    4                    

Confidential- Subject to Protective Order                                                                    DOW0026206

may be reasonably expected to engage in any such business within that two (2) year period. Such restriction shall apply to me, as owner, partner, officer, employee, consultant or advisor. For purposes of this provision, ownership of not more than one percent of the common or preferred stock of any publicly held company whose stock is listed on any recognized stock exchange or traded over the counter shall be disregarded.

5. That the payments and other benefits (including subsidized premiums) which the Company has offered to me, as stated above, are payments and benefits to which I would not be entitled but for this Release.

6. That I realize that there are various federal, state and local laws that govern my employment relationship with the Company and/or prohibit employment discrimination on the basis of age, color, race, gender/sex, national origin, mental or physical disability, religious affiliation or veteran status, as well as other forms of discrimination (including, in some jurisdictions, sexual preference/orientation, height, weight, and marital status), and that these laws are enforced through the courts and agencies such as the Equal Employment Opportunity Commission, Department of Labor and State Human Rights Agencies. I also realize that the Consolidated Omnibus Budget Reconciliation Act of 1985 (as amended), referred to as "COBRA", provides terminated employees the right to continue their active employee medical coverage at 102% of the full cost to insure for up to 18 months.

7. That I am aware that, by signing this Release, I am giving up my right to sue any Releasee not only on the basis of the discrimination laws mentioned above, but also for any other claims which I may have or believe that I may have against any Releasee in connection with my employment or termination of my employment, based upon any event which occurred before I sign this Release. I am further aware that the understanding regarding my right to sue stated in this paragraph does not apply to my right to challenge the knowing and voluntary nature of this Release as respects claims under the ADEA or the Older Worker Benefit Protection Act (OWBPA), although I understand that I have released my right to recovery under those statutes by signing this Release. Should I break this representation in this paragraph, I agree to pay all of the Company's costs and expenses (including reasonable attorneys' fees) related to the defense of any claims except for those under the ADEA and the OWBPA. I understand, however, that if I pursue a claim against the Company under the ADEA and/or the OWBPA to challenge the validity of this Release and prevail on the merits of an ADEA claim, a court has the discretion to determine whether the Company is entitled to restitution, recoupment, or set off (herinafter a "reduction") against a monetary award obtained by me in the court proceeding. A reduction can never exceed the amount I recover, or the consideration I received for signing this release, whichever is less. I also recognize that the Company may be entitled to recover costs and attorneys' fees incurred by the Company as specifically authorized under applicable law.

8. That I am aware that I may change my mind and revoke this Release at any time during the seven days after I sign this Release, provided I do so in writing, in which

USSP Release (Revised January 2009)               5               █████

Confidential- Subject to Protective Order                                    DOW0026207

case none of the provisions of this Release will have any effect. I acknowledge I will not be entitled to receive any payment or benefits set forth in this Release until the seven day period has expired without revocation, at which time this Release shall become final and binding.

9.  That I have not filed any complaints with a court or administrative agency against any Releasee prior to the date of signing of this Release, I have recorded and received all overtime compensation due through my last pay period prior to my termination date, I have reported to the Company any and all work-related injuries incurred during employment; and I acknowledge that the Company properly provided any leave of absence because of my or a family member's health condition and I have not been subjected to any improper treatment, conduct or actions due to a request for or taking such leave.

10.  That I have not assigned or attempted to assign or give to anyone else any claim I have or believe that I may have against any Releasee.

11.  That I acknowledge and agree that if, after the termination of my employment with the Company, I become reemployed by the Company or any of its affiliates, the Company may require me to repay, as a condition of reemployment, that portion of the Severance Payment received that exceeds the amount of base salary which I would have received had I remained in the Company's employment. The rate used in determining the amount of repayment will be the same rate that was used in calculating the Severance Payment. For purposes of this provision, "affiliates" means any company in which the Company has an ownership interest of fifty percent or greater.

12.  That I acknowledge under the penalties for perjury, that: (a) I have received from the Company for consideration for a period of at least 45 days an Older Worker Benefit Protection Act age and job title/job class list in a format that allows me to make a knowing, voluntary, and fully informed choice about whether to accept or reject the offer of special transition assistance benefits under this Release; and (b) I have been informed that I may, at any time during my applicable consideration and revocation period, both (i) request and obtain an updated version of this list and (ii) express any concerns I may have about the format or content of this list, and that I have availed myself of those opportunities to the extent I felt necessary to make a voluntary, knowing, and fully informed decision.

This Release does not affect my rights and obligations under the Company's standard Employee Agreement or any other secrecy, confidentiality, non-competition, or invention agreements that I have signed with the Company or under the various Company employee compensation or benefit plans and programs (except as specifically modified herein), which agreements, plans, and programs are governed by their terms. Apart from the benefits recited in this Release, I waive any rights I have to any benefits under any severance plan offered or adopted by the Company, including but not limited to the U.S. Severance Plan.

USSP Release (Revised January 2009)          6          ████

Confidential- Subject to Protective Order

DOW0026208

I agree not to disclose the terms of this Release to any person without the written consent of the Company, except to my legal, financial and tax advisors, and members of my immediate family, and any prospective or subsequent employer as respects any of my obligations under numbered paragraphs 2 to 4 immediately above who may need to be informed of these terms of this Release.

The construction, interpretation and performance of this Release shall be governed by the laws of the state in which I am working on the date of termination of my employment with the Company.

If any provision of this Release is determined to be invalid or unenforceable, the Company and I agree that such determination shall not affect the other provisions, and that all other provisions shall be enforced as if the invalid provision were not a part of this Release. Should any provision be held unenforceable for any reason, then such provision shall be enforced to the maximum extent permitted by law.

I further acknowledge that this Release contains the entire agreement between myself and the Company and cannot be modified except in writing if signed by me and the Company. Except as otherwise specifically provided for in this Release, this Release supercedes and replaces all prior agreements and understandings, written or oral, and any other employment or severance agreements or arrangements that may have been made by and between me and the Company. I represent and acknowledge that in executing this Release I have not relied upon any representation or statement not set forth herein made by any of the Releasees or any of the Releasee's agents, representatives or attorneys with regards to the subject matter of this Release, except for information contained in official plan documents.

**I understand that I have the right to consult with an attorney and the Company is advising me to consult with an attorney before signing this Release (and to the extent I desire, I have availed myself of that right), that I have at least 45 days to consider the Release before signing it, and that I may revoke the Release within seven calendar days after signing it.** For revocation to be effective, written notice must be received by the Company no later than the close of business on the seventh day after I sign this Release. I understand that this revocation can be made by delivering the written notice of revocation to the H.R. Service Center, The Dow Chemical Company, EDC, Midland, Michigan 48674, by First Class mail, by facsimile transmission (Fax No. 989-636-1693), or by hand delivery. I also understand that this Release shall not become effective or enforceable until the seven day revocation period has expired. If I sign the Release before the expiration of the 45 day period, I acknowledge that I have done so of my own choice and without coercion by the Company.

USSP Release (Revised January 2009)                7

Confidential- Subject to Protective Order

DOW0026209

By signing this release, I state that: I have read it; I understand it and know that I am giving up important rights; I agree with everything in it; I am aware of my right to consult an attorney before signing it; and I have signed it knowingly and voluntarily; I am aware I may revoke at any time within seven days after the date of signing indicated below by giving written notice of revocation to the H.R. Service Center.

_3/31/2009_

Date of Signing

Participant 11

Employee Signature

Participant 11

Employee Name Printed

ACCEPTED:
THE DOW CHEMICAL COMPANY

By: _Alicia S. Dow_

Signature

_Alicia S. Dow_
_HR Service Rep_

Print Name and Title

Date: _3/31/09_

Confidential- Subject to Protective Order

DOW0026210



# TERMINATION GENERAL RELEASE

Name: Participant 13                    Employee No.: ███████

       This Release sets forth the terms under which my employer will provide to me various special transition assistance benefits in connection with the termination of my employment[1] with The Dow Chemical Company.

       I acknowledge that the termination of my employment was or is effective on February 28, 2009.

       I further acknowledge that eligibility to receive the various special transition assistance benefits is conditioned upon my signing and not revoking this Release.

       In consideration for the transition assistance benefits described below, I release and discharge The Dow Chemical Company and any of its affiliates or subsidiary companies (collectively the "Company"), and its officers, directors, employees, shareholders, successors and assigns ("Releasees") from all claims (including claims for attorney's fees and costs), demands and causes of action, known or unknown, which I may have or claim to have against any Releasee, arising out of, or in any way relating to, my employment or termination of my employment with the Company, whether based on any act or omission to act. This includes, but is not limited to, claims of negligence, intentional misconduct, breach of contract (whether written or oral), violation of the Employee Retirement Income Security Act of 1974 (ERISA) (as amended), violation of the **Age Discrimination in Employment Act of 1967 (ADEA) (as amended)**, violation of the Worker Adjustment and Retraining Act (WARN) (as amended), claims arising under any federal, state or local laws, executive orders, regulations, directives, codes, or common law prohibiting employment discrimination based on age, color, race, gender/sex, sexual preference/orientation, height, weight, marital status, national origin, mental or physical disability, religious affiliation, veteran status or any other forms of discrimination, and claims based on any other laws, executive orders, regulations, directives, codes or common law affecting relations between employers and employees, including claims growing out of the Company's termination of its employees.

       This Release does not affect any rights that I may have to file for a benefit under any state workers' compensation or unemployment compensation statute or for vested rights under ERISA-covered employee benefit plans as applicable to me on the date I sign this Release, that may arise under the ADEA, after I sign this Release, or that cannot be released by private agreement. I understand that nothing in this Release prevents me from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the EEOC, the NLRB, or any other federal, state, or local agency charged with the enforcement of employment laws, although by signing this release I am waiving and releasing any rights I may have to individual relief based on claims asserted in such charge or complaint or brought by any

---

[1] As used in this Termination General Release, "termination of employment" has the same meaning as Separation of Service defined in the summary plan description for the U.S. Severance Plan ("USSP").



Confidential- Subject to Protective Order                                        DOW0026211

other person on my behalf or which include me in any class. This paragraph is not intended to limit me from instituting legal action for the purpose of enforcing this Release.

The transition assistance benefits which I will receive if I sign and do not revoke this Release in a timely manner consist of the following:

1. U. S. Severance Plan:
   a. I am eligible to receive a lump sum Severance Payment of $81,896 less normal
      tax withholdings for income taxe                              e to
      the Company, including but not l                              ter I
      Shared Appreciation Mortgage lc
      leave the payroll.

      $T = 2/28/09$

      I understand that payment will no
      date or sooner than the expiration            $S = 2/27/09$
      Release without revoking it in wri

      7 day = 3/6/09

   b. I am eligible to receive reimburser
      withholding of applicable taxes), f
      provided I utilize an approved prot
      submit a satisfactory receipt withir            $1 col = 4/1/09$
      termination of my employment by

   c. At my option, I will be provided w:
      services with a provider and program to be selected by the Plan Administrator
      based on my job level at the time of my separation from employment.  The
      utilization of the outplacement counseling service must begin within three months
      of my termination date and will continue for a maximum of two to nine months,
      depending upon the terms of the program in which I am eligible to participate.
      The objective of outplacement counseling services is to assist me in pursuing a
      career outside the Company.  I acknowledge that neither the outplacement
      counseling service provider nor the Company can guarantee subsequent
      employment.  I further acknowledge that if I do not choose to use the
      outplacement counseling services, there is no alternative or substitute benefit.

2. Medical Coverage (does not include dental coverage)[2]:
   a. If on the effective date of my separation from employment I am eligible for
      coverage under The Dow Chemical Company Retiree Medical Care Program or
      the Union Carbide Corporation Retiree Medical Care Program[3], my premium rate

---

[2] The medical coverages described in this bullet point do not apply to dental coverage.
[3] Generally, a former Employee is eligible for coverage under one of these retiree medical programs if he or she was hired prior to January 1, 2008, is at least age 50 with 10 or more years of credited service under the DEPP component ("DEPP") of the Dow Employees' Pension Plan or the UCEPP component ("UCEPP") of the Union Carbide Employees' Pension Plan (whichever is applicable).  A former Employee may also be eligible if he or she was hired prior to January 1, 2008 by an employer that was authorized as a participating employer of the retiree medical program prior to January 1, 2008, and has 10 or more years of credited service under DEPP or UCEPP

USSP Release (Revised January 2009)            2            ▮

Confidential- Subject to Protective Order                                    DOW0026212

for retiree medical coverage under the applicable retiree medical plan for 18 months following the effective date of my separation from employment will be the same premiums active employees of Dow pay (depending on your full-time or "Less-Than-Full-Time" status). Eligibility for the coverage at the active employee premium rate is subject to my continuous premium payments during the entire 18-month period. After 18 months, my cost for coverage will increase, and will be subject to the Retiree Medical Budget and the Retiree Medical Support Schedule depending on my years of Service. These rates are subject to change. All terms and conditions of the applicable retiree medical plan shall apply. **<u>I understand that in general, eligibility for retiree medical ends when I am eligible for Medicare.</u>** Some exceptions may apply[4]. For details, see the plan document for The Dow Chemical Company Retiree Medical Care Program or Union Carbide Corporation Retiree Medical Care Program, whichever is applicable. The Dow Chemical Company reserves the right to amend, modify, or terminate The Dow Chemical Company Retiree Medical Care Program and The Dow Chemical Company Insured Health Program at any time. Union Carbide Corporation reserves the right to amend, modify or terminate the Union Carbide Corporation Retiree Medical Care Program and the Union Carbide Corporation Insured Health Program at any time.

b. If on the effective date of my separation from employment I am not eligible for coverage under The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program, I can elect to extend medical care coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program (depending on the plan I was enrolled in prior to termination of employment) for up to three (3) years from the effective date of my separation from employment or until I am eligible for coverage under another group plan (or a Dow plan through a dual Dow career spouse), whichever occurs first. If I elect extended coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program prior to the deadline specified in the notice I will receive from Ceridian, my premium will be the same premium active employees of Dow pay (depending on my full-time or "Less-Than-Full-Time" status) during the first 18 months of extended coverage. The premium will be 102% of the full, unsubsidized cost of coverage for the remaining 18 months of extended coverage. Eligibility for the extended coverage is subject to continuous premium payments during the entire 36-month period. These rates are subject to change. The Company reserves the right to amend, modify, or terminate The

---

(whichever is applicable) with at least 60 points (age plus service), and has signed a release acceptable to the Participating Employer. See the applicable retiree medical summary plan description for eligibility details.
[4] Exceptions apply to the following:

    a. former Employees of The Dow Chemical Company who were hired prior to January 1, 1993,
    b. former Employees of ANGUS Chemical Company who were hired prior to January 1, 1999,
    c. former Employees of Union Carbide Corporation who were hired prior to February 6, 2001,
    d. former Employees of Dow AgroSciences who were hired prior to January 1, 2004.

For more information, see the Plan Document for The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program, whichever is applicable.

USSP Release (Revised January 2009)                3

Dow Chemical Company Medical Care Program and The Dow Chemical Company Insured Health Program at any time.

I have indicated my election decision on a separate Extended Coverage Enrollment Form.

I make the following representations to the Company, each of which is an important consideration for the Company's willingness to enter into this Release with me:

1. That I have returned or will return to the Company on or before my termination date, all Company property, including, without limitation, books, records and documents, files, memoranda, credit cards, Company passes, keys, computer access codes, disk and instructional manuals, tools, computers, and other physical property, which was or may be in my possession.

2. That I agree that I will not disclose to anyone or use, directly or indirectly, after termination of my employment with the Company, any Confidential Information of the Company, except with the written consent of the Company. Confidential Information is defined herein to mean trade secrets, know-how, and other information, not generally known, relating to the Company's business which was disclosed to me or with which I became familiar during my term of employment with the Company. Confidential Information includes information relating to the Company's business practices and prospective business interests, including, but not limited to, customer lists, forecasts, business and strategic plans, financial and sales information, products, processes, equipment, manufacturing operations, marketing programs, research, product development, engineering, computer systems and software, and personnel records. This obligation shall continue until such Confidential Information becomes generally known to the public without participation on my part.

3. That I will not at any time or in any manner, and whether directly or indirectly, criticize or disparage the Company or otherwise provide information, issue statements, or take any other action intended or reasonably likely to result in material harm, embarrassment, humiliation to the Company or cause or contribute to it being held in disrepute by any person.

4. That I agree that for a period of two (2) years from the date of the termination of my employment with the Company, I will not participate or have any interest, directly or indirectly, in any business which involves an area of technology or business in which I worked for the Company during the last five (5) years of my employment at the Company and in which I was exposed to any Confidential Information (as defined in paragraph 2 immediately above) of the Company. I further agree that for such period, I will not interfere with, disrupt or attempt to disrupt the relationship, contractual or otherwise, with respect to the business carried on by the Company with any other party. The restriction of this provision shall apply to any area of the United States, or any other country of the world in which the Company is conducting such business or

USSP Release (Revised January 2009)           4

Confidential- Subject to Protective Order                                    DOW0026214

may be reasonably expected to engage in any such business within that two (2) year period. Such restriction shall apply to me, as owner, partner, officer, employee, consultant or advisor. For purposes of this provision, ownership of not more than one percent of the common or preferred stock of any publicly held company whose stock is listed on any recognized stock exchange or traded over the counter shall be disregarded.

5.   That the payments and other benefits (including subsidized premiums) which the Company has offered to me, as stated above, are payments and benefits to which I would not be entitled but for this Release.

6.   That I realize that there are various federal, state and local laws that govern my employment relationship with the Company and/or prohibit employment discrimination on the basis of age, color, race, gender/sex, national origin, mental or physical disability, religious affiliation or veteran status, as well as other forms of discrimination (including, in some jurisdictions, sexual preference/orientation, height, weight, and marital status), and that these laws are enforced through the courts and agencies such as the Equal Employment Opportunity Commission, Department of Labor and State Human Rights Agencies. I also realize that the Consolidated Omnibus Budget Reconciliation Act of 1985 (as amended), referred to as "COBRA", provides terminated employees the right to continue their active employee medical coverage at 102% of the full cost to insure for up to 18 months.

7.   That I am aware that, by signing this Release, I am giving up my right to sue any Releasee not only on the basis of the discrimination laws mentioned above, but also for any other claims which I may have or believe that I may have against any Releasee in connection with my employment or termination of my employment, based upon any event which occurred before I sign this Release.   I am further aware that the understanding regarding my right to sue stated in this paragraph does not apply to my right to challenge the knowing and voluntary nature of this Release as respects claims under the ADEA or the Older Worker Benefit Protection Act (OWBPA), although I understand that I have released my right to recovery under those statutes by signing this Release. Should I break this representation in this paragraph, I agree to pay all of the Company's costs and expenses (including reasonable attorneys' fees) related to the defense of any claims except for those under the ADEA and the OWBPA. I understand, however, that if I pursue a claim against the Company under the ADEA and/or the OWBPA to challenge the validity of this Release and prevail on the merits of an ADEA claim, a court has the discretion to determine whether the Company is entitled to restitution, recoupment, or set off (herinafter a "reduction") against a monetary award obtained by me in the court proceeding. A reduction can never exceed the amount I recover, or the consideration I received for signing this release, whichever is less. I also recognize that the Company may be entitled to recover costs and attorneys' fees incurred by the Company as specifically authorized under applicable law.

8.   That I am aware that I may change my mind and revoke this Release at any time during the seven days after I sign this Release, provided I do so in writing, in which

USSP Release (Revised January 2009)          5          ▇▇▇

Confidential- Subject to Protective Order                                                   DOW0026215

case none of the provisions of this Release will have any effect. I acknowledge I will not be entitled to receive any payment or benefits set forth in this Release until the seven day period has expired without revocation, at which time this Release shall become final and binding.

9. That I have not filed any complaints with a court or administrative agency against any Releasee prior to the date of signing of this Release, I have recorded and received all overtime compensation due through my last pay period prior to my termination date, I have reported to the Company any and all work-related injuries incurred during employment; and I acknowledge that the Company properly provided any leave of absence because of my or a family member's health condition and I have not been subjected to any improper treatment, conduct or actions due to a request for or taking such leave.

10. That I have not assigned or attempted to assign or give to anyone else any claim I have or believe that I may have against any Releasee.

11. That I acknowledge and agree that if, after the termination of my employment with the Company, I become reemployed by the Company or any of its affiliates, the Company may require me to repay, as a condition of reemployment, that portion of the Severance Payment received that exceeds the amount of base salary which I would have received had I remained in the Company's employment. The rate used in determining the amount of repayment will be the same rate that was used in calculating the Severance Payment. For purposes of this provision, "affiliates" means any company in which the Company has an ownership interest of fifty percent or greater.

12. That I acknowledge under the penalties for perjury, that: (a) I have received from the Company for consideration for a period of at least 45 days an Older Worker Benefit Protection Act age and job title/job class list in a format that allows me to make a knowing, voluntary, and fully informed choice about whether to accept or reject the offer of special transition assistance benefits under this Release; and (b) I have been informed that I may, at any time during my applicable consideration and revocation period, both (i) request and obtain an updated version of this list and (ii) express any concerns I may have about the format or content of this list, and that I have availed myself of those opportunities to the extent I felt necessary to make a voluntary, knowing, and fully informed decision.

This Release does not affect my rights and obligations under the Company's standard Employee Agreement or any other secrecy, confidentiality, non-competition, or invention agreements that I have signed with the Company or under the various Company employee compensation or benefit plans and programs (except as specifically modified herein), which agreements, plans, and programs are governed by their terms. Apart from the benefits recited in this Release, I waive any rights I have to any benefits under any severance plan offered or adopted by the Company, including but not limited to the U.S. Severance Plan.

USSP Release (Revised January 2009)                6                    ███

Confidential- Subject to Protective Order                                    DOW0026216

I agree not to disclose the terms of this Release to any person without the written consent of the Company, except to my legal, financial and tax advisors, and members of my immediate family, and any prospective or subsequent employer as respects any of my obligations under numbered paragraphs 2 to 4 immediately above who may need to be informed of these terms of this Release.

The construction, interpretation and performance of this Release shall be governed by the laws of the state in which I am working on the date of termination of my employment with the Company.

If any provision of this Release is determined to be invalid or unenforceable, the Company and I agree that such determination shall not affect the other provisions, and that all other provisions shall be enforced as if the invalid provision were not a part of this Release. Should any provision be held unenforceable for any reason, then such provision shall be enforced to the maximum extent permitted by law.

I further acknowledge that this Release contains the entire agreement between myself and the Company and cannot be modified except in writing if signed by me and the Company. Except as otherwise specifically provided for in this Release, this Release supercedes and replaces all prior agreements and understandings, written or oral, and any other employment or severance agreements or arrangements that may have been made by and between me and the Company. I represent and acknowledge that in executing this Release I have not relied upon any representation or statement not set forth herein made by any of the Releasees or any of the Releasee's agents, representatives or attorneys with regards to the subject matter of this Release, except for information contained in official plan documents.

**I understand that I have the right to consult with an attorney and the Company is advising me to consult with an attorney before signing this Release (and to the extent I desire, I have availed myself of that right), that I have at least 45 days to consider the Release before signing it, and that I may revoke the Release within seven calendar days after signing it.** For revocation to be effective, written notice must be received by the Company no later than the close of business on the seventh day after I sign this Release. I understand that this revocation can be made by delivering the written notice of revocation to the H.R. Service Center, The Dow Chemical Company, EDC, Midland, Michigan 48674, by First Class mail, by facsimile transmission (Fax No. 989-636-1693), or by hand delivery. I also understand that this Release shall not become effective or enforceable until the seven day revocation period has expired. If I sign the Release before the expiration of the 45 day period, I acknowledge that I have done so of my own choice and without coercion by the Company.

USSP Release (Revised January 2009)           7

Confidential- Subject to Protective Order                    DOW0026217

By signing this release, I state that: I have read it; I understand it and know that I am giving up important rights; I agree with everything in it; I am aware of my right to consult an attorney before signing it; and I have signed it knowingly and voluntarily; I am aware I may revoke at any time within seven days after the date of signing indicated below by giving written notice of revocation to the H.R. Service Center.

_February 27, 2009_
Date of Signing

**Participant 13**
Employee Signature

**Participant 13**
Employee Name Printed

ACCEPTED:
THE DOW CHEMICAL COMPANY

By: _Alicia S. Dird_
Signature

_Alicia S. Dird_
_HR Service Rep_
Print Name and Title

Date: _3|3|09_

Confidential- Subject to Protective Order                              DOW0026218

**TERMINATION GENERAL RELEASE**



Name: Participant 14                    Employee No.: ▮▮▮▮

    This Release sets forth the terms under which my employer will provide to me various special transition assistance benefits in connection with the termination of my employment[1] with The Dow Chemical Company.

    I acknowledge that the termination of my employment was or is effective on February 28, 2009.

    I further acknowledge that eligibility to receive the various special transition assistance benefits is conditioned upon my signing and not revoking this Release.

    In consideration for the transition assistance benefits described below, I release and discharge The Dow Chemical Company and any of its affiliates or subsidiary companies (collectively the "Company"), and its officers, directors, employees, shareholders, successors and assigns ("Releasees") from all claims (including claims for attorney's fees and costs), demands and causes of action, known or unknown, which I may have or claim to have against any Releasee, arising out of, or in any way relating to, my employment or termination of my employment with the Company, whether based on any act or omission to act. This includes, but is not limited to, claims of negligence, intentional misconduct, breach of contract (whether written or oral), violation of the Employee Retirement Income Security Act of 1974 (ERISA) (as amended), violation of the **Age Discrimination in Employment Act of 1967 (ADEA) (as amended)**, violation of the Worker Adjustment and Retraining Act (WARN) (as amended), claims arising under any federal, state or local laws, executive orders, regulations, directives, codes, or common law prohibiting employment discrimination based on age, color, race, gender/sex, sexual preference/orientation, height, weight, marital status, national origin, mental or physical disability, religious affiliation, veteran status or any other forms of discrimination, and claims based on any other laws, executive orders, regulations, directives, codes or common law affecting relations between employers and employees, including claims growing out of the Company's termination of its employees.

    This Release does not affect any rights that I may have to file for a benefit under any state workers' compensation or unemployment compensation statute or for vested rights under ERISA-covered employee benefit plans as applicable to me on the date I sign this Release, that may arise under the ADEA, after I sign this Release, or that cannot be released by private agreement. I understand that nothing in this Release prevents me from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the EEOC, the NLRB, or any other federal, state, or local agency charged with the enforcement of employment laws, although by signing this release I am waiving and releasing any rights I may have to individual relief based on claims asserted in such charge or complaint or brought by any

---

[1] As used in this Termination General Release, "termination of employment" has the same meaning as Separation of Service defined in the summary plan description for the U.S. Severance Plan ("USSP").

USSP Release (Revised January 2009)                    1                    ▮▮▮▮

Confidential- Subject to Protective Order                    DOW0026219

other person on my behalf or which include me in any class. This paragraph is not intended to
limit me from instituting legal action for the purpose of enforcing this Release.

The transition assistance benefits which I will receive if I sign and do not revoke this
Release in a timely manner consist of the following:

1. U. S. Severance Plan:
   a. I am eligible to receive a lump sum Severance Payment of $178,102 (less normal
      tax withholdings for income taxes, FICA, and any outstanding amounts I owe to
      the Company, including but not limited to any outstanding balance owed on
      Shared Appreciation Mortgage loans
      leave the payroll.

      I understand that payment will not be
      date or sooner than the expiration of s
      Release without revoking it in writing

   b. I am eligible to receive reimbursemer
      withholding of applicable taxes), for t
      provided I utilize an approved profes
      submit a satisfactory receipt within si
      termination of my employment by the

   c. At my option, I will be provided with
      services with a provider and program
      based on my job level at the time of my separation from employment.  The
      utilization of the outplacement counseling service must begin within three months
      of my termination date and will continue for a maximum of two to nine months,
      depending upon the terms of the program in which I am eligible to participate.
      The objective of outplacement counseling services is to assist me in pursuing a
      career outside the Company.  I acknowledge that neither the outplacement
      counseling service provider nor the Company can guarantee subsequent
      employment.  I further acknowledge that if I do not choose to use the
      outplacement counseling services, there is no alternative or substitute benefit.

2. Medical Coverage (does not include dental coverage)[2]:
   a. If on the effective date of my separation from employment I am eligible for
      coverage under The Dow Chemical Company Retiree Medical Care Program or
      the Union Carbide Corporation Retiree Medical Care Program[3], my premium rate



Handwritten notes:
$T = 2/28/09$
$S = 3/2/09$
$7\ \text{Day} = 3/9/09$
$Rol = 4/1/09$

Handwritten (left margin, vertical):
Post... Date  3/5/09
Payroll Date  3/20/09
Legal By  C/U
Admin By  [circle]

---

[2] The medical coverages described in this bullet point do not apply to dental coverage.
[3] Generally, a former Employee is eligible for coverage under one of these retiree medical programs if he or she was
hired prior to January 1, 2008, is at least age 50 with 10 or more years of credited service under the DEPP
component ("DEPP") of the Dow Employees' Pension Plan or the UCEPP component ("UCEPP") of the Union
Carbide Employees' Pension Plan (whichever is applicable).  A former Employee may also be eligible if he or she
was hired prior to January 1, 2008 by an employer that was authorized as a participating employer of the retiree
medical program prior to January 1, 2008, and has 10 or more years of credited service under DEPP or UCEPP

USSP Release (Revised January 2009)          2

Confidential- Subject to Protective Order

for retiree medical coverage under the applicable retiree medical plan for 18 months following the effective date of my separation from employment will be the same premiums active employees of Dow pay (depending on your full-time or "Less-Than-Full-Time" status). Eligibility for the coverage at the active employee premium rate is subject to my continuous premium payments during the entire 18-month period. After 18 months, my cost for coverage will increase, and will be subject to the Retiree Medical Budget and the Retiree Medical Support Schedule depending on my years of Service. These rates are subject to change. All terms and conditions of the applicable retiree medical plan shall apply. **I understand that in general, eligibility for retiree medical ends when I am eligible for Medicare.** Some exceptions may apply[4]. For details, see the plan document for The Dow Chemical Company Retiree Medical Care Program or Union Carbide Corporation Retiree Medical Care Program, whichever is applicable. The Dow Chemical Company reserves the right to amend, modify, or terminate The Dow Chemical Company Retiree Medical Care Program and The Dow Chemical Company Insured Health Program at any time. Union Carbide Corporation reserves the right to amend, modify or terminate the Union Carbide Corporation Retiree Medical Care Program and the Union Carbide Corporation Insured Health Program at any time.

b.  If on the effective date of my separation from employment I am not eligible for coverage under The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program, I can elect to extend medical care coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program (depending on the plan I was enrolled in prior to termination of employment) for up to three (3) years from the effective date of my separation from employment or until I am eligible for coverage under another group plan (or a Dow plan through a dual Dow career spouse), whichever occurs first. If I elect extended coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program prior to the deadline specified in the notice I will receive from Ceridian, my premium will be the same premium active employees of Dow pay (depending on my full-time or "Less-Than-Full-Time" status) during the first 18 months of extended coverage. The premium will be 102% of the full, unsubsidized cost of coverage for the remaining 18 months of extended coverage. Eligibility for the extended coverage is subject to continuous premium payments during the entire 36-month period. These rates are subject to change. The Company reserves the right to amend, modify, or terminate The

---

(whichever is applicable) with at least 60 points (age plus service), and has signed a release acceptable to the Participating Employer.  See the applicable retiree medical summary plan description for eligibility details.
[4] Exceptions apply to the following:
    a.  former Employees of The Dow Chemical Company who were hired prior to January 1, 1993,
    b.  former Employees of ANGUS Chemical Company who were hired prior to January 1, 1999,
    c.  former Employees of Union Carbide Corporation  who were hired prior to February 6, 2001,
    d.  former Employees of Dow AgroSciences who were hired prior to January 1, 2004.
For more information, see the Plan Document for The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program, whichever is applicable.

Confidential- Subject to Protective Order

DOW0026221

Dow Chemical Company Medical Care Program and The Dow Chemical Company Insured Health Program at any time.

I have indicated my election decision on a separate Extended Coverage Enrollment Form.

I make the following representations to the Company, each of which is an important consideration for the Company's willingness to enter into this Release with me:

1. That I have returned or will return to the Company on or before my termination date, all Company property, including, without limitation, books, records and documents, files, memoranda, credit cards, Company passes, keys, computer access codes, disk and instructional manuals, tools, computers, and other physical property, which was or may be in my possession.

2. That I agree that I will not disclose to anyone or use, directly or indirectly, after termination of my employment with the Company, any Confidential Information of the Company, except with the written consent of the Company.  Confidential Information is defined herein to mean trade secrets, know-how, and other information, not generally known, relating to the Company's business which was disclosed to me or with which I became familiar during my term of employment with the Company.  Confidential Information includes information relating to the Company's business practices and prospective business interests, including, but not limited to, customer lists, forecasts, business and strategic plans, financial and sales information, products, processes, equipment, manufacturing operations, marketing programs, research, product development, engineering, computer systems and software, and personnel records.  This obligation shall continue until such Confidential Information becomes generally known to the public without participation on my part.

3. That I will not at any time or in any manner, and whether directly or indirectly, criticize or disparage the Company or otherwise provide information, issue statements, or take any other action intended or reasonably likely to result in material harm, embarrassment, humiliation to the Company or cause or contribute to it being held in disrepute by any person.

4. That I agree that for a period of two (2) years from the date of the termination of my employment with the Company, I will not participate or have any interest, directly or indirectly, in any business which involves an area of technology or business in which I worked for the Company during the last five (5) years of my employment at the Company and in which I was exposed to any Confidential Information (as defined in paragraph 2 immediately above) of the Company.  I further agree that for such period, I will not interfere with, disrupt or attempt to disrupt the relationship, contractual or otherwise, with respect to the business carried on by the Company with any other party.  The restriction of this provision shall apply to any area of the United States, or any other country of the world in which the Company is conducting such business or

Confidential- Subject to Protective Order                                        DOW0026222

may be reasonably expected to engage in any such business within that two (2) year period. Such restriction shall apply to me, as owner, partner, officer, employee, consultant or advisor. For purposes of this provision, ownership of not more than one percent of the common or preferred stock of any publicly held company whose stock is listed on any recognized stock exchange or traded over the counter shall be disregarded.

5. That the payments and other benefits (including subsidized premiums) which the Company has offered to me, as stated above, are payments and benefits to which I would not be entitled but for this Release.

6. That I realize that there are various federal, state and local laws that govern my employment relationship with the Company and/or prohibit employment discrimination on the basis of age, color, race, gender/sex, national origin, mental or physical disability, religious affiliation or veteran status, as well as other forms of discrimination (including, in some jurisdictions, sexual preference/orientation, height, weight, and marital status), and that these laws are enforced through the courts and agencies such as the Equal Employment Opportunity Commission, Department of Labor and State Human Rights Agencies. I also realize that the Consolidated Omnibus Budget Reconciliation Act of 1985 (as amended), referred to as "COBRA", provides terminated employees the right to continue their active employee medical coverage at 102% of the full cost to insure for up to 18 months.

7. That I am aware that, by signing this Release, I am giving up my right to sue any Releasee not only on the basis of the discrimination laws mentioned above, but also for any other claims which I may have or believe that I may have against any Releasee in connection with my employment or termination of my employment, based upon any event which occurred before I sign this Release.   I am further aware that the understanding regarding my right to sue stated in this paragraph does not apply to my right to challenge the knowing and voluntary nature of this Release as respects claims under the ADEA or the Older Worker Benefit Protection Act (OWBPA), although I understand that I have released my right to recovery under those statutes by signing this Release. Should I break this representation in this paragraph, I agree to pay all of the Company's costs and expenses (including reasonable attorneys' fees) related to the defense of any claims except for those under the ADEA and the OWBPA. I understand, however, that if I pursue a claim against the Company under the ADEA and/or the OWBPA to challenge the validity of this Release and prevail on the merits of an ADEA claim, a court has the discretion to determine whether the Company is entitled to restitution, recoupment, or set off (hereinafter a "reduction") against a monetary award obtained by me in the court proceeding. A reduction can never exceed the amount I recover, or the consideration I received for signing this release, whichever is less. I also recognize that the Company may be entitled to recover costs and attorneys' fees incurred by the Company as specifically authorized under applicable law.

8. That I am aware that I may change my mind and revoke this Release at any time during the seven days after I sign this Release, provided I do so in writing, in which

USSP Release (Revised January 2009)                    5                    ▉

Confidential- Subject to Protective Order                                              DOW0026223

case none of the provisions of this Release will have any effect.  I acknowledge I will not be entitled to receive any payment or benefits set forth in this Release until the seven day period has expired without revocation, at which time this Release shall become final and binding.

9. That I have not filed any complaints with a court or administrative agency against any Releasee prior to the date of signing of this Release, I have recorded and received all overtime compensation due through my last pay period prior to my termination date, I have reported to the Company any and all work-related injuries incurred during employment; and I acknowledge that the Company properly provided any leave of absence because of my or a family member's health condition and I have not been subjected to any improper treatment, conduct or actions due to a request for or taking such leave.

10. That I have not assigned or attempted to assign or give to anyone else any claim I have or believe that I may have against any Releasee.

11. That I acknowledge and agree that if, after the termination of my employment with the Company, I become reemployed by the Company or any of its affiliates, the Company may require me to repay, as a condition of reemployment, that portion of the Severance Payment received that exceeds the amount of base salary which I would have received had I remained in the Company's employment.  The rate used in determining the amount of repayment will be the same rate that was used in calculating the Severance Payment.  For purposes of this provision, "affiliates" means any company in which the Company has an ownership interest of fifty percent or greater.

12. That I acknowledge under the penalties for perjury, that:  (a) I have received from the Company for consideration a period of at least 45 days an Older Worker Benefit Protection Act age and job title/job class list in a format that allows me to make a knowing, voluntary, and fully informed choice about whether to accept or reject the offer of special transition assistance benefits under this Release; and (b) I have been informed that I may, at any time during my applicable consideration and revocation period, both (i) request and obtain an updated version of this list and (ii) express any concerns I may have about the format or content of this list, and that I have availed myself of those opportunities to the extent I felt necessary to make a voluntary, knowing, and fully informed decision.

This Release does not affect my rights and obligations under the Company's standard Employee Agreement or any other secrecy, confidentiality, non-competition, or invention agreements that I have signed with the Company or under the various Company employee compensation or benefit plans and programs (except as specifically modified herein), which agreements, plans, and programs are governed by their terms.  Apart from the benefits recited in this Release, I waive any rights I have to any benefits under any severance plan offered or adopted by the Company, including but not limited to the U.S. Severance Plan.

USSP Release (Revised January 2009)                6

Confidential- Subject to Protective Order

DOW0026224

I agree not to disclose the terms of this Release to any person without the written consent of the Company, except to my legal, financial and tax advisors, and members of my immediate family, and any prospective or subsequent employer as respects any of my obligations under numbered paragraphs 2 to 4 immediately above who may need to be informed of these terms of this Release.

The construction, interpretation and performance of this Release shall be governed by the laws of the state in which I am working on the date of termination of my employment with the Company.

If any provision of this Release is determined to be invalid or unenforceable, the Company and I agree that such determination shall not affect the other provisions, and that all other provisions shall be enforced as if the invalid provision were not a part of this Release. Should any provision be held unenforceable for any reason, then such provision shall be enforced to the maximum extent permitted by law.

I further acknowledge that this Release contains the entire agreement between myself and the Company and cannot be modified except in writing if signed by me and the Company. Except as otherwise specifically provided for in this Release, this Release supercedes and replaces all prior agreements and understandings, written or oral, and any other employment or severance agreements or arrangements that may have been made by and between me and the Company. I represent and acknowledge that in executing this Release I have not relied upon any representation or statement not set forth herein made by any of the Releasees or any of the Releasee's agents, representatives or attorneys with regards to the subject matter of this Release, except for information contained in official plan documents.

**I understand that I have the right to consult with an attorney and the Company is advising me to consult with an attorney before signing this Release (and to the extent I desire, I have availed myself of that right), that I have at least 45 days to consider the Release before signing it, and that I may revoke the Release within seven calendar days after signing it.** For revocation to be effective, written notice must be received by the Company no later than the close of business on the seventh day after I sign this Release. I understand that this revocation can be made by delivering the written notice of revocation to the H.R. Service Center, The Dow Chemical Company, EDC, Midland, Michigan 48674, by First Class mail, by facsimile transmission (Fax No. 989-636-1693), or by hand delivery. I also understand that this Release shall not become effective or enforceable until the seven day revocation period has expired. If I sign the Release before the expiration of the 45 day period, I acknowledge that I have done so of my own choice and without coercion by the Company.

USSP Release (Revised January 2009)          7

Confidential- Subject to Protective Order                    DOW0026225

By signing this release, I state that:  I have read it; I understand it and know that I am giving up important rights; I agree with everything in it; I am aware of my right to consult an attorney before signing it; and I have signed it knowingly and voluntarily; I am aware I may revoke at any time within seven days after the date of signing indicated below by giving written notice of revocation to the H.R. Service Center.

_____3/1/09_____   Participant 14

Date of Signing   Employee Signature

Participant 14

Employee Name Printed

ACCEPTED:
THE DOW CHEMICAL COMPANY

By: _____
Signature

_Keri Husen  HR Service Center Agent_
Print Name and Title

Date: _____3-4-09_____

Confidential- Subject to Protective Order

DOW0026226

RECEIVED *CAO*
MAR 1 0 2009

# TERMINATION GENERAL RELEASE

Name: Participant 31                                    Employee No.: █████████

    This Release sets forth the terms under which my employer will provide to me various special transition assistance benefits in connection with the termination of my employment[1] with The Dow Chemical Company.

    I acknowledge that the termination of my employment was or is effective on February 28, 2009.

    I further acknowledge that eligibility to receive the various special transition assistance benefits is conditioned upon my signing and not revoking this Release.

    In consideration for the transition assistance benefits described below, I release and discharge The Dow Chemical Company and any of its affiliates or subsidiary companies (collectively the "Company"), and its officers, directors, employees, shareholders, successors and assigns ("Releasees") from all claims (including claims for attorney's fees and costs), demands and causes of action, known or unknown, which I may have or claim to have against any Releasee, arising out of, or in any way relating to, my employment or termination of my employment with the Company, whether based on any act or omission to act. This includes, but is not limited to, claims of negligence, intentional misconduct, breach of contract (whether written or oral), violation of the Employee Retirement Income Security Act of 1974 (ERISA) (as amended), violation of the **Age Discrimination in Employment Act of 1967 (ADEA) (as amended)**, violation of the Worker Adjustment and Retraining Act (WARN) (as amended), claims arising under any federal, state or local laws, executive orders, regulations, directives, codes, or common law prohibiting employment discrimination based on age, color, race, gender/sex, sexual preference/orientation, height, weight, marital status, national origin, mental or physical disability, religious affiliation, veteran status or any other forms of discrimination, and claims based on any other laws, executive orders, regulations, directives, codes or common law affecting relations between employers and employees, including claims growing out of the Company's termination of its employees.

    This Release does not affect any rights that I may have to file for a benefit under any state workers' compensation or unemployment compensation statute or for vested rights under ERISA-covered employee benefit plans as applicable to me on the date I sign this Release, that may arise under the ADEA, after I sign this Release, or that cannot be released by private agreement. I understand that nothing in this Release prevents me from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the EEOC, the NLRB, or any other federal, state, or local agency charged with the enforcement of employment laws, although by signing this release I am waiving and releasing any rights I may have to individual relief based on claims asserted in such charge or complaint or brought by any

---

[1] As used in this Termination General Release, "termination of employment" has the same meaning as Separation of Service defined in the summary plan description for the U.S. Severance Plan ("USSP").

USSP Release (Revised January 2009)                    1                    ████████

Confidential- Subject to Protective Order

other person on my behalf or which include me in any class.  This paragraph is not intended to limit me from instituting legal action for the purpose of enforcing this Release.

The transition assistance benefits which I will receive if I sign and do not revoke this Release in a timely manner consist of the following:

1.  U. S. Severance Plan:
    a.  I am eligible to receive a lump sum Severance Payment of $114,322 (less normal tax withholdings for income taxes, FICA, and any outstanding amounts I owe to the Company, including but not limited ~~~~~~~~~~~~~~~~~~~~ owed on Shared Appreciation Mortgage loans or ~~~~~~~~~~ leave the payroll.

    I understand that payment will not be m~~~~ date or sooner than the expiration of se~~~~ Release without revoking it in writing.

    b.  I am eligible to receive reimbursement~ withholding of applicable taxes), for th~ provided I utilize an approved professi~ submit a satisfactory receipt within six~ termination of my employment by the~

    c.  At my option, I will be provided with ~ services with a provider and program t~ based on my job level at the time of my separation from employment.  The utilization of the outplacement counseling service must begin within three months of my termination date and will continue for a maximum of two to nine months, depending upon the terms of the program in which I am eligible to participate. The objective of outplacement counseling services is to assist me in pursuing a career outside the Company.  I acknowledge that neither the outplacement counseling service provider nor the Company can guarantee subsequent employment.  I further acknowledge that if I do not choose to use the outplacement counseling services, there is no alternative or substitute benefit.

2.  Medical Coverage (does not include dental coverage)[2]:
    a.  If on the effective date of my separation from employment I am eligible for coverage under The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program[3], my premium rate

_Handwritten notes in right margin:_
$T = 2/28/09$
$S = 3/1/09$
$7 \ day = 3/8/09$
$Rv / = 4/1/09$

_Handwritten notes in left margin (vertical):_ Available Date 3/1/09 — Payout Date 3/31/09 — Email Dt ~~~ — Received By ~~~

---

[2] The medical coverages described in this bullet point do not apply to dental coverage.

[3] Generally, a former Employee is eligible for coverage under one of these retiree medical programs if he or she was hired prior to January 1, 2008, is at least age 50 with 10 or more years of credited service under the DEPP component ("DEPP") of the Dow Employees' Pension Plan or the UCEPP component ("UCEPP") of the Union Carbide Employees' Pension Plan (whichever is applicable).  A former Employee may also be eligible if he or she was hired prior to January 1, 2008 by an employer that was authorized as a participating employer of the retiree medical program prior to January 1, 2008, and has 10 or more years of credited service under DEPP or UCEPP

Confidential- Subject to Protective Order                    DOW0026228

for retiree medical coverage under the applicable retiree medical plan for 18 months following the effective date of my separation from employment will be the same premiums active employees of Dow pay (depending on your full-time or "Less-Than-Full-Time" status). Eligibility for the coverage at the active employee premium rate is subject to my continuous premium payments during the entire 18-month period. After 18 months, my cost for coverage will increase, and will be subject to the Retiree Medical Budget and the Retiree Medical Support Schedule depending on my years of Service. These rates are subject to change. All terms and conditions of the applicable retiree medical plan shall apply. **I understand that in general, eligibility for retiree medical ends when I am eligible for Medicare.** Some exceptions may apply[4]. For details, see the plan document for The Dow Chemical Company Retiree Medical Care Program or Union Carbide Corporation Retiree Medical Care Program, whichever is applicable. The Dow Chemical Company reserves the right to amend, modify, or terminate The Dow Chemical Company Retiree Medical Care Program and The Dow Chemical Company Insured Health Program at any time. Union Carbide Corporation reserves the right to amend, modify or terminate the Union Carbide Corporation Retiree Medical Care Program and the Union Carbide Corporation Insured Health Program at any time.

b. If on the effective date of my separation from employment I am not eligible for coverage under The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program, I can elect to extend medical care coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program (depending on the plan I was enrolled in prior to termination of employment) for up to three (3) years from the effective date of my separation from employment or until I am eligible for coverage under another group plan (or a Dow plan through a dual Dow career spouse), whichever occurs first. If I elect extended coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program prior to the deadline specified in the notice I will receive from Ceridian, my premium will be the same premium active employees of Dow pay (depending on my full-time or "Less-Than-Full-Time" status) during the first 18 months of extended coverage. The premium will be 102% of the full, unsubsidized cost of coverage for the remaining 18 months of extended coverage. Eligibility for the extended coverage is subject to continuous premium payments during the entire 36-month period. These rates are subject to change. The Company reserves the right to amend, modify, or terminate The

---

(whichever is applicable) with at least 60 points (age plus service), and has signed a release acceptable to the Participating Employer. See the applicable retiree medical summary plan description for eligibility details.
[4] Exceptions apply to the following:
   a. former Employees of The Dow Chemical Company who were hired prior to January 1, 1993,
   b. former Employees of ANGUS Chemical Company who were hired prior to January 1, 1999,
   c. former Employees of Union Carbide Corporation who were hired prior to February 6, 2001,
   d. former Employees of Dow AgroSciences who were hired prior to January 1, 2004.
For more information, see the Plan Document for The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program, whichever is applicable.

USSP Release (Revised January 2009)          3          ▇▇▇

Confidential- Subject to Protective Order                    DOW0026229

Dow Chemical Company Medical Care Program and The Dow Chemical Company Insured Health Program at any time.

I have indicated my election decision on a separate Extended Coverage Enrollment Form.

I make the following representations to the Company, each of which is an important consideration for the Company's willingness to enter into this Release with me:

1. That I have returned or will return to the Company on or before my termination date, all Company property, including, without limitation, books, records and documents, files, memoranda, credit cards, Company passes, keys, computer access codes, disk and instructional manuals, tools, computers, and other physical property, which was or may be in my possession.

2. That I agree that I will not disclose to anyone or use, directly or indirectly, after termination of my employment with the Company, any Confidential Information of the Company, except with the written consent of the Company. Confidential Information is defined herein to mean trade secrets, know-how, and other information, not generally known, relating to the Company's business which was disclosed to me or with which I became familiar during my term of employment with the Company. Confidential Information includes information relating to the Company's business practices and prospective business interests, including, but not limited to, customer lists, forecasts, business and strategic plans, financial and sales information, products, processes, equipment, manufacturing operations, marketing programs, research, product development, engineering, computer systems and software, and personnel records. This obligation shall continue until such Confidential Information becomes generally known to the public without participation on my part.

3. That I will not at any time or in any manner, and whether directly or indirectly, criticize or disparage the Company or otherwise provide information, issue statements, or take any other action intended or reasonably likely to result in material harm, embarrassment, humiliation to the Company or cause or contribute to it being held in disrepute by any person.

4. That I agree that for a period of two (2) years from the date of the termination of my employment with the Company, I will not participate or have any interest, directly or indirectly, in any business which involves an area of technology or business in which I worked for the Company during the last five (5) years of my employment at the Company and in which I was exposed to any Confidential Information (as defined in paragraph 2 immediately above) of the Company. I further agree that for such period, I will not interfere with, disrupt or attempt to disrupt the relationship, contractual or otherwise, with respect to the business carried on by the Company with any other party. The restriction of this provision shall apply to any area of the United States, or any other country of the world in which the Company is conducting such business or

Confidential- Subject to Protective Order          DOW0026230

may be reasonably expected to engage in any such business within that two (2) year period. Such restriction shall apply to me, as owner, partner, officer, employee, consultant or advisor. For purposes of this provision, ownership of not more than one percent of the common or preferred stock of any publicly held company whose stock is listed on any recognized stock exchange or traded over the counter shall be disregarded.

5. That the payments and other benefits (including subsidized premiums) which the Company has offered to me, as stated above, are payments and benefits to which I would not be entitled but for this Release.

6. That I realize that there are various federal, state and local laws that govern my employment relationship with the Company and/or prohibit employment discrimination on the basis of age, color, race, gender/sex, national origin, mental or physical disability, religious affiliation or veteran status, as well as other forms of discrimination (including, in some jurisdictions, sexual preference/orientation, height, weight, and marital status), and that these laws are enforced through the courts and agencies such as the Equal Employment Opportunity Commission, Department of Labor and State Human Rights Agencies. I also realize that the Consolidated Omnibus Budget Reconciliation Act of 1985 (as amended), referred to as "COBRA", provides terminated employees the right to continue their active employee medical coverage at 102% of the full cost to insure for up to 18 months.

7. That I am aware that, by signing this Release, I am giving up my right to sue any Releasee not only on the basis of the discrimination laws mentioned above, but also for any other claims which I may have or believe that I may have against any Releasee in connection with my employment or termination of my employment, based upon any event which occurred before I sign this Release.    I am further aware that the understanding regarding my right to sue stated in this paragraph does not apply to my right to challenge the knowing and voluntary nature of this Release as respects claims under the ADEA or the Older Worker Benefit Protection Act (OWBPA), although I understand that I have released my right to recovery under those statutes by signing this Release. Should I break this representation in this paragraph, I agree to pay all of the Company's costs and expenses (including reasonable attorneys' fees) related to the defense of any claims except for those under the ADEA and the OWBPA. I understand, however, that if I pursue a claim against the Company under the ADEA and/or the OWBPA to challenge the validity of this Release and prevail on the merits of an ADEA claim, a court has the discretion to determine whether the Company is entitled to restitution, recoupment, or set off (herinafter a "reduction") against a monetary award obtained by me in the court proceeding. A reduction can never exceed the amount I recover, or the consideration I received for signing this release, whichever is less. I also recognize that the Company may be entitled to recover costs and attorneys' fees incurred by the Company as specifically authorized under applicable law.

8. That I am aware that I may change my mind and revoke this Release at any time during the seven days after I sign this Release, provided I do so in writing, in which

USSP Release (Revised January 2009)                5                ███

Confidential- Subject to Protective Order                DOW0026231

case none of the provisions of this Release will have any effect. I acknowledge I will not be entitled to receive any payment or benefits set forth in this Release until the seven day period has expired without revocation, at which time this Release shall become final and binding.

9. That I have not filed any complaints with a court or administrative agency against any Releasee prior to the date of signing of this Release, I have recorded and received all overtime compensation due through my last pay period prior to my termination date, I have reported to the Company any and all work-related injuries incurred during employment; and I acknowledge that the Company properly provided any leave of absence because of my or a family member's health condition and I have not been subjected to any improper treatment, conduct or actions due to a request for or taking such leave.

10. That I have not assigned or attempted to assign or give to anyone else any claim I have or believe that I may have against any Releasee.

11. That I acknowledge and agree that if, after the termination of my employment with the Company, I become reemployed by the Company or any of its affiliates, the Company may require me to repay, as a condition of reemployment, that portion of the Severance Payment received that exceeds the amount of base salary which I would have received had I remained in the Company's employment. The rate used in determining the amount of repayment will be the same rate that was used in calculating the Severance Payment. For purposes of this provision, "affiliates" means any company in which the Company has an ownership interest of fifty percent or greater.

12. That I acknowledge under the penalties for perjury, that: (a) I have received from the Company for consideration for a period of at least 45 days an Older Worker Benefit Protection Act age and job title/job class list in a format that allows me to make a knowing, voluntary, and fully informed choice about whether to accept or reject the offer of special transition assistance benefits under this Release; and (b) I have been informed that I may, at any time during my applicable consideration and revocation period, both (i) request and obtain an updated version of this list and (ii) express any concerns I may have about the format or content of this list, and that I have availed myself of those opportunities to the extent I felt necessary to make a voluntary, knowing, and fully informed decision.

This Release does not affect my rights and obligations under the Company's standard Employee Agreement or any other secrecy, confidentiality, non-competition, or invention agreements that I have signed with the Company or under the various Company employee compensation or benefit plans and programs (except as specifically modified herein), which agreements, plans, and programs are governed by their terms. Apart from the benefits recited in this Release, I waive any rights I have to any benefits under any severance plan offered or adopted by the Company, including but not limited to the U.S. Severance Plan.

Confidential- Subject to Protective Order

DOW0026232

I agree not to disclose the terms of this Release to any person without the written consent of the Company, except to my legal, financial and tax advisors, and members of my immediate family, and any prospective or subsequent employer as respects any of my obligations under numbered paragraphs 2 to 4 immediately above who may need to be informed of these terms of this Release.

The construction, interpretation and performance of this Release shall be governed by the laws of the state in which I am working on the date of termination of my employment with the Company.

If any provision of this Release is determined to be invalid or unenforceable, the Company and I agree that such determination shall not affect the other provisions, and that all other provisions shall be enforced as if the invalid provision were not a part of this Release. Should any provision be held unenforceable for any reason, then such provision shall be enforced to the maximum extent permitted by law.

I further acknowledge that this Release contains the entire agreement between myself and the Company and cannot be modified except in writing if signed by me and the Company. Except as otherwise specifically provided for in this Release, this Release supercedes and replaces all prior agreements and understandings, written or oral, and any other employment or severance agreements or arrangements that may have been made by and between me and the Company. I represent and acknowledge that in executing this Release I have not relied upon any representation or statement not set forth herein made by any of the Releasees or any of the Releasee's agents, representatives or attorneys with regards to the subject matter of this Release, except for information contained in official plan documents.

**I understand that I have the right to consult with an attorney and the Company is advising me to consult with an attorney before signing this Release (and to the extent I desire, I have availed myself of that right), that I have at least 45 days to consider the Release before signing it, and that I may revoke the Release within seven calendar days after signing it.** For revocation to be effective, written notice must be received by the Company no later than the close of business on the seventh day after I sign this Release. I understand that this revocation can be made by delivering the written notice of revocation to the H.R. Service Center, The Dow Chemical Company, EDC, Midland, Michigan 48674, by First Class mail, by facsimile transmission (Fax No. 989-636-1693), or by hand delivery. I also understand that this Release shall not become effective or enforceable until the seven day revocation period has expired. If I sign the Release before the expiration of the 45 day period, I acknowledge that I have done so of my own choice and without coercion by the Company.

Confidential- Subject to Protective Order                              DOW0026233

By signing this release, I state that:  I have read it; I understand it and know that I am giving up important rights; I agree with everything in it; I am aware of my right to consult an attorney before signing it; and I have signed it knowingly and voluntarily; I am aware I may revoke at any time within seven days after the date of signing indicated below by giving written notice of revocation to the H.R. Service Center.

March 1, 2009

Date of Signing

## Participant 31
Employee Signature

## Participant 31
Employee Name Printed

ACCEPTED:
THE DOW CHEMICAL COMPANY

By: _Keri Husen_
Signature

_Keri Husen   HR Service Center Agent_
Print Name and Title

Date: _3-10-09_

Confidential- Subject to Protective Order

DOW0026234



### TERMINATION GENERAL RELEASE

Name: Participant 35                                    Employee No.: ███████

    This Release sets forth the terms under which my employer will provide to me various special transition assistance benefits in connection with the termination of my employment[1] with The Dow Chemical Company.

    I acknowledge that the termination of my employment was or is effective on March 31, 2009.

    I further acknowledge that eligibility to receive the various special transition assistance benefits is conditioned upon my signing and not revoking this Release.

    In consideration for the transition assistance benefits described below, I release and discharge The Dow Chemical Company and any of its affiliates or subsidiary companies (collectively the "Company"), and its officers, directors, employees, shareholders, successors and assigns ("Releasees") from all claims (including claims for attorney's fees and costs), demands and causes of action, known or unknown, which I may have or claim to have against any Releasee, arising out of, or in any way relating to, my employment or termination of my employment with the Company, whether based on any act or omission to act. This includes, but is not limited to, claims of negligence, intentional misconduct, breach of contract (whether written or oral), violation of the Employee Retirement Income Security Act of 1974 (ERISA) (as amended), violation of the **Age Discrimination in Employment Act of 1967 (ADEA) (as amended)**, violation of the Worker Adjustment and Retraining Act (WARN) (as amended), claims arising under any federal, state or local laws, executive orders, regulations, directives, codes, or common law prohibiting employment discrimination based on age, color, race, gender/sex, sexual preference/orientation, height, weight, marital status, national origin, mental or physical disability, religious affiliation, veteran status or any other forms of discrimination, and claims based on any other laws, executive orders, regulations, directives, codes or common law affecting relations between employers and employees, including claims growing out of the Company's termination of its employees.

    This Release does not affect any rights that I may have to file for a benefit under any state workers' compensation or unemployment compensation statute or for vested rights under ERISA-covered employee benefit plans as applicable to me on the date I sign this Release, that may arise under the ADEA, after I sign this Release, or that cannot be released by private agreement. I understand that nothing in this Release prevents me from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the EEOC, the NLRB, or any other federal, state, or local agency charged with the enforcement of employment laws, although by signing this release I am waiving and releasing any rights I may have to individual relief based on claims asserted in such charge or complaint or brought by any

---

[1] As used in this Termination General Release, "termination of employment" has the same meaning as Separation of Service defined in the summary plan description for the U.S. Severance Plan ("USSP").

Confidential- Subject to Protective Order                                    DOW0026235

other person on my behalf or which include me in any class.  This paragraph is not intended to limit me from instituting legal action for the purpose of enforcing this Release.

The transition assistance benefits which I will receive if I sign and do not revoke this Release in a timely manner consist of the following:

1.  U. S. Severance Plan:
    a.  I am eligible to receive a lump sum Severance Payment of $57,414 (less normal tax withholdings for income taxes, FICA, and any outstanding amounts I owe to the Company, including but not limited to any outstanding balance owed on Shared Appreciation Mortgage loans or other housing or relocation loans), after I leave the payroll.

        I understand that payment will                     date or sooner than the expiratic            Release without revoking it in v

    b.  I am eligible to receive reimbur            withholding of applicable taxes)            provided I utilize an approved p            submit a satisfactory receipt wit            termination of my employment t

    c.  At my option, I will be provided            services with a provider and pro            based on my job level at the time            utilization of the outplacement c                                    nths of my termination date and will continue for a maximum of two to nine months, depending upon the terms of the program in which I am eligible to participate. The objective of outplacement counseling services is to assist me in pursuing a career outside the Company.  I acknowledge that neither the outplacement counseling service provider nor the Company can guarantee subsequent employment.  I further acknowledge that if I do not choose to use the outplacement counseling services, there is no alternative or substitute benefit.

2.  Medical Coverage (does not include dental coverage)[2]:
    a.  If on the effective date of my separation from employment I am eligible for coverage under The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program[3], my premium rate

Handwritten margin notes (left):
Severance Date 4/2/09
Payroll Date 4/10/09
Input By CB
Audited By [initials]

Handwritten notes (right):
$$T = 3|31|09$$
$$S = 3|25|09$$
$$7 \text{ day} = 4/1/09$$
$$ROI = 5|1|09$$

---

[2] The medical coverages described in this bullet point do not apply to dental coverage.
[3] Generally, a former Employee is eligible for coverage under one of these retiree medical programs if he or she was hired prior to January 1, 2008, is at least age 50 with 10 or more years of credited service under the DEPP component ("DEPP") of the Dow Employees' Pension Plan or the UCEPP component ("UCEPP") of the Union Carbide Employees' Pension Plan (whichever is applicable).  A former Employee may also be eligible if he or she was hired prior to January 1, 2008 by an employer that was authorized as a participating employer of the retiree medical program prior to January 1, 2008, and has 10 or more years of credited service under DEPP or UCEPP

USSP Release (Revised January 2009)              2

Confidential- Subject to Protective Order

DOW0026236

for retiree medical coverage under the applicable retiree medical plan for 18 months following the effective date of my separation from employment will be the same premiums active employees of Dow pay (depending on your full-time or "Less-Than-Full-Time" status). Eligibility for the coverage at the active employee premium rate is subject to my continuous premium payments during the entire 18-month period. After 18 months, my cost for coverage will increase, and will be subject to the Retiree Medical Budget and the Retiree Medical Support Schedule depending on my years of Service. These rates are subject to change. All terms and conditions of the applicable retiree medical plan shall apply. **I understand that in general, eligibility for retiree medical ends when I am eligible for Medicare.** Some exceptions may apply[4]. For details, see the plan document for The Dow Chemical Company Retiree Medical Care Program or Union Carbide Corporation Retiree Medical Care Program, whichever is applicable. The Dow Chemical Company reserves the right to amend, modify, or terminate The Dow Chemical Company Retiree Medical Care Program and The Dow Chemical Company Insured Health Program at any time. Union Carbide Corporation reserves the right to amend, modify or terminate the Union Carbide Corporation Retiree Medical Care Program and the Union Carbide Corporation Insured Health Program at any time.

b.  If on the effective date of my separation from employment I am not eligible for coverage under The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program, I can elect to extend medical care coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program (depending on the plan I was enrolled in prior to termination of employment) for up to three (3) years from the effective date of my separation from employment or until I am eligible for coverage under another group plan (or a Dow plan through a dual Dow career spouse), whichever occurs first. If I elect extended coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program prior to the deadline specified in the notice I will receive from Ceridian, my premium will be the same premium active employees of Dow pay (depending on my full-time or "Less-Than-Full-Time" status) during the first 18 months of extended coverage. The premium will be 102% of the full, unsubsidized cost of coverage for the remaining 18 months of extended coverage. Eligibility for the extended coverage is subject to continuous premium payments during the entire 36-month period. These rates are subject to change. The Company reserves the right to amend, modify, or terminate The

---

(whichever is applicable) with at least 60 points (age plus service), and has signed a release acceptable to the Participating Employer. See the applicable retiree medical summary plan description for eligibility details.
[4] Exceptions apply to the following:
    a.  former Employees of The Dow Chemical Company who were hired prior to January 1, 1993,
    b.  former Employees of ANGUS Chemical Company who were hired prior to January 1, 1999,
    c.  former Employees of Union Carbide Corporation who were hired prior to February 6, 2001,
    d.  former Employees of Dow AgroSciences who were hired prior to January 1, 2004.
For more information, see the Plan Document for The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program, whichever is applicable.

Confidential- Subject to Protective Order

DOW0026237

Dow Chemical Company Medical Care Program and The Dow Chemical Company Insured Health Program at any time.

I have indicated my election decision on a separate Extended Coverage Enrollment Form.

I make the following representations to the Company, each of which is an important consideration for the Company's willingness to enter into this Release with me:

1. That I have returned or will return to the Company on or before my termination date, all Company property, including, without limitation, books, records and documents, files, memoranda, credit cards, Company passes, keys, computer access codes, disk and instructional manuals, tools, computers, and other physical property, which was or may be in my possession.

2. That I agree that I will not disclose to anyone or use, directly or indirectly, after termination of my employment with the Company, any Confidential Information of the Company, except with the written consent of the Company. Confidential Information is defined herein to mean trade secrets, know-how, and other information, not generally known, relating to the Company's business which was disclosed to me or with which I became familiar during my term of employment with the Company. Confidential Information includes information relating to the Company's business practices and prospective business interests, including, but not limited to, customer lists, forecasts, business and strategic plans, financial and sales information, products, processes, equipment, manufacturing operations, marketing programs, research, product development, engineering, computer systems and software, and personnel records. This obligation shall continue until such Confidential Information becomes generally known to the public without participation on my part.

3. That I will not at any time or in any manner, and whether directly or indirectly, criticize or disparage the Company or otherwise provide information, issue statements, or take any other action intended or reasonably likely to result in material harm, embarrassment, humiliation to the Company or cause or contribute to it being held in disrepute by any person.

4. That I agree that for a period of two (2) years from the date of the termination of my employment with the Company, I will not participate or have any interest, directly or indirectly, in any business which involves an area of technology or business in which I worked for the Company during the last five (5) years of my employment at the Company and in which I was exposed to any Confidential Information (as defined in paragraph 2 immediately above) of the Company. I further agree that for such period, I will not interfere with, disrupt or attempt to disrupt the relationship, contractual or otherwise, with respect to the business carried on by the Company with any other party. The restriction of this provision shall apply to any area of the United States, or any other country of the world in which the Company is conducting such business or

USSP Release (Revised January 2009)                    4

Confidential- Subject to Protective Order

DOW0026238

may be reasonably expected to engage in any such business within that two (2) year period. Such restriction shall apply to me, as owner, partner, officer, employee, consultant or advisor. For purposes of this provision, ownership of not more than one percent of the common or preferred stock of any publicly held company whose stock is listed on any recognized stock exchange or traded over the counter shall be disregarded.

5. That the payments and other benefits (including subsidized premiums) which the Company has offered to me, as stated above, are payments and benefits to which I would not be entitled but for this Release.

6. That I realize that there are various federal, state and local laws that govern my employment relationship with the Company and/or prohibit employment discrimination on the basis of age, color, race, gender/sex, national origin, mental or physical disability, religious affiliation or veteran status, as well as other forms of discrimination (including, in some jurisdictions, sexual preference/orientation, height, weight, and marital status), and that these laws are enforced through the courts and agencies such as the Equal Employment Opportunity Commission, Department of Labor and State Human Rights Agencies. I also realize that the Consolidated Omnibus Budget Reconciliation Act of 1985 (as amended), referred to as "COBRA", provides terminated employees the right to continue their active employee medical coverage at 102% of the full cost to insure for up to 18 months.

7. That I am aware that, by signing this Release, I am giving up my right to sue any Releasee not only on the basis of the discrimination laws mentioned above, but also for any other claims which I may have or believe that I may have against any Releasee in connection with my employment or termination of my employment, based upon any event which occurred before I sign this Release. I am further aware that the understanding regarding my right to sue stated in this paragraph does not apply to my right to challenge the knowing and voluntary nature of this Release as respects claims under the ADEA or the Older Worker Benefit Protection Act (OWBPA), although I understand that I have released my right to recovery under those statutes by signing this Release. Should I break this representation in this paragraph, I agree to pay all of the Company's costs and expenses (including reasonable attorneys' fees) related to the defense of any claims except for those under the ADEA and the OWBPA. I understand, however, that if I pursue a claim against the Company under the ADEA and/or the OWBPA to challenge the validity of this Release and prevail on the merits of an ADEA claim, a court has the discretion to determine whether the Company is entitled to restitution, recoupment, or set off (herinafter a "reduction") against a monetary award obtained by me in the court proceeding. A reduction can never exceed the amount I recover, or the consideration I received for signing this release, whichever is less. I also recognize that the Company may be entitled to recover costs and attorneys' fees incurred by the Company as specifically authorized under applicable law.

8. That I am aware that I may change my mind and revoke this Release at any time during the seven days after I sign this Release, provided I do so in writing, in which

USSP Release (Revised January 2009)                    5                    ▮

Confidential- Subject to Protective Order                    DOW0026239

case none of the provisions of this Release will have any effect. I acknowledge I will not be entitled to receive any payment or benefits set forth in this Release until the seven day period has expired without revocation, at which time this Release shall become final and binding.

9. That I have not filed any complaints with a court or administrative agency against any Releasee prior to the date of signing of this Release, I have recorded and received all overtime compensation due through my last pay period prior to my termination date, I have reported to the Company any and all work-related injuries incurred during employment; and I acknowledge that the Company properly provided any leave of absence because of my or a family member's health condition and I have not been subjected to any improper treatment, conduct or actions due to a request for or taking such leave.

10. That I have not assigned or attempted to assign or give to anyone else any claim I have or believe that I may have against any Releasee.

11. That I acknowledge and agree that if, after the termination of my employment with the Company, I become reemployed by the Company or any of its affiliates, the Company may require me to repay, as a condition of reemployment, that portion of the Severance Payment received that exceeds the amount of base salary which I would have received had I remained in the Company's employment. The rate used in determining the amount of repayment will be the same rate that was used in calculating the Severance Payment. For purposes of this provision, "affiliates" means any company in which the Company has an ownership interest of fifty percent or greater.

12. That I acknowledge under the penalties for perjury, that: (a) I have received from the Company for consideration for a period of at least 45 days an Older Worker Benefit Protection Act age and job title/job class list in a format that allows me to make a knowing, voluntary, and fully informed choice about whether to accept or reject the offer of special transition assistance benefits under this Release; and (b) I have been informed that I may, at any time during my applicable consideration and revocation period, both (i) request and obtain an updated version of this list and (ii) express any concerns I may have about the format or content of this list, and that I have availed myself of those opportunities to the extent I felt necessary to make a voluntary, knowing, and fully informed decision.

This Release does not affect my rights and obligations under the Company's standard Employee Agreement or any other secrecy, confidentiality, non-competition, or invention agreements that I have signed with the Company or under the various Company employee compensation or benefit plans and programs (except as specifically modified herein), which agreements, plans, and programs are governed by their terms. Apart from the benefits recited in this Release, I waive any rights I have to any benefits under any severance plan offered or adopted by the Company, including but not limited to the U.S. Severance Plan.

USSP Release (Revised January 2009)          6                    ▮

Confidential- Subject to Protective Order                    DOW0026240

I agree not to disclose the terms of this Release to any person without the written consent of the Company, except to my legal, financial and tax advisors, and members of my immediate family, and any prospective or subsequent employer as respects any of my obligations under numbered paragraphs 2 to 4 immediately above who may need to be informed of these terms of this Release.

The construction, interpretation and performance of this Release shall be governed by the laws of the state in which I am working on the date of termination of my employment with the Company.

If any provision of this Release is determined to be invalid or unenforceable, the Company and I agree that such determination shall not affect the other provisions, and that all other provisions shall be enforced as if the invalid provision were not a part of this Release. Should any provision be held unenforceable for any reason, then such provision shall be enforced to the maximum extent permitted by law.

I further acknowledge that this Release contains the entire agreement between myself and the Company and cannot be modified except in writing if signed by me and the Company. Except as otherwise specifically provided for in this Release, this Release supercedes and replaces all prior agreements and understandings, written or oral, and any other employment or severance agreements or arrangements that may have been made by and between me and the Company. I represent and acknowledge that in executing this Release I have not relied upon any representation or statement not set forth herein made by any of the Releasees or any of the Release's agents, representatives or attorneys with regards to the subject matter of this Release, except for information contained in official plan documents.

**I understand that I have the right to consult with an attorney and the Company is advising me to consult with an attorney before signing this Release (and to the extent I desire, I have availed myself of that right), that I have at least 45 days to consider the Release before signing it, and that I may revoke the Release within seven calendar days after signing it.** For revocation to be effective, written notice must be received by the Company no later than the close of business on the seventh day after I sign this Release. I understand that this revocation can be made by delivering the written notice of revocation to the H.R. Service Center, The Dow Chemical Company, EDC, Midland, Michigan 48674, by First Class mail, by facsimile transmission (Fax No. 989-636-1693), or by hand delivery. I also understand that this Release shall not become effective or enforceable until the seven day revocation period has expired. If I sign the Release before the expiration of the 45 day period, I acknowledge that I have done so of my own choice and without coercion by the Company.

USSP Release (Revised January 2009)          7          ▮

Confidential- Subject to Protective Order                                    DOW0026241

By signing this release, I state that: I have read it; I understand it and know that I am giving up important rights; I agree with everything in it; I am aware of my right to consult an attorney before signing it; and I have signed it knowingly and voluntarily; I am aware I may revoke at any time within seven days after the date of signing indicated below by giving written notice of revocation to the H.R. Service Center.

3/25/09
Date of Signing

## Participant 35
Employee Signature

## Participant 35
Employee Name Printed

ACCEPTED:
THE DOW CHEMICAL COMPANY

By: _Keri Husen_
Signature

_Keri Husen HR Service Center Agent_
Print Name and Title

Date: 3-31-09

USSP Release (Revised January 2009)          8

Confidential- Subject to Protective Order

RECEIVED 
JUL - 2

## TERMINATION GENERAL RELEASE

Name: Participant 33                                   Employee No.: ████

     This Release sets forth the terms under which my employer will provide to me various special transition assistance benefits in connection with the termination of my employment[1] with The Dow Chemical Company.

     I acknowledge that the termination of my employment was or is effective on June 30, 2012.

     I further acknowledge that eligibility to receive the various special transition assistance benefits is conditioned upon my signing and not revoking this Release.

     In consideration for the transition assistance benefits described below, I release and discharge The Dow Chemical Company and any of its affiliates or subsidiary companies (collectively the "Company"), and its officers, directors, employees, shareholders, successors and assigns ("Releasees") from all claims (including claims for attorney's fees and costs), demands and causes of action, known or unknown, which I may have or claim to have against any Releasee, arising out of, or in any way relating to, my employment or termination of my employment with the Company, whether based on any act or omission to act. This includes, but is not limited to, claims of negligence, intentional misconduct, breach of contract (whether written or oral), violation of the Employee Retirement Income Security Act of 1974 (ERISA) (as amended), violation of the **Age Discrimination in Employment Act of 1967 (ADEA) (as amended)**, violation of the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) (as amended), violation of the Worker Adjustment and Retraining Act (WARN) (as amended), claims arising under any federal, state or local laws, executive orders, regulations, directives, codes, or common law prohibiting employment discrimination based on age, color, race, gender/sex, sexual preference/orientation, height, weight, marital status, national origin, mental or physical disability, religious affiliation, veteran status or any other forms of discrimination, and claims based on any other laws, executive orders, regulations, directives, codes or common law affecting relations between employers and employees, including claims growing out of the Company's termination of its employees.

     This Release does not affect any rights that I may have to file for a benefit under any state workers' compensation or unemployment compensation statute or for vested rights under ERISA-covered employee benefit plans as applicable to me on the date I sign this Release, that may arise under the ADEA, after I sign this Release, or that cannot be released by private agreement. I understand that nothing in this Release prevents me from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the EEOC, the NLRB, or any other federal, state, or local agency charged with the enforcement of employment laws, although by signing this release I am waiving and releasing any rights I may have to individual relief based on claims asserted in such charge or complaint or brought by any

---

[1] As used in this Termination General Release, "termination of employment" has the same meaning as Separation of Service defined in the summary plan description for the U.S. Severance Plan ("USSP").

USSP Release (Template revised 7.28.2011)

Confidential- Subject to Protective Order                                          DOW0026243

other person on my behalf or which include me in any class.  This paragraph is not intended to
limit me from instituting legal action for the purpose of enforcing this Release.

The transition assistance benefits which I will receive if I sign and do not revoke this
Release in a timely manner consist of the following:

1.  U. S. Severance Plan:
   a.  I am eligible to receive a lump sum Severance Payment of $104,178 (less normal
       tax withholdings for income taxes, FICA, and any outstanding amounts I owe to
       the Company, including but not limited to any outstanding balance owed on
       Shared Appreciation Mortgage loans or other housing or relocation loans), after I
       leave the payroll.

       I understand that payment will not be made to me sooner than my termination
       date or sooner than the expiration of seven days following my signing this
       Release without revoking it in writing.

   b.  I am eligible to receive reimbursement, up to a maximum of $300 (subject to
       withholding of applicable taxes), for the cost of financial counseling services
       provided I utilize an approved professional financial counseling service and
       submit a satisfactory receipt within six months following the effective date of
       termination of my employment by the Company.

   c.  At my option, I will be provided with professional outplacement counseling
       services with a provider and program to be selected by the Plan Administrator
       based on my job level at the time of my separation from employment.  The
       utilization of the outplacement counseling service must begin within three months
       of my termination date and will continue for a maximum of two to nine months,
       depending upon the terms of the program in which I am eligible to participate.
       The objective of outplacement counseling services is to assist me in pursuing a
       career outside the Company.  I acknowledge that neither the outplacement
       counseling service provider nor the Company can guarantee subsequent
       employment.  I further acknowledge that if I do not choose to use the
       outplacement counseling services, there is no alternative or substitute benefit.

2.  Medical Coverage (does not include dental coverage)[2]:
   a.  If on the effective date of my separation from employment I am eligible for
       coverage under The Dow Chemical Company Retiree Medical Care Program, the
       Union Carbide Corporation Retiree Medical Care Program, or the Rohm and Haas
       Company Health and Welfare Plan Retiree Medical Care Program[3], I can elect to

---

[2] The medical coverages described in this bullet point do not apply to dental coverage.
[3] Generally, a former Dow or UCC Employee is eligible for coverage under one of these retiree medical programs if
he or she was hired prior to January 1, 2008, is at least age 50 with 10 or more years of credited service under the
DEPP component ("DEPP") of the Dow Employees' Pension Plan or the UCEPP component ("UCEPP") of the
Union Carbide Employees' Pension Plan (whichever is applicable).  A former Dow or UCC Employee may also be
eligible if: 1) he or she was hired prior to January 1, 2008 by an employer that was authorized as a participating
employer of the retiree medical program prior to January 1, 2008, 2) he or she has 10 or more years of credited

2

Confidential- Subject to Protective Order

DOW0026244

receive coverage under the applicable Dow, UCC, or Rohm and Haas retiree medical care program by submitting the retiree medical enrollment form provided by Dow within 31 days of my last day on the payroll, or 31 days from the date a retirement kit is sent to me, whichever is later.  If I complete the retiree medical enrollment form and submit it within the 31 day period, my premium rate for retiree medical coverage under the applicable retiree medical plan for 18 months following the effective date of my separation from employment will be the same premiums active employees of Dow pay (depending on my full-time or "Less-Than-Full-Time" status).  Eligibility for the coverage at the active employee premium rate is subject to my continuous premium payments during the entire 18-month period.  If I am a former Dow or UCC Employee, after 18 months, my cost for coverage will increase, and will be subject to the Retiree Medical Budget and the Retiree Medical Support Schedule depending on my years of Service.  If I am a former Rohm and Haas Employee, after 18 months, my cost for coverage will increase, and will be the same premium applicable to Rohm and Haas retirees.  All rates are subject to change.  All terms and conditions of the applicable retiree medical plan shall apply.  **I understand that in general, eligibility for retiree medical ends when I am eligible for Medicare.**  Some exceptions may apply[4].  For details, see the plan document for The Dow Chemical Company Retiree Medical Care Program,  Union Carbide Corporation Retiree Medical Care Program, or Rohm and Haas Company Health and Welfare Plan, whichever is applicable.  The Dow Chemical Company reserves the right to amend, modify, or terminate The Dow Chemical Company Retiree Medical Care Program, The Dow Chemical Company Insured Health Program, and the Rohm and Haas Company Health and Welfare Plan at any time.  Union Carbide Corporation reserves the right to amend, modify or terminate the Union Carbide Corporation Retiree Medical Care Program and the Union Carbide Corporation Insured Health Program at any time.

---

service under DEPP or UCEPP (whichever is applicable) with at least 60 points (age plus service), 3) he or she is a participant of a severance plan authorized by Dow or UCC, and 4) he or she has signed a release acceptable to the Participating Employer.  Generally, a former Rohm and Haas Employee is eligible for coverage under the Rohm and Haas Company Health and Welfare Plan Retiree Medical Care Program if he or she was hired prior to January 1, 2003, and on the date of termination of employment is either at least age 55 with 25 or more adjusted years of service under the Rohm and Haas Company Retirement Plan or at least age 60 with 15 or more adjusted years of service under the Rohm and Haas Company Retirement Plan.  In addition, a former Rohm and Haas Employee is eligible for coverage under the Rohm and Haas Company Health and Welfare Plan Retiree Medical Care Program if: 1) he or she was hired prior to January 1, 2003, 2) on the date of termination of employment he or she is at least age 50 with 65 or more points (age plus service), 3) he or she is a participant of a severance plan authorized by Dow, and 4) he or she has signed a release acceptable to the Participating Employer.  See the applicable retiree medical summary plan description for eligibility details.

[4] Exceptions apply to the following:
    a.    former Employees of The Dow Chemical Company who were hired prior to January 1, 1993,
    b.    former Employees of ANGUS Chemical Company who were hired prior to January 1, 1999,
    c.    former Employees of Union Carbide Corporation  who were hired prior to February 6, 2001,
    d.    former Employees of Dow AgroSciences who were hired prior to January 1, 2004,
    e.    former Employees of Rohm and Haas who were hired prior to January 1, 2003.
For more information, see the Plan Document for The Dow Chemical Company Retiree Medical Care Program, the Union Carbide Corporation Retiree Medical Care Program, or the Rohm and Haas Company Health and Welfare Plan, whichever is applicable.

3

Confidential- Subject to Protective Order

DOW0026245

b.  If on the effective date of my separation from employment I am not eligible for coverage under The Dow Chemical Company Retiree Medical Care Program, the Union Carbide Corporation Retiree Medical Care Program, or Rohm and Haas Company Health and Welfare Plan Retiree Medical Care Program, I can elect to extend medical care coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program (depending on the plan I was enrolled in prior to termination of employment) for up to three (3) years from the effective date of my separation from employment or until I am eligible for coverage under another group plan (or a Dow plan through a dual Dow career spouse), whichever occurs first.  If I elect extended coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program prior to the deadline specified in the notice I will receive from the COBRA administrator, my premium will be the same premium active employees of Dow pay (depending on my full-time or "Less-Than-Full-Time" status) during the first 18 months of extended coverage.  The premium will be 102% of the full, unsubsidized cost of coverage for the remaining 18 months of extended coverage.  Eligibility for the extended coverage is subject to continuous premium payments during the entire 36-month period.  These rates are subject to change.  The Company reserves the right to amend, modify, or terminate The Dow Chemical Company Medical Care Program and The Dow Chemical Company Insured Health Program at any time.

I have indicated my election decision on a separate Extended Coverage Enrollment Form.

I make the following representations to the Company, each of which is an important consideration for the Company's willingness to enter into this Release with me:

1.  That I have returned or will return to the Company on or before my termination date, all Company property, including, without limitation, books, records and documents, files, memoranda, credit cards, Company passes, keys, computer access codes, disk and instructional manuals, tools, computers, and other physical property, which was or may be in my possession.

2.  That I agree that I will not disclose to anyone or use, directly or indirectly, after termination of my employment with the Company, any Confidential Information of the Company, except with the written consent of the Company.  Confidential Information is defined herein to mean trade secrets, know-how, and other information, not generally known, relating to the Company's business which was disclosed to me or with which I became familiar during my term of employment with the Company.  Confidential Information includes information relating to the Company's business practices and prospective business interests, including, but not limited to, customer lists, forecasts, business and strategic plans, financial and sales information, products, processes, equipment, manufacturing operations, marketing programs, research, product development, engineering, computer systems and

4

software, and personnel records. This obligation shall continue until such Confidential Information becomes generally known to the public without participation on my part.

3. That I will not at any time or in any manner, and whether directly or indirectly, criticize or disparage the Company or otherwise provide information, issue statements, or take any other action intended or reasonably likely to result in material harm, embarrassment, humiliation to the Company or cause or contribute to it being held in disrepute by any person.

4. That I agree that for a period of two (2) years from the date of the termination of my employment with the Company, I will not participate or have any interest, directly or indirectly, in any business which involves an area of technology or business in which I worked for the Company during the last five (5) years of my employment at the Company and in which I was exposed to any Confidential Information (as defined in paragraph 2 immediately above) of the Company. I further agree that for such period, I will not interfere with, disrupt or attempt to disrupt the relationship, contractual or otherwise, with respect to the business carried on by the Company with any other party. The restriction of this provision shall apply to any area of the United States, or any other country of the world in which the Company is conducting such business or may be reasonably expected to engage in any such business within that two (2) year period. Such restriction shall apply to me, as owner, partner, officer, employee, consultant or advisor. For purposes of this provision, ownership of not more than one percent of the common or preferred stock of any publicly held company whose stock is listed on any recognized stock exchange or traded over the counter shall be disregarded.

5. That the payments and other benefits (including subsidized premiums) which the Company has offered to me, as stated above, are payments and benefits to which I would not be entitled but for this Release.

6. That I realize that there are various federal, state and local laws that govern my employment relationship with the Company and/or prohibit employment discrimination on the basis of age, color, race, gender/sex, national origin, mental or physical disability, religious affiliation or veteran status, as well as other forms of discrimination (including, in some jurisdictions, sexual preference/orientation, height, weight, and marital status), and that these laws are enforced through the courts and agencies such as the Equal Employment Opportunity Commission, Department of Labor and State Human Rights Agencies.

7. That I am aware that, by signing this Release, I am giving up my right to sue any Releasee not only on the basis of the discrimination laws mentioned above, but also for any other claims which I may have or believe that I may have against any Releasee in connection with my employment or termination of my employment, based upon any event which occurred before I sign this Release.  I am further aware that the understanding regarding my right to sue stated in this paragraph does

5

not apply to my right to challenge the knowing and voluntary nature of this Release as respects claims under the ADEA or the Older Worker Benefit Protection Act (OWBPA), although I understand that I have released my right to recovery under those statutes by signing this Release. Should I break this representation in this paragraph, I agree to pay all of the Company's costs and expenses (including reasonable attorneys' fees) related to the defense of any claims except for those under the ADEA and the OWBPA. I understand, however, that if I pursue a claim against the Company under the ADEA and/or the OWBPA to challenge the validity of this Release and prevail on the merits of an ADEA claim, a court has the discretion to determine whether the Company is entitled to restitution, recoupment, or set off (herinafter a "reduction") against a monetary award obtained by me in the court proceeding. A reduction can never exceed the amount I recover, or the consideration I received for signing this release, whichever is less. I also recognize that the Company may be entitled to recover costs and attorneys' fees incurred by the Company as specifically authorized under applicable law.

8.  That I am aware that I may change my mind and revoke this Release at any time during the seven days after I sign this Release, provided I do so in writing, in which case none of the provisions of this Release will have any effect. I acknowledge I will not be entitled to receive any payment or benefits set forth in this Release until the seven day period has expired without revocation, at which time this Release shall become final and binding.

9.  That I have not filed any complaints with a court or administrative agency against any Releasee prior to the date of signing of this Release, I have recorded and received all overtime compensation due through my last pay period prior to my termination date, I have reported to the Company any and all work-related injuries incurred during employment; and I acknowledge that the Company properly provided any leave of absence because of my or a family member's health condition and I have not been subjected to any improper treatment, conduct or actions due to a request for or taking such leave.

10. That I have not assigned or attempted to assign or give to anyone else any claim I have or believe that I may have against any Releasee.

11. That I acknowledge and agree that if, after the termination of my employment with the Company, I become reemployed by the Company or any of its affiliates, the Company may require me to repay, as a condition of reemployment, that portion of the Severance Payment received that exceeds the amount of base salary which I would have received had I remained in the Company's employment. The rate used in determining the amount of repayment will be the same rate that was used in calculating the Severance Payment. For purposes of this provision, "affiliates" means any company in which the Company has an ownership interest of fifty percent or greater.

6

Confidential- Subject to Protective Order

12.   That I acknowledge under the penalties for perjury, that:  (a) I have received from the Company for consideration for a period of at least 45 days an Older Worker Benefit Protection Act age and job title/job class list in a format that allows me to make a knowing, voluntary, and fully informed choice about whether to accept or reject the offer of special transition assistance benefits under this Release; and (b) I have been informed that I may, at any time during my applicable consideration and revocation period, both (i) request and obtain an updated version of this list and (ii) express any concerns I may have about the format or content of this list, and that I have availed myself of those opportunities to the extent I felt necessary to make a voluntary, knowing, and fully informed decision.

This Release does not affect my rights and obligations under the Company's standard Employee Agreement or any other secrecy, confidentiality, non-competition, or invention agreements that I have signed with the Company or under the various Company employee compensation or benefit plans and programs (except as specifically modified herein), which agreements, plans, and programs are governed by their terms. Apart from the benefits recited in this Release, I waive any rights I have to any benefits under any severance plan offered or adopted by the Company, including but not limited to the U.S. Severance Plan.

I agree not to disclose the terms of this Release to any person without the written consent of the Company, except to my legal, financial and tax advisors, and members of my immediate family, and any prospective or subsequent employer as respects any of my obligations under numbered paragraphs 2 to 4 immediately above who may need to be informed of these terms of this Release.

The construction, interpretation and performance of this Release shall be governed by the laws of the state in which I am working on the date of termination of my employment with the Company.

If any provision of this Release is determined to be invalid or unenforceable, the Company and I agree that such determination shall not affect the other provisions, and that all other provisions shall be enforced as if the invalid provision were not a part of this Release. Should any provision be held unenforceable for any reason, then such provision shall be enforced to the maximum extent permitted by law.

I further acknowledge that this Release contains the entire agreement between myself and the Company and cannot be modified except in writing if signed by me and the Company. Except as otherwise specifically provided for in this Release, this Release supercedes and replaces all prior agreements and understandings, written or oral, and any other employment or severance agreements or arrangements that may have been made by and between me and the Company. I represent and acknowledge that in executing this Release I have not relied upon any representation or statement not set forth herein made by any of the Releasees or any of the Releasee's agents, representatives or attorneys with regards to the subject matter of this Release, except for information contained in official plan documents.

7

Confidential- Subject to Protective Order

I understand that I have the right to consult with an attorney and the Company is advising me to consult with an attorney before signing this Release (and to the extent I desire, I have availed myself of that right), that I have at least 45 days to consider the Release before signing it, and that I may revoke the Release within seven calendar days after signing it. For revocation to be effective, written notice must be received by the Company no later than the close of business on the seventh day after I sign this Release. I understand that this revocation can be made by delivering the written notice of revocation to Workforce Planning, The Dow Chemical Company, EDC, Midland, Michigan 48674, by First Class mail, by facsimile transmission (Fax No. 989-636-3674), or by hand delivery. I also understand that this Release shall not become effective or enforceable until the seven day revocation period has expired. If I sign the Release before the expiration of the 45 day period, I acknowledge that I have done so of my own choice and without coercion by the Company.

By signing this release, I state that: I have read it; I understand it and know that I am giving up important rights; I agree with everything in it; I am aware of my right to consult an attorney before signing it; and I have signed it knowingly and voluntarily; I am aware I may revoke at any time within seven days after the date of signing indicated below by giving written notice of revocation to Workforce Planning.

_____6|29|12_____

Date of Signing

## Participant 33

Employee Signature

## Participant 33

Employee Name Printed

ACCEPTED:
THE DOW CHEMICAL COMPANY

By: _____
Signature

**Keri Husen**
Authorized Representative of the Company
_____
Print Name and Title

Date: ___7-2-12___

8

Confidential- Subject to Protective Order



RECEIVED

JAN 3

## TERMINATION GENERAL RELEASE

This Termination General Release (the "Release") sets forth the terms of agreement by and between the parties as further described below:

**1.    The Parties**

    A.    "The Employee" means Participant 39 , Employee ID ███ , an individual who resides at

> Redacted:
> Confidential

    B.    "Dow" or the "Company" means The Dow Chemical Company, a Delaware corporation, with its corporate offices located at 2030 Dow Center, Midland, Michigan 48674; and any of its past, present and future affiliates, subsidiaries, officers, directors, employees, and shareholders, and all of its and their respective heirs, successors, and assigns.

    C.    The Employee and Dow shall be collectively referred to as the Parties ("Parties").

**2.    Termination of Employment Relationship**

    A.    The Parties will end their employment relationship on December 31, 2012, (the "Termination Date"). Unless otherwise indicated in this Release, the Termination Date shall be December 31, 2012, or, if the Employee separates from the Company on a date other than December 31, 2012, the Termination Date will be the actual date on which the employment relationship between the Parties is terminated.

    B.    The Company may relieve Employee of all duties and place the Employee on administrative leave prior to the Termination Date upon notice. Employee no longer will be authorized to transact business or incur any expenses, obligations and liabilities on behalf of the Company after the earlier of being placed on administrative leave or the Termination Date. Employee acknowledges the following: (i) receipt of all compensation and benefits due through the Termination Date as a result of services performed for the Company with the receipt of a final paycheck except as provided in this Release; (ii) Employee has reported to the Company any and all work-related injuries incurred during employment; (iii) the Company properly provided any leave of absence because of Employee's or a family member's health condition and Employee has not been subjected to any improper treatment, conduct or actions due to a request for or taking such leave; and (iv) Employee has provided the Company with written notice of any and all concerns regarding suspected ethical and compliance issues or violations on the part of the Company or any released person or entity.

**3.    Transition Assistance Benefits**

The transition assistance benefits which Employee will receive if Employee signs, returns and does not revoke this Release in a timely manner consist of the following:

    A.    <u>U. S. Severance Plan.</u>  Employee is eligible to receive under The Dow Chemical Company U.S. Severance Plan (the "Severance Plan"): (a) a lump sum Severance Payment of $125,025 less deductions or withholdings required by law or by agreement between the Parties

and any outstanding amounts Employee owes to the Company, including but not limited to any outstanding balance owed on any housing or relocation loans), and (b) any other additional benefits that are available to the Employee under the Severance Plan.

Employee understands that payment will be made at the times and in the form set forth in the Summary Plan Description for the Severance Plan.

B.   Medical Coverage.  Employee may elect to extend Employee's medical coverage (but not dental coverage) at the active premium rates as described in the document entitled "Information About Your Immediate Medical and Dental Options" (the "Medical Information Document").  Employee must make such election in accordance with the requirements set forth in the Medical Information Document.

4.   **Full and Final Release.**  In consideration for the transition assistance benefits described above, Employee releases and discharges the Company from all claims (including claims for attorney's fees and costs), demands and causes of action, known or unknown, which Employee may have or claim to have, arising out of, or in any way relating to, Employee's employment or termination of Employee's employment with the Company, whether based on any act or omission to act.  This includes, but is not limited to, claims of negligence, intentional misconduct, breach of contract (whether written or oral), violation of the Employee Retirement Income Security Act of 1974 (ERISA) (as amended), violation of the **Age Discrimination in Employment Act of 1967 (ADEA) (as amended)**, violation of the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) (as amended), violation of the Worker Adjustment and Retraining Notification Act (WARN) (as amended), violation of the Americans with Disabilities Act of 1990 (as amended), National Labor Relations Act (as amended), violation of the Conscientious Employee Protection Act, violation of the New Jersey Law Against Discrimination, claims arising under any federal, state or local laws, executive orders, regulations, directives, codes, common law, constitutional provision or public policy prohibiting employment discrimination based on age, color, race, gender/sex, sexual preference/orientation, height, weight, marital status, national origin, mental or physical disability, religious affiliation, veteran status or any other forms of discrimination, and claims based on any other laws, executive orders, regulations, directives, codes, common law, constitutional provision or public policy affecting relations between employers and employees, including claims growing out of the Company's termination of its employees.

5.   **Exceptions to the Release.**  This Release does not waive any claims (A) for unemployment or workers' compensation, (B) for vested or other rights to which the Employee may be entitled under the Company's employee benefit plans on the date Employee signs this Release that cannot legally be waived, (C) that may arise after Employee signs this Release, or (D) which cannot be released by private agreement.   Attached also is a notice about claims for unemployment compensation benefits as stated in the attached flyer.  Nothing in this Release generally prevents Employee from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the EEOC or any other federal, state or local agency charged with the enforcement of any employment laws, although by signing this Release, Employee waives the right to individual relief based on claims asserted in such a charge or complaint, except with the National Labor Relations Board or anywhere else such a waiver is prohibited.

USSP - Termination General Release Template revised 11/1/2012

Confidential- Subject to Protective Order                                    DOW0026252

6.     **Confidential Information of Company**.  Employee agrees that Employee will not disclose to anyone or use, directly or indirectly, after termination of Employee's employment with the Company, any Confidential Information of the Company, except with the written consent of the Company.  "Confidential Information" is defined herein to mean trade secrets, know-how, and other information, not generally known, relating to the Company's business which was disclosed to Employee or with which Employee became familiar during Employee's term of employment with the Company (including information conceived, originated, discovered or developed in whole or in part by Employee).  "Confidential Information" includes information relating to the Company's business practices and prospective business interests, including, but not limited to, customer lists, forecasts, business and strategic plans, financial and sales information, products, processes, equipment, manufacturing operations, marketing programs, research, product development, engineering, computer systems and software, and personnel records.  This obligation shall continue until such Confidential Information becomes generally known to the public without participation on Employee's part.

7.     **Non-Disparagement**.  Employee agrees that Employee will not at any time or in any manner, and whether directly or indirectly, criticize or disparage the Company or otherwise provide information, issue statements, or take any other action intended or reasonably likely to result in material harm, embarrassment, humiliation to the Company or cause or contribute to it being held in disrepute by any person.

8.     **Non-Compete**.  Employee agrees that for a period of two (2) years from Employee's Termination Date, Employee will not either directly or indirectly, participate in, consult with or render services to any Competing Business, nor have any interest in any Competing Business. "Competing Business" means any entity or person engaged in or about to become engaged in research, development, production, marketing or selling of one or more Competing Products. "Competing Products" means products, processes or services competing directly or indirectly with the Company's current or contemplated products, processes or services in the area the Employee worked for the Company or in an area where the Employee was exposed to Confidential Information (as defined in paragraph 6), during the last five (5) years of Employee's employment at the Company.  In addition, for such two (2) year period, Employee will not interfere with, disrupt or attempt to disrupt any relationship, contractual or otherwise, with respect to a business carried on by the Company and any other party.  The restrictions of this provision apply to (a) the state(s) within the United States that was Employee's primary work location or territory during the five (5) years immediately preceding Employee's Termination Date, (b) any area of the United States where the Company is conducting business or may be reasonably expected to engage in business, or (c) any other country of the world where the Company is conducting business or may be reasonably expected to engage in business.  Such restrictions shall apply to Employee, as owner, partner, officer, employee, consultant or advisor. For purposes of this provision, ownership of not more than one percent of the common or preferred stock of any publicly held company whose stock is listed on any recognized stock exchange or traded over the counter shall be disregarded.

9.     **Company Property**.  Employee agrees that Employee has returned or will return to the Company on or before Employee's Termination Date, any and all Company property and Confidential Information, including originals and copies thereof (whether in hard copy or electronic form), including, without limitation, books, records and documents, files, memoranda,

USSP - Termination General Release Template revised 11/1/2012

Confidential- Subject to Protective Order

DOW0026253

credit cards, Company passes, keys, computer access codes, disk and instructional manuals, tools, computers, and other physical property, which was or may be in Employee's possession or under Employee's control.

**10.**   **Confidentiality.**  Employee agrees not to disclose the terms of this Release to any person unless required by law without the written consent of the Company, except to Employee's legal, financial and tax advisors, and members of Employee's immediate family, and any prospective or subsequent employer as respects any of Employee's obligations under paragraphs 6 through 9 who may need to be informed of these terms of this Release.  If Employee does tell any of the persons listed in the preceding sentence about the Release or its contents, Employee must immediately tell them that they must keep the disclosed information confidential as well.

**11.**   **Enforcement of Covenants.**  Employee agrees that the Company would be irreparably injured by a violation by Employee of paragraphs 6 through 10 and that in the event of any such breach or threatened breach, the Company shall, in addition to any other remedies available to it, be entitled to (A) a temporary restraining order and/or preliminary and/or permanent injunction, or other equivalent relief, restraining Employee from the actual or threatened breach, and (B) recover from Employee all sums paid to Employee or on behalf of Employee pursuant to this Release.

**12.**   **Obligations.**  This Release does not affect the Employee's rights and obligations under the Company's standard Employee Agreement or any other secrecy, confidentiality, non-competition, or invention agreements that the Employee has signed with the Company or under the various Company employee compensation or benefit plans and programs, except as specifically modified herein.  Apart from the benefits recited in this Release, Employee waives any rights Employee has to any benefits offered or adopted by the Company that are not specifically listed in this Release, except for those benefits in which the Employee has vested rights pursuant to the applicable plan and applicable law that cannot legally be waived.

**13.**   **Cooperation.**  Employee agrees to cooperate with Company and its attorneys, both during and after the termination of Employee's employment, in connection with any litigation or other proceeding arising out of or relating to matters of which Employee was involved prior to the termination of Employee's employment.  Employee's cooperation shall include, without limitation, providing assistance to Company's counsel, experts and consultants, and providing truthful testimony in pretrial and trial or hearing proceedings.  In the event that Employee's cooperation is requested after the termination of Employee's employment, Company will (1) seek to minimize interruptions to Employee's schedule to the extent consistent with its interests in the matter; and (2) reimburse Employee for all reasonable and appropriate out-of-pocket expenses actually incurred by Employee in connection with such cooperation upon reasonable substantiation of such expenses.

Employee agrees that Employee will not testify voluntarily in any lawsuit or other proceeding which directly or indirectly involves Company, or which may create the impression that such testimony is endorsed or approved by Company, without providing notice (including the general nature of the testimony) to the Company's General Counsel promptly, and in no event later than two (2) business days, after receiving an order or request to testify.

USSP - Termination General Release Template revised 11/1/2012

Confidential- Subject to Protective Order

DOW0026254

**14.   Acknowledgement of Receipt of Documents**.   By signing below, Employee acknowledges receipt of this Termination General Release, U.S. Severance Plan Summary Plan Description,   Older Worker Benefit Protection Act age and job title list, and Information About Your Immediate Medical and Dental Options.   Employee understands that Employee is responsible for reading and becoming familiar with the documents, and that if Employee has any questions regarding the documents, Employee will direct those questions to the Plan Administrator.

**15.   Advice of Counsel, Consideration and Revocation Periods and Effective Date**.   Dow advises Employee to consult with an attorney prior to signing this Release.

Employee has forty-five (45) days to consider whether to sign this Release (the "Consideration Period").   Employee must return this signed Release to Workforce Planning, The Dow Chemical Company, EDC, Midland, Michigan 48674, by First Class mail or by hand delivery within the Consideration Period but not prior to the Termination Date.   If Employee signs and returns this Release before the end of the Consideration Period, it is because Employee freely chose to do so after carefully considering its terms.   Additionally, Employee shall have seven days from the date of the signing of this Release to revoke this Release by delivering a written notice of revocation within the seven day revocation period to Workforce Planning.   If the revocation period expires on a weekend or holiday, Employee will have until the end of the next business day to revoke. This Release will become effective on the eighth day after Employee signs this Release provided Employee does not revoke this Release.   Any modification or alteration of any terms of this Release by Employee voids this Release in its entirety.   If Employee is age 40 or over and Employee's termination is part of an employment termination program, the Company has attached information regarding the class, unit, or group of individuals covered by the employment termination program; the applicable eligibility factors and time limits; a list of the job titles and ages of all individuals eligible or selected for the employment termination program as well as those who are not; and the applicable severance plan.   Employee agrees with the Company that changes to the Release, whether material or immaterial, do not restart the running of the Consideration Period.   The Company is not required to make any payments described in this Release unless the Release becomes effective.

**16.   Applicable Law and General Provisions**.   This Release shall be interpreted under the law of the state in which Employee last worked.   This Release sets forth the entire agreement between the parties.   Employee is not relying on any other agreements or oral representations not fully addressed in this Release.   The provisions of this Agreement are severable, and if any part of this Release is found by a court of law to be unenforceable, the remainder of this Release will continue to be valid and effective.   The headings in this Release are provided for reference only and shall not affect the substance of this Release.

**17.   Significance of Employee's Signature**.   Employee's signature below indicates that Employee:

A.   has carefully read and reviewed this Release,

B.   fully understands all of its terms and conditions,

USSP - Termination General Release Template revised 11/1/2012

Confidential- Subject to Protective Order

     C.     fully understands that the Release is legally binding and that by signing it, Employee is giving up certain rights,

     D.     has not relied on any other representations by the Company, whether written or oral, concerning the terms of the Release,

     E.     has been provided up to forty-five (45) days to consider this Release and agrees that changes to this Release, whether material or immaterial, do not restart the Consideration Period;

     F.     will have seven (7) days to revoke his or her acceptance of the Release after signing it;

     G.     has been advised, and has had the opportunity, to consult with an attorney prior to signing the Release;

     H.     has signed and delivered this Release freely and voluntarily; and

     I.     is duly authorized to sign this Release and has not assigned or attempted to assign or give to anyone else any claim Employee has or believes that he or she may have against the Company.

USSP - Termination General Release Template revised 11/1/2012

Confidential- Subject to Protective Order

IN WITNESS WHEREOF, the parties to this Release have executed this instrument on the date(s) set forth below.

_12/31/2012_
Date of Signing
**Not valid if signed before Termination Date**

## Participant 39

Employee Signature

## Participant 39

Employee Name (Printed)

ACCEPTED:

THE DOW CHEMICAL COMPANY

By: _____
Signature   **Keri Husen**
Authorized Representative of the Company

_____
Printed Name and Title

Date: _____1/3/13_____

USSP - Termination General Release Template revised 11/1/2012

Confidential- Subject to Protective Order

DOW0026257

## TERMINATION GENERAL RELEASE



RECEIVED

SEP 2 0 2010

Name: Participant 47                    Employee No.: ▮▮▮▮▮

This Release sets forth the terms under which my employer will provide to me various special transition assistance benefits in connection with the termination of my employment[1] with The Dow Chemical Company.

I acknowledge that the termination of my employment was or is effective on September 30, 2010.

I further acknowledge that eligibility to receive the various special transition assistance benefits is conditioned upon my signing and not revoking this Release.

In consideration for the transition assistance benefits described below, I release and discharge The Dow Chemical Company and any of its affiliates or subsidiary companies (collectively the "Company"), and its officers, directors, employees, shareholders, successors and assigns ("Releasees") from all claims (including claims for attorney's fees and costs), demands and causes of action, known or unknown, which I may have or claim to have against any Releasee, arising out of, or in any way relating to, my employment or termination of my employment with the Company, whether based on any act or omission to act. This includes, but is not limited to, claims of negligence, intentional misconduct, breach of contract (whether written or oral), violation of the Employee Retirement Income Security Act of 1974 (ERISA) (as amended), violation of the **Age Discrimination in Employment Act of 1967 (ADEA) (as amended)**, violation of the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) (as amended), violation of the Worker Adjustment and Retraining Act (WARN) (as amended), claims arising under any federal, state or local laws, executive orders, regulations, directives, codes, or common law prohibiting employment discrimination based on age, color, race, gender/sex, sexual preference/orientation, height, weight, marital status, national origin, mental or physical disability, religious affiliation, veteran status or any other forms of discrimination, and claims based on any other laws, executive orders, regulations, directives, codes or common law affecting relations between employers and employees, including claims growing out of the Company's termination of its employees.

This Release does not affect any rights that I may have to file for a benefit under any state workers' compensation or unemployment compensation statute or for vested rights under ERISA-covered employee benefit plans as applicable to me on the date I sign this Release, that may arise under the ADEA, after I sign this Release, or that cannot be released by private agreement. I understand that nothing in this Release prevents me from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the EEOC, the NLRB, or any other federal, state, or local agency charged with the enforcement of employment laws, although by signing this release I am waiving and releasing any rights I may have to individual relief based on claims asserted in such charge or complaint or brought by any

---

[1] As used in this Termination General Release, "termination of employment" has the same meaning as Separation of Service defined in the summary plan description for the U.S. Severance Plan ("USSP").

USSP Release (Template revised 8.10.2010)

Confidential- Subject to Protective Order                    DOW0026258

other person on my behalf or which include me in any class. This paragraph is not intended to limit me from instituting legal action for the purpose of enforcing this Release.

The transition assistance benefits which I will receive if I sign and do not revoke this Release in a timely manner consist of the following:

1. U. S. Severance Plan:
   a. I am eligible to receive a lump sum Severance Payment of $128,426 (less normal tax withholdings for income taxes, FICA, and any outstanding amounts I owe to the Company, including but not limited to any outstanding balance owed on Shared Appreciation Mortgage loans or other housing or relocation loans), after I leave the payroll.

   I understand that payment will not be made to me sooner than my termination date or sooner than the expiration of seven days following my signing this Release without revoking it in writing.

   b. I am eligible to receive reimbursement, up to a maximum of $300 (subject to withholding of applicable taxes), for the cost of financial counseling services provided I utilize an approved professional financial counseling service and submit a satisfactory receipt within six months following the effective date of termination of my employment by the Company.

   At my option, I will be provided with professional outplacement counseling services with a provider and program to be selected by the Plan Administrator based on my job level at the time of my separation from employment. The utilization of the outplacement counseling service must begin within three months of my termination date and will continue for a maximum of two to nine months, depending upon the terms of the program in which I am eligible to participate. The objective of outplacement counseling services is to assist me in pursuing a career outside the Company. I acknowledge that neither the outplacement counseling service provider nor the Company can guarantee subsequent employment. I further acknowledge that if I do not choose to use the outplacement counseling services, there is no alternative or substitute benefit.

2. Medical Coverage (does not include dental coverage)[2]:
   a. If on the effective date of my separation from employment I am eligible for coverage under The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program[3], I can elect to

---

[2] The medical coverages described in this bullet point do not apply to dental coverage.
[3] Generally, a former Employee is eligible for coverage under one of these retiree medical programs if he or she was hired prior to January 1, 2008, is at least age 50 with 10 or more years of credited service under the DEPP component ("DEPP") of the Dow Employees' Pension Plan or the UCEPP component ("UCEPP") of the Union Carbide Employees' Pension Plan (whichever is applicable). A former Employee may also be eligible if he or she was hired prior to January 1, 2008 by an employer that was authorized as a participating employer of the retiree medical program prior to January 1, 2008, and has 10 or more years of credited service under DEPP or UCEPP

2

Confidential- Subject to Protective Order

DOW0026259

receive coverage under the applicable Dow or UCC retiree medical care program by submitting the retiree medical enrollment form included in my Transitions Binder within 31 days of my last day on the payroll, or 31 days from the date the Transitions Binder is sent to me, whichever is later.  If I complete the retiree medical enrollment form and submit it within the 31 day period, my premium rate for retiree medical coverage under the applicable retiree medical plan for 18 months following the effective date of my separation from employment will be the same premiums active employees of Dow pay (depending on your full-time or "Less-Than-Full-Time" status).  Eligibility for the coverage at the active employee premium rate is subject to my continuous premium payments during the entire 18-month period.  After 18 months, my cost for coverage will increase, and will be subject to the Retiree Medical Budget and the Retiree Medical Support Schedule depending on my years of Service.  These rates are subject to change.  All terms and conditions of the applicable retiree medical plan shall apply.  **I understand that in general, eligibility for retiree medical ends when I am eligible for Medicare.**[4]  Some exceptions may apply.  For details, see the plan document for The Dow Chemical Company Retiree Medical Care Program or Union Carbide Corporation Retiree Medical Care Program, whichever is applicable.  The Dow Chemical Company reserves the right to amend, modify, or terminate The Dow Chemical Company Retiree Medical Care Program and The Dow Chemical Company Insured Health Program at any time.  Union Carbide Corporation reserves the right to amend, modify or terminate the Union Carbide Corporation Retiree Medical Care Program and the Union Carbide Corporation Insured Health Program at any time.

b.  If on the effective date of my separation from employment I am not eligible for coverage under The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program, I can elect to extend medical care coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program (depending on the plan I was enrolled in prior to termination of employment) for up to three (3) years from the effective date of my separation from employment or until I am eligible for coverage under another group plan (or a Dow plan through a dual Dow career spouse), whichever occurs first.  If I elect extended coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program prior to the deadline specified in the notice I will receive from Ceridian, my premium will be the same premium active employees of Dow pay (depending on my full-time or "Less-Than-Full-Time"

---

(whichever is applicable) with at least 60 points (age plus service), and has signed a release acceptable to the Participating Employer.  See the applicable retiree medical summary plan description for eligibility details.
[4] Exceptions apply to the following:
    a.  former Employees of The Dow Chemical Company who were hired prior to January 1, 1993,
    b.  former Employees of ANGUS Chemical Company who were hired prior to January 1, 1999,
    c.  former Employees of Union Carbide Corporation  who were hired prior to February 6, 2001,
    d.  former Employees of Dow AgroSciences who were hired prior to January 1, 2004.
For more information, see the Plan Document for The Dow Chemical Company Retiree Medical Care Program or the Union Carbide Corporation Retiree Medical Care Program, whichever is applicable.

Confidential- Subject to Protective Order

DOW0026260

status) during the first 18 months of extended coverage. The premium will be 102% of the full, unsubsidized cost of coverage for the remaining 18 months of extended coverage. Eligibility for the extended coverage is subject to continuous premium payments during the entire 36-month period. These rates are subject to change. The Company reserves the right to amend, modify, or terminate The Dow Chemical Company Medical Care Program and The Dow Chemical Company Insured Health Program at any time.

I have indicated my election decision on a separate Extended Coverage Enrollment Form.

I make the following representations to the Company, each of which is an important consideration for the Company's willingness to enter into this Release with me:

1.  That I have returned or will return to the Company on or before my termination date, all Company property, including, without limitation, books, records and documents, files, memoranda, credit cards, Company passes, keys, computer access codes, disk and instructional manuals, tools, computers, and other physical property, which was or may be in my possession.

2.  That I agree that I will not disclose to anyone or use, directly or indirectly, after termination of my employment with the Company, any Confidential Information of the Company, except with the written consent of the Company. Confidential Information is defined herein to mean trade secrets, know-how, and other information, not generally known, relating to the Company's business which was disclosed to me or with which I became familiar during my term of employment with the Company. Confidential Information includes information relating to the Company's business practices and prospective business interests, including, but not limited to, customer lists, forecasts, business and strategic plans, financial and sales information, products, processes, equipment, manufacturing operations, marketing programs, research, product development, engineering, computer systems and software, and personnel records. This obligation shall continue until such Confidential Information becomes generally known to the public without participation on my part.

3.  That I will not at any time or in any manner, and whether directly or indirectly, criticize or disparage the Company or otherwise provide information, issue statements, or take any other action intended or reasonably likely to result in material harm, embarrassment, humiliation to the Company or cause or contribute to it being held in disrepute by any person.

4.  That I agree that for a period of two (2) years from the date of the termination of my employment with the Company, I will not participate or have any interest, directly or indirectly, in any business which involves an area of technology or business in which I worked for the Company during the last five (5) years of my employment at the Company and in which I was exposed to any Confidential Information (as

4

Confidential- Subject to Protective Order

defined in paragraph 2 immediately above) of the Company. I further agree that for such period, I will not interfere with, disrupt or attempt to disrupt the relationship, contractual or otherwise, with respect to the business carried on by the Company with any other party. The restriction of this provision shall apply to any area of the United States, or any other country of the world in which the Company is conducting such business or may be reasonably expected to engage in any such business within that two (2) year period. Such restriction shall apply to me, as owner, partner, officer, employee, consultant or advisor. For purposes of this provision, ownership of not more than one percent of the common or preferred stock of any publicly held company whose stock is listed on any recognized stock exchange or traded over the counter shall be disregarded.

5.  That the payments and other benefits (including subsidized premiums) which the Company has offered to me, as stated above, are payments and benefits to which I would not be entitled but for this Release.

6.  That I realize that there are various federal, state and local laws that govern my employment relationship with the Company and/or prohibit employment discrimination on the basis of age, color, race, gender/sex, national origin, mental or physical disability, religious affiliation or veteran status, as well as other forms of discrimination (including, in some jurisdictions, sexual preference/orientation, height, weight, and marital status), and that these laws are enforced through the courts and agencies such as the Equal Employment Opportunity Commission, Department of Labor and State Human Rights Agencies.

7.  That I am aware that, by signing this Release, I am giving up my right to sue any Releasee not only on the basis of the discrimination laws mentioned above, but also for any other claims which I may have or believe that I may have against any Releasee in connection with my employment or termination of my employment, based upon any event which occurred before I sign this Release.   I am further aware that the understanding regarding my right to sue stated in this paragraph does not apply to my right to challenge the knowing and voluntary nature of this Release as respects claims under the ADEA or the Older Worker Benefit Protection Act (OWBPA), although I understand that I have released my right to recovery under those statutes by signing this Release. Should I break this representation in this paragraph, I agree to pay all of the Company's costs and expenses (including reasonable attorneys' fees) related to the defense of any claims except for those under the ADEA and the OWBPA. I understand, however, that if I pursue a claim against the Company under the ADEA and/or the OWBPA to challenge the validity of this Release and prevail on the merits of an ADEA claim, a court has the discretion to determine whether the Company is entitled to restitution, recoupment, or set off (herinafter a "reduction") against a monetary award obtained by me in the court proceeding. A reduction can never exceed the amount I recover, or the consideration I received for signing this release, whichever is less. I also recognize that the Company may be entitled to recover costs and attorneys' fees incurred by the Company as specifically authorized under applicable law.

5

Confidential- Subject to Protective Order

8. That I am aware that I may change my mind and revoke this Release at any time during the seven days after I sign this Release, provided I do so in writing, in which case none of the provisions of this Release will have any effect. I acknowledge I will not be entitled to receive any payment or benefits set forth in this Release until the seven day period has expired without revocation, at which time this Release shall become final and binding.

9. That I have not filed any complaints with a court or administrative agency against any Releasee prior to the date of signing of this Release, I have recorded and received all overtime compensation due through my last pay period prior to my termination date, I have reported to the Company any and all work-related injuries incurred during employment; and I acknowledge that the Company properly provided any leave of absence because of my or a family member's health condition and I have not been subjected to any improper treatment, conduct or actions due to a request for or taking such leave.

10. That I have not assigned or attempted to assign or give to anyone else any claim I have or believe that I may have against any Releasee.

11. That I acknowledge and agree that if, after the termination of my employment with the Company, I become reemployed by the Company or any of its affiliates, the Company may require me to repay, as a condition of reemployment, that portion of the Severance Payment received that exceeds the amount of base salary which I would have received had I remained in the Company's employment. The rate used in determining the amount of repayment will be the same rate that was used in calculating the Severance Payment. For purposes of this provision, "affiliates" means any company in which the Company has an ownership interest of fifty percent or greater.

This Release does not affect my rights and obligations under the Company's standard Employee Agreement or any other secrecy, confidentiality, non-competition, or invention agreements that I have signed with the Company or under the various Company employee compensation or benefit plans and programs (except as specifically modified herein), which agreements, plans, and programs are governed by their terms. Apart from the benefits recited in this Release, I waive any rights I have to any benefits under any severance plan offered or adopted by the Company, including but not limited to the U.S. Severance Plan.

I agree not to disclose the terms of this Release to any person without the written consent of the Company, except to my legal, financial and tax advisors, and members of my immediate family, and any prospective or subsequent employer as respects any of my obligations under numbered paragraphs 2 to 4 immediately above who may need to be informed of these terms of this Release.

6

Confidential- Subject to Protective Order

DOW0026263

The construction, interpretation and performance of this Release shall be governed by the laws of the state in which I am working on the date of termination of my employment with the Company.

If any provision of this Release is determined to be invalid or unenforceable, the Company and I agree that such determination shall not affect the other provisions, and that all other provisions shall be enforced as if the invalid provision were not a part of this Release. Should any provision be held unenforceable for any reason, then such provision shall be enforced to the maximum extent permitted by law.

I further acknowledge that this Release contains the entire agreement between myself and the Company and cannot be modified except in writing if signed by me and the Company. Except as otherwise specifically provided for in this Release, this Release supercedes and replaces all prior agreements and understandings, written or oral, and any other employment or severance agreements or arrangements that may have been made by and between me and the Company. I represent and acknowledge that in executing this Release I have not relied upon any representation or statement not set forth herein made by any of the Releasees or any of the Releasee's agents, representatives or attorneys with regards to the subject matter of this Release, except for information contained in official plan documents.

**I understand that I have the right to consult with an attorney and the Company is advising me to consult with an attorney before signing this Release (and to the extent I desire, I have availed myself of that right), that I have at least 45 days to consider the Release before signing it, and that I may revoke the Release within seven calendar days after signing it.** For revocation to be effective, written notice must be received by the Company no later than the close of business on the seventh day after I sign this Release. I understand that this revocation can be made by delivering the written notice of revocation to Workforce Planning, The Dow Chemical Company, EDC, Midland, Michigan 48674, by First Class mail, by facsimile transmission (Fax No. 989-636-3674), or by hand delivery. I also understand that this Release shall not become effective or enforceable until the seven day revocation period has expired. If I sign the Release before the expiration of the 45 day period, I acknowledge that I have done so of my own choice and without coercion by the Company.

Confidential- Subject to Protective Order                    DOW0026264

By signing this release, I state that: I have read it; I understand it and know that I am giving up important rights; I agree with everything in it; I am aware of my right to consult an attorney before signing it; and I have signed it knowingly and voluntarily; I am aware I may revoke at any time within seven days after the date of signing indicated below by giving written notice of revocation to Workforce Planning.

9-22-2010
_____
Date of Signing

## Participant 47

Employee Signature

## Participant 47

Employee Name Printed

ACCEPTED:
THE DOW CHEMICAL COMPANY

By: _____
Signature

**Keri Husen**
Authorized Representative of the Company
_____
Print Name and Title

Date: 9-28-10 _____

8

Confidential- Subject to Protective Order

# TERMINATION GENERAL RELEASE



RECEIVED
MAY 1 8

Name: Participant 10                                    Employee No.: ███████

This Release sets forth the terms under which my employer will provide to me various special transition assistance benefits in connection with the termination of my employment[1] with The Dow Chemical Company.

I acknowledge that the termination of my employment was or is effective on June 30, 2012.

I further acknowledge that eligibility to receive the various special transition assistance benefits is conditioned upon my signing and not revoking this Release.

In consideration for the transition assistance benefits described below, I release and discharge The Dow Chemical Company and any of its affiliates or subsidiary companies (collectively the "Company"), and its officers, directors, employees, shareholders, successors and assigns ("Releasees") from all claims (including claims for attorney's fees and costs), demands and causes of action, known or unknown, which I may have or claim to have against any Releasee, arising out of, or in any way relating to, my employment or termination of my employment with the Company, whether based on any act or omission to act. This includes, but is not limited to, claims of negligence, intentional misconduct, breach of contract (whether written or oral), violation of the Employee Retirement Income Security Act of 1974 (ERISA) (as amended), violation of the **Age Discrimination in Employment Act of 1967 (ADEA) (as amended)**, violation of the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) (as amended), violation of the Worker Adjustment and Retraining Act (WARN) (as amended), claims arising under any federal, state or local laws, executive orders, regulations, directives, codes, or common law prohibiting employment discrimination based on age, color, race, gender/sex, sexual preference/orientation, height, weight, marital status, national origin, mental or physical disability, religious affiliation, veteran status or any other forms of discrimination, and claims based on any other laws, executive orders, regulations, directives, codes or common law affecting relations between employers and employees, including claims growing out of the Company's termination of its employees.

This Release does not affect any rights that I may have to file for a benefit under any state workers' compensation or unemployment compensation statute or for vested rights under ERISA-covered employee benefit plans as applicable to me on the date I sign this Release, that may arise under the ADEA, after I sign this Release, or that cannot be released by private agreement. I understand that nothing in this Release prevents me from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the EEOC, the NLRB, or any other federal, state, or local agency charged with the enforcement of employment laws, although by signing this release I am waiving and releasing any rights I may have to individual relief based on claims asserted in such charge or complaint or brought by any

---

[1] As used in this Termination General Release, "termination of employment" has the same meaning as Separation of Service defined in the summary plan description for the U.S. Severance Plan ("USSP").

USSP Release (Template revised 7.28.2011)

Confidential- Subject to Protective Order                                    DOW0026266

other person on my behalf or which include me in any class. This paragraph is not intended to limit me from instituting legal action for the purpose of enforcing this Release.

The transition assistance benefits which I will receive if I sign and do not revoke this Release in a timely manner consist of the following:

1. U. S. Severance Plan:
    a. I am eligible to receive a lump sum Severance Payment of $202,949 (less normal tax withholdings for income taxes, FICA, and any outstanding amounts I owe to the Company, including but not limited to any outstanding balance owed on Shared Appreciation Mortgage loans or other housing or relocation loans), after I leave the payroll.

    I understand that payment will not be made to me sooner than my termination date or sooner than the expiration of seven days following my signing this Release without revoking it in writing.

    b. I am eligible to receive reimbursement, up to a maximum of $300 (subject to withholding of applicable taxes), for the cost of financial counseling services provided I utilize an approved professional financial counseling service and submit a satisfactory receipt within six months following the effective date of termination of my employment by the Company.

    c. At my option, I will be provided with professional outplacement counseling services with a provider and program to be selected by the Plan Administrator based on my job level at the time of my separation from employment. The utilization of the outplacement counseling service must begin within three months of my termination date and will continue for a maximum of two to nine months, depending upon the terms of the program in which I am eligible to participate. The objective of outplacement counseling services is to assist me in pursuing a career outside the Company. I acknowledge that neither the outplacement counseling service provider nor the Company can guarantee subsequent employment. I further acknowledge that if I do not choose to use the outplacement counseling services, there is no alternative or substitute benefit.

2. Medical Coverage (does not include dental coverage)[2]:
    a. If on the effective date of my separation from employment I am eligible for coverage under The Dow Chemical Company Retiree Medical Care Program, the Union Carbide Corporation Retiree Medical Care Program, or the Rohm and Haas Company Health and Welfare Plan Retiree Medical Care Program[3], I can elect to

---

[2] The medical coverages described in this bullet point do not apply to dental coverage.
[3] Generally, a former Dow or UCC Employee is eligible for coverage under one of these retiree medical programs if he or she was hired prior to January 1, 2008, is at least age 50 with 10 or more years of credited service under the DEPP component ("DEPP") of the Dow Employees' Pension Plan or the UCEPP component ("UCEPP") of the Union Carbide Employees' Pension Plan (whichever is applicable). A former Dow or UCC Employee may also be eligible if: 1) he or she was hired prior to January 1, 2008 by an employer that was authorized as a participating employer of the retiree medical program prior to January 1, 2008, 2) he or she has 10 or more years of credited

2



Confidential- Subject to Protective Order

DOW0026267

receive coverage under the applicable Dow, UCC, or Rohm and Haas retiree medical care program by submitting the retiree medical enrollment form provided by Dow within 31 days of my last day on the payroll, or 31 days from the date a retirement kit is sent to me, whichever is later. If I complete the retiree medical enrollment form and submit it within the 31 day period, my premium rate for retiree medical coverage under the applicable retiree medical plan for 18 months following the effective date of my separation from employment will be the same premiums active employees of Dow pay (depending on my full-time or "Less-Than-Full-Time" status). Eligibility for the coverage at the active employee premium rate is subject to my continuous premium payments during the entire 18-month period. If I am a former Dow or UCC Employee, after 18 months, my cost for coverage will increase, and will be subject to the Retiree Medical Budget and the Retiree Medical Support Schedule depending on my years of Service. If I am a former Rohm and Haas Employee, after 18 months, my cost for coverage will increase, and will be the same premium applicable to Rohm and Haas retirees. All rates are subject to change. All terms and conditions of the applicable retiree medical plan shall apply. **I understand that in general, eligibility for retiree medical ends when I am eligible for Medicare.** Some exceptions may apply[4]. For details, see the plan document for The Dow Chemical Company Retiree Medical Care Program, Union Carbide Corporation Retiree Medical Care Program, or Rohm and Haas Company Health and Welfare Plan, whichever is applicable. The Dow Chemical Company reserves the right to amend, modify, or terminate The Dow Chemical Company Retiree Medical Care Program, The Dow Chemical Company Insured Health Program, and the Rohm and Haas Company Health and Welfare Plan at any time. Union Carbide Corporation reserves the right to amend, modify or terminate the Union Carbide Corporation Retiree Medical Care Program and the Union Carbide Corporation Insured Health Program at any time.

---

service under DEPP or UCEPP (whichever is applicable) with at least 60 points (age plus service), 3) he or she is a participant of a severance plan authorized by Dow or UCC, and 4) he or she has signed a release acceptable to the Participating Employer. Generally, a former Rohm and Haas Employee is eligible for coverage under the Rohm and Haas Company Health and Welfare Plan Retiree Medical Care Program if he or she was hired prior to January 1, 2003, and on the date of termination of employment is either at least age 55 with 25 or more adjusted years of service under the Rohm and Haas Company Retirement Plan or at least age 60 with 15 or more adjusted years of service under the Rohm and Haas Company Retirement Plan. In addition, a former Rohm and Haas Employee is eligible for coverage under the Rohm and Haas Company Health and Welfare Plan Retiree Medical Care Program if: 1) he or she was hired prior to January 1, 2003, 2) on the date of termination of employment he or she is at least age 50 with 65 or more points (age plus service), 3) he or she is a participant of a severance plan authorized by Dow, and 4) he or she has signed a release acceptable to the Participating Employer. See the applicable retiree medical summary plan description for eligibility details.

[4] Exceptions apply to the following:
   a.   former Employees of The Dow Chemical Company who were hired prior to January 1, 1993,
   b.   former Employees of ANGUS Chemical Company who were hired prior to January 1, 1999,
   c.   former Employees of Union Carbide Corporation who were hired prior to February 6, 2001,
   d.   former Employees of Dow AgroSciences who were hired prior to January 1, 2004,
   e.   former Employees of Rohm and Haas who were hired prior to January 1, 2003.
For more information, see the Plan Document for The Dow Chemical Company Retiree Medical Care Program, the Union Carbide Corporation Retiree Medical Care Program, or the Rohm and Haas Company Health and Welfare Plan, whichever is applicable.

3

Confidential- Subject to Protective Order

DOW0026268

b.  If on the effective date of my separation from employment I am not eligible for coverage under The Dow Chemical Company Retiree Medical Care Program, the Union Carbide Corporation Retiree Medical Care Program, or Rohm and Haas Company Health and Welfare Plan Retiree Medical Care Program, I can elect to extend medical care coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program (depending on the plan I was enrolled in prior to termination of employment) for up to three (3) years from the effective date of my separation from employment or until I am eligible for coverage under another group plan (or a Dow plan through a dual Dow career spouse), whichever occurs first.  If I elect extended coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program prior to the deadline specified in the notice I will receive from the COBRA administrator, my premium will be the same premium active employees of Dow pay (depending on my full-time or "Less-Than-Full-Time" status) during the first 18 months of extended coverage.  The premium will be 102% of the full, unsubsidized cost of coverage for the remaining 18 months of extended coverage.  Eligibility for the extended coverage is subject to continuous premium payments during the entire 36-month period.  These rates are subject to change.  The Company reserves the right to amend, modify, or terminate The Dow Chemical Company Medical Care Program and The Dow Chemical Company Insured Health Program at any time.

I have indicated my election decision on a separate Extended Coverage Enrollment Form.

I make the following representations to the Company, each of which is an important consideration for the Company's willingness to enter into this Release with me:

1.  That I have returned or will return to the Company on or before my termination date, all Company property, including, without limitation, books, records and documents, files, memoranda, credit cards, Company passes, keys, computer access codes, disk and instructional manuals, tools, computers, and other physical property, which was or may be in my possession.

2.  That I agree that I will not disclose to anyone or use, directly or indirectly, after termination of my employment with the Company, any Confidential Information of the Company, except with the written consent of the Company.  Confidential Information is defined herein to mean trade secrets, know-how, and other information, not generally known, relating to the Company's business which was disclosed to me or with which I became familiar during my term of employment with the Company.  Confidential Information includes information relating to the Company's business practices and prospective business interests, including, but not limited to, customer lists, forecasts, business and strategic plans, financial and sales information, products, processes, equipment, manufacturing operations, marketing programs, research, product development, engineering, computer systems and

4

Confidential- Subject to Protective Order

DOW0026269

software, and personnel records. This obligation shall continue until such Confidential Information becomes generally known to the public without participation on my part.

3.      That I will not at any time or in any manner, and whether directly or indirectly, criticize or disparage the Company or otherwise provide information, issue statements, or take any other action intended or reasonably likely to result in material harm, embarrassment, humiliation to the Company or cause or contribute to it being held in disrepute by any person.

4.      That I agree that for a period of two (2) years from the date of the termination of my employment with the Company, I will not participate or have any interest, directly or indirectly, in any business which involves an area of technology or business in which I worked for the Company during the last five (5) years of my employment at the Company and in which I was exposed to any Confidential Information (as defined in paragraph 2 immediately above) of the Company. I further agree that for such period, I will not interfere with, disrupt or attempt to disrupt the relationship, contractual or otherwise, with respect to the business carried on by the Company with any other party. The restriction of this provision shall apply to any area of the United States, or any other country of the world in which the Company is conducting such business or may be reasonably expected to engage in any such business within that two (2) year period. Such restriction shall apply to me, as owner, partner, officer, employee, consultant or advisor. For purposes of this provision, ownership of not more than one percent of the common or preferred stock of any publicly held company whose stock is listed on any recognized stock exchange or traded over the counter shall be disregarded.

5.      That the payments and other benefits (including subsidized premiums) which the Company has offered to me, as stated above, are payments and benefits to which I would not be entitled but for this Release.

6.      That I realize that there are various federal, state and local laws that govern my employment relationship with the Company and/or prohibit employment discrimination on the basis of age, color, race, gender/sex, national origin, mental or physical disability, religious affiliation or veteran status, as well as other forms of discrimination (including, in some jurisdictions, sexual preference/orientation, height, weight, and marital status), and that these laws are enforced through the courts and agencies such as the Equal Employment Opportunity Commission, Department of Labor and State Human Rights Agencies.

7.      That I am aware that, by signing this Release, I am giving up my right to sue any Releasee not only on the basis of the discrimination laws mentioned above, but also for any other claims which I may have or believe that I may have against any Releasee in connection with my employment or termination of my employment, based upon any event which occurred before I sign this Release. I am further aware that the understanding regarding my right to sue stated in this paragraph does

5

not apply to my right to challenge the knowing and voluntary nature of this Release as respects claims under the ADEA or the Older Worker Benefit Protection Act (OWBPA), although I understand that I have released my right to recovery under those statutes by signing this Release. Should I break this representation in this paragraph, I agree to pay all of the Company's costs and expenses (including reasonable attorneys' fees) related to the defense of any claims except for those under the ADEA and the OWBPA. I understand, however, that if I pursue a claim against the Company under the ADEA and/or the OWBPA to challenge the validity of this Release and prevail on the merits of an ADEA claim, a court has the discretion to determine whether the Company is entitled to restitution, recoupment, or set off (herinafter a "reduction") against a monetary award obtained by me in the court proceeding. A reduction can never exceed the amount I recover, or the consideration I received for signing this release, whichever is less. I also recognize that the Company may be entitled to recover costs and attorneys' fees incurred by the Company as specifically authorized under applicable law.

8.   That I am aware that I may change my mind and revoke this Release at any time during the seven days after I sign this Release, provided I do so in writing, in which case none of the provisions of this Release will have any effect. I acknowledge I will not be entitled to receive any payment or benefits set forth in this Release until the seven day period has expired without revocation, at which time this Release shall become final and binding.

9.   That I have not filed any complaints with a court or administrative agency against any Releasee prior to the date of signing of this Release, I have recorded and received all overtime compensation due through my last pay period prior to my termination date, I have reported to the Company any and all work-related injuries incurred during employment; and I acknowledge that the Company properly provided any leave of absence because of my or a family member's health condition and I have not been subjected to any improper treatment, conduct or actions due to a request for or taking such leave.

10.  That I have not assigned or attempted to assign or give to anyone else any claim I have or believe that I may have against any Releasee.

11.  That I acknowledge and agree that if, after the termination of my employment with the Company, I become reemployed by the Company or any of its affiliates, the Company may require me to repay, as a condition of reemployment, that portion of the Severance Payment received that exceeds the amount of base salary which I would have received had I remained in the Company's employment. The rate used in determining the amount of repayment will be the same rate that was used in calculating the Severance Payment. For purposes of this provision, "affiliates" means any company in which the Company has an ownership interest of fifty percent or greater.

6

Confidential- Subject to Protective Order

DOW0026271

12. That I acknowledge under the penalties for perjury, that: (a) I have received from the Company for consideration for a period of at least 45 days an Older Worker Benefit Protection Act age and job title/job class list in a format that allows me to make a knowing, voluntary, and fully informed choice about whether to accept or reject the offer of special transition assistance benefits under this Release; and (b) I have been informed that I may, at any time during my applicable consideration and revocation period, both (i) request and obtain an updated version of this list and (ii) express any concerns I may have about the format or content of this list, and that I have availed myself of those opportunities to the extent I felt necessary to make a voluntary, knowing, and fully informed decision.

This Release does not affect my rights and obligations under the Company's standard Employee Agreement or any other secrecy, confidentiality, non-competition, or invention agreements that I have signed with the Company or under the various Company employee compensation or benefit plans and programs (except as specifically modified herein), which agreements, plans, and programs are governed by their terms. Apart from the benefits recited in this Release, I waive any rights I have to any benefits under any severance plan offered or adopted by the Company, including but not limited to the U.S. Severance Plan.

I agree not to disclose the terms of this Release to any person without the written consent of the Company, except to my legal, financial and tax advisors, and members of my immediate family, and any prospective or subsequent employer as respects any of my obligations under numbered paragraphs 2 to 4 immediately above who may need to be informed of these terms of this Release.

The construction, interpretation and performance of this Release shall be governed by the laws of the state in which I am working on the date of termination of my employment with the Company.

If any provision of this Release is determined to be invalid or unenforceable, the Company and I agree that such determination shall not affect the other provisions, and that all other provisions shall be enforced as if the invalid provision were not a part of this Release. Should any provision be held unenforceable for any reason, then such provision shall be enforced to the maximum extent permitted by law.

I further acknowledge that this Release contains the entire agreement between myself and the Company and cannot be modified except in writing if signed by me and the Company. Except as otherwise specifically provided for in this Release, this Release supercedes and replaces all prior agreements and understandings, written or oral, and any other employment or severance agreements or arrangements that may have been made by and between me and the Company. I represent and acknowledge that in executing this Release I have not relied upon any representation or statement not set forth herein made by any of the Releasees or any of the Releasee's agents, representatives or attorneys with regards to the subject matter of this Release, except for information contained in official plan documents.

7

DOW0026272

I understand that I have the right to consult with an attorney and the Company is advising me to consult with an attorney before signing this Release (and to the extent I desire, I have availed myself of that right), that I have at least 45 days to consider the Release before signing it, and that I may revoke the Release within seven calendar days after signing it. For revocation to be effective, written notice must be received by the Company no later than the close of business on the seventh day after I sign this Release. I understand that this revocation can be made by delivering the written notice of revocation to Workforce Planning, The Dow Chemical Company, EDC, Midland, Michigan 48674, by First Class mail, by facsimile transmission (Fax No. 989-636-3674), or by hand delivery. I also understand that this Release shall not become effective or enforceable until the seven day revocation period has expired. If I sign the Release before the expiration of the 45 day period, I acknowledge that I have done so of my own choice and without coercion by the Company.

By signing this release, I state that: I have read it; I understand it and know that I am giving up important rights; I agree with everything in it; I am aware of my right to consult an attorney before signing it; and I have signed it knowingly and voluntarily; I am aware I may revoke at any time within seven days after the date of signing indicated below by giving written notice of revocation to Workforce Planning.

## Participant 10

_10 May 2012_
Date of Signing

Employee Signature

## Participant 10

Employee Name Printed

ACCEPTED:
THE DOW CHEMICAL COMPANY

By: _____
Signature

**Keri Husen**
Authorized Representative of the Company
Print Name and Title

Date: _5-18-12_

8

DOW0026273

**TERMINATION GENERAL RELEASE**

RECEIVED

OCT - 7 2011

Name: Robert T Johnston                                    Employee No.: 

This Release sets forth the terms under which my employer will provide to me various special transition assistance benefits in connection with the termination of my employment[1] with The Dow Chemical Company.

I acknowledge that the termination of my employment was or is effective on September 30, 2011.

I further acknowledge that eligibility to receive the various special transition assistance benefits is conditioned upon my signing and not revoking this Release.

In consideration for the transition assistance benefits described below, I release and discharge The Dow Chemical Company and any of its affiliates or subsidiary companies (collectively the "Company"), and its officers, directors, employees, shareholders, successors and assigns ("Releasees") from all claims (including claims for attorney's fees and costs), demands and causes of action, known or unknown, which I may have or claim to have against any Releasee, arising out of, or in any way relating to, my employment or termination of my employment with the Company, whether based on any act or omission to act. This includes, but is not limited to, claims of negligence, intentional misconduct, breach of contract (whether written or oral), violation of the Employee Retirement Income Security Act of 1974 (ERISA) (as amended), violation of the **Age Discrimination in Employment Act of 1967 (ADEA) (as amended)**, violation of the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) (as amended), violation of the Worker Adjustment and Retraining Act (WARN) (as amended), claims arising under any federal, state or local laws, executive orders, regulations, directives, codes, or common law prohibiting employment discrimination based on age, color, race, gender/sex, sexual preference/orientation, height, weight, marital status, national origin, mental or physical disability, religious affiliation, veteran status or any other forms of discrimination, and claims based on any other laws, executive orders, regulations, directives, codes or common law affecting relations between employers and employees, including claims growing out of the Company's termination of its employees.

This Release does not affect any rights that I may have to file for a benefit under any state workers' compensation or unemployment compensation statute or for vested rights under ERISA-covered employee benefit plans as applicable to me on the date I sign this Release, that may arise under the ADEA, after I sign this Release, or that cannot be released by private agreement. I understand that nothing in this Release prevents me from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the EEOC, the NLRB, or any other federal, state, or local agency charged with the enforcement of employment laws, although by signing this release I am waiving and releasing any rights I may have to individual relief based on claims asserted in such charge or complaint or brought by any

---

[1] As used in this Termination General Release, "termination of employment" has the same meaning as Separation of Service defined in the summary plan description for the U.S. Severance Plan ("USSP").

USSP Release (Template revised 7.28.2011)

Confidential- Subject to Protective Order

DOW0026274

other person on my behalf or which include me in any class. This paragraph is not intended to limit me from instituting legal action for the purpose of enforcing this Release.

The transition assistance benefits which I will receive if I sign and do not revoke this Release in a timely manner consist of the following:

1. U. S. Severance Plan:
   I am eligible to receive a lump sum Severance Payment of $165,114 (less normal tax withholdings for income taxes, FICA, and any outstanding amounts I owe to the Company, including but not limited to any outstanding balance owed on Shared Appreciation Mortgage loans or other housing or relocation loans), after I leave the payroll.

   I understand that payment will not be made to me sooner than my termination date or sooner than the expiration of seven days following my signing this Release without revoking it in writing.

   b. I am eligible to receive reimbursement, up to a maximum of $300 (subject to withholding of applicable taxes), for the cost of financial counseling services provided I utilize an approved professional financial counseling service and submit a satisfactory receipt within six months following the effective date of termination of my employment by the Company.

   c. At my option, I will be provided with professional outplacement counseling services with a provider and program to be selected by the Plan Administrator based on my job level at the time of my separation from employment. The utilization of the outplacement counseling service must begin within three months of my termination date and will continue for a maximum of two to nine months, depending upon the terms of the program in which I am eligible to participate. The objective of outplacement counseling services is to assist me in pursuing a career outside the Company. I acknowledge that neither the outplacement counseling service provider nor the Company can guarantee subsequent employment. I further acknowledge that if I do not choose to use the outplacement counseling services, there is no alternative or substitute benefit.

2. Medical Coverage (does not include dental coverage)[2]:
   a. If on the effective date of my separation from employment I am eligible for coverage under The Dow Chemical Company Retiree Medical Care Program, the Union Carbide Corporation Retiree Medical Care Program, or the Rohm and Haas Company Health and Welfare Plan Retiree Medical Care Program[3], I can elect to



Schedule Date  10-10-11
Payroll Date   10-20-11
Input By
Audited By

---

[2] The medical coverages described in this bullet point do not apply to dental coverage.

[3] Generally, a former Dow or UCC Employee is eligible for coverage under one of these retiree medical programs if he or she was hired prior to January 1, 2008, is at least age 50 with 10 or more years of credited service under the DEPP component ("DEPP") of the Dow Employees' Pension Plan or the UCEPP component ("UCEPP") of the Union Carbide Employees' Pension Plan (whichever is applicable). A former Dow or UCC Employee may also be eligible if: 1) he or she was hired prior to January 1, 2008 by an employer that was authorized as a participating

Confidential- Subject to Protective Order

DOW0026275

receive coverage under the applicable Dow, UCC, or Rohm and Haas retiree medical care program by submitting the retiree medical enrollment form provided by Dow within 31 days of my last day on the payroll, or 31 days from the date a retirement kit is sent to me, whichever is later.  If I complete the retiree medical enrollment form and submit it within the 31 day period, my premium rate for retiree medical coverage under the applicable retiree medical plan for 18 months following the effective date of my separation from employment will be the same premiums active employees of Dow pay (depending on my full-time or "Less-Than-Full-Time" status).  Eligibility for the coverage at the active employee premium rate is subject to my continuous premium payments during the entire 18-month period.  If I am a former Dow or UCC Employee, after 18 months, my cost for coverage will increase, and will be subject to the Retiree Medical Budget and the Retiree Medical Support Schedule depending on my years of Service.  If I am a former Rohm and Haas Employee, after 18 months, my cost for coverage will increase, and will be the same premium applicable to Rohm and Haas retirees.  All rates are subject to change.  All terms and conditions of the applicable retiree medical plan shall apply.  **I understand that in general, eligibility for retiree medical ends when I am eligible for Medicare.**  Some exceptions may apply[4].  For details, see the plan document for The Dow Chemical Company Retiree Medical Care Program,  Union Carbide Corporation Retiree Medical Care Program, or Rohm and Haas Company Health and Welfare Plan, whichever is applicable.  The Dow Chemical Company reserves the right to amend, modify, or terminate The Dow Chemical Company Retiree Medical Care Program, The Dow Chemical Company Insured Health Program, and the Rohm and Haas Company Health and Welfare Plan at any time.  Union Carbide Corporation reserves the right to amend, modify or terminate the Union Carbide Corporation Retiree

---

employer of the retiree medical program prior to January 1, 2008, 2)  he or she has 10 or more years of credited service under DEPP or UCEPP (whichever is applicable) with at least 60 points (age plus service), 3) he or she is a participant of a severance plan authorized by Dow or UCC, and 4) he or she has signed a release acceptable to the Participating Employer.  Generally, a former Rohm and Haas Employee is eligible for coverage under the Rohm and Haas Company Health and Welfare Plan Retiree Medical Care Program if he or she was hired prior to January 1, 2003, and on the date of termination of employment is either at least age 55 with 25 or more adjusted years of service under the Rohm and Haas Company Retirement Plan or at least age 60 with 15 or more adjusted years of service under the Rohm and Haas Company Retirement Plan.  In addition, a former Rohm and Haas Employee is eligible for coverage under the Rohm and Haas Company Health and Welfare Plan Retiree Medical Care Program if: 1) he or she was hired prior to January 1, 2003, 2) on the date of termination of employment he or she is at least age 50 with 65 or more points (age plus service), 3) he or she is a participant of a severance plan authorized by Dow, and 4) he or she has signed a release acceptable to the Participating Employer.  See the applicable retiree medical summary plan description for eligibility details.
[4] Exceptions apply to the following:

    a.   former Employees of The Dow Chemical Company who were hired prior to January 1, 1993,
    b.   former Employees of ANGUS Chemical Company who were hired prior to January 1, 1999,
    c.   former Employees of Union Carbide Corporation  who were hired prior to February 6, 2001,
    d.   former Employees of Dow AgroSciences who were hired prior to January 1, 2004,
    e.   former Employees of Rohm and Haas who were hired prior to January 1, 2003.

For more information, see the Plan Document for The Dow Chemical Company Retiree Medical Care Program, the Union Carbide Corporation Retiree Medical Care Program, or the Rohm and Haas Company Health and Welfare Plan, whichever is applicable.

Confidential- Subject to Protective Order

DOW0026276

Medical Care Program and the Union Carbide Corporation Insured Health Program at any time.

b.  If on the effective date of my separation from employment I am not eligible for coverage under The Dow Chemical Company Retiree Medical Care Program, the Union Carbide Corporation Retiree Medical Care Program, or Rohm and Haas Company Health and Welfare Plan Retiree Medical Care Program, I can elect to extend medical care coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program (depending on the plan I was enrolled in prior to termination of employment) for up to three (3) years from the effective date of my separation from employment or until I am eligible for coverage under another group plan (or a Dow plan through a dual Dow career spouse), whichever occurs first.  If I elect extended coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program prior to the deadline specified in the notice I will receive from the COBRA administrator, my premium will be the same premium active employees of Dow pay (depending on my full-time or "Less-Than-Full-Time" status) during the first 18 months of extended coverage.  The premium will be 102% of the full, unsubsidized cost of coverage for the remaining 18 months of extended coverage.  Eligibility for the extended coverage is subject to continuous premium payments during the entire 36-month period.  These rates are subject to change.  The Company reserves the right to amend, modify, or terminate The Dow Chemical Company Medical Care Program and The Dow Chemical Company Insured Health Program at any time.

I have indicated my election decision on a separate Extended Coverage Enrollment Form.

I make the following representations to the Company, each of which is an important consideration for the Company's willingness to enter into this Release with me:

1.  That I have returned or will return to the Company on or before my termination date, all Company property, including, without limitation, books, records and documents, files, memoranda, credit cards, Company passes, keys, computer access codes, disk and instructional manuals, tools, computers, and other physical property, which was or may be in my possession.

2.  That I agree that I will not disclose to anyone or use, directly or indirectly, after termination of my employment with the Company, any Confidential Information of the Company, except with the written consent of the Company.  Confidential Information is defined herein to mean trade secrets, know-how, and other information, not generally known, relating to the Company's business which was disclosed to me or with which I became familiar during my term of employment with the Company.  Confidential Information includes information relating to the Company's business practices and prospective business interests, including, but not limited to, customer lists, forecasts, business and strategic plans, financial and sales

4

Confidential- Subject to Protective Order

DOW0026277

information, products, processes, equipment, manufacturing operations, marketing programs, research, product development, engineering, computer systems and software, and personnel records. This obligation shall continue until such Confidential Information becomes generally known to the public without participation on my part.

3. That I will not at any time or in any manner, and whether directly or indirectly, criticize or disparage the Company or otherwise provide information, issue statements, or take any other action intended or reasonably likely to result in material harm, embarrassment, humiliation to the Company or cause or contribute to it being held in disrepute by any person.

4. That I agree that for a period of two (2) years from the date of the termination of my employment with the Company, I will not participate or have any interest, directly or indirectly, in any business which involves an area of technology or business in which I worked for the Company during the last five (5) years of my employment at the Company and in which I was exposed to any Confidential Information (as defined in paragraph 2 immediately above) of the Company. I further agree that for such period, I will not interfere with, disrupt or attempt to disrupt the relationship, contractual or otherwise, with respect to the business carried on by the Company with any other party. The restriction of this provision shall apply to any area of the United States, or any other country of the world in which the Company is conducting such business or may be reasonably expected to engage in any such business within that two (2) year period. Such restriction shall apply to me, as owner, partner, officer, employee, consultant or advisor. For purposes of this provision, ownership of not more than one percent of the common or preferred stock of any publicly held company whose stock is listed on any recognized stock exchange or traded over the counter shall be disregarded.

5. That the payments and other benefits (including subsidized premiums) which the Company has offered to me, as stated above, are payments and benefits to which I would not be entitled but for this Release.

6. That I realize that there are various federal, state and local laws that govern my employment relationship with the Company and/or prohibit employment discrimination on the basis of age, color, race, gender/sex, national origin, mental or physical disability, religious affiliation or veteran status, as well as other forms of discrimination (including, in some jurisdictions, sexual preference/orientation, height, weight, and marital status), and that these laws are enforced through the courts and agencies such as the Equal Employment Opportunity Commission, Department of Labor and State Human Rights Agencies.

7. That I am aware that, by signing this Release, I am giving up my right to sue any Releasee not only on the basis of the discrimination laws mentioned above, but also for any other claims which I may have or believe that I may have against any Releasee in connection with my employment or termination of my employment,

5

Confidential- Subject to Protective Order

DOW0026278

based upon any event which occurred before I sign this Release.   I am further aware that the understanding regarding my right to sue stated in this paragraph does not apply to my right to challenge the knowing and voluntary nature of this Release as respects claims under the ADEA or the Older Worker Benefit Protection Act (OWBPA), although I understand that I have released my right to recovery under those statutes by signing this Release. Should I break this representation in this paragraph, I agree to pay all of the Company's costs and expenses (including reasonable attorneys' fees) related to the defense of any claims except for those under the ADEA and the OWBPA. I understand, however, that if I pursue a claim against the Company under the ADEA and/or the OWBPA to challenge the validity of this Release and prevail on the merits of an ADEA claim, a court has the discretion to determine whether the Company is entitled to restitution, recoupment, or set off (herinafter a "reduction") against a monetary award obtained by me in the court proceeding. A reduction can never exceed the amount I recover, or the consideration I received for signing this release, whichever is less. I also recognize that the Company may be entitled to recover costs and attorneys' fees incurred by the Company as specifically authorized under applicable law.

8.     That I am aware that I may change my mind and revoke this Release at any time during the seven days after I sign this Release, provided I do so in writing, in which case none of the provisions of this Release will have any effect. I acknowledge I will not be entitled to receive any payment or benefits set forth in this Release until the seven day period has expired without revocation, at which time this Release shall become final and binding.

9.     That I have not filed any complaints with a court or administrative agency against any Releasee prior to the date of signing of this Release, I have recorded and received all overtime compensation due through my last pay period prior to my termination date, I have reported to the Company any and all work-related injuries incurred during employment; and I acknowledge that the Company properly provided any leave of absence because of my or a family member's health condition and I have not been subjected to any improper treatment, conduct or actions due to a request for or taking such leave.

10.    That I have not assigned or attempted to assign or give to anyone else any claim I have or believe that I may have against any Releasee.

11.    That I acknowledge and agree that if, after the termination of my employment with the Company, I become reemployed by the Company or any of its affiliates, the Company may require me to repay, as a condition of reemployment, that portion of the Severance Payment received that exceeds the amount of base salary which I would have received had I remained in the Company's employment. The rate used in determining the amount of repayment will be the same rate that was used in calculating the Severance Payment. For purposes of this provision, "affiliates" means any company in which the Company has an ownership interest of fifty percent or greater.

6

Confidential- Subject to Protective Order

This Release does not affect my rights and obligations under the Company's standard Employee Agreement or any other secrecy, confidentiality, non-competition, or invention agreements that I have signed with the Company or under the various Company employee compensation or benefit plans and programs (except as specifically modified herein), which agreements, plans, and programs are governed by their terms. Apart from the benefits recited in this Release, I waive any rights I have to any benefits under any severance plan offered or adopted by the Company, including but not limited to the U.S. Severance Plan.

I agree not to disclose the terms of this Release to any person without the written consent of the Company, except to my legal, financial and tax advisors, and members of my immediate family, and any prospective or subsequent employer as respects any of my obligations under numbered paragraphs 2 to 4 immediately above who may need to be informed of these terms of this Release.

The construction, interpretation and performance of this Release shall be governed by the laws of the state in which I am working on the date of termination of my employment with the Company.

If any provision of this Release is determined to be invalid or unenforceable, the Company and I agree that such determination shall not affect the other provisions, and that all other provisions shall be enforced as if the invalid provision were not a part of this Release. Should any provision be held unenforceable for any reason, then such provision shall be enforced to the maximum extent permitted by law.

I further acknowledge that this Release contains the entire agreement between myself and the Company and cannot be modified except in writing if signed by me and the Company. Except as otherwise specifically provided for in this Release, this Release supercedes and replaces all prior agreements and understandings, written or oral, and any other employment or severance agreements or arrangements that may have been made by and between me and the Company. I represent and acknowledge that in executing this Release I have not relied upon any representation or statement not set forth herein made by any of the Releasees or any of the Releasee's agents, representatives or attorneys with regards to the subject matter of this Release, except for information contained in official plan documents.

**I understand that I have the right to consult with an attorney and the Company is advising me to consult with an attorney before signing this Release (and to the extent I desire, I have availed myself of that right), that I have at least 45 days to consider the Release before signing it, and that I may revoke the Release within seven calendar days after signing it.** For revocation to be effective, written notice must be received by the Company no later than the close of business on the seventh day after I sign this Release. I understand that this revocation can be made by delivering the written notice of revocation to Workforce Planning, The Dow Chemical Company, EDC, Midland, Michigan 48674, by First Class mail, by facsimile transmission (Fax No. 989-636-3674), or by hand delivery. I also understand that this Release shall not become effective or enforceable until the seven day revocation period has

7

DOW0026280

expired.  If I sign the Release before the expiration of the 45 day period, I acknowledge that I have done so of my own choice and without coercion by the Company.

**By signing this release, I state that:  I have read it; I understand it and know that I am giving up important rights; I agree with everything in it; I am aware of my right to consult an attorney before signing it; and I have signed it knowingly and voluntarily; I am aware I may revoke at any time within seven days after the date of signing indicated below by giving written notice of revocation to Workforce Planning.**

Oct. 3, 2011
_____
Date of Signing

_Robert F. Johnston_
_____
Employee Signature

Robert F. Johnston
_____
Employee Name Printed

ACCEPTED:
THE DOW CHEMICAL COMPANY

By _Keri Husen_
_____
Signature

**Keri Husen**
**Authorized Representative of the Company**
_____
Print Name and Title

Date: _____10-7-11_____

8

Confidential- Subject to Protective Order

DOW0026281

**TERMINATION GENERAL RELEASE**   RECEIVED

MAY 3 1 2011

Name: Participant 27                                     Employee No.: ███████

This Release sets forth the terms under which my employer will provide to me various special transition assistance benefits in connection with the termination of my employment[1] with The Dow Chemical Company.

I acknowledge that the termination of my employment was or is effective on May 31, 2011.

I further acknowledge that eligibility to receive the various special transition assistance benefits is conditioned upon my signing and not revoking this Release.

In consideration for the transition assistance benefits described below, I release and discharge The Dow Chemical Company and any of its affiliates or subsidiary companies (collectively the "Company"), and its officers, directors, employees, shareholders, successors and assigns ("Releasees") from all claims (including claims for attorney's fees and costs), demands and causes of action, known or unknown, which I may have or claim to have against any Releasee, arising out of, or in any way relating to, my employment or termination of my employment with the Company, whether based on any act or omission to act. This includes, but is not limited to, claims of negligence, intentional misconduct, breach of contract (whether written or oral), violation of the Employee Retirement Income Security Act of 1974 (ERISA) (as amended), violation of the **Age Discrimination in Employment Act of 1967 (ADEA) (as amended)**, violation of the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) (as amended), violation of the Worker Adjustment and Retraining Act (WARN) (as amended), claims arising under any federal, state or local laws, executive orders, regulations, directives, codes, or common law prohibiting employment discrimination based on age, color, race, gender/sex, sexual preference/orientation, height, weight, marital status, national origin, mental or physical disability, religious affiliation, veteran status or any other forms of discrimination, and claims based on any other laws, executive orders, regulations, directives, codes or common law affecting relations between employers and employees, including claims growing out of the Company's termination of its employees.

This Release does not affect any rights that I may have to file for a benefit under any state workers' compensation or unemployment compensation statute or for vested rights under ERISA-covered employee benefit plans as applicable to me on the date I sign this Release, that may arise under the ADEA, after I sign this Release, or that cannot be released by private agreement. I understand that nothing in this Release prevents me from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the EEOC, the NLRB, or any other federal, state, or local agency charged with the enforcement of employment laws, although by signing this release I am waiving and releasing any rights I may have to individual relief based on claims asserted in such charge or complaint or brought by any

---

[1] As used in this Termination General Release, "termination of employment" has the same meaning as Separation of Service defined in the summary plan description for the U.S. Severance Plan ("USSP").

USSP Release (Template revised 4.1.2011)

Confidential- Subject to Protective Order                                     DOW0026282

other person on my behalf or which include me in any class. This paragraph is not intended to limit me from instituting legal action for the purpose of enforcing this Release.

The transition assistance benefits which I will receive if I sign and do not revoke this Release in a timely manner consist of the following:

1. U. S. Severance Plan:
   a. I am eligible to receive a lump sum Severance Payment of $142,944 (less normal tax withholdings for income taxes, FICA, and any outstanding amounts I owe to the Company, including but not limited to any outstanding balance owed on Shared Appreciation Mortgage loans or other housing or relocation loans), after I leave the payroll.

   I understand that payment will not be made to me sooner than my termination date or sooner than the expiration of seven days following my signing this Release without revoking it in writing.

   b. I am eligible to receive reimbursement, up to a maximum of $300 (subject to withholding of applicable taxes), for the cost of financial counseling services provided I utilize an approved professional financial counseling service and submit a satisfactory receipt within six months following the effective date of termination of my employment by the Company.

   c. At my option, I will be provided with professional outplacement counseling services with a provider and program to be selected by the Plan Administrator based on my job level at the time of my separation from employment. The utilization of the outplacement counseling service must begin within three months of my termination date and will continue for a maximum of two to nine months, depending upon the terms of the program in which I am eligible to participate. The objective of outplacement counseling services is to assist me in pursuing a career outside the Company. I acknowledge that neither the outplacement counseling service provider nor the Company can guarantee subsequent employment. I further acknowledge that if I do not choose to use the outplacement counseling services, there is no alternative or substitute benefit.

2. Medical Coverage (does not include dental coverage)[2]:
   a. If on the effective date of my separation from employment I am eligible for coverage under The Dow Chemical Company Retiree Medical Care Program, the Union Carbide Corporation Retiree Medical Care Program, or the Rohm and Haas Company Health and Welfare Plan Retiree Medical Care Program[3], I can elect to

---

[2] The medical coverages described in this bullet point do not apply to dental coverage.
[3] Generally, a former Dow or UCC Employee is eligible for coverage under one of these retiree medical programs if he or she was hired prior to January 1, 2008, is at least age 50 with 10 or more years of credited service under the DEPP component ("DEPP") of the Dow Employees' Pension Plan or the UCEPP component ("UCEPP") of the Union Carbide Employees' Pension Plan (whichever is applicable). A former Dow or UCC Employee may also be eligible if: 1) he or she hired prior to January 1, 2008 by an employer that was authorized as a participating employer of the retiree medical program prior to January 1, 2008; 2) he or she has 10 or more years of credited

2

Confidential- Subject to Protective Order

DOW0026283

receive coverage under the applicable Dow, UCC, or Rohm and Haas retiree medical care program by submitting the retiree medical enrollment form provided by Dow within 31 days of my last day on the payroll, or 31 days from the date a retirement kit is sent to me, whichever is later.  If I complete the retiree medical enrollment form and submit it within the 31 day period, my premium rate for retiree medical coverage under the applicable retiree medical plan for 18 months following the effective date of my separation from employment will be the same premiums active employees of Dow pay (depending on my full-time or "Less-Than-Full-Time" status).  Eligibility for the coverage at the active employee premium rate is subject to my continuous premium payments during the entire 18-month period.  If I am a former Dow or UCC Employee, after 18 months, my cost for coverage will increase, and will be subject to the Retiree Medical Budget and the Retiree Medical Support Schedule depending on my years of Service.  If I am a former Rohm and Haas Employee, after 18 months, my cost for coverage will increase, and will be the same premium applicable to Rohm and Haas retirees.  All rates are subject to change.  All terms and conditions of the applicable retiree medical plan shall apply.  **I understand that in general, eligibility for retiree medical ends when I am eligible for Medicare.**  Some exceptions may apply[4].  For details, see the plan document for The Dow Chemical Company Retiree Medical Care Program,  Union Carbide Corporation Retiree Medical Care Program, or Rohm and Haas Company Health and Welfare Plan, whichever is applicable.  The Dow Chemical Company reserves the right to amend, modify, or terminate The Dow Chemical Company Retiree Medical Care Program, The Dow Chemical Company Insured Health Program, and the Rohm and Haas Company Health and Welfare Plan at any time.  Union Carbide Corporation reserves the right to amend, modify or terminate the Union Carbide Corporation Retiree Medical Care Program and the Union Carbide Corporation Insured Health Program at any time.

---

service under DEPP or UCEPP (whichever is applicable) with at least 60 points (age plus service), 3) he or she is a participant of a severance plan authorized by Dow or UCC, and 4) he or she has signed a release acceptable to the Participating Employer.  Generally, a former Rohm and Haas Employee is eligible for coverage under the Rohm and Haas Company Health and Welfare Plan Retiree Medical Care Program if he or she was hired prior to January 1, 2003, and on the date of termination of employment is either at least age 55 with 25 or more adjusted years of service under the Rohm and Haas Company Retirement Plan or at least age 60 with 15 or more adjusted years of service under the Rohm and Haas Company Retirement Plan.  In addition, a former Rohm and Haas Employee is eligible for coverage under the Rohm and Haas Company Health and Welfare Plan Retiree Medical Care Program if: 1) he or she was hired prior to January 1, 2003, 2) on the date of termination of employment he or she is at least age 50 with 65 or more points (age plus service), 3) he or she is a participant of a severance plan authorized by Dow, and 4) he or she has signed a release acceptable to the Participating Employer.  See the applicable retiree medical summary plan description for eligibility details.

[4] Exceptions apply to the following:
    a.  former Employees of The Dow Chemical Company who were hired prior to January 1, 1993,
    b.  former Employees of ANGUS Chemical Company who were hired prior to January 1, 1999,
    c.  former Employees of Union Carbide Corporation  who were hired prior to February 6, 2001,
    d.  former Employees of Dow AgroSciences who were hired prior to January 1, 2004,
    e.  former Employees of Rohm and Haas who were hired prior to January 1, 2003.

For more information, see the Plan Document for The Dow Chemical Company Retiree Medical Care Program, the Union Carbide Corporation Retiree Medical Care Program, or the Rohm and Haas Company Health and Welfare Plan, whichever is applicable.

Confidential- Subject to Protective Order

DOW0026284

b. If on the effective date of my separation from employment I am not eligible for coverage under The Dow Chemical Company Retiree Medical Care Program, the Union Carbide Corporation Retiree Medical Care Program, or Rohm and Haas Company Health and Welfare Plan Retiree Medical Care Program, I can elect to extend medical care coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program (depending on the plan I was enrolled in prior to termination of employment) for up to three (3) years from the effective date of my separation from employment or until I am eligible for coverage under another group plan (or a Dow plan through a dual Dow career spouse), whichever occurs first. If I elect extended coverage under The Dow Chemical Company Medical Care Program or The Dow Chemical Company Insured Health Program prior to the deadline specified in the notice I will receive from the COBRA administrator, my premium will be the same premium active employees of Dow pay (depending on my full-time or "Less-Than-Full-Time" status) during the first 18 months of extended coverage. The premium will be 102% of the full, unsubsidized cost of coverage for the remaining 18 months of extended coverage. Eligibility for the extended coverage is subject to continuous premium payments during the entire 36-month period. These rates are subject to change. The Company reserves the right to amend, modify, or terminate The Dow Chemical Company Medical Care Program and The Dow Chemical Company Insured Health Program at any time.

I have indicated my election decision on a separate Extended Coverage Enrollment Form.

I make the following representations to the Company, each of which is an important consideration for the Company's willingness to enter into this Release with me:

1. That I have returned or will return to the Company on or before my termination date, all Company property, including, without limitation, books, records and documents, files, memoranda, credit cards, Company passes, keys, computer access codes, disk and instructional manuals, tools, computers, and other physical property, which was or may be in my possession.

2. That I agree that I will not disclose to anyone or use, directly or indirectly, after termination of my employment with the Company, any Confidential Information of the Company, except with the written consent of the Company. Confidential Information is defined herein to mean trade secrets, know-how, and other information, not generally known, relating to the Company's business which was disclosed to me or with which I became familiar during my term of employment with the Company. Confidential Information includes information relating to the Company's business practices and prospective business interests, including, but not limited to, customer lists, forecasts, business and strategic plans, financial and sales information, products, processes, equipment, manufacturing operations, marketing programs, research, product development, engineering, computer systems and

4

Confidential- Subject to Protective Order

software, and personnel records. This obligation shall continue until such Confidential Information becomes generally known to the public without participation on my part.

3. That I will not at any time or in any manner, and whether directly or indirectly, criticize or disparage the Company or otherwise provide information, issue statements, or take any other action intended or reasonably likely to result in material harm, embarrassment, humiliation to the Company or cause or contribute to it being held in disrepute by any person.

4. That I agree that for a period of two (2) years from the date of the termination of my employment with the Company, I will not participate or have any interest, directly or indirectly, in any business which involves an area of technology or business in which I worked for the Company during the last five (5) years of my employment at the Company and in which I was exposed to any Confidential Information (as defined in paragraph 2 immediately above) of the Company. I further agree that for such period, I will not interfere with, disrupt or attempt to disrupt the relationship, contractual or otherwise, with respect to the business carried on by the Company with any other party. The restriction of this provision shall apply to any area of the United States, or any other country of the world in which the Company is conducting such business or may be reasonably expected to engage in any such business within that two (2) year period. Such restriction shall apply to me, as owner, partner, officer, employee, consultant or advisor. For purposes of this provision, ownership of not more than one percent of the common or preferred stock of any publicly held company whose stock is listed on any recognized stock exchange or traded over the counter shall be disregarded.

5. That the payments and other benefits (including subsidized premiums) which the Company has offered to me, as stated above, are payments and benefits to which I would not be entitled but for this Release.

6. That I realize that there are various federal, state and local laws that govern my employment relationship with the Company and/or prohibit employment discrimination on the basis of age, color, race, gender/sex, national origin, mental or physical disability, religious affiliation or veteran status, as well as other forms of discrimination (including, in some jurisdictions, sexual preference/orientation, height, weight, and marital status), and that these laws are enforced through the courts and agencies such as the Equal Employment Opportunity Commission, Department of Labor and State Human Rights Agencies.

7. That I am aware that, by signing this Release, I am giving up my right to sue any Releasee not only on the basis of the discrimination laws mentioned above, but also for any other claims which I may have or believe that I may have against any Releasee in connection with my employment or termination of my employment, based upon any event which occurred before I sign this Release. I am further aware that the understanding regarding my right to sue stated in this paragraph does not apply to my right to challenge the knowing and voluntary nature of this Release

5

Confidential- Subject to Protective Order

as respects claims under the ADEA or the Older Worker Benefit Protection Act (OWBPA), although I understand that I have released my right to recovery under those statutes by signing this Release. Should I break this representation in this paragraph, I agree to pay all of the Company's costs and expenses (including reasonable attorneys' fees) related to the defense of any claims except for those under the ADEA and the OWBPA. I understand, however, that if I pursue a claim against the Company under the ADEA and/or the OWBPA to challenge the validity of this Release and prevail on the merits of an ADEA claim, a court has the discretion to determine whether the Company is entitled to restitution, recoupment, or set off (herinafter a "reduction") against a monetary award obtained by me in the court proceeding. A reduction can never exceed the amount I recover, or the consideration I received for signing this release, whichever is less. I also recognize that the Company may be entitled to recover costs and attorneys' fees incurred by the Company as specifically authorized under applicable law.

8.  That I am aware that I may change my mind and revoke this Release at any time during the seven days after I sign this Release, provided I do so in writing, in which case none of the provisions of this Release will have any effect. I acknowledge I will not be entitled to receive any payment or benefits set forth in this Release until the seven day period has expired without revocation, at which time this Release shall become final and binding.

9.  That I have not filed any complaints with a court or administrative agency against any Releasee prior to the date of signing of this Release, I have recorded and received all overtime compensation due through my last pay period prior to my termination date, I have reported to the Company any and all work-related injuries incurred during employment; and I acknowledge that the Company properly provided any leave of absence because of my or a family member's health condition and I have not been subjected to any improper treatment, conduct or actions due to a request for or taking such leave.

10. That I have not assigned or attempted to assign or give to anyone else any claim I have or believe that I may have against any Releasee.

11. That I acknowledge and agree that if, after the termination of my employment with the Company, I become reemployed by the Company or any of its affiliates, the Company may require me to repay, as a condition of reemployment, that portion of the Severance Payment received that exceeds the amount of base salary which I would have received had I remained in the Company's employment. The rate used in determining the amount of repayment will be the same rate that was used in calculating the Severance Payment. For purposes of this provision, "affiliates" means any company in which the Company has an ownership interest of fifty percent or greater.

Confidential- Subject to Protective Order                DOW0026287

This Release does not affect my rights and obligations under the Company's standard Employee Agreement or any other secrecy, confidentiality, non-competition, or invention agreements that I have signed with the Company or under the various Company employee compensation or benefit plans and programs (except as specifically modified herein), which agreements, plans, and programs are governed by their terms. Apart from the benefits recited in this Release, I waive any rights I have to any benefits under any severance plan offered or adopted by the Company, including but not limited to the U.S. Severance Plan.

I agree not to disclose the terms of this Release to any person without the written consent of the Company, except to my legal, financial and tax advisors, and members of my immediate family, and any prospective or subsequent employer as respects any of my obligations under numbered paragraphs 2 to 4 immediately above who may need to be informed of these terms of this Release.

The construction, interpretation and performance of this Release shall be governed by the laws of the state in which I am working on the date of termination of my employment with the Company.

If any provision of this Release is determined to be invalid or unenforceable, the Company and I agree that such determination shall not affect the other provisions, and that all other provisions shall be enforced as if the invalid provision were not a part of this Release. Should any provision be held unenforceable for any reason, then such provision shall be enforced to the maximum extent permitted by law.

I further acknowledge that this Release contains the entire agreement between myself and the Company and cannot be modified except in writing if signed by me and the Company. Except as otherwise specifically provided for in this Release, this Release supercedes and replaces all prior agreements and understandings, written or oral, and any other employment or severance agreements or arrangements that may have been made by and between me and the Company. I represent and acknowledge that in executing this Release I have not relied upon any representation or statement not set forth herein made by any of the Releasees or any of the Releasee's agents, representatives or attorneys with regards to the subject matter of this Release, except for information contained in official plan documents.

**I understand that I have the right to consult with an attorney and the Company is advising me to consult with an attorney before signing this Release (and to the extent I desire, I have availed myself of that right), that I have at least 45 days to consider the Release before signing it, and that I may revoke the Release within seven calendar days after signing it.** For revocation to be effective, written notice must be received by the Company no later than the close of business on the seventh day after I sign this Release. I understand that this revocation can be made by delivering the written notice of revocation to Workforce Planning, The Dow Chemical Company, EDC, Midland, Michigan 48674, by First Class mail, by facsimile transmission (Fax No. 989-636-3674), or by hand delivery. I also understand that this Release shall not become effective or enforceable until the seven day revocation period has expired. If I sign the Release before the expiration of the 45 day period, I acknowledge that I have done so of my own choice and without coercion by the Company.

7

DOW0026288

By signing this release, I state that:  I have read it; I understand it and know that I am giving up important rights; I agree with everything in it; I am aware of my right to consult an attorney before signing it; and I have signed it knowingly and voluntarily; I am aware I may revoke at any time within seven days after the date of signing indicated below by giving written notice of revocation to Workforce Planning.

5-31-2011
_____
Date of Signing

Participant 27
_____
Employee Signature

Participant 27
Employee Name Printed

ACCEPTED:
THE DOW CHEMICAL COMPANY

_____
Signature

**Keri Husen**
Authorized Representative of the Company
_____
Print Name and Title

e:  5-31-11
_____

*If you please —*
*I would like a copy*
*of this signature page*
*after the Dow Representative*
*signs & dates it.*

Participant 27

| Redacted:
Confidential |

Done
6-1-11

| **Redacted:
Confidential** |

8

Confidential- Subject to Protective Order

DOW0026289